Received 1/29/2022 4:01:59 PM Supreme Court Middle District

Filed 01/29/2022 Supreme Court Middle District

7 MM 2022

_____

## IN THE SUPREME COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN, | No. _____ <br> _____ |

             Petitioners,

     v.

LEIGH M. CHAPMAN, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries,

             Respondents.

RETRIEVED FROM DEMOCRACYDOCKET.COM

## CARTER PETITIONERS' EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF UNDER 42 PA. C.S. § 726 AND PA. R.A.P. 3309

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................2

I.   This Court has the power to assume extraordinary jurisdiction over the
     Redistricting Litigation. ........................................................................2

II.  This Court should *immediately* assume extraordinary jurisdiction over the
     Redistricting Litigation. ........................................................................4

CONCLUSION ..................................................................................................7

RETRIEVED FROM DEMOCRACYDOCKET.COM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Revision of Taxes v. City of Phila.*,
    4 A.3d 610 (Pa. 2010) .......................................................................................2, 7

*Branch v. Smith*,
    538 U.S. 254 (2003) ...............................................................................................7

*Carter et. al. v. Degraffenreid et al.*,
    No. 132 MD 2021 ....................................................................................................5

*Carter, et al. v. Chapman, et al.*,
    Case No. 464 MD 2021 .......................................................................................1, 7

*Carter, et al. v. Degraffenreid, et al.*,
    Case No. 141 MM 2021 ..........................................................................................1

*Gressman, et al. v. Chapman, et al.*,
    Case No. 465 MD 2021 .......................................................................................1, 8

*League of Women Voters of Pa. v. Commonwealth*,
    181 A.3d 1803 ....................................................................................................3, 7

*Mellow v. Mitchell*,
    607 A.2d 204 (Pa. 1992) ......................................................................................3, 6

*Shayer v. Kirkpatrick*,
    541 F. Supp. 922 (W.D. Mo.), *aff'd*, 456 U.S. 966 (1982) ..................................7

*Wesberry v. Sanders*,
    376 U.S. 1 (1964) .....................................................................................................3

**Statutes**

42 Pa. C.S. § 726 .......................................................................................................2

2 U.S.C. § 2 ................................................................................................................7

RETRIEVED FROM DEMOCRACYDOCKET.COM

**INTRODUCTION**

On December 21, 2021, the *Carter* Petitioners[1] filed an Application for Extraordinary Relief in this Court captioned *Carter, et al. v. Degraffenreid, et al.*, Case No. 141 MM 2021 ("First Application"). In the First Application, the *Carter* Petitioners requested that the Court assume extraordinary jurisdiction over an original jurisdiction action pending in the Commonwealth Court captioned, *Carter, et al. v. Chapman, et al.*, Case No. 464 MD 2021, lead case, consolidated with *Gressman, et al. v. Chapman, et al.*, Case No. 465 MD 2021 (collectively, the "Redistricting Litigation"). On January 10, 2022, this Court denied the *Carter* Petitioners' Application for Extraordinary Relief without prejudice to their right "to reapply for similar relief in this Court, as future developments may dictate."

Two recent developments dictate that the Court immediately assume extraordinary jurisdiction over the Redistricting Litigation. *First*, on January 26, 2022, Governor Tom Wolf vetoed the congressional districting map passed by the Pennsylvania General Assembly. The political branches have now irreversibly failed to deliver a final plan by January 24, 2022—the deadline by which the Department of State has said it would need to receive a legally binding map in order to "properly

---

[1] The *Carter* Petitioners consist of Carol Ann Carter, Monica Parrilla, Rebecca Poyourow, William Tung, Roseanne Milazzo, Burt Siegel, Susan Cassanelli, Lee Cassanelli, Lynn Wachman, Michael Guttman, Maya Fonkeu, Brady Hill, Mary Ellen Balchunis, Tom Dewall, Stephanie Mcnulty, and Janet Temin.

implement" the next election cycle, reduce "errors," and provide "timely notice to candidates." *Second*, the Commonwealth Court in the Redistricting Litigation has now resolved all predicate issues of intervention, and the evidentiary record is complete. But any decision from the Commonwealth Court will certainly be appealed to this Court by one or more of the eight parties.

In these circumstances, this Court should not wait to accept jurisdiction through Chapter 9 of the Rules of Appellate Procedure and the attendant delays. Every moment that has passed since the Legislature missed the January 24 deadline is precious, and there is no reason this Court should let additional time pass. Now that the evidentiary record is closed, this Court should immediately take extraordinary jurisdiction, adopt a map as soon as possible, and provide all Pennsylvanians with the finality they so urgently seek.

**ARGUMENT**

**I.    This Court has the power to assume extraordinary jurisdiction over the Redistricting Litigation.**

Under 42 Pa. C.S. § 726, "[t]his Court may assume, at its discretion, plenary jurisdiction over a matter of immediate public importance that is pending before another court of this Commonwealth." *Bd. of Revision of Taxes v. City of Phila.*, 4 A.3d 610, 620 (Pa. 2010). Just as it has done in the past to resolve redistricting deadlocks, this Court should exercise its extraordinary jurisdiction to ensure Pennsylvania has constitutional congressional districts for the 2022 election. This

2

Court's swift intervention is necessary to protect the constitutional rights of millions of Pennsylvania voters.

The last time Pennsylvania's judiciary was required to remedy an impasse following the decennial census, this Court quickly exercised extraordinary jurisdiction over the case. *See Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992). Similarly, in *League of Women Voters of Pennsylvania v. Commonwealth*, this Court exercised its extraordinary jurisdiction powers to ensure Pennsylvania would have constitutional congressional plans for the 2018 election cycle. *See* 181 A.3d 1083 (Pa. 2018). This time, too, there is no question that the issue is of immediate and crucial public importance—the new reapportionment plan will affect every Pennsylvania voter and every candidate who intends to run to represent the Commonwealth. And Petitioners' rights are clear: continued malapportionment would violate not only the Pennsylvania Constitution, but also the "[U.S.] Constitution's plain objective of [] equal representation for equal numbers. . . ." *Wesberry v. Sanders*, 376 U.S. 1, 18 (1964).

Indeed, as this Court has previously recognized, "[w]hen the legislature is unable or chooses not to act, it becomes the judiciary's role to ensure a valid districting scheme." *League of Women Voters of Pa.,* 181 A.3d at 1086 n.6. That is precisely where we find ourselves today.

**II.     This Court should *immediately* assume extraordinary jurisdiction over the Redistricting Litigation.**

Time remains of the essence in this impasse litigation,[2] and recent developments only further justify this Court's immediate intervention.

*First*, since *Carter* Petitioners' First Application, the State's asserted deadline for timely implementation of a map has passed. Respondents, the Acting Secretary and Director for the Pennsylvania Bureau of Election Services and Notaries, stated in prior litigation that a final map must be in place by January 24, 2022 to ensure an efficient election, reduce errors, allow timely notice to candidates, and properly implement new congressional districts:

> In order to ensure efficient election administration, allow for timely notice to candidates, and permit proper implementation of the new congressional districts, Respondents believe that that the Department of State must receive a finally and legally binding congressional district map no later than January 24, 2022.

Ex. A, at 9 (emphasis added); *see also* Ex. B ¶ 15 (pp. 8–9) ("[I]n order to help the counties reduce errors . . . the Department of State must receive a final and legally binding congressional district map no later than January 24, 2022.") (emphasis added).[3]

---

[2] *See* First Application, January 10, 2022 Dissenting Statement (J. Wecht, dissenting) ("[O]ur immediate intervention is warranted.").

[3] Attached hereto as Exhibit A is a copy of Respondents' Brief in Support of Preliminary Objections to Petitioners' Petition for Review, filed September 16, 2021

*Second*, there is no longer any prospect that the legislative process will timely yield a final map. On January 26, 2022, the Governor of Pennsylvania vetoed House Bill 2146, the proposed reapportionment plan passed by the General Assembly.[4] It is now certain that adoption of a congressional map will fall to the judiciary.

*Third*, there is no reason for this Court to wait for the inevitable appeal from the Commonwealth Court's order in the Redistricting Litigation. There are currently eight parties and thirteen maps before the Commonwealth Court, which has indicated it will not issue a final order until next week.[5] Even with the capable and diligent efforts of the Commonwealth Court, this Court, and the numerous counsel in the Redistricting Litigation, the drafting, filing, and resolution of the parties' jurisdictional statements, consolidation motions, and merits briefs will needlessly delay this Court's consideration of the critical  question affecting citizens all across

RETRIEVED FROM DEMOCRACYDOCKET.COM

---

in *Carter et. al. v. Degraffenreid et al.*, No. 132 MD 2021. Attached hereto as <u>Exhibit B</u> is a copy of Respondents' Preliminary Objections to Petitioners' Petition for Review, filed July 1, 2021 in that same action.

[4]   A   copy   of   the   Governor's   veto   message   can   be   found   at https://www.governor.pa.gov/wp-content/uploads/2022/01/20220126-HB-2146-Veto-Message.pdf.

[5]  Attached hereto as <u>Exhibit C</u> is a copy of the Commonwealth Court's January 14, 2022 Order in the Redistricting Litigation, stating at paragraph 12 that "If the General Assembly has not produced a new congressional map by January 30, 2022, the Court shall proceed to issue an opinion based on the hearing and evidence presented by the parties."

this Commonwealth: which map will govern congressional elections in Pennsylvania for the next decade?

Indeed, this Court could not be better equipped to immediately assume jurisdiction. Since January 10, 2022, the Commonwealth Court has adroitly resolved all predicate issues of intervention and orchestrated a complex evidentiary hearing, including submissions of thirteen maps by eight parties and four Amici Curiae, direct and cross examination of six expert witnesses, and supplemental evidence. The hard work of factfinding has been completed, and this Court will have the benefit of that full record.

Importantly, this Court's exercise of jurisdiction prior to a final order from the Commonwealth Court need not alter the Commonwealth Court's evidentiary proceedings and subsequent activities. The Commonwealth Court could simply report its recommendations to this Court in the capacity of a "special master" under the auspices of this Honorable Court. *See Mitchell*, 607 A.2d at 206 (Commonwealth Court judge designated as Master to conduct hearings and "report to" the Supreme Court); First Application, January 10, 2022 Dissenting Statement (J. Wecht, dissenting) (observing that a special master should be appointed to make a recommendation to the Court). Upon receipt of the Commonwealth Court's report, this Court can issue a  final map expeditiously without resolving any procedural

mechanics or requiring any further action by the parties.[6]

In short, it is still feasible for this Court to exercise extraordinary jurisdiction and timely resolve the unquestionable need for a new, constitutional congressional map for the Commonwealth.

This Court's extraordinary jurisdiction power—which recognizes the Court's "broad authority to craft meaningful remedies"—was made for this unique and historical moment. *See League of Women Voters*, 181 A.3d at 1086 n.6. As this Court has already recognized, "[s]wift resolution" of matters such as these is essential to "promote confidence in the authority and integrity of [this Commonwealth's] institutions." *Bd. of Revision*, 4 A.3d at 620.

## CONCLUSION

For all the foregoing reasons, the *Carter* Petitioners respectfully request that this Court grant the Emergency Application for Extraordinary Relief, immediately take extraordinary jurisdiction over *Carter et al. v. Chapman et al.*, No 464 MD

---

[6] Notably, the "backstop" of at-large elections under 2 U.S.C. § 2a(c) does not justify any further delay. Section 2a(c) must not and cannot be invoked "as long as it is feasible" to adopt a constitutional final map. *See Branch v. Smith*, 538 U.S. 254, 275 (2003); *see also Shayer v. Kirkpatrick*, 541 F. Supp. 922 (W.D. Mo.), *aff'd*, 456 U.S. 966 (1982) (observing "distaste" for at-large elections; "the only appropriate remedy" for a legislature's failure to adopt a plan is court-ordered apportionment); First Application, January 10, 2022 Dissenting Statement (J. Wecht, dissenting) (observing risks of defaulting to at-large elections including dilutive effect upon minority voters).

7

2021, lead case, consolidated with *Gressman et al. v. Chapman et al.*, No. 465 MD

2021, and expeditiously implement proceedings to finally resolve both actions.

Dated: January 29, 2021

Abha Khanna*
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
T: (206) 656-0177

Lalitha D. Madduri*
Christina A. Ford*
Jyoti Jasrasaria*
Joseph N. Posimato*
Raisa M. Cramer*
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
lmadduri@elias.law
cford@elias.law
jjasrasaria@elias.law
jposimato@elias.law
rcramer@elias.law
T: (202) 968-4490

Matthew Gordon*
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

Respectfully submitted,

*/s/ Edward D. Rogers*
Edward D. Rogers, No. 69337
Marcel S. Pratt, No. 307483
Robert J. Clark, No. 308105
Michael R. McDonald, No. 326873
Paul K. Ort, No. 326044
Clayton Keir, No. 330486
Alexa Levy, No. 327973
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
KeirC@ballardspahr.com
LevyA@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

*pro hac vice* forthcoming

RETRIEVED FROM DEMOCRACYDOCKET.COM

8

# EXHIBIT A

RETRIEVED FROM DEMOCRACYDOCKET.COM

Received 9/16/2021 6:42:17 PM Commonwealth Court of Pennsylvania

Filed 9/16/2021 6:42:00 PM Commonwealth Court of Pennsylvania
132 MD 2021

*HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER*
Michele D. Hangley (I.D. No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200

*OFFICE OF ATTORNEY GENERAL*
Karen M. Romano (I.D. No. 88848)
Keli M. Neary (I.D. No. 205178)
Caleb Enerson (I.D. No. 313832)
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-2717

*PENNSYLVANIA GOVERNOR'S OFFICE OF GENERAL COUNSEL*
Kenneth L. Joel (I.D. No. 72370)
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 787-9348

*PENNSYLVANIA DEPARTMENT OF STATE*
Kathleen M. Kotula (I.D. No. 318947)
306 North Office Bldg., 401 North Street
Harrisburg, PA 17120-0500
(717) 783-1657

*TUCKER LAW GROUP, LLC*
Joe H. Tucker, Jr. (I.D. No. 56617)
Dimitrios Mavroudis (I.D. No. 93773)
Jessica A. Rickabaugh (I.D. No. 200189)
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609

*Counsel for Respondents*

RETRIEVED FROM DEMOCRACYDOCKET.COM

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAROL ANN CARTER, *et al.*,
        Petitioners,
   v.

VERONICA DEGRAFFENREID, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, *et al.*,
        Respondents.

No. 132 MD 2021

## RESPONDENTS' BRIEF IN SUPPORT OF PRELIMINARY OBJECTIONS TO PETITIONERS' PETITION FOR REVIEW

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF JURISDICTION ...................................................................2

III.    STATEMENT OF THE CASE..............................................................................2

IV.    STATEMENT OF THE QUESTIONS INVOLVED...........................................6

V.     ARGUMENT ........................................................................................................6

VI.    CONCLUSION....................................................................................................10

RETRIEVED FROM DEMOCRACYDOCKET.COM

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arrington v. Elections Board*,
  173 F. Supp. 2d 856 (E.D. Wisc. 2001)................................................................9

*Bayada Nurses, Inc. v. Department of Labor and Industry*,
  8 A.3d 866 (Pa. 2010)............................................................................................6

*Garcia v. 2011 Legislative Reapportionment Commission*,
  559 Fed. Appx. 128 (3d Cir. 2014).....................................................................10

*League of Women Voters v. Commonwealth*,
  178 A.3d 737 (Pa. 2018)........................................................................................5

*Markham v. Wolf*,
  136 A.3d 134 (Pa. 2016)........................................................................................6

*Philips Brothers Electrical Contractors, Inc. v. Pennsylvania
  Turnpike Commission*,
  960 A.2d 941 (Pa. Commw. Ct. 2008) ..................................................................7

*Pittsburgh Palisades Park, LLC v. Commonwealth*,
  888 A.2d 655 (Pa. 2005).....................................................................................6, 8

*Robinson Township, Washington County v. Commonwealth*,
  83 A.3d 901 (Pa. 2013)..........................................................................................7

*Sachs v. Simon*,
  No. A21-0546 (Minn. Spec. Redistricting Panel Sept. 13, 2021),
  *available at* https://www.mncourts.gov/mncourtsgov/media/High-
  Profile-Cases/A21-0243%202021%20Redistricting/A21-
  0243_Order-Briefing-Scheduling_9-13-2021.pdf ................................................8

*Wattson v. Simon*,
  Nos. A21-0243 (Minn. Spec. Redistricting Panel Sept. 13, 2021),
  *available at* https://www.mncourts.gov/mncourtsgov/media/High-
  Profile-Cases/A21-0243%202021%20Redistricting/A21-
  0243_Order-Briefing-Scheduling_9-13-2021.pdf ...........................................8, 9

RETRIEVED FROM DEMOCRACYDOCKET.COM

**Statutes**

42 Pa. C.S. § 761(a)(1)..................................................................................2

Act of Mar. 27, 2020 (P.L. 41, No. 12), 2020 Pa. Legis. Serv. Act
    2020-12 (S.B. 422) (West)......................................................................5

Act of Oct. 31, 2019 (P.L. 552, No. 77), 2019 Pa. Legis. Serv. Act.
    2019-77 (S.B. 421) (West).......................................................................4

Minn. Stat. Ann. § 204B.14(1a)......................................................................9

**Other Authorities**

Pa Congressional Redistricting PA House Republican Caucus, *Pa.
Redistricting*, http://www.paredistricting.com (last visited on Sept.
16, 2021) ...............................................................................................6

United States Census Bureau, *2020 Redistricting Data Datasets* (Aug.
12, 2021), https://www.census.gov/programs-surveys/decennial-
census/data/datasets/rdo.html  (last visited on Sept. 16, 2021) ..........6

Governor Tom Wolf, *Give Feedback on Pennsylvania Redistricting*,
https://www.governor.pa.gov/redistricting-feedback/  (last visited
on Sept. 16, 2021)..................................................................................6

Commonwealth of Pennsylvania Governor's Office, *Executive Order*
(Sept. 13, 2021), https://www.governor.pa.gov/wp-
content/uploads/2021/09/20210913-EO-2021-05-Redistricting-
Advisory-Council.pdf  (last visited on Sept. 16, 2021)........................6

RETRIEVED FROM DEMOCRACYDOCKET.COM

3

Respondents, Acting Secretary of the Commonwealth Veronica

Degraffenreid and Director of the Bureau of Election Services and Notaries Jessica

Mathis, submit the following Memorandum of Law in support of their Preliminary

Objections.

## I.  INTRODUCTION

The Petition for Review raises serious and weighty issues. Respondents

agree with Petitioners that the right to vote of the individual Petitioners, and of all

Pennsylvania voters, must be protected. They agree that timely congressional

redistricting that complies with federal and state law is necessary to protect this

right to vote. And they agree that, if the political branches of Pennsylvania's

government fail to carry out that redistricting, the courts will be required to step in.

Respondents do not agree, however, that the political branches have failed in

their responsibilities to voters, or that Petitioners have shown that failure is

inevitable. At this point, all that Petitioners allege is that it is possible that the

General Assembly and the Governor will reach an impasse on congressional

redistricting legislation and will not be able to enact such legislation in time for the

2022 primary election. But the possibility of an impasse does not suffice to state a

claim, and cannot justify the Court stepping in at this point.

Before this Court can intercede, Pennsylvania law requires more than a

chance that Petitioners' rights may be endangered some time down the road. Under

bedrock principles of standing, the harm to Petitioners cannot be wholly contingent on future events. And for Petitioners' claims to be ripe, the facts must be sufficiently developed to permit judicial resolution. Here, Petitioners' claims fail on both fronts.

Respondents do not argue that the Court's doors are or should be closed to Petitioners permanently. As of today, however, Petitioners' forecast—stormy though it may be—is too uncertain to establish Petitioners' standing and state a ripe claim for relief.

## II.   STATEMENT OF JURISDICTION

The Petition for Review is addressed to this Court's original jurisdiction, pursuant to 42 Pa. C.S. § 761(a)(1).

## III.   STATEMENT OF THE CASE

Petitioners—16 individuals living in 11 different Pennsylvania congressional districts—filed their Petition for Review addressed to the Court's original jurisdiction on April 26, 2021. Petitioners allege that their voting rights will be potentially burdened by a chain of events that was set in motion by the completion of the 2020 decennial census. According to Petitioners, once the United States Secretary of Commerce delivered the apportionment data obtained by the 2020 Census to the President, use of the existing congressional districts of each state—including those of Pennsylvania—became unconstitutional. *See, e.g.*, Pet. ¶¶

2-4. Petitioners allege that unless new congressional districts are put in place in time for 2022's primary and general elections, their rights will be violated. *Id.* ¶ 7.

Petitioners acknowledge that under Pennsylvania law, congressional district maps are the responsibility of the political branches—the legislature and the executive—in the first instance. "In Pennsylvania, congressional district plans must be enacted through legislation, which requires the consent of both legislative chambers and the Governor (unless both legislative chambers override the Governor's veto by a two-third vote)." Pet. ¶ 6 (citing *League of Women Voters v. Commonwealth*, 178 A.3d 737, 742 (Pa. 2018)).

Petitioners hypothesize, however, that redistricting is unlikely to proceed along ordinary legislative lines in 2021 and 2022, because Pennsylvania's "political branches are highly likely to be at an impasse this cycle and to fail to enact a new congressional district plan." *Id.* ¶ 33. The support Petitioners offer for this proposition is that Pennsylvania's legislative and executive branches are controlled by different parties; that "[i]n just the last two years, Governor Wolf and the Republican-controlled General Assembly have repeatedly conflicted over a broad range of policies"; and that Census delays have compressed the legislature's time to enact a new congressional district plan. *Id.* Without a new congressional district plan, Petitioners allege, they "will be forced to cast unequal votes[,]…[b]ecause the current congressional plan is unconstitutionally

- 3 -

malapportioned[.]" Pet. ¶ 4. Additionally, Petitioners allege that if they are forced to participate in upcoming elections that use the old map, their "right to associate with other voters in support of their preferred candidates will be infringed." *Id.* As a result, Petitioners ask that the Court "assume jurisdiction now and establish a schedule that will enable the Court to adopt its own plan in the near-certain event that the political branches fail to timely do so." *Id.* ¶ 9.

The potential harms that Petitioners allege are uncertain and far in the future. First, Petitioners do not allege that the political branches have announced an impasse. Second, they acknowledge that the legislature has not missed any deadlines. *See* Pet. ¶ 30 ("Pennsylvania law does not set a deadline by which congressional redistricting plans must be in place prior to the first congressional election following release of the Census.").

Finally, Petitioners do not contend that it will be impossible for the legislative and executive branches to agree on a congressional district map, and could not reasonably contend this. While the Governor has exercised his veto power at times in the past two years, legislation has also passed during that time with bipartisan support and without a veto—including important voting-related legislation. For example, less than two years ago, the General Assembly enacted and the Governor signed Act 77 of 2019,[1] which allowed all eligible voters to vote

---

[1] Act of Oct. 31, 2019 (P.L. 552, No. 77), 2019 Pa. Legis. Serv. Act. 2019-77 (S.B. 421) (West).

by mail-in ballot and made many other important changes to Pennsylvania's Election Code. Five months later, the General Assembly enacted and the Governor signed Act 12 of 2020,[2] which made further changes to the Election Code and included sweeping temporary measures to respond to the COVID-19 pandemic. Both of these important voting laws received bipartisan support in the General Assembly.

Petitioners also concede, as they must, that "there is still time for the General Assembly and the Governor to enact a new congressional plan[.]" *Id.* ¶ 9. The first day for candidates to circulate and file nomination petitions for the 2022 primary election is February 15, 2022. In order to ensure efficient election administration, allow for timely notice to candidates, and permit proper implementation of the new congressional districts, Respondents believe that the Department of State must receive a final and legally binding congressional district map no later than January 24, 2022. *See* Respondents' Preliminary Objections ¶¶ 13-17. In order to account for potential litigation, Respondents believe that a new map must be signed into law by the end of December 2021. *Id.* ¶ 17. A map signed into law in late December would not be unprecedented. The congressional district map that followed the 2010 Census, for example, was signed into law on December 22, 2011. *League of Women Voters*, 178 A.3d at 743-44. If the political

---

[2] Act of Mar. 27, 2020 (P.L. 41, No. 12), 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) (West).

branches act promptly, they could easily meet a similar deadline.[3]

## IV.   STATEMENT OF THE QUESTIONS INVOLVED

1.      Where Petitioners allege harm that is speculative and uncertain,
should the Court sustain Respondents' Preliminary Objection for lack of standing
and ripeness?

Suggested Answer:  Yes.

## V.   ARGUMENT

To establish standing to seek relief from this Court, a party must
demonstrate that it is "aggrieved," that is, that it has "a substantial, direct, and
immediate interest in the matter." *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016);
*accord Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa.
2005). "[A]n interest is 'immediate' if the causal connection is not remote or
speculative." *Pittsburgh Palisades Park*, 888 A.2d at 660 (citation omitted).

Like standing, the principle of ripeness "mandates the presence of an actual
controversy." *Bayada Nurses, Inc. v. Department of Labor and Industry*, 8 A.3d

---

[3] There is no indication that the political branches are delaying; they appear to be
actively moving the redistricting process forward. The U.S. Census Bureau released redistricting
data in legacy format on August 12, 2021. *See* https://www.census.gov/programs-
surveys/decennial-census/data/datasets/rdo.html. Using that data, the House State Government
Committee is soliciting public input on new maps, including by holding a series of hearings
across the Commonwealth. *See* http://www.paredistricting.com.  Governor Wolf is also soliciting
the public's feedback, and has established a Redistricting Advisory Council to assist him in
evaluating proposed maps. *See* https://www.governor.pa.gov/redistricting-feedback/;
https://www.governor.pa.gov/wp-content/uploads/2021/09/20210913-EO-2021-05-Redistricting-
Advisory-Council.pdf.

866, 874 (Pa. 2010). Unlike standing, however, ripeness "also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute." *Robinson Twp., Washington Cty. v. Com.*, 83 A.3d 901, 917 (Pa. 2013).

Here, all of Petitioners' claims turn on one key fact—whether or not there will be a new congressional district plan in place in time for the 2022 election. Petitioners allege only that it is "highly likely" that Pennsylvania's political branches will "be at an impasse this cycle" and "fail to enact a new congressional district plan." Pet. ¶ 33. That fact, as Petitioners acknowledge, is still unresolved: "there is still time for the General Assembly and the Governor to enact a new congressional plan[.]" Pet. ¶ 9. Because no one knows what will happen in the negotiations between the legislature and the Governor—let alone whether the negotiations will break down, a necessary prerequisite to Petitioners' claims—the facts underlying the Petition for Review are quintessentially "not sufficiently developed to permit judicial resolution of the dispute," and therefore are not ripe. *Robinson*, 83 A.3d at 917; *see also Philips Bros. Elec. Contractors, Inc. v. Pennsylvania Turnpike Comm'n*, 960 A.2d 941, 945 (Pa. Commw. Ct. 2008) (factors considered in ripeness inquiry include "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all") (citations omitted). Similarly, "any possible harm to Petitioners is wholly

contingent on future events." *Pittsburgh Palisades Park*, 888 A.2d at 660. "[A]s

Petitioners do not offer that [negotiation over a new congressional district plan] has

harmed them or will harm them in any way that is not remote or speculative, they

fail to demonstrate that they have an immediate interest," as is required for

standing. *Id.* (citation omitted).

Petitioners' Memorandum in Opposition to Respondents' Preliminary

Objections ("Mem. Opp.") sets forth no persuasive reason for the Court to

conclude that Petitioners have standing or that their claims are ripe. First,

Petitioners argue, courts in Minnesota and Wisconsin have exercised jurisdiction

under similar circumstances. *See* Mem. Opp. at 11-13, 15-16, 18-20. But the cases

Petitioners rely upon are not at all similar to this one. The Minnesota state court

cases of *Wattson v. Simon*, No. A21-0243, and *Sachs v. Simon*, No. A21-0546,

involve the work of a hybrid entity with no counterpart in Pennsylvania: a "special

redistricting panel," made up of judges, that conducts public outreach and

factfinding in order to prepare itself to address any redistricting litigation that may

arise. *See Wattson v. Simon*, Nos. A21-0243 and A21-0546 (Minn. Spec.

Redistricting Panel Sept. 13, 2021), *available at*

https://www.mncourts.gov/mncourtsgov/media/High-Profile-Cases/A21-

0243%202021%20Redistricting/A21-0243_Order-Briefing-Scheduling_9-13-

2021.pdf (stating that "the panel wishes to gather information about Minnesota

communities from Minnesota citizens" and scheduling ten public hearings across the state). Given the panel's expansive and time-consuming role, and the fact that Minnesota, unlike Pennsylvania, has statutory deadlines for the establishment of new maps, *see* Minn. Stat. Ann. § 204B.14(1a), it is not surprising that the Minnesota Supreme Court concluded that the panel should begin its work in the summer of 2021. *See Wattson v. Simon*, Nos. A21-0243 and A21-0546 (Minn. June 30, 2021) at 2. That decision, under those unique circumstances, has no bearing on the standing and ripeness questions here.

   *Arrington v. Elections Board*, 173 F. Supp. 2d 856 (E.D. Wisc. 2001), is similarly unhelpful. In that case, two groups of legislators—the State Senate Democratic Caucus, who intervened as plaintiffs, and the State Senate's Speaker and Minority Leader, who intervened as defendants—filed briefs agreeing that the case was justiciable, and the Senate leaders agreed with the plaintiffs that impasse was a "very real possibility." *Id.* at 858-59, 864. The court relied on these admissions to conclude that it had jurisdiction. *Id.* at 864. In this case, the political branches have not taken such a position. Moreover, *Arrington* interprets federal law as applied to the Wisconsin legislative process, and thus has no persuasive force here.

   Petitioners' second argument is that the Court must act now because the congressional districts are malapportioned. Mem. Opp. at 8-9. But the fact that the

RETRIEVED FROM DEMOCRACYDOCKET.COM

current districts may not have equal numbers of voters causes no constitutional

injury. "Malapportionment's harm is felt by individuals in overpopulated districts

who actually suffer a diminution in the efficacy of their votes and their

proportional voice in the legislature." *Garcia v. 2011 Legislative Reapportionment*

*Commission*, 559 Fed. Appx. 128, 133 (3d Cir. 2014). Accordingly,

malapportionment cannot cause injury until an election occurs using the

malapportioned districts—and, as discussed above, at this point such an injury is

wholly speculative.

There may come a time when Petitioners' claim ripens and they have

standing, but as the allegations in their Petition show, that time has not arrived and

may never arrive. Accordingly, this case cannot proceed.

## VI.   CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court

sustain their Preliminary Objection for lack of standing and ripeness and enter an

order dismissing the Petition for Review without prejudice.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: September 16, 2021          By: */s/ Michele D. Hangley*
                                        Michele D. Hangley (ID No. 82779)
                                        Robert A. Wiygul (I.D. No. 310760)
                                        John B. Hill (I.D. No. 328340)

One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300

OFFICE OF ATTORNEY GENERAL

Karen M. Romano (I.D. No. 88848)
Keli M. Neary (I.D. No. 205178)
Caleb Enerson (I.D. No. 313832)
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-2717

PENNSYLVANIA GOVERNOR'S OFFICE
OF GENERAL COUNSEL

Kenneth L. Joel (I.D. No. 72370)
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 787-9348

PENNSYLVANIA DEPARTMENT OF
STATE

Kathleen M. Kotula (I.D. No. 318947)
Kimberly A. Adams (I.D. No. 205848)
306 North Office Bldg., 401 North Street
Harrisburg, PA 17120-0500
(717) 783-1657

TUCKER LAW GROUP, LLC

Joe H. Tucker, Jr. (I.D. No. 56617)
Dimitrios Mavroudis (I.D. No. 93773)
Jessica A. Rickabaugh (I.D. No. 200189)
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
***Counsel for Respondents***

RETRIEVED FROM DEMOCRACYDOCKET.COM

Received 7/1/2021 5:38:30 PM Commonwealth Court of Pennsylvania

Filed 7/1/2021 5:38:00 PM Commonwealth Court of Pennsylvania
132 MD 2021

**Petitioners: You are hereby notified to file a written response to the enclosed Preliminary Objections within thirty (30) days from service hereof, or a judgment may be entered against you.**

/s/ Michele D. Hangley
**Michele D. Hangley**
**Attorney for Respondents**

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Michele D. Hangley (I.D. No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200

OFFICE OF ATTORNEY GENERAL
Karen M. Romano (I.D. No. 88848)
Keli M. Neary (I.D. No. 205178)
Caleb Enerson (I.D. No. 313832)
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-2717

PENNSYLVANIA GOVERNOR'S
OFFICE OF GENERAL COUNSEL
Kenneth L. Joel (I.D. No. 72370)
333 Market St., 17th Floor
Harrisburg, PA 17101
(717) 787-9348

PENNSYLVANIA GOVERNOR'S
OFFICE OF GENERAL COUNSEL
Kenneth L. Joel (I.D. No. 72370)
333 Market St., 17th Floor
Harrisburg, PA 17101
(717) 787-9348

TUCKER LAW GROUP
Joe H. Tucker, Jr. (I.D. No. 56617)
Dimitrios Mavroudis (I.D. No. 93773)
Jessica Rickabaugh (I.D. No. 200189)
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609

*Counsel for Respondents*

RETRIEVED FROM DEMOCRACYDOCKET.COM

# EXHIBIT B

RETRIEVED FROM DEMOCRACYDOCKET.COM

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL ANN CARTER, *et al.*,<br>              Petitioners,<br><br>       v.<br><br>VERONICA DEGRAFFENREID, in her official capacity<br>as Acting Secretary of the Commonwealth of Pennsylvania,<br>*et al.*,<br>              Respondents. | No. 132 MD 2021 |

**RESPONDENTS' PRELIMINARY OBJECTIONS TO PETITIONERS'**
**PETITION FOR REVIEW**

RETRIEVED FROM DEMOCRACYDOCKET.COM

Respondent Veronica Degraffenreid, in her official capacity as Acting Secretary of the Commonwealth, and Respondent Jessica Mathis, in her official capacity as Director of the Bureau of Election Services and Notaries of the Pennsylvania Department of State (collectively, "Respondents"), hereby present Preliminary Objections to the Petition for Review ("Pet."), a copy of which is attached as Exhibit A.

## I.    PRELIMINARY STATEMENT

The Petition for Review raises serious and weighty issues. Respondents agree with Petitioners that the right to vote of the individual Petitioners, and of all Pennsylvania voters, must be protected. They agree that timely congressional redistricting that complies with federal and state law is necessary to protect this right to vote. And they agree that, if the political branches of Pennsylvania's government fail to carry out that redistricting, the courts will be required to step in.

Respondents do not agree, however, that the political branches have failed in their responsibilities to voters, or that Petitioners have shown that they will do so. At this point, all that Petitioners can allege is that it is possible that the General Assembly and the Governor will reach an impasse on congressional redistricting legislation and will not be able to enact such legislation in time for the 2022 primary election. But the possibility of an impasse does not suffice to state a claim, and cannot justify the Court stepping in at this point.

Before this Court can intercede, Pennsylvania law requires more than a chance that Petitioners' rights may be endangered some time down the road. Under bedrock principles of standing, the harm to Petitioners cannot be wholly contingent on future events. And for Petitioners' claims to be ripe, the facts must be sufficiently developed to permit judicial resolution. Here, Petitioners' claims fail on both fronts.

Respondents do not argue that the Court's doors are or should be closed to Petitioners permanently. As of today, however, Petitioners' forecast—stormy though it may be—is too uncertain to establish Petitioners' standing and state a ripe claim for relief.

## II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

1.     The Acting Secretary of the Commonwealth is tasked with the important duty of leading the Department of State's work to protect the integrity and security of the electoral process in Pennsylvania. In this role, she coordinates with a wide range of stakeholders—including government officials from the local to the federal level, the public, public interest groups, and election technology experts—to ensure that Pennsylvania's elections are free, fair, secure, and accessible to all eligible voters.

2.     The Director of the Bureau of Election Services and Notaries of the Pennsylvania Department of State supervises the Commonwealth's Election

Services and Voter Registration divisions. The Bureau is responsible for planning,

developing and coordinating the statewide implementation of the Election Code,

voter registration process, and notaries public law.

3.      Petitioners—16 individuals living in 11 different Pennsylvania

congressional districts—filed their Petition for Review addressed to the Court's

original jurisdiction on April 26, 2021.

4.      Petitioners allege that their voting rights will be potentially burdened

by a chain of events that was set in motion by the completion of the 2020 decennial

census. According to Petitioners, once the United States Secretary of Commerce

delivered the apportionment data obtained by the 2020 Census to the President, use

of the existing congressional districts of each state—including those of

Pennsylvania—became unconstitutional. *See*, *e.g.*, Pet. ¶¶ 2-4.

5.      Petitioners acknowledge, however, that the Secretary of Commerce

will not "deliver to Pennsylvania its redistricting data file in a legacy format, which

the Commonwealth may use to tabulate the new population of each political

subdivision," until August 2021. *Id.* ¶ 23. Further, the Secretary of Commerce will

not "deliver to Pennsylvania that same detailed population data showing the new

population of each political subdivision in a tabulated format" until approximately

September 30, 2021. *Id.*

6.     The earliest deadline that Petitioners allege will be affected by the newly drawn districts, namely, the date on which candidates may begin circulating "nomination papers for candidates seeking to appear on the ballot for the 2022 partisan primary election," is not until February 15, 2022. Petitioners allege that the deadline to file those petitions is a "few weeks later." Pet. ¶ 31.

7.     Petitioners also acknowledge that under Pennsylvania law, congressional district maps are the responsibility of the political branches—the legislature and the executive—in the first instance. "In Pennsylvania, congressional district plans must be enacted through legislation, which requires the consent of both legislative chambers and the Governor (unless both legislative chambers override the Governor's veto by a two-third vote)." Pet. ¶ 6 (citing *League of Women Voters v. Commonwealth*, 178 A.3d 737, 742 (Pa. 2018)).

8.     Petitioners hypothesize, however, that redistricting is unlikely to proceed along ordinary legislative lines in 2021 and 2022, because Pennsylvania's "political branches are highly likely to be at an impasse this cycle and to fail to enact a new congressional district plan." *Id.* ¶ 33. The support Petitioners offer for this proposition is that Pennsylvania's legislative and executive branches are controlled by different parties; that "[i]n just the last two years, Governor Wolf and the Republican-controlled General Assembly have repeatedly conflicted over a

broad range of policies"; and that Census delays have compressed the legislature's time to enact a new congressional district plan. *Id.*

9.      Petitioners do not, however, contend that it will be impossible for the legislative and executive branches to agree on a congressional district map.

10.     While the Governor has exercised his veto power at times in the past two years, legislation has also passed during that time with bipartisan support and without a veto—including important voting-related legislation. For example, less than two years ago, the General Assembly enacted and the Governor signed Act 77 of 2019,[1] which allowed all eligible voters to vote by mail-in ballot and made many other important changes to Pennsylvania's Election Code. Just over a year ago, the General Assembly enacted and the Governor signed Act 12 of 2020,[2] which made further changes to the Election Code and included sweeping temporary measures to respond to the COVID-19 pandemic. Both of these important voting laws received bipartisan support in the General Assembly.

11.     Petitioners also concede, as they must, that "there is still time for the General Assembly and the Governor to enact a new congressional plan[.]" *Id.* ¶ 9.

---

[1]     Act of Oct. 31, 2019 (P.L. 552, No. 77), 2019 Pa. Legis. Serv. Act. 2019-77 (S.B. 421) (West).

[2]     Act of Mar. 27, 2020 (P.L. 41, No. 12), 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) (West).

12.     In March 2021, the U.S. Census Bureau reconfirmed that it expects to provide a legacy format summary redistricting file to each state by mid-to-late August 2021; that states could tabulate this data if they had the capacity to do so, or use outside vendors; and that the Census Bureau would provide tabulated data in a user-friendly system by September 30, 2021.[3]

13.     The first day for candidates to circulate and file nomination petitions for the 2022 primary election is February 15, 2022. By that date, candidates and voters must know the exact boundary lines for congressional districts, so that they can determine which voters are eligible to sign petitions for a particular district.

14.     In order to facilitate the signature gathering process, county boards of elections must assign voters to their correct congressional districts in the Statewide Uniform Registry of Electors ("SURE"). This task is time-intensive and requires a great deal of accuracy; historically, it has taken county boards of elections at least three weeks.

15.     Accordingly, in order to help the counties reduce errors, allow for timely notice to candidates, and permit proper implementation of the new congressional districts, Respondents believe that the Department of State must

---

[3]     https://www.census.gov/newsroom/press-releases/2021/statement-legacy-format-redistricting.html

receive a final and legally binding congressional district map no later than January 24, 2022.

16.    Based on historical experience, Respondents believe that it is possible, if not likely, that any newly enacted congressional district map will be challenged in court. Accordingly, any timeline must factor in sufficient time for litigation before the Department receives the final map.

17.    In the past, the Pennsylvania courts have provided expedited review of time sensitive election-related matters. Upon information and belief, if a new congressional district map is signed into law by the end of December 2021, and if the courts provide expedited review of any challenges to that map, the map is likely to be final and binding by the January 24, 2022 date discussed above. *See supra* ¶ 15.

18.    A map signed into law in late December would not be unprecedented. The congressional district map that followed the 2010 Census, for example, was not signed into law until December 22, 2011. *League of Women Voters*, 178 A.3d at 743-44.

19.    Upon information and belief, the General Assembly will be able to commence the map-drawing process as soon as the tabulated data is available from a vendor or the Census Bureau. In drawing its proposed map, it will have the

benefit of the guidelines the Pennsylvania Supreme Court set forth in *League of Women Voters*.[4]

20.    Upon information and belief, the General Assembly should have sufficient time to prepare proposed maps, seek public feedback on them, and negotiate a resolution that garners bipartisan support, should its leaders choose to do so.

21.    For example, if the General Assembly acts promptly after receipt of the legacy format files, it could publish tentative proposed maps by late September 2021, move a bill through the legislative process in October and November 2021, and present a map to the Governor's office by the middle of December 2021.

22.    Without a new congressional district plan, Petitioners allege, they "will be forced to cast unequal votes[,]…[b]ecause the current congressional plan is unconstitutionally malapportioned[.]" Pet. ¶ 4. Additionally, Petitioners allege that if they are forced to participate in upcoming elections that use the old map,

---

[4]    As the Supreme Court explained, the constitutionality of a redistricting plan is assessed against the following "neutral benchmarks": "whether the congressional districts created under a redistricting plan are: composed of compact and contiguous territory; as nearly equal in population as practicable; and … do not divide any county, city, incorporated town, borough, township or ward, except where necessary to ensure equality of population." *League of Women Voters*, 178 A.3d at 816-17. "When … it is demonstrated that, in the creation of congressional districts, these neutral criteria have been subordinated, in whole or in part, to extraneous considerations such as gerrymandering for unfair partisan political advantage, a congressional redistricting plan violates Article I, Section 5 of the Pennsylvania Constitution." *Id.* at 817.

RETRIEVED FROM DEMOCRACYDOCKET.COM

their "right to associate with other voters in support of their preferred candidates will be infringed." *Id.*

23.     As a result, Petitioners ask that the Court "assume jurisdiction now and establish a schedule that will enable the Court to adopt its own plan in the near-certain event that the political branches fail to timely do so." *Id.* ¶ 9.

24.     In the event their predictions of intractability come true and the Court does not intervene, Petitioners allege they will suffer violations of their rights under the Pennsylvania and United States Constitutions, as well as violations of federal law. *See id.* ¶¶ 34-53.

## III.   PRELIMINARY OBJECTIONS

### A.     Petitioners Lack Standing and Their Claims Are Not Ripe (Pa. R. Civ. P. 1028(a)(4); Pa. R. Civ. P. 1028(a)(5))

25.     Respondents incorporate by reference the preceding paragraphs of these Preliminary Objections.

26.     To establish standing to seek relief from this Court, a party must demonstrate that it is "aggrieved," that is, that it has "a substantial, direct, and immediate interest in the matter." *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016); *accord Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005).

27.     "[A]n interest is 'immediate' if the causal connection is not remote or speculative." *Pittsburgh Palisades* Park, 888 A.2d at 660. (citation omitted).

28.     Like standing, the principle of ripeness "mandates the presence of an actual controversy." *Bayada Nurses, Inc. v. Department of Labor and Industry*, 8 A.3d 866, 874 (Pa. 2010). Unlike standing, however, ripeness "also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute." *Robinson Twp., Washington Cty. v. Com.*, 83 A.3d 901, 917 (Pa. 2013).

29.     Here, all of Petitioners' claims turn on one key fact – whether or not there will be a new congressional district plan in time for the 2022 election. Petitioners allege only that it is "highly likely" that Pennsylvania's political branches will "be at an impasse this cycle" and "fail to enact a new congressional district plan." Pet.¶ 33.

30.     That fact, as Petitioners acknowledge, is still unresolved: "there is still time for the General Assembly and the Governor to enact a new congressional plan[.]" Pet. ¶ 9. Because no one knows what will happen in the negotiations between the legislature and the Governor—let alone whether the negotiations will break down, a necessary prerequisite to Petitioners' claims—the facts underlying the Petition for Review are quintessentially "not sufficiently developed to permit judicial resolution of the dispute." *Robinson*, 83 A.3d at 917.

31.     Simply put, Petitioners do not know whether the Commonwealth's lawmakers will or will not reach an agreement on redrawn congressional districts.

- 10 -

Petitioners can only *speculate* as to which outcome is more likely. Based on Petitioners' own allegations, their constitutional rights will be infringed, if—and only if—Petitioners' speculation proves correct, and the political branches become intractably deadlocked.

32.     "Thus, any possible harm to Petitioners is wholly contingent on future events." *Pittsburgh Palisades Park*, 888 A.2d at 660. "[A]s Petitioners do not offer that [negotiation over a new congressional district plan] has harmed them or will harm them in any way that is not remote or speculative, they fail to demonstrate that they have an immediate interest," as is required for standing. *Id*. (citation omitted).

33.     Further, Petitioners allege that the Secretary of Commerce will not even "deliver to Pennsylvania its redistricting data file in a legacy format, which the Commonwealth may use to tabulate the new population of each political subdivision," until August of 2021. *Id.* ¶ 23.

34.     Petitioners also acknowledge that "Pennsylvania law does not set a deadline by which congressional redistricting plans must be in place prior to the first congressional election following release of the Census." Pet. ¶ 30.

35.     Thus, Petitioners' allegations of harm are speculative and fail to demonstrate the immediacy required to confer standing. *See Pittsburgh Palisades Park*, 888 A.2d at 660.

36.     Accordingly, because Petitioners have not satisfied the requirements for standing and because their claims are not ripe, Respondents respectfully request that this Court sustain their Preliminary Objection and dismiss the Petition without prejudice.

**WHEREFORE**, Respondents respectfully request that this Court sustain their Preliminary Objection for lack of standing and ripeness and enter an order dismissing the Petition for Review without prejudice.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: July 1, 2021             By:   /s/ Michele D. Hangley

Michele D. Hangley (ID No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300

OFFICE OF ATTORNEY GENERAL

Karen M. Romano (I.D. No. 88848)
Keli M. Neary (I.D. No. 205178)
Caleb Enerson (I.D. No. 313832)
Strawberry Square, 15th Floor
Harrisburg, PA 17120
(717) 787-2717

PENNSYLVANIA GOVERNOR'S OFFICE
OF GENERAL COUNSEL

Kenneth L. Joel (I.D. No. 72370)
333 Market St., 17th Floor
Harrisburg, PA 17101
(717) 787-9348

PENNSYLVANIA DEPARTMENT OF
STATE

Kathleen M. Kotula (I.D. No. 318947)
Kimberly A. Adams (I.D. No. 205848)
306 North Office Bldg., 401 North St.
Harrisburg, PA 17120-0500
(717) 783-1657

TUCKER LAW GROUP

Joe H. Tucker, Jr. (I.D. No. 56617)
Dimitrios Mavroudis (I.D. No. 93773)
Jessica Rickabaugh (I.D. No. 200189)
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609

*Counsel for Respondents*

## CERTIFICATION REGARDING PUBLIC ACCESS POLICY

I certify that this filing complies with the provisions of the Public Access

Policy of the Unified Judicial System of Pennsylvania: Case Records of the

Appellate and Trial Courts that require filing confidential information and

documents differently than non–confidential information and documents.


Dated: July 1, 2021                      /s/ Michele D. Hangley
                                         Michele D. Hangley

# EXHIBIT A

RETRIEVED FROM DEMOCRACYDOCKET.COM

Received 4/26/2021 8:17:19 PM Commonwealth Court of Pennsylvania

Filed 4/26/2021 8:17:00 PM Commonwealth Court of Pennsylvania
132 MD 2021

Marc E. Elias
Aria C. Branch
Lalitha D. Madduri
Christina A. Ford
Jyoti Jasrasaria
Perkins Coie LLP
700 Thirteenth Street NW Suite 800
Washington, D.C. 20005-3960
MElias@perkinscoie.com
ABranch@perkinscoie.com
LMadduri@perkinscoie.com
ChristinaFord@perkinscoie.com
JJasrasaria@perkinscoie.com
T: (202) 654-6200
F: (202) 654-6211

Abha Khanna
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
AKhanna@perkinscoie.com
T: (206) 359-8000
F: (206) 359-9000

Edward D. Rogers, No. 69337
Marcel S. Pratt, No. 307483
Robert J. Clark, No. 308105
Michael R. McDonald, No. 326873
Paul K. Ort, No. 326044
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

Counsel for Petitioners

RETRIEVED FROM DEMOCRACYDOCKET.COM

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN,<br><br>                      Petitioners,<br><br>      v.<br><br>VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for | No.<br><br>_____ |

the Pennsylvania Bureau of Election Services and Notaries,

Respondents.

## PETITION FOR REVIEW
## ADDRESSED TO THE COURT'S ORIGINAL JURISDICTION

## INTRODUCTION

1.      This is an action challenging Pennsylvania's current congressional district map, which has been rendered unconstitutionally malapportioned by a decade of population shifts. Petitioners ask this Court to declare Pennsylvania's current congressional district plan unconstitutional; enjoin Respondents from using the current plan in any future elections; and implement a new congressional district plan that adheres to the constitutional requirement of one-person, one-vote should the General Assembly and Governor fail to do so.

2.      On April 26, 2021, the U.S. Secretary of Commerce delivered the apportionment data obtained by the 2020 Census to the President. Those data confirm the inevitable reality that population shifts that occurred during the last decade have rendered Pennsylvania's congressional plan unconstitutionally malapportioned. *See Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (three-judge court) (explaining that "existing apportionment schemes become instantly unconstitutional upon the release of new decennial census data" (internal quotation marks omitted)).

3.      Specifically, the current configuration of Pennsylvania's congressional

- 2 -

districts violates (1) the Free and Equal Elections Clause of the Pennsylvania Constitution; (2) Article I, Section 2 of the U.S. Constitution; (3) 2 U.S.C. § 2c; and (4) the Petition Clause of the Pennsylvania Constitution. The Pennsylvania Constitution's Free and Equal Elections Clause guarantees its citizens the right to "make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share." *Patterson v. Barlow*, 60 Pa. 54, 75 (1869). Article 1, Section 2 of the U.S. Constitution requires states to "achieve population equality 'as nearly as is practicable'" when drawing congressional districts. *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964)). 2 U.S.C. § 2c provides that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled." And the Petition Clause of the Pennsylvania Constitution secures voters' right to associate with other voters to elect their preferred candidates, "not simply as [a] restriction[] on the powers of government, as found in the Federal Constitution, but as [an] inherent and 'invaluable' right[] of man." *Commonwealth v. Tate*, 432 A.2d 1382, 1388 (Pa. 1981).

4.      Petitioners will be forced to cast unequal votes if the current congressional map is not brought into compliance with constitutional requirements. Because the current congressional plan is unconstitutionally malapportioned, it cannot be used in any future election. Moreover, if a new congressional plan is not

RETRIEVED FROM DEMOCRACYDOCKET.COM

in place in a timely manner, Petitioners' right to associate with other voters in support of their preferred candidates will be infringed.

5.      While "the primary responsibility and authority for drawing federal congressional legislative districts rests squarely with the state legislature," when "the legislature is unable or chooses not to act, it becomes the judiciary's role to determine the appropriate redistricting plan." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 821-22 (Pa. 2018) (*League of Women Voters I*).

6.      In Pennsylvania, congressional district plans must be enacted through legislation, which requires the consent of both legislative chambers and the Governor (unless both legislative chambers override the Governor's veto by a two-thirds vote). *League of Women Voters I*, 178 A.3d at 742; Pa. Const., Art. III, § 4; Pa. Const., Art. IV, § 15.

7.      There is no reasonable prospect that Pennsylvania's political branches will reach consensus to enact a lawful congressional district plan in time to be used in the upcoming 2022 election. Currently, Republicans hold majorities (though not veto-proof majorities) in both chambers of the General Assembly, and Governor Wolf, who has veto power, is a Democrat. The last time Pennsylvania began a redistricting cycle in which its political branches were politically split as they are now, those branches failed to enact a congressional redistricting plan, forcing Pennsylvania's judiciary to take responsibility for enacting a new plan. *See Mellow*

*v. Mitchell*, 607 A.2d 204 (Pa. 1992).

8.      Given the long and acrimonious history of partisan gerrymandering litigation challenging Pennsylvania's previous congressional district map, it is clear that Pennsylvania's political branches are extremely unlikely to agree to a new congressional district plan prior to the 2022 election. Just three years ago, the Republican-controlled General Assembly and Governor Wolf failed to agree on a new congressional plan following the Pennsylvania Supreme Court's invalidation of the plan enacted in 2011, forcing the Court to draw its own. *See League of Women Voters of Pa. v. Commonwealth*, 181 A.3d 1083, 1086 (Pa. 2018) (*League of Women Voters II*). Because there is no reason to believe that the General Assembly and the Governor will be able to reach agreement this time around, this Court should intervene to protect the constitutional rights of Petitioners and voters across the Commonwealth.

9.      While there is still time for the General Assembly and the Governor to enact a new congressional plan, this Court should assume jurisdiction now and establish a schedule that will enable the Court to adopt its own plan in the near-certain event that the political branches fail to timely do so.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this Verified Petition for Review under 42 Pa. C.S. § 761(a)(1) because this matter is asserted against

Commonwealth officials in their official capacities.

## PARTIES

11.     Petitioners are citizens of the United States and are registered to vote in

Pennsylvania. Petitioners intend to advocate and vote for Democratic candidates in

the upcoming 2022 primary and general elections. Petitioners reside in the following

congressional districts.

| Petitioner's Name | County of Residence | Congressional District |
|---|---|---|
| Carol Ann Carter | Bucks | 1 |
| Monica Parrilla | Philadelphia | 2 |
| Rebecca Poyourow | Philadelphia | 3 |
| William Tung | Philadelphia | 3 |
| Roseanne Milazzo | Montgomery | 4 |
| Burt Siegel | Montgomery | 4 |
| Susan Cassanelli | Delaware | 5 |
| Lee Cassanelli | Delaware | 5 |
| Lynn Wachman | Chester | 6 |
| Michael Guttman | Chester | 6 |
| Maya Fonkeu | Northampton | 7 |
| Brady Hill | Northampton | 7 |
| Mary Ellen Balchunis | Dauphin | 10 |
| Tom DeWall | Cumberland | 10 |
| Stephanie McNulty | Lancaster | 11 |
| Janet Temin | Lancaster | 11 |

12.     As shown below, Petitioners reside in districts that are likely

overpopulated relative to other districts in the state. Thus, they are deprived of the

right to cast an equal vote, as guaranteed to them by the U.S. Constitution and the

Pennsylvania Constitution.

13.     Respondent Veronica Degraffenreid is the Acting Secretary of the

Commonwealth and is sued in her official capacity only. In that capacity, Acting Secretary Degraffenreid is charged with general supervision and administration of Pennsylvania's elections and election laws. Acting Secretary Degraffenreid is Pennsylvania's Chief Election Official and a member of the Governor's Executive Board. Among her numerous responsibilities in administering elections, Acting Secretary Degraffenreid is responsible for receiving election results from counties for each congressional district in the Commonwealth, and tabulating, computing, canvassing, certifying, and filing those results. 25 P.S. § 3159.

14.     Respondent Jessica Mathis is the Director for the Bureau of Election Services and Notaries, a branch of the Pennsylvania Department of State, and she is sued in her official capacity only. In this capacity, Director Mathis is charged with supervising and administering the Commonwealth's elections and electoral process. The Bureau of Election Services and Notaries is responsible for planning, developing, and coordinating the statewide implementation of the Election Code.

## FACTUAL ALLEGATIONS

I.  **Pennsylvania's current congressional districts were drawn using 2010 Census data.**

15.     Pennsylvania's congressional district map was most recently redrawn in 2018. On January 22, 2018, the Pennsylvania Supreme Court held that the then-controlling congressional district map enacted in 2011 by a Republican-controlled General Assembly and Republican Governor "plainly and palpably" violated the

- 7 -

Pennsylvania Constitution's Free and Equal Elections Clause because it was "corrupted by extensive, sophisticated gerrymandering and partisan dilution." *See League of Women Voters I*, 178 A.3d at 741, 821. The Court provided the General Assembly and the Governor an opportunity to enact a lawful map, but they failed to do so. Thus, the Court adopted its own map on February 19, 2018. *League of Women Voters II*, 181 A.3d 1083.

16.     Because the results of the 2010 Census were the most accurate population data to date, the Court relied exclusively on those data when drawing the new map. According to the 2010 Census, Pennsylvania had a population at that time of 12,702,379. Therefore, a decade ago, the ideal population for each of Pennsylvania's congressional districts (i.e., the state's total population divided by the number of districts) was 705,688 persons.

17.     While the districts crafted by the Court in 2018 had perfectly equal populations (with each district's population deviating from all others by no more than one person), those populations were determined using 2010 data.

## II.     The 2020 Census is complete.

18.     In 2020, the U.S. Census Bureau conducted the decennial census required by Article I, Section 2 of the U.S. Constitution. On April 26, 2021, the U.S. Secretary of Commerce delivered the results of the 2020 Census to the President.

19.     The results of the 2020 Census report that Pennsylvania's resident

population, as of April 2020, is 13,002,700. This is a significant increase from a decade ago, when the 2010 Census reported a total population of 12,702,379.

20.     However, because Pennsylvania's population growth over the last decade has been slower compared to many other states, Pennsylvania has lost a congressional district. Pennsylvania has been apportioned 17 congressional seats for the 2020 cycle, one fewer than the 18 seats Pennsylvania was apportioned following the 2010 Census. Thus, beginning with the upcoming 2022 election, Pennsylvania voters will elect only 17 members to the U.S. House of Representatives.

21.     According to the 2020 Census results, the ideal population for each of Pennsylvania's congressional districts is 764,865.

**III.  As a result of significant population shifts in the past decade, Pennsylvania's congressional districts are unconstitutionally malapportioned.**

22.     In the past decade, Pennsylvania's population has shifted significantly. Because the 2020 Census has now been completed, the 2010 population data used to draw Pennsylvania's congressional districts are obsolete, and any prior justifications for the existing maps' deviations from population equality are no longer applicable.

23.     By mid-to-late August 2021, the U.S. Secretary of Commerce will deliver to Pennsylvania its redistricting data file in a legacy format, which the Commonwealth may use to tabulate the new population of each political

subdivision.[1] On or around September 30, 2021, the U.S. Secretary of Commerce will deliver to Pennsylvania that same detailed population data showing the new population of each political subdivision in a tabulated format.[2] These data are commonly referred to as "P.L. 94-171 data," a reference to the 1975 legislation that first required this process, and are typically delivered no later than April of the year following the Census. *See* Pub. L. No. 94-171, 89 Stat. 1023 (1975).

24.    2019 Census Bureau data make clear that significant population shifts have occurred in Pennsylvania's congressional districts since 2010, skewing the current districts far from population equality.

25.    The table below estimates how the populations of each of Pennsylvania's congressional districts shifted between 2010 and 2019. For each district, the "2010 Population" column represents the district's 2010 population according to the 2010 Census, and the "2019 Population" column indicates the estimated 2019 population according to the U.S. Census Bureau's 2019 American Community Survey (ACS) 1-Year Survey. The "Shift" column represents the difference in district population between 2010 and 2019. The "Deviation from Ideal 2019 Population" column shows how far the estimated 2019 population of each

---

[1] *See U.S. Census Bureau Statement on Release of Legacy Format Summary Redistricting Data File*, U.S. Census Bureau (Mar. 15, 2021), https://www.census.gov/newsroom/press-releases/2021/statement-legacy-format-redistricting.html.

[2] *See Census Bureau Statement on Redistricting Data Timeline*, U.S. Census Bureau (Feb. 12, 2021), https://www.census.gov/newsroom/press-releases/2021/statement-redistricting-data-timeline.html.

district strays from the estimated ideal 2019 congressional district population. And the "Percent Deviation" column shows that deviation as a percentage of the ideal district population as of 2019.

| District | 2010 Population | 2019 Population | Shift | Deviation from Ideal 2019 Population | Percent Deviation |
|---|---|---|---|---|---|
| 1 | 705,687 | 713,411 | +7,724 | +2,189 | +0.31% |
| 2 | 705,688 | 722,722 | +17,034 | +11,500 | +1.62% |
| 3 | 705,688 | 741,654 | +35,966 | +30,432 | +4.28% |
| 4 | 705,687 | 730,701 | +25,014 | +19,479 | +2.74% |
| 5 | 705,688 | 719,973 | +14,285 | +8,751 | +1.23% |
| 6 | 705,688 | 735,283 | +29,595 | +24,061 | +3.38% |
| 7 | 705,688 | 731,467 | +25,779 | +20,245 | +2.85% |
| 8 | 705,687 | 698,973 | -6,714 | -12,249 | -1.72% |
| 9 | 705,687 | 699,832 | -5,855 | -11,390 | -1.60% |
| 10 | 705,688 | 744,681 | +38,993 | +33,459 | +4.70% |
| 11 | 705,688 | 734,038 | +28,350 | +22,816 | +3.21% |
| 12 | 705,688 | 701,387 | -4,301 | -9,835 | -1.38% |
| 13 | 705,688 | 697,051 | -8,637 | -14,171 | -1.99% |
| 14 | 705,688 | 678,915 | -26,773 | -32,307 | -4.54% |
| 15 | 705,688 | 672,749 | -32,939 | -38,473 | -5.41% |
| 16 | 705,687 | 678,333 | -27,354 | -32,889 | -4.62% |
| 17 | 705,688 | 706,961 | +1,273 | -4,261 | -0.60% |
| 18 | 705,688 | 693,858 | -11,830 | -17,364 | -2.44% |

26.     The table above indicates population shifts since 2010 have rendered Congressional Districts 8, 9, 12, 13, 14, 15, 16, 17, and 18 significantly underpopulated, and Congressional Districts 1, 2, 3, 4, 5, 6, 7, 10, and 11 significantly overpopulated. Indeed, the figures in the table above indicate that, between 2010 and 2019, the maximum deviation among Pennsylvania's 18

congressional districts (*i.e.*, the difference between the most and least populated districts divided by the ideal district population) increased from 0 to more than 10 percent. Notably, this table does not account for the severe malapportionment that will result from the fact that Pennsylvania has lost a congressional district.

27.    Due to these population shifts, Pennsylvania's existing congressional district configuration is unconstitutionally malapportioned. It also contains more districts than the number of representatives that Pennsylvanians may send to the U.S. House in 2022.

28.    If used in any future election, the current congressional district configuration will unconstitutionally dilute the strength of Petitioners' votes because they live in districts with populations that are significantly larger than those in which other voters live.

## IV.    Pennsylvania's political branches will likely fail to enact lawful congressional district maps in time for the next election.

29.    In Pennsylvania, congressional district plans are enacted via legislation, which must pass both chambers of the General Assembly and be signed by the Governor (unless the General Assembly overrides the Governor's veto by a two-thirds vote in both chambers). *League of Women Voters I*, 178 A.3d at 742; Pa. Const., Art. III, § 4; Pa. Const., Art. IV, § 15. Currently, both chambers of Pennsylvania's General Assembly are controlled by the Republican Party, and the Governor is a Democrat. Republican control of the General Assembly is not large

enough to override a gubernatorial veto. This partisan division among Pennsylvania's political branches makes it extremely unlikely they will enact a lawful congressional districting plan in time to be used during the upcoming 2022 election.

30.    Pennsylvania law does not set a deadline by which congressional redistricting plans must be in place prior to the first congressional election following release of the Census. Nonetheless, it is in the interests of voters, candidates, and Pennsylvania's entire electoral apparatus that finalized congressional districts be put in place as soon as possible, well before candidates in those districts must begin to collect signatures on their nomination papers. Potential congressional candidates cannot make strategic decisions—including, most importantly, whether to run at all—without knowing their district boundaries. And voters have a variety of interests in knowing as soon as possible the districts in which they reside and will vote, and the precise contours of those districts. These interests include deciding which candidates to support and whether to encourage others to run; holding elected representatives accountable for their conduct in office; and advocating for and organizing around candidates who will share their views, including by working together with other district voters in support of favored candidates.

31.    Nomination papers for candidates seeking to appear on the ballot for the 2022 partisan primary election can be circulated as early as February 15, 2022,

less than a year away. 25 P.S. § 2868. And the deadline for filing those papers falls just a few weeks later. *Id.* It is in everyone's interest—candidates and voters alike—that district boundaries are set well before this date. Delaying the adoption of the new plan even until the ballot petition deadline will substantially interfere with Petitioners' abilities to associate with like-minded citizens, educate themselves on the positions of their would-be representatives, and advocate for the candidates they prefer. *Cf. Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983) ("The [absence] of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens.").

32.    While the General Assembly was able to enact redistricting plans after the 2010 Census without court intervention, Republicans had trifecta control over the state government at that time. The last time Pennsylvania began a redistricting cycle with political branches divided along partisan lines, as they are now, they failed to enact a new congressional redistricting plan. This failure required intervention by Pennsylvania's judiciary, which drew and adopted a congressional district map. *Mellow*, 607 A.2d 204. Similarly, after the Pennsylvania Supreme Court invalidated Pennsylvania's congressional plan three years ago, the Republican-controlled General Assembly was unable to come to agreement with Governor Wolf on a new plan, forcing the Court to draw a remedial map. *League of Women Voters II*, 181

A.3d at 1086.

33.     Pennsylvania is once again entering a redistricting cycle with political branches divided between the two major parties. If anything, the partisan differences among the major parties have only grown starker since their last attempt to reach consensus on redistricting plans in 1991. In just the last two years, Governor Wolf and the Republican-controlled General Assembly have repeatedly conflicted over a broad range of policies such as the state's response to the COVID-19 pandemic, emergency executive powers, environmental issues, and gun regulations, with the Governor using his veto power on numerous occasions. Additionally, the Census delays have compressed the amount of time during which the legislative process would normally take place. As a result, the political branches are highly likely to be at an impasse this cycle and to fail to enact a new congressional district plan. This would deprive Petitioners of equal representation in Congress and their freedom of association. To avoid such an unconstitutional outcome, this Court must intervene to ensure Petitioners and other Pennsylvanians' voting strength is not diluted.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of Free and Equal Elections Clause
Pa. Const., Art. I, § 5
Congressional Malapportionment**

34.     Petitioners reallege and reincorporate by reference all prior paragraphs

of this Petition and the paragraphs in the count below as though fully set forth herein.

35.    The Pennsylvania Constitution's Free and Equal Elections Clause provides: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const., Art. I, § 5. This clause "should be given the broadest interpretation, one which governs all aspects of the electoral process, and which provides the people of this Commonwealth an equally effective power to select the representative of his or her choice, and bars the dilution of the people's power to do so." *League of Women Voters I*, 178 A.3d at 814.

36.    The Free and Equal Elections Clause "establishe[s] a critical 'leveling' protection in an effort to establish the uniform right of the people of this Commonwealth to select their representatives in government." *Id.* at 807.

37.    The "equality" prong of the Free and Equal Elections Clause requires that voting districts be drawn "by laws which shall arrange all the qualified electors into suitable districts, and make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share." *Id.* at 809 (quoting *Patterson*, 60 Pa. at 75). Thus, any scheme that "has the effect of impermissibly diluting the potency of an individual's vote for candidates for elective office relative to that of other voters will violate the guarantee of 'free and equal' elections afforded by Article I, Section 5." *Id.*

38.     Pennsylvania's current congressional district plan places voters into districts with significantly disparate populations, causing voters in underpopulated districts to have more "potent" votes compared to voters, like Petitioners, who live in districts with comparatively larger populations.

39.     Any future use of Pennsylvania's current congressional district plan would violate Petitioners' right to an undiluted vote under the Free and Equal Elections Clause.

## COUNT II

**Violation of Article I, Section 2 of the United States Constitution**
**Congressional Malapportionment**

40.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

41.     Article 1, Section 2 of the U.S. Constitution provides that members of the U.S. House of Representatives "shall be apportioned among the several States . . . according to their respective Numbers." This provision "intends that when qualified voters elect members of Congress each vote be given as much weight as any other vote," *Wesberry*, 376 U.S. at 7, meaning that state congressional districts must "achieve population equality 'as nearly as is practicable,'" *Karcher*, 462 U.S. at 730 (quoting *Wesberry*, 376 U.S. at 7-8).

42.     Article I, Section 2 "permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for

which justification is shown." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969)). And "the State must justify each variance, no matter how small." *Id.* (quoting *Kirkpatrick*, 394 U.S. at 530-31). Given this requirement, when the Pennsylvania Supreme Court adopted its own congressional plan in 2018, it crafted a plan in which the population deviation among districts was no more than *one person*. Now, as indicated in the table above, the population deviation among Pennsylvania's congressional districts may be as high as 71,932 people.

43.     In light of the significant population shifts that have occurred since the 2010 Census, and the recent publication of the results of the 2020 Census, the current configuration of Pennsylvania's congressional districts—which was drawn based on 2010 Census data—is now unconstitutionally malapportioned. No justification can be offered for the deviation among the congressional districts because any justification would be based on outdated population data.

44.     Any future use of Pennsylvania's current congressional district plan would violate Petitioners' constitutional right to cast an equal, undiluted vote.

## COUNT III

### Violation of 2 U.S.C. § 2c
### Congressional Malapportionment

45.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

46.    2 U.S.C. § 2c provides that, in a state containing "more than one Representative," "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled."

47.    Pennsylvania's current congressional district plan contains 18 districts. But Pennsylvania is currently allotted only 17 seats in the U.S. House. As a result, the current congressional district plan violates Section 2c's requirement that the number of congressional districts be "equal to the number of Representatives to which [Pennsylvania] is so entitled."

48.    Any future use of Pennsylvania's current congressional district plan would violate 2 U.S.C. § 2c and would unlawfully dilute Petitioners' votes.

## COUNT IV

### Violation of Petition Clause
### Pa. Const., Art. I, § 20
### Freedom of Association

49.    Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

50.    The Pennsylvania Constitution's Petition Clause provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance." Pa. Const., Art. I, § 20. "The Pennsylvania Constitution affords greater protection of

speech and associational rights than does our Federal Constitution." *Working Families Party v. Commonwealth*, 169 A.3d 1247, 1260 (Pa. Commw. Ct. 2017) (citing *DePaul v. Commonwealth*, 969 A.2d 536, 546 (Pa. 2009)); *see also Commonwealth v. Tate*, 432 A.2d 1382, 1388 (Pa. 1981) ("It is small wonder, then, that the rights of freedom of speech, assembly, and petition have been guaranteed since the first Pennsylvania Constitution, not simply as restrictions on the powers of government, as found in the Federal Constitution, but as inherent and 'invaluable' rights of man.").

51.    Impeding candidates' abilities to run for political office—and consequently Petitioners' abilities to assess candidate qualifications and positions, organize and advocate for preferred candidates, and associate with like-minded voters—infringes on Petitioners' right to association.

52.    Given the delay in publication of the 2020 Census data and the near-certain deadlock among the political branches in adopting a new congressional district plan, it is significantly unlikely that the legislative process will timely yield a new plan. This would deprive Petitioners of the ability to associate with others from the same lawfully apportioned congressional district, and, therefore, is likely to significantly, if not severely, burden Petitioners' right to association.

53.    There is no legitimate or compelling interest that can justify this burden.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioners respectfully request that this Court:

a. Declare that the current configuration of Pennsylvania's congressional districts violates Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; 2 U.S.C. § 2c; and Article I, Section 20 of the Pennsylvania Constitution;

b. Enjoin Respondents, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to Pennsylvania's current congressional district plan;

c. Establish a schedule that will enable the Court to adopt and implement a new congressional district plan by a date certain should the political branches fail to enact such plan by that time;

d. Implement a new congressional district plan that complies with Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; 2 U.S.C. § 2; and Article I, Section 20 of the Pennsylvania Constitution, if the political branches fail to enact a plan by a date certain set by this Court;

e. Award Petitioners their costs, disbursements, and reasonable attorneys' fees; and

- 21 -

f.   Grant such other and further relief as the Court deems just and proper.


Dated: April 26, 2021                           Respectfully submitted,

Marc E. Elias                                   /s/ *Edward D. Rogers*
Aria C. Branch                                  Edward D. Rogers, No. 69337
Lalitha D. Madduri                              Marcel S. Pratt, No. 307483
Christina A. Ford                               Robert J. Clark, No. 308105
Jyoti Jasrasaria                                Michael R. McDonald, No. 326873
Perkins Coie LLP                                Paul K. Ort, No. 326044
700 Thirteenth Street NW Suite 800              Ballard Spahr LLP
Washington, D.C. 20005-3960                     1735 Market Street, 51st Floor
MElias@perkinscoie.com                          Philadelphia, PA 19103
ABranch@perkinscoie.com                         RogersE@ballardspahr.com
LMadduri@perkinscoie.com                        PrattM@ballardspahr.com
ChristinaFord@perkinscoie.com                   ClarkR@ballardspahr.com
JJasrasaria@perkinscoie.com                     McDonaldM@ballardspahr.com
T: (202) 654-6200                               OrtP@ballardspahr.com
F: (202) 654-6211                               T: (215) 665-8500
                                                F: (215) 864-8999
Abha Khanna
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
AKhanna@perkinscoie.com
T: (206) 359-8000
F: (206) 359-9000

RETRIEVED FROM DEMOCRACYDOCKET.COM

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.


Submitted by: Edward D. Rogers

Signature:      */s/ Edward D. Rogers*

Name:         Edward D. Rogers

Attorney No.: 69337

- 23 -

## VERIFICATION

I, Carol Ann Carter, hereby state:

1.      I am a petitioner in this action;

2.      I verify that the statements made in the foregoing Petition for Review are true and correct to the best of my knowledge, information, and belief; and

3.      I understand that the statements in said Petition for Review are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signed: *[signature]*

Dated: *April 26, 2021*

## <u>NOTICE TO PLEAD</u>

**TO:**       Acting Secretary Veronica Degraffenreid
              Pennsylvania Department of State
              Office of the Secretary
              302 North Office Building, 401 North Street
              Harrisburg, PA 17120

              Director Jessica Mathis
              Pennsylvania Bureau of Election Services and Notaries
              210 North Office Building, 401 North Street
              Harrisburg, PA 17120

You are hereby notified to file a written response to the enclosed

Petition for Review within thirty (30) days from service hereof or a judgment may

be entered against you.

Dated:       April 26, 2010

                                         /s/ *Robert J. Clark*
                                         Robert J. Clark, No. 308105
                                         Ballard Spahr LLP
                                         1735 Market Street, 51st Floor
                                         Philadelphia, PA 19103
                                         Clarkr@ballardspahr.com
                                         T: (215) 665-8500
                                         F: (215) 864-8999

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I caused the foregoing

Petition for Review to be served upon the following parties and in the manner

indicated below, which service satisfies the requirements of Pa. R.A.P. 1514 and

121:

<u>By Certified Mail:</u>

Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

Dated:        April 26, 2021

/s/ *Robert J. Clark*
Robert J. Clark, No. 308105
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Clarkr@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

# EXHIBIT C

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carol Ann Carter, Monica Parrilla, | : | **CASES CONSOLIDATED** |
| Rebecca Poyourow, William Tung, | : | |
| Roseanne Milazzo, Burt Siegel, | : | |
| Susan Cassanelli, Lee Cassanelli, | : | |
| Lynn Wachman, Michael Guttman, | : | |
| Maya Fonkeu, Brady Hill, Mary Ellen | : | |
| Balchunis, Tom DeWall, | : | |
| Stephanie McNulty and Janet Temin, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 464 M.D. 2021 |
| | : | |
| Veronica Degraffenreid, in her official | : | |
| capacity as the Acting Secretary of the | : | |
| Commonwealth of Pennsylvania; | : | |
| Jessica Mathis, in her official capacity | : | |
| as Director for the Pennsylvania Bureau | : | |
| of Election Services and Notaries, | : | |
| Respondents | : | |

| | | |
|---|---|---|
| Philip T. Gressman; Ron Y. Donagi; | : | |
| Kristopher R. Tapp; Pamela Gorkin; | : | |
| David P. Marsh; James L. Rosenberger; | : | |
| Amy Myers; Eugene Boman; | : | |
| Gary Gordon; Liz McMahon; | : | |
| Timothy G. Feeman; and Garth Isaak, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 465 M.D. 2021 |
| | : | |
| Veronica Degraffenreid, in her official | : | |
| capacity as the Acting Secretary of the | : | |
| Commonwealth of Pennsylvania; | : | |
| Jessica Mathis, in her official capacity | : | |
| as Director for the Pennsylvania Bureau | : | |
| of Election Services and Notaries, | : | |
| Respondents | : | |

## ORDER

AND NOW, this 14th day of January, 2022, in consideration of the petitions to intervene and the applications for expedited review and the responses thereto filed in the above-consolidated actions, it is hereby ORDERED:

1. This Order supersedes this Court's December 20, 2021 Order.

2. The Applications for Leave to Intervene of: (i) the Speaker and Majority Leader of the Pennsylvania House of Representative and the President Pro Tempore and Majority Leader of the Pennsylvania Senate, (ii) Pennsylvania State Senators Maria Collett, Katie J. Muth, Sharif Street, and Anthony H. Williams; (iii) Tom Wolf, Governor of the Commonwealth of Pennsylvania; (iv) Senator Jay Costa and members of the Democratic Caucus of the Senate of Pennsylvania; (v) Representative Joanna E. McClinton, Leader of the Democratic Caucus of the Pennsylvania House of Representatives; and (vi) Congressman Guy Reschenthaler, Swatara Township Commissioner Jeffrey Varner, Tom Marino, Ryan Costello, and Bud Shuster are **GRANTED**.

   Pursuant to the Notice of Amendment and Joinder from Senate Democratic Caucus Intervenors and Democratic Senator Intervenors, the Applications for Leave to Intervene of: (i) Pennsylvania State Senators Maria Collett, Katie J. Muth, Sharif Street, and Anthony H. Williams; and (ii) Senator Jay Costa and members of the Democratic Caucus of the Senate of Pennsylvania are hereby joined, and these individuals shall constitute a single party. The Application for Intervention filed by Democratic Senator Intervenors shall be withdrawn. Democratic Senator Intervenors are added to the Senate Democratic Caucus Intervenors' Application for Intervention.

   These intervenors which are hereinafter referred to as Parties shall be allowed to participate in these consolidated actions as parties. Any answers to the Petitions for Review attached to applications to intervene as exhibits are deemed filed.

3. All Parties shall submit for the Court's consideration at least one (1) but no more than two (2) proposed 17-district congressional redistricting plan(s) that are consistent with the results of the 2020 Census and, if the party chooses to

do so, a supporting brief and/or a supporting expert report, by 5:00 p.m. on **Monday, January 24, 2022**.

4. Parties must file a responsive brief and/or a responsive expert report (from the same expert who prepared the **January 24** report or any other expert), addressing other parties' **January 24** submissions, by 5:00 p.m. on **Wednesday, January 26, 2022**.

5. The Applications for Leave to Intervene as parties filed by (i) Voters of the Commonwealth of Pennsylvania; (ii) Citizen-Voters; (iii) Draw the Lines-PA; and (iv) Khalif Ali et al. are **DENIED**.

   Voters of the Commonwealth of Pennsylvania, Citizen-Voters, Draw the Lines-PA, and Khalif Ali et al., are permitted to participate in these matters as Amicus Participants, which means that their participation shall be limited to submissions to the Court **in writing** as set forth in Paragraph 6 of this Order.

6. Amicus Participants who wish to submit for the Court's consideration one (1) proposed 17-district congressional redistricting map/plan that is consistent with the results of the 2020 Census shall file the proposed map/plan and, if the Amicus Participant chooses to do so, a supporting brief and/or a supporting expert report, by 5:00 p.m. on **Monday, January 24, 2022**.

7. All proposed 17-district congressional redistricting maps/plans shall comply with constitutional standards and any other standards required by law.

8. After submission, no proposed plan/map may be later modified or amended.

9. No Party or Amicus Participant may take discovery in this matter.

10. The Parties shall submit to the Court a Joint Stipulation of Facts by 2:00 p.m. on **Wednesday, January 26, 2022**.

11. The Court shall conduct an evidentiary hearing on **Thursday, January 27, 2022, and Friday, January 28, 2022**, participation in which is limited to the Parties as identified herein. The hearing will begin at 9:30 a.m. in Courtroom 3001 of the Pennsylvania Judicial Center, Harrisburg, PA. It shall be the responsibility of Petitioners to secure the services of a court reporter(s)

throughout the duration of the hearing.  Each Party is limited to presenting one witness at the hearing, who shall be subject to cross examination by the other Parties.  Opening and closing statements and argument by Parties shall be permitted.  The Court will also consider revisions to the 2022 election schedule/calendar as part of the hearing.

12. If the General Assembly has not produced a new congressional map by January 30, 2022, the Court shall proceed to issue an opinion based on the hearing and evidence presented by the Parties.


*s/ Patricia A. McCullough*
PATRICIA A. McCULLOUGH, Judge

Order Exit
01/14/2022