Received 12/21/2021 9:27:03 AM Supreme Court Middle District

Filed 12/21/2021 Supreme Court Middle District

No. 141 MM 2021

---

## IN THE SUPREME COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN, | No. _____  _____ |

               Petitioners,

     v.

VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries,

          Respondents.

---

## APPLICATION FOR EXTRAORDINARY RELIEF UNDER 42 PA. C.S. § 726 AND PA. R.A.P. 3309

RETRIEVED FROM DEMOCRACYDOCKET.COM

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................3

I.   The Commonwealth Court dismissed Petitioners' initial Petition on the
     grounds that a political impasse was not yet certain. ...........................................3

II.  It is now clear that Pennsylvania's political branches will not timely pass a new
     congressional plan..............................................................................5

ARGUMENT ......................................................................................................7

I.   This case presents an immediate issue of public importance. ...........................7

II.  This Court previously exercised its extraordinary jurisdiction to implement
     new reapportionment plans................................................................9

CONCLUSION ...................................................................................................11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrington v. Elections Bd.*,
  173 F. Supp. 2d 856 (E.D. Wis. 2001) ...............................................7

*Bd. of Revision of Taxes v. City of Phila.*,
  4 A.3d 610 (Pa. 2010) ...............................................6, 7, 8, 9

*Commonwealth v. Morris*,
  771 A.2d 721 (Pa. 2001) ...............................................8

*Gray v. Sanders*,
  372 U.S. 368 (1963) ...............................................7

*Kirkpatrick v. Preisler*,
  394 U.S. 526 (1969) ...............................................7

*League of Women Voters of Pa. v. Commonwealth*,
  181 A.3d 1083 (Pa. 2018) ...............................................2, 9, 10

*Mellow v. Mitchell*,
  607 A.2d 204 (Pa. 1992) ...............................................2, 9

*Wesberry v. Sanders*,
  376 U.S. 1 (1964) ...............................................2, 7

**Statutes**

42 Pa. C.S. § 726 ...............................................6

2 U.S.C. § 2c ...............................................8

RETRIEVED FROM DEMOCRACYDOCKET.COM

**INTRODUCTION**

In just a few short weeks, Pennsylvania's voters, congressional candidates, and its Department of State need a final and legally binding constitutional congressional reapportionment plan. But there is no such plan in sight. Last week, the General Assembly adjourned for the remainder of 2021 without passing a new constitutional congressional plan and will not reconvene until next year. This delay means that it is now impossible for Pennsylvania's political branches to reach agreement on a congressional plan by the end of December 2021, the time the Department of State explained would be necessary for the political branches to have enacted a map for the 2022 elections to proceed on time.

Nearly eight months ago, anticipating such an impasse, Petitioners filed an action in the Commonwealth Court alleging malapportionment in Pennsylvania's current congressional districts and asking the Commonwealth Court to establish a schedule so that it could be ready to adopt a new constitutional congressional reapportionment plan when the political branches inevitably failed to do so. The Commonwealth Court dismissed that action in early October, finding it premature. The Commonwealth Court further noted that there was no need to start the proceedings at that time, because when called upon in prior cycles after the political branches reached an impasse, the Pennsylvania Supreme Court had repeatedly adopted new congressional districts for the Commonwealth in very short order.

1

That time has come again. There can be no serious argument at this point that Petitioners' request is premature. And given the little time remaining before statutory filing deadlines, it is incumbent upon this Court to act swiftly and exercise its extraordinary jurisdiction to expeditiously adopt a constitutional and lawful congressional plan under which the Commonwealth may proceed with its elections.

The last time Pennsylvania's judiciary was required to remedy an impasse following the decennial census, this Court quickly exercised extraordinary jurisdiction over the case. *See Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992). This time, too, there is no question that the issue is of immediate and crucial public importance—the new reapportionment plan will affect every Pennsylvania voter and every candidate who intends to run to represent the Commonwealth. And Petitioners' rights are unquestionably clear: continued malapportionment would violate not only the Pennsylvania Constitution, but also the "[U.S.] Constitution's plain objective of [] equal representation for equal numbers. . . ." *Wesberry v. Sanders*, 376 U.S. 1, 18 (1964).

As this Court has previously recognized, "[w]hen the legislature is unable or chooses not to act, it becomes the judiciary's role to ensure a valid districting scheme." *League of Women Voters of Pa. v. Commonwealth*, 181 A.3d 1083, 1086 n.6 (Pa. 2018). That is precisely where we find ourselves today. Petitioners need a remedy now. Given the short time remaining to adopt a new plan, Petitioners

respectfully request that this Court swiftly exercise its discretion to take this case and render its independent judgment on a matter of immediate public importance to the citizens of the Commonwealth.

## BACKGROUND

### I.    The Commonwealth Court dismissed Petitioners' initial Petition on the grounds that a political impasse was not yet certain.

The same day the U.S. Census Bureau publicly released its apportionment counts in April 2021, Petitioners filed their first petition for review in the Commonwealth Court. *See* Pet. for Review (attached as Exhibit A). There, as here, Petitioners explained that Pennsylvania's congressional districts are now unconstitutionally malapportioned because of significant population shifts in the past decade, *see* Ex. A ¶¶ 22-28. Petitioners anticipated that Pennsylvania's political branches would not resolve this malapportionment timely in advance of the 2022 elections and filed their Petition expeditiously, hoping to give the Commonwealth Court adequate opportunity to hear their claims and ample time to adopt a new congressional apportionment plan for Pennsylvania. At the time, the political branches had not yet reached an impasse over congressional redistricting, but Petitioners alleged that such an impasse was highly likely given Pennsylvania's deep political divisions and inability to enact a congressional redistricting plan just three years ago. *See id.* ¶¶ 7-8. Petitioners asked the Commonwealth Court to (1) declare Pennsylvania's current congressional districts unlawful and unconstitutional; (2)

enjoin Respondents from giving effect to those district boundaries; (3) establish a schedule that would enable the Court "to adopt and implement a new congressional district plan by a date certain should the political branches fail to enact such plan by that time"; and (4) implement a new, constitutional congressional reapportionment plan if the political branches failed to enact a plan by such a date. *See id.* at Prayer for Relief.

As the case proceeded, the Commonwealth Court permitted Pennsylvania's Legislative Leaders to intervene. The Legislative Leaders contested the whole scope of the Petition, including Petitioners' standing, the ripeness of the case, and the merits of their claims. The State Respondents also contested the Petitioners' standing and the ripeness of the case—contending that it was not yet clear that an impasse would occur—but they agreed with Petitioners that "timely congressional redistricting [] is necessary to protect th[e] right to vote" and that "if the political branches of Pennsylvania's government fail to carry out that redistricting, the courts will be required to step in." State Resp'ts' Br. at 1 (Ex. B).

The State Respondents further explained: "[T]o ensure efficient election administration, allow for timely notice to candidates, and permit proper implementation of the new congressional districts, Respondents believe that the Department of State must receive a final and legally binding congressional district map no later than January 24, 2022," and that they believed a new plan "must be

signed into law by the end of December 2021" to permit adequate time for judicial review. *Id.* at 5.

Ultimately, the Commonwealth Court agreed with the State Respondents and dismissed the Petition as unripe, holding Petitioners lacked standing. Specifically, the Commonwealth Court explained (in early October) that there was still "ample time for the lawmakers to act," that an impasse was not certain, and thus Petitioners might never face injury to their voting rights. Order at 10, 15 (Ex. C). The Commonwealth Court noted, however, that if an impasse did arise, that Pennsylvania's Supreme Court had previously demonstrated "its ability to move swiftly to implement remedial congressional districting plans," citing this Court's resolution of Pennsylvania's 1990 cycle impasse, as well as its swift implementation of remedial congressional plans just three years ago. *See id.* at 11. Dismissal was without prejudice, and the Commonwealth Court explicitly recognized "that there may come a time when Petitioners' claims ripen, and they will have standing to pursue their claims in the Petition." *Id.* at 16 n.1.

## II.    It is now clear that Pennsylvania's political branches will not timely pass a new congressional plan.

After the Pennsylvania General Assembly adjourned for the 2021 legislative session without passing a new constitutional congressional plan, Petitioners filed a new Petition in the Commonwealth Court, docketed at No. 464 M.D. 2021. The new Petition makes similar allegations to those in the first Petition but now explains that

the political branches indeed *have* failed to timely enact congressional plans that would allow Pennsylvania to complete 2022 elections in an orderly fashion. *See* Pet ¶¶ 5-6, 36-43 (Ex. D).[1]

While the Commonwealth Court has entered a scheduling order in the case (attached as Ex. E), that schedule does not permit sufficient time—let alone any time—for this Court's review. Indeed, the Commonwealth Court's scheduling order indicates that evidentiary hearings on proposed plans will begin a full week *after* the Department of State has said it needs a final map. *See* Ex. E. The scheduling order also already expressly acknowledges that it may push back Pennsylvania's statutory election-related deadlines to accommodate the delay in implementing a new congressional plan.

Under these circumstances, this Court must act as it has in the past and fulfill its duty to ensure that the voters of Pennsylvania have a lawful, constitutional map in place for the coming election. It must (1) declare Pennsylvania's current congressional districts unlawful and unconstitutional; (2) enjoin Respondents from giving effect to those district boundaries; and (3) implement a new, constitutional congressional reapportionment plan. *See* Ex. D at Prayer for Relief.

---

[1] The Commonwealth Court subsequently consolidated the new Petition with *Gresman v. Degraffenreid*, No. 465 M.D. 2021 and designated this case, 464 M.D. 2021, as the lead case.

## ARGUMENT

Under 42 Pa. C.S. § 726, "[t]his Court may assume, at its discretion, plenary jurisdiction over a matter of immediate public importance that is pending before another court of this Commonwealth." *Bd. of Revision of Taxes v. City of Phila.*, 4 A.3d 610, 620 (Pa. 2010). Just as it has done in the past to resolve redistricting deadlocks, this Court should exercise its extraordinary jurisdiction to ensure Pennsylvania has constitutional congressional districts for the 2022 elections. This Court's swift intervention is necessary to protect the constitutional rights of millions of Pennsylvania voters.

## I.     This case presents an immediate issue of public importance.

The Department of State has said it needs to have a final, legally binding congressional reapportionment plan in less than 35 days so that it can stand ready to timely conduct Pennsylvania's congressional primary and general elections in 2022. *See* Ex. B. at 5. But there is no such plan today, and time is running out.

Extraordinary jurisdiction is particularly appropriate where (1) Petitioners' rights are clear and (2) the ordinary litigation process is insufficient to timely remedy Petitioners' rights. *Bd. of Revision*, 4 A.3d at 620. Both factors are plainly met here.

*First*, Petitioners' legal rights are clear; there can be no dispute that continuation of the status quo is unconstitutional. Article I, Section 2 of the United States Constitution requires congressional districts to be as equivalent in population

as possible "to prevent debasement of voting power and diminution of access to elected representatives." *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969). This constitutional mandate is commonly referred to as the "one person, one vote principle." *Gray v. Sanders*, 372 U.S. 368, 381 (1963). The 2020 Census data makes clear that the configuration of Pennsylvania's congressional districts does not account for the current population numbers in the state, violating the "Constitution's plain objective of [] equal representation for equal numbers." *Wesberry*, 376 U.S. at 18; *see also Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (three-judge panel) ("[A]pportionment schemes become 'instantly unconstitutional' upon the release of new decennial census data." (citation omitted)). Pennsylvania's current congressional districts are thus unconstitutionally malapportioned, and any future use of those districts would violate Petitioners' rights. Separately, because Pennsylvania has been allocated one fewer congressional district than it was in the prior decade, any future use of Pennsylvania's current congressional districts would also violate 2 U.S.C. § 2c. *See* Ex. D ¶¶ 31-35.

*Second*, this is a case in which the "ordinary" or "normal" litigation process will be insufficient to timely remedy Petitioners' rights. In exercising its discretion regarding extraordinary jurisdiction, this Court considers the immediacy of the issue raised, *Bd. of Revision*, 4 A.3d at 620—that is, whether there is some intervening need to expedite the proceeding and truncate the normal judicial process, *see*

RETRIEVED FROM DEMOCRACYDOCKET.COM

8

*Commonwealth v. Morris*, 771 A.2d 721, 731 (Pa. 2001). This is such a case. Under the Commonwealth Court's schedule, no decision will issue until at least a week after the Department of State's January 24 deadline for a final map. And even if the Commonwealth Court finalized its own congressional plan by February 1, the first day after it holds an evidentiary hearing on the parties' proposed plans, there is no guarantee Petitioners could seek review from this Court in time for the 2022 elections. A case that will determine Pennsylvania's congressional reapportionment plan for the next decade is far too important to evade this Court's review. At best, review by this Court after the Commonwealth Court would likely require pushing back Pennsylvania's statutory deadlines for the 2022 elections, something the Court should only do as a last resort.

This Court's extraordinary jurisdiction powers, which give the Court "broad authority to craft meaningful remedies," was made for a case just like this one. *League of Women Voters of Pa.*, 181 A.3d at 1086 n.6. As this Court has already recognized, "[s]wift resolution" of matters such as these is essential to "promote confidence in the authority and integrity of [this Commonwealth's] institutions." *Bd. of Revision*, 4 A.3d at 620.

## II.     This Court previously exercised its extraordinary jurisdiction to implement new reapportionment plans.

In asking this Court to exercise extraordinary jurisdiction over this action, Petitioners are not asking this Court to do something it has not done before. The last

9

time Pennsylvania's judiciary was required to remedy an impasse following the decennial census, this Court exercised extraordinary jurisdiction over the case to ensure Pennsylvania would have a constitutional reapportionment plan for the 1990 redistricting cycle. *See Mellow*, 607 A.2d at 204.

In *Mellow*, just as in this case, the Petitioners initially filed their case in the Commonwealth Court. Almost immediately after filing that Petition, the *Mellow* Petitioners sought plenary jurisdiction from this Court, and this Court accepted jurisdiction promptly. *Id.* at 206.

Similarly, just three years ago, in *League of Women Voters of Pa. v. Commonwealth,* this Court exercised its extraordinary jurisdiction powers to ensure Pennsylvania would have constitutional congressional plans for the 2018 election cycle. *See* 181 A.3d 1083 (Pa. 2018). After this Court found Pennsylvania's existing reapportionment plan to be an unconstitutional partisan gerrymander, it gave Pennsylvania's political branches an opportunity to remedy those plans. When they failed to do so, this Court moved to implement its own reapportionment plan, explaining: "[I]t has become the judiciary's duty to fashion an appropriate remedial districting plan, and this Court has proceeded to prepare such a plan, a role which our Court has full constitutional authority and responsibility to assume." *Id.* at 1086. The Court should do the same here. The Commonwealth cannot wait any longer for a new congressional reapportionment plan.

## CONCLUSION

For these reasons, Petitioners respectfully request this Court exercise its extraordinary jurisdiction over this matter and implement proceedings to ensure timely resolution of this case before the 2022 congressional elections.

To that end, Petitioners propose the following schedule, which would allow the Court to render a decision by January 24, 2022:

| Event | Date |
|---|---|
| Joinders or Interventions | December 27, 2021 |
| Answers to Intervention | January 3, 2021 |
| Parties' Proposed Congressional Plans and Briefs in Support | January 10, 2022 |
| Parties' Opposition Briefs | January 17, 2022 |
| Oral Argument | January 21, 2022 |
| Court's Decision | January 24, 2022 |

Dated: December 21, 2021

Abha Khanna*
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
T: (206) 656-0177

Lalitha D. Madduri*
Christina A. Ford*
Jyoti Jasrasaria*
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
lmadduri@elias.law
cford@elias.law
jjasrasaria@elias.law
T: (202) 968-4490

Matthew Gordon*
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

Respectfully submitted,

*/s/ Edward D. Rogers*
Edward D. Rogers, No. 69337
Marcel S. Pratt, No. 307483
Robert J. Clark, No. 308105
Michael R. McDonald, No. 326873
Paul K. Ort, No. 326044
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

*pro hac vice* forthcoming

RETRIEVED FROM DEMOCRACYDOCKET.COM

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I caused the foregoing

Application for Extraordinary Relief be served upon the following parties by first

class mail, which service satisfies the requirements of Pa. R.A.P. 3309 and 121:

Kim M. Watterson
Reed Smith LLP
225 5TH Ave Ste 1200
Pittsburgh, PA 15222-2716
*Counsel for Petitioners Gressman et al*., No. 465 MD 2021

Robert Andrew Wiygul
Hangley, Aronchick, Segal, Pudlin & Schiller
18th Cherry Sts Fl 27
Philadelphia, PA 19103
*Counsel for Director Jessica Mathis and*
*Acting Secretary Veronica Degraffenreid*

Kathleen Kotula
401 North Street, Room 301
Harrisburg, PA 17120-0500

Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

Office of Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120

Office of the Prothonotary, Commonwealth Court
Michael F. Krimmel, Prothonotary
Pennsylvania Judicial Center
601 Commonwealth Ave., Suite 2100
P.O. Box 69185
Harrisburg, PA 17106

Dated:        December 21, 2021

*/s/ Edward D. Rogers*
Edward D. Rogers, No. 69337
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

RETRIEVED FROM DEMOCRACYDOCKET.COM

14

# Exhibit A

RETRIEVED FROM DEMOCRACYDOCKET.COM

Received 4/26/2021 8:17:43 PM Commonwealth Court of Pennsylvania

Filed 4/26/2021 8:17:00 PM Commonwealth Court of Pennsylvania
132 MD 2021

Marc E. Elias
Aria C. Branch
Lalitha D. Madduri
Christina A. Ford
Jyoti Jasrasaria
Perkins Coie LLP
700 Thirteenth Street NW Suite 800
Washington, D.C. 20005-3960
MElias@perkinscoie.com
ABranch@perkinscoie.com
LMadduri@perkinscoie.com
ChristinaFord@perkinscoie.com
JJasrasaria@perkinscoie.com
T: (202) 654-6200
F: (202) 654-6211

Abha Khanna
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
AKhanna@perkinscoie.com
T: (206) 359-8000
F: (206) 359-9000

Edward D. Rogers, No. 69337
Marcel S. Pratt, No. 307483
Robert J. Clark, No. 308105
Michael R. McDonald, No. 326873
Paul K. Ort, No. 326044
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

Counsel for Petitioners

RETRIEVED FROM DEMOCRACYDOCKET.COM

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN,<br><br>           Petitioners,<br><br>    v.<br><br>VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for | No.<br>_____ |

the Pennsylvania Bureau of Election Services and Notaries,

Respondents.

## PETITION FOR REVIEW
## ADDRESSED TO THE COURT'S ORIGINAL JURISDICTION

## INTRODUCTION

1.     This is an action challenging Pennsylvania's current congressional district map, which has been rendered unconstitutionally malapportioned by a decade of population shifts. Petitioners ask this Court to declare Pennsylvania's current congressional district plan unconstitutional; enjoin Respondents from using the current plan in any future elections; and implement a new congressional district plan that adheres to the constitutional requirement of one-person, one-vote should the General Assembly and Governor fail to do so.

2.     On April 26, 2021, the U.S. Secretary of Commerce delivered the apportionment data obtained by the 2020 Census to the President. Those data confirm the inevitable reality that population shifts that occurred during the last decade have rendered Pennsylvania's congressional plan unconstitutionally malapportioned. *See Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (three-judge court) (explaining that "existing apportionment schemes become instantly unconstitutional upon the release of new decennial census data" (internal quotation marks omitted)).

3.     Specifically, the current configuration of Pennsylvania's congressional

- 2 -

districts violates (1) the Free and Equal Elections Clause of the Pennsylvania Constitution; (2) Article I, Section 2 of the U.S. Constitution; (3) 2 U.S.C. § 2c; and (4) the Petition Clause of the Pennsylvania Constitution. The Pennsylvania Constitution's Free and Equal Elections Clause guarantees its citizens the right to "make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share." *Patterson v. Barlow*, 60 Pa. 54, 75 (1869). Article 1, Section 2 of the U.S. Constitution requires states to "achieve population equality 'as nearly as is practicable'" when drawing congressional districts. *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964)). 2 U.S.C. § 2c provides that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled." And the Petition Clause of the Pennsylvania Constitution secures voters' right to associate with other voters to elect their preferred candidates, "not simply as [a] restriction[] on the powers of government, as found in the Federal Constitution, but as [an] inherent and 'invaluable' right[] of man." *Commonwealth v. Tate*, 432 A.2d 1382, 1388 (Pa. 1981).

4.     Petitioners will be forced to cast unequal votes if the current congressional map is not brought into compliance with constitutional requirements. Because the current congressional plan is unconstitutionally malapportioned, it cannot be used in any future election. Moreover, if a new congressional plan is not

RETRIEVED FROM DEMOCRACYDOCKET.COM

in place in a timely manner, Petitioners' right to associate with other voters in support of their preferred candidates will be infringed.

5.     While "the primary responsibility and authority for drawing federal congressional legislative districts rests squarely with the state legislature," when "the legislature is unable or chooses not to act, it becomes the judiciary's role to determine the appropriate redistricting plan." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 821-22 (Pa. 2018) (*League of Women Voters I*).

6.     In Pennsylvania, congressional district plans must be enacted through legislation, which requires the consent of both legislative chambers and the Governor (unless both legislative chambers override the Governor's veto by a two-thirds vote). *League of Women Voters I*, 178 A.3d at 742; Pa. Const., Art. III, § 4; Pa. Const., Art. IV, § 15.

7.     There is no reasonable prospect that Pennsylvania's political branches will reach consensus to enact a lawful congressional district plan in time to be used in the upcoming 2022 election. Currently, Republicans hold majorities (though not veto-proof majorities) in both chambers of the General Assembly, and Governor Wolf, who has veto power, is a Democrat. The last time Pennsylvania began a redistricting cycle in which its political branches were politically split as they are now, those branches failed to enact a congressional redistricting plan, forcing Pennsylvania's judiciary to take responsibility for enacting a new plan. *See Mellow*

*v. Mitchell*, 607 A.2d 204 (Pa. 1992).

8.    Given the long and acrimonious history of partisan gerrymandering litigation challenging Pennsylvania's previous congressional district map, it is clear that Pennsylvania's political branches are extremely unlikely to agree to a new congressional district plan prior to the 2022 election. Just three years ago, the Republican-controlled General Assembly and Governor Wolf failed to agree on a new congressional plan following the Pennsylvania Supreme Court's invalidation of the plan enacted in 2011, forcing the Court to draw its own. *See League of Women Voters of Pa. v. Commonwealth*, 181 A.3d 1083, 1086 (Pa. 2018) (*League of Women Voters II*). Because there is no reason to believe that the General Assembly and the Governor will be able to reach agreement this time around, this Court should intervene to protect the constitutional rights of Petitioners and voters across the Commonwealth.

9.    While there is still time for the General Assembly and the Governor to enact a new congressional plan, this Court should assume jurisdiction now and establish a schedule that will enable the Court to adopt its own plan in the near-certain event that the political branches fail to timely do so.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over this Verified Petition for Review under 42 Pa. C.S. § 761(a)(1) because this matter is asserted against

Commonwealth officials in their official capacities.

**PARTIES**

11.     Petitioners are citizens of the United States and are registered to vote in Pennsylvania. Petitioners intend to advocate and vote for Democratic candidates in the upcoming 2022 primary and general elections. Petitioners reside in the following congressional districts.

| Petitioner's Name | County of Residence | Congressional District |
|---|---|---|
| Carol Ann Carter | Bucks | 1 |
| Monica Parrilla | Philadelphia | 2 |
| Rebecca Poyourow | Philadelphia | 3 |
| William Tung | Philadelphia | 3 |
| Roseanne Milazzo | Montgomery | 4 |
| Burt Siegel | Montgomery | 4 |
| Susan Cassanelli | Delaware | 5 |
| Lee Cassanelli | Delaware | 5 |
| Lynn Wachman | Chester | 6 |
| Michael Guttman | Chester | 6 |
| Maya Fonkeu | Northampton | 7 |
| Brady Hill | Northampton | 7 |
| Mary Ellen Balchunis | Dauphin | 10 |
| Tom DeWall | Cumberland | 10 |
| Stephanie McNulty | Lancaster | 11 |
| Janet Temin | Lancaster | 11 |

12.     As shown below, Petitioners reside in districts that are likely overpopulated relative to other districts in the state. Thus, they are deprived of the right to cast an equal vote, as guaranteed to them by the U.S. Constitution and the Pennsylvania Constitution.

13.     Respondent Veronica Degraffenreid is the Acting Secretary of the

Commonwealth and is sued in her official capacity only. In that capacity, Acting Secretary Degraffenreid is charged with general supervision and administration of Pennsylvania's elections and election laws. Acting Secretary Degraffenreid is Pennsylvania's Chief Election Official and a member of the Governor's Executive Board. Among her numerous responsibilities in administering elections, Acting Secretary Degraffenreid is responsible for receiving election results from counties for each congressional district in the Commonwealth, and tabulating, computing, canvassing, certifying, and filing those results. 25 P.S. § 3159.

14.    Respondent Jessica Mathis is the Director for the Bureau of Election Services and Notaries, a branch of the Pennsylvania Department of State, and she is sued in her official capacity only. In this capacity, Director Mathis is charged with supervising and administering the Commonwealth's elections and electoral process. The Bureau of Election Services and Notaries is responsible for planning, developing, and coordinating the statewide implementation of the Election Code.

## FACTUAL ALLEGATIONS

### I.    Pennsylvania's current congressional districts were drawn using 2010 Census data.

15.    Pennsylvania's congressional district map was most recently redrawn in 2018. On January 22, 2018, the Pennsylvania Supreme Court held that the then-controlling congressional district map enacted in 2011 by a Republican-controlled General Assembly and Republican Governor "plainly and palpably" violated the

RETRIEVED FROM DEMOCRACYDOCKET.COM

Pennsylvania Constitution's Free and Equal Elections Clause because it was "corrupted by extensive, sophisticated gerrymandering and partisan dilution." *See League of Women Voters I*, 178 A.3d at 741, 821. The Court provided the General Assembly and the Governor an opportunity to enact a lawful map, but they failed to do so. Thus, the Court adopted its own map on February 19, 2018. *League of Women Voters II*, 181 A.3d 1083.

16.     Because the results of the 2010 Census were the most accurate population data to date, the Court relied exclusively on those data when drawing the new map. According to the 2010 Census, Pennsylvania had a population at that time of 12,702,379. Therefore, a decade ago, the ideal population for each of Pennsylvania's congressional districts (i.e., the state's total population divided by the number of districts) was 705,688 persons.

17.     While the districts crafted by the Court in 2018 had perfectly equal populations (with each district's population deviating from all others by no more than one person), those populations were determined using 2010 data.

## II.    The 2020 Census is complete.

18.     In 2020, the U.S. Census Bureau conducted the decennial census required by Article I, Section 2 of the U.S. Constitution. On April 26, 2021, the U.S. Secretary of Commerce delivered the results of the 2020 Census to the President.

19.     The results of the 2020 Census report that Pennsylvania's resident

population, as of April 2020, is 13,002,700. This is a significant increase from a decade ago, when the 2010 Census reported a total population of 12,702,379.

20.    However, because Pennsylvania's population growth over the last decade has been slower compared to many other states, Pennsylvania has lost a congressional district. Pennsylvania has been apportioned 17 congressional seats for the 2020 cycle, one fewer than the 18 seats Pennsylvania was apportioned following the 2010 Census. Thus, beginning with the upcoming 2022 election, Pennsylvania voters will elect only 17 members to the U.S. House of Representatives.

21.    According to the 2020 Census results, the ideal population for each of Pennsylvania's congressional districts is 764,865.

**III.  As a result of significant population shifts in the past decade, Pennsylvania's congressional districts are unconstitutionally malapportioned.**

22.    In the past decade, Pennsylvania's population has shifted significantly. Because the 2020 Census has now been completed, the 2010 population data used to draw Pennsylvania's congressional districts are obsolete, and any prior justifications for the existing maps' deviations from population equality are no longer applicable.

23.    By mid-to-late August 2021, the U.S. Secretary of Commerce will deliver to Pennsylvania its redistricting data file in a legacy format, which the Commonwealth may use to tabulate the new population of each political

subdivision.[1] On or around September 30, 2021, the U.S. Secretary of Commerce will deliver to Pennsylvania that same detailed population data showing the new population of each political subdivision in a tabulated format.[2] These data are commonly referred to as "P.L. 94-171 data," a reference to the 1975 legislation that first required this process, and are typically delivered no later than April of the year following the Census. *See* Pub. L. No. 94-171, 89 Stat. 1023 (1975).

24.    2019 Census Bureau data make clear that significant population shifts have occurred in Pennsylvania's congressional districts since 2010, skewing the current districts far from population equality.

25.    The table below estimates how the populations of each of Pennsylvania's congressional districts shifted between 2010 and 2019. For each district, the "2010 Population" column represents the district's 2010 population according to the 2010 Census, and the "2019 Population" column indicates the estimated 2019 population according to the U.S. Census Bureau's 2019 American Community Survey (ACS) 1-Year Survey. The "Shift" column represents the difference in district population between 2010 and 2019. The "Deviation from Ideal 2019 Population" column shows how far the estimated 2019 population of each

---

[1] *See U.S. Census Bureau Statement on Release of Legacy Format Summary Redistricting Data File*, U.S. Census Bureau (Mar. 15, 2021), https://www.census.gov/newsroom/press-releases/2021/statement-legacy-format-redistricting.html.

[2] *See Census Bureau Statement on Redistricting Data Timeline*, U.S. Census Bureau (Feb. 12, 2021), https://www.census.gov/newsroom/press-releases/2021/statement-redistricting-data-timeline.html.

district strays from the estimated ideal 2019 congressional district population. And the "Percent Deviation" column shows that deviation as a percentage of the ideal district population as of 2019.

| District | 2010 Population | 2019 Population | Shift | Deviation from Ideal 2019 Population | Percent Deviation |
|---|---|---|---|---|---|
| 1 | 705,687 | 713,411 | +7,724 | +2,189 | +0.31% |
| 2 | 705,688 | 722,722 | +17,034 | +11,500 | +1.62% |
| 3 | 705,688 | 741,654 | +35,966 | +30,432 | +4.28% |
| 4 | 705,687 | 730,701 | +25,014 | +19,479 | +2.74% |
| 5 | 705,688 | 719,973 | +14,285 | +8,751 | +1.23% |
| 6 | 705,688 | 735,283 | +29,595 | +24,061 | +3.38% |
| 7 | 705,688 | 731,467 | +25,779 | +20,245 | +2.85% |
| 8 | 705,687 | 698,973 | -6,714 | -12,249 | -1.72% |
| 9 | 705,687 | 699,832 | -5,855 | -11,390 | -1.60% |
| 10 | 705,688 | 744,681 | +38,993 | +33,459 | +4.70% |
| 11 | 705,688 | 734,038 | +28,350 | +22,816 | +3.21% |
| 12 | 705,688 | 701,387 | -4,301 | -9,835 | -1.38% |
| 13 | 705,688 | 697,051 | -8,637 | -14,171 | -1.99% |
| 14 | 705,688 | 678,915 | -26,773 | -32,307 | -4.54% |
| 15 | 705,688 | 672,749 | -32,939 | -38,473 | -5.41% |
| 16 | 705,687 | 678,333 | -27,354 | -32,889 | -4.62% |
| 17 | 705,688 | 706,961 | +1,273 | -4,261 | -0.60% |
| 18 | 705,688 | 693,858 | -11,830 | -17,364 | -2.44% |

26.    The table above indicates population shifts since 2010 have rendered Congressional Districts 8, 9, 12, 13, 14, 15, 16, 17, and 18 significantly underpopulated, and Congressional Districts 1, 2, 3, 4, 5, 6, 7, 10, and 11 significantly overpopulated. Indeed, the figures in the table above indicate that, between 2010 and 2019, the maximum deviation among Pennsylvania's 18

congressional districts (*i.e.*, the difference between the most and least populated districts divided by the ideal district population) increased from 0 to more than 10 percent. Notably, this table does not account for the severe malapportionment that will result from the fact that Pennsylvania has lost a congressional district.

27.     Due to these population shifts, Pennsylvania's existing congressional district configuration is unconstitutionally malapportioned. It also contains more districts than the number of representatives that Pennsylvanians may send to the U.S. House in 2022.

28.     If used in any future election, the current congressional district configuration will unconstitutionally dilute the strength of Petitioners' votes because they live in districts with populations that are significantly larger than those in which other voters live.

## IV.  Pennsylvania's political branches will likely fail to enact lawful congressional district maps in time for the next election.

29.     In Pennsylvania, congressional district plans are enacted via legislation, which must pass both chambers of the General Assembly and be signed by the Governor (unless the General Assembly overrides the Governor's veto by a two-thirds vote in both chambers). *League of Women Voters I*, 178 A.3d at 742; Pa. Const., Art. III, § 4; Pa. Const., Art. IV, § 15. Currently, both chambers of Pennsylvania's General Assembly are controlled by the Republican Party, and the Governor is a Democrat. Republican control of the General Assembly is not large

enough to override a gubernatorial veto. This partisan division among Pennsylvania's political branches makes it extremely unlikely they will enact a lawful congressional districting plan in time to be used during the upcoming 2022 election.

30.     Pennsylvania law does not set a deadline by which congressional redistricting plans must be in place prior to the first congressional election following release of the Census. Nonetheless, it is in the interests of voters, candidates, and Pennsylvania's entire electoral apparatus that finalized congressional districts be put in place as soon as possible, well before candidates in those districts must begin to collect signatures on their nomination papers. Potential congressional candidates cannot make strategic decisions—including, most importantly, whether to run at all—without knowing their district boundaries. And voters have a variety of interests in knowing as soon as possible the districts in which they reside and will vote, and the precise contours of those districts. These interests include deciding which candidates to support and whether to encourage others to run; holding elected representatives accountable for their conduct in office; and advocating for and organizing around candidates who will share their views, including by working together with other district voters in support of favored candidates.

31.     Nomination papers for candidates seeking to appear on the ballot for the 2022 partisan primary election can be circulated as early as February 15, 2022,

less than a year away. 25 P.S. § 2868. And the deadline for filing those papers falls just a few weeks later. *Id.* It is in everyone's interest—candidates and voters alike—that district boundaries are set well before this date. Delaying the adoption of the new plan even until the ballot petition deadline will substantially interfere with Petitioners' abilities to associate with like-minded citizens, educate themselves on the positions of their would-be representatives, and advocate for the candidates they prefer. *Cf. Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983) ("The [absence] of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens.").

32.     While the General Assembly was able to enact redistricting plans after the 2010 Census without court intervention, Republicans had trifecta control over the state government at that time. The last time Pennsylvania began a redistricting cycle with political branches divided along partisan lines, as they are now, they failed to enact a new congressional redistricting plan. This failure required intervention by Pennsylvania's judiciary, which drew and adopted a congressional district map. *Mellow*, 607 A.2d 204. Similarly, after the Pennsylvania Supreme Court invalidated Pennsylvania's congressional plan three years ago, the Republican-controlled General Assembly was unable to come to agreement with Governor Wolf on a new plan, forcing the Court to draw a remedial map. *League of Women Voters II*, 181

A.3d at 1086.

33.    Pennsylvania is once again entering a redistricting cycle with political branches divided between the two major parties. If anything, the partisan differences among the major parties have only grown starker since their last attempt to reach consensus on redistricting plans in 1991. In just the last two years, Governor Wolf and the Republican-controlled General Assembly have repeatedly conflicted over a broad range of policies such as the state's response to the COVID-19 pandemic, emergency executive powers, environmental issues, and gun regulations, with the Governor using his veto power on numerous occasions. Additionally, the Census delays have compressed the amount of time during which the legislative process would normally take place. As a result, the political branches are highly likely to be at an impasse this cycle and to fail to enact a new congressional district plan. This would deprive Petitioners of equal representation in Congress and their freedom of association. To avoid such an unconstitutional outcome, this Court must intervene to ensure Petitioners and other Pennsylvanians' voting strength is not diluted.

**CLAIMS FOR RELIEF**

**COUNT I**

**Violation of Free and Equal Elections Clause**
**Pa. Const., Art. I, § 5**
**Congressional Malapportionment**

34.    Petitioners reallege and reincorporate by reference all prior paragraphs

of this Petition and the paragraphs in the count below as though fully set forth herein.

35.     The Pennsylvania Constitution's Free and Equal Elections Clause provides: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const., Art. I, § 5. This clause "should be given the broadest interpretation, one which governs all aspects of the electoral process, and which provides the people of this Commonwealth an equally effective power to select the representative of his or her choice, and bars the dilution of the people's power to do so." *League of Women Voters I*, 178 A.3d at 814.

36.     The Free and Equal Elections Clause "establishe[s] a critical 'leveling' protection in an effort to establish the uniform right of the people of this Commonwealth to select their representatives in government." *Id.* at 807.

37.     The "equality" prong of the Free and Equal Elections Clause requires that voting districts be drawn "by laws which shall arrange all the qualified electors into suitable districts, and make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share." *Id.* at 809 (quoting *Patterson*, 60 Pa. at 75). Thus, any scheme that "has the effect of impermissibly diluting the potency of an individual's vote for candidates for elective office relative to that of other voters will violate the guarantee of 'free and equal' elections afforded by Article I, Section 5." *Id.*

- 16 -

38.     Pennsylvania's current congressional district plan places voters into districts with significantly disparate populations, causing voters in underpopulated districts to have more "potent" votes compared to voters, like Petitioners, who live in districts with comparatively larger populations.

39.     Any future use of Pennsylvania's current congressional district plan would violate Petitioners' right to an undiluted vote under the Free and Equal Elections Clause.

## COUNT II

**Violation of Article I, Section 2 of the United States Constitution**
**Congressional Malapportionment**

40.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

41.     Article 1, Section 2 of the U.S. Constitution provides that members of the U.S. House of Representatives "shall be apportioned among the several States . . . according to their respective Numbers." This provision "intends that when qualified voters elect members of Congress each vote be given as much weight as any other vote," *Wesberry*, 376 U.S. at 7, meaning that state congressional districts must "achieve population equality 'as nearly as is practicable,'" *Karcher*, 462 U.S. at 730 (quoting *Wesberry*, 376 U.S. at 7-8).

42.     Article I, Section 2 "permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for

- 17 -

which justification is shown." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969)). And "the State must justify each variance, no matter how small." *Id.* (quoting *Kirkpatrick*, 394 U.S. at 530-31). Given this requirement, when the Pennsylvania Supreme Court adopted its own congressional plan in 2018, it crafted a plan in which the population deviation among districts was no more than *one person*. Now, as indicated in the table above, the population deviation among Pennsylvania's congressional districts may be as high as 71,932 people.

43.    In light of the significant population shifts that have occurred since the 2010 Census, and the recent publication of the results of the 2020 Census, the current configuration of Pennsylvania's congressional districts—which was drawn based on 2010 Census data—is now unconstitutionally malapportioned. No justification can be offered for the deviation among the congressional districts because any justification would be based on outdated population data.

44.    Any future use of Pennsylvania's current congressional district plan would violate Petitioners' constitutional right to cast an equal, undiluted vote.

## COUNT III

**Violation of 2 U.S.C. § 2c**
**Congressional Malapportionment**

45.    Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

- 18 -

46.     2 U.S.C. § 2c provides that, in a state containing "more than one Representative," "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled."

47.     Pennsylvania's current congressional district plan contains 18 districts. But Pennsylvania is currently allotted only 17 seats in the U.S. House. As a result, the current congressional district plan violates Section 2c's requirement that the number of congressional districts be "equal to the number of Representatives to which [Pennsylvania] is so entitled."

48.     Any future use of Pennsylvania's current congressional district plan would violate 2 U.S.C. § 2c and would unlawfully dilute Petitioners' votes.

## COUNT IV

**Violation of Petition Clause**
**Pa. Const., Art. I, § 20**
**Freedom of Association**

49.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

50.     The Pennsylvania Constitution's Petition Clause provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance." Pa. Const., Art. I, § 20. "The Pennsylvania Constitution affords greater protection of

speech and associational rights than does our Federal Constitution." *Working Families Party v. Commonwealth*, 169 A.3d 1247, 1260 (Pa. Commw. Ct. 2017) (citing *DePaul v. Commonwealth*, 969 A.2d 536, 546 (Pa. 2009)); *see also Commonwealth v. Tate*, 432 A.2d 1382, 1388 (Pa. 1981) ("It is small wonder, then, that the rights of freedom of speech, assembly, and petition have been guaranteed since the first Pennsylvania Constitution, not simply as restrictions on the powers of government, as found in the Federal Constitution, but as inherent and 'invaluable' rights of man.").

51.   Impeding candidates' abilities to run for political office—and consequently Petitioners' abilities to assess candidate qualifications and positions, organize and advocate for preferred candidates, and associate with like-minded voters—infringes on Petitioners' right to association.

52.   Given the delay in publication of the 2020 Census data and the near-certain deadlock among the political branches in adopting a new congressional district plan, it is significantly unlikely that the legislative process will timely yield a new plan. This would deprive Petitioners of the ability to associate with others from the same lawfully apportioned congressional district, and, therefore, is likely to significantly, if not severely, burden Petitioners' right to association.

53.   There is no legitimate or compelling interest that can justify this burden.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that this Court:

a. Declare that the current configuration of Pennsylvania's congressional districts violates Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; 2 U.S.C. § 2c; and Article I, Section 20 of the Pennsylvania Constitution;

b. Enjoin Respondents, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to Pennsylvania's current congressional district plan;

c. Establish a schedule that will enable the Court to adopt and implement a new congressional district plan by a date certain should the political branches fail to enact such plan by that time;

d. Implement a new congressional district plan that complies with Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; 2 U.S.C. § 2; and Article I, Section 20 of the Pennsylvania Constitution, if the political branches fail to enact a plan by a date certain set by this Court;

e. Award Petitioners their costs, disbursements, and reasonable attorneys' fees; and

- 21 -

f.   Grant such other and further relief as the Court deems just and proper.

Dated: April 26, 2021                    Respectfully submitted,

Marc E. Elias                            /s/ *Edward D. Rogers*
Aria C. Branch                           Edward D. Rogers, No. 69337
Lalitha D. Madduri                       Marcel S. Pratt, No. 307483
Christina A. Ford                        Robert J. Clark, No. 308105
Jyoti Jasrasaria                         Michael R. McDonald, No. 326873
Perkins Coie LLP                         Paul K. Ort, No. 326044
700 Thirteenth Street NW Suite 800       Ballard Spahr LLP
Washington, D.C. 20005-3960              1735 Market Street, 51st Floor
MElias@perkinscoie.com                   Philadelphia, PA 19103
ABranch@perkinscoie.com                  RogersE@ballardspahr.com
LMadduri@perkinscoie.com                 PrattM@ballardspahr.com
ChristinaFord@perkinscoie.com            ClarkR@ballardspahr.com
JJasrasaria@perkinscoie.com              McDonaldM@ballardspahr.com
T: (202) 654-6200                        OrtP@ballardspahr.com
F: (202) 654-6211                        T: (215) 665-8500
                                         F: (215) 864-8999
Abha Khanna
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
AKhanna@perkinscoie.com
T: (206) 359-8000
F: (206) 359-9000

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Edward D. Rogers</u>

Signature:     <u>/s/ Edward D. Rogers</u>

Name:     <u>Edward D. Rogers</u>

Attorney No.: <u>69337</u>

## VERIFICATION

I, Carol Ann Carter, hereby state:

1.      I am a petitioner in this action;

2.      I verify that the statements made in the foregoing Petition for Review are true and correct to the best of my knowledge, information, and belief; and

3.      I understand that the statements in said Petition for Review are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signed:

Dated:      April 26, 2021

## <u>NOTICE TO PLEAD</u>

**TO:**               Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

You are hereby notified to file a written response to the enclosed

Petition for Review within thirty (30) days from service hereof or a judgment may

be entered against you.

Dated:        April 26, 2010

/s/ *Robert J. Clark*
Robert J. Clark, No. 308105
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Clarkr@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I caused the foregoing

Petition for Review to be served upon the following parties and in the manner

indicated below, which service satisfies the requirements of Pa. R.A.P. 1514 and

121:

<u>By Certified Mail:</u>

Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

Dated:          April 26, 2021

/s/ <i>Robert J. Clark</i>
Robert J. Clark, No. 308105
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Clarkr@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

# Exhibit B

Received 9/16/2021 6:42:17 PM Commonwealth Court of Pennsylvania

Filed 9/16/2021 6:42:00 PM Commonwealth Court of Pennsylvania
132 MD 2021

*HANGLEY ARONCHICK SEGAL*
*PUDLIN & SCHILLER*
Michele D. Hangley (I.D. No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200


*OFFICE OF ATTORNEY GENERAL*
Karen M. Romano (I.D. No. 88848)
Keli M. Neary (I.D. No. 205178)
Caleb Enerson (I.D. No. 313832)
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-2717


*PENNSYLVANIA GOVERNOR'S*
*OFFICE OF GENERAL COUNSEL*
Kenneth L. Joel (I.D. No. 72370)
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 787-9348

*PENNSYLVANIA DEPARTMENT OF*
*STATE*
Kathleen M. Kotula (I.D. No. 318947)
306 North Office Bldg., 401 North Street
Harrisburg, PA 17120-0500
(717) 783-1657


*TUCKER LAW GROUP, LLC*
Joe H. Tucker, Jr. (I.D. No. 56617)
Dimitrios Mavroudis (I.D. No. 93773)
Jessica A. Rickabaugh (I.D. No. 200189)
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609


**Counsel for Respondents**

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

|  |  |
|---|---|
| CAROL ANN CARTER, *et al*.,<br>                    Petitioners,<br>        v.<br><br>VERONICA DEGRAFFENREID, in her official<br>capacity as Acting Secretary of the Commonwealth of<br>Pennsylvania, *et al.*,<br>                    Respondents. | No. 132 MD 2021 |

## RESPONDENTS' BRIEF IN SUPPORT OF PRELIMINARY <u>OBJECTIONS TO PETITIONERS' PETITION FOR REVIEW</u>

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF JURISDICTION ...................................................................2

III.    STATEMENT OF THE CASE..............................................................................2

IV.     STATEMENT OF THE QUESTIONS INVOLVED.........................................6

V.      ARGUMENT .........................................................................................................6

VI.     CONCLUSION....................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arrington v. Elections Board,*
  173 F. Supp. 2d 856 (E.D. Wisc. 2001)..................................................9

*Bayada Nurses, Inc. v. Department of Labor and Industry,*
  8 A.3d 866 (Pa. 2010)........................................................................6

*Garcia v. 2011 Legislative Reapportionment Commission,*
  559 Fed. Appx. 128 (3d Cir. 2014)....................................................10

*League of Women Voters v. Commonwealth,*
  178 A.3d 737 (Pa. 2018)....................................................................5

*Markham v. Wolf,*
  136 A.3d 134 (Pa. 2016)....................................................................6

*Philips Brothers Electrical Contractors, Inc. v. Pennsylvania*
  *Turnpike Commission,*
  960 A.2d 941 (Pa. Commw. Ct. 2008)................................................7

*Pittsburgh Palisades Park, LLC v. Commonwealth,*
  888 A.2d 655 (Pa. 2005)..................................................................6, 8

*Robinson Township, Washington County v. Commonwealth,*
  83 A.3d 901 (Pa. 2013)......................................................................7

*Sachs v. Simon,*
  No. A21-0546 (Minn. Spec. Redistricting Panel Sept. 13, 2021),
  *available at* https://www.mncourts.gov/mncourtsgov/media/High-
  Profile-Cases/A21-0243%202021%20Redistricting/A21-
  0243_Order-Briefing-Scheduling_9-13-2021.pdf .............................8

*Wattson v. Simon,*
  Nos. A21-0243 (Minn. Spec. Redistricting Panel Sept. 13, 2021),
  *available at* https://www.mncourts.gov/mncourtsgov/media/High-
  Profile-Cases/A21-0243%202021%20Redistricting/A21-
  0243_Order-Briefing-Scheduling_9-13-2021.pdf ..........................8, 9

**Statutes**

42 Pa. C.S. § 761(a)(1)...................................................................................2

Act of Mar. 27, 2020 (P.L. 41, No. 12), 2020 Pa. Legis. Serv. Act
2020-12 (S.B. 422) (West)...................................................................5

Act of Oct. 31, 2019 (P.L. 552, No. 77), 2019 Pa. Legis. Serv. Act.
2019-77 (S.B. 421) (West)...................................................................4

Minn. Stat. Ann. § 204B.14(1a).......................................................................9

**Other Authorities**

Pa Congressional Redistricting PA House Republican Caucus, *Pa.
Redistricting*, http://www.paredistricting.com (last visited on Sept.
16, 2021) ..............................................................................................6

United States Census Bureau, *2020 Redistricting Data Datasets* (Aug.
12, 2021), https://www.census.gov/programs-surveys/decennial-
census/data/datasets/rdo.html  (last visited on Sept. 16, 2021) ..........6

Governor Tom Wolf, *Give Feedback on Pennsylvania Redistricting*,
https://www.governor.pa.gov/redistricting-feedback/  (last visited
on Sept. 16, 2021)................................................................................6

Commonwealth of Pennsylvania Governor's Office, *Executive Order*
(Sept. 13, 2021), https://www.governor.pa.gov/wp-
content/uploads/2021/09/20210913-EO-2021-05-Redistricting-
Advisory-Council.pdf  (last visited on Sept. 16, 2021)........................6

Respondents, Acting Secretary of the Commonwealth Veronica Degraffenreid and Director of the Bureau of Election Services and Notaries Jessica Mathis, submit the following Memorandum of Law in support of their Preliminary Objections.

## I.    INTRODUCTION

The Petition for Review raises serious and weighty issues. Respondents agree with Petitioners that the right to vote of the individual Petitioners, and of all Pennsylvania voters, must be protected. They agree that timely congressional redistricting that complies with federal and state law is necessary to protect this right to vote. And they agree that, if the political branches of Pennsylvania's government fail to carry out that redistricting, the courts will be required to step in.

Respondents do not agree, however, that the political branches have failed in their responsibilities to voters, or that Petitioners have shown that failure is inevitable. At this point, all that Petitioners allege is that it is possible that the General Assembly and the Governor will reach an impasse on congressional redistricting legislation and will not be able to enact such legislation in time for the 2022 primary election. But the possibility of an impasse does not suffice to state a claim, and cannot justify the Court stepping in at this point.

Before this Court can intercede, Pennsylvania law requires more than a chance that Petitioners' rights may be endangered some time down the road. Under

bedrock principles of standing, the harm to Petitioners cannot be wholly contingent on future events. And for Petitioners' claims to be ripe, the facts must be sufficiently developed to permit judicial resolution. Here, Petitioners' claims fail on both fronts.

Respondents do not argue that the Court's doors are or should be closed to Petitioners permanently. As of today, however, Petitioners' forecast—stormy though it may be—is too uncertain to establish Petitioners' standing and state a ripe claim for relief.

## II.    STATEMENT OF JURISDICTION

The Petition for Review is addressed to this Court's original jurisdiction, pursuant to 42 Pa. C.S. § 761(a)(1).

## III.   STATEMENT OF THE CASE

Petitioners—16 individuals living in 11 different Pennsylvania congressional districts—filed their Petition for Review addressed to the Court's original jurisdiction on April 26, 2021. Petitioners allege that their voting rights will be potentially burdened by a chain of events that was set in motion by the completion of the 2020 decennial census. According to Petitioners, once the United States Secretary of Commerce delivered the apportionment data obtained by the 2020 Census to the President, use of the existing congressional districts of each state—including those of Pennsylvania—became unconstitutional. *See, e.g.*, Pet. ¶¶

2-4. Petitioners allege that unless new congressional districts are put in place in time for 2022's primary and general elections, their rights will be violated. *Id.* ¶ 7.

Petitioners acknowledge that under Pennsylvania law, congressional district maps are the responsibility of the political branches—the legislature and the executive—in the first instance. "In Pennsylvania, congressional district plans must be enacted through legislation, which requires the consent of both legislative chambers and the Governor (unless both legislative chambers override the Governor's veto by a two-third vote)." Pet. ¶ 6 (citing *League of Women Voters v. Commonwealth*, 178 A.3d 737, 742 (Pa. 2018)).

Petitioners hypothesize, however, that redistricting is unlikely to proceed along ordinary legislative lines in 2021 and 2022, because Pennsylvania's "political branches are highly likely to be at an impasse this cycle and to fail to enact a new congressional district plan." *Id.* ¶ 33. The support Petitioners offer for this proposition is that Pennsylvania's legislative and executive branches are controlled by different parties; that "[i]n just the last two years, Governor Wolf and the Republican-controlled General Assembly have repeatedly conflicted over a broad range of policies"; and that Census delays have compressed the legislature's time to enact a new congressional district plan. *Id.* Without a new congressional district plan, Petitioners allege, they "will be forced to cast unequal votes[,]…[b]ecause the current congressional plan is unconstitutionally

malapportioned[.]" Pet. ¶ 4. Additionally, Petitioners allege that if they are forced to participate in upcoming elections that use the old map, their "right to associate with other voters in support of their preferred candidates will be infringed." *Id.* As a result, Petitioners ask that the Court "assume jurisdiction now and establish a schedule that will enable the Court to adopt its own plan in the near-certain event that the political branches fail to timely do so." *Id.* ¶ 9.

The potential harms that Petitioners allege are uncertain and far in the future. First, Petitioners do not allege that the political branches have announced an impasse. Second, they acknowledge that the legislature has not missed any deadlines. *See* Pet. ¶ 30 ("Pennsylvania law does not set a deadline by which congressional redistricting plans must be in place prior to the first congressional election following release of the Census.").

Finally, Petitioners do not contend that it will be impossible for the legislative and executive branches to agree on a congressional district map, and could not reasonably contend this. While the Governor has exercised his veto power at times in the past two years, legislation has also passed during that time with bipartisan support and without a veto—including important voting-related legislation. For example, less than two years ago, the General Assembly enacted and the Governor signed Act 77 of 2019,[1] which allowed all eligible voters to vote

---

[1] Act of Oct. 31, 2019 (P.L. 552, No. 77), 2019 Pa. Legis. Serv. Act. 2019-77 (S.B. 421) (West).

by mail-in ballot and made many other important changes to Pennsylvania's
Election Code. Five months later, the General Assembly enacted and the Governor
signed Act 12 of 2020,[2] which made further changes to the Election Code and
included sweeping temporary measures to respond to the COVID-19 pandemic.
Both of these important voting laws received bipartisan support in the General
Assembly.

Petitioners also concede, as they must, that "there is still time for the
General Assembly and the Governor to enact a new congressional plan[.]" *Id.* ¶ 9.
The first day for candidates to circulate and file nomination petitions for the 2022
primary election is February 15, 2022. In order to ensure efficient election
administration, allow for timely notice to candidates, and permit proper
implementation of the new congressional districts, Respondents believe that the
Department of State must receive a final and legally binding congressional district
map no later than January 24, 2022. *See* Respondents' Preliminary Objections ¶¶
13-17. In order to account for potential litigation, Respondents believe that a new
map must be signed into law by the end of December 2021. *Id.* ¶ 17. A map signed
into law in late December would not be unprecedented. The congressional district
map that followed the 2010 Census, for example, was signed into law on
December 22, 2011. *League of Women Voters*, 178 A.3d at 743-44. If the political

---

[2] Act of Mar. 27, 2020 (P.L. 41, No. 12), 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) (West).

branches act promptly, they could easily meet a similar deadline.[3]

## IV.    STATEMENT OF THE QUESTIONS INVOLVED

1.    Where Petitioners allege harm that is speculative and uncertain, should the Court sustain Respondents' Preliminary Objection for lack of standing and ripeness?

Suggested Answer:  Yes.

## V.    ARGUMENT

To establish standing to seek relief from this Court, a party must demonstrate that it is "aggrieved," that is, that it has "a substantial, direct, and immediate interest in the matter." *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016); *accord Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005). "[A]n interest is 'immediate' if the causal connection is not remote or speculative." *Pittsburgh Palisades Park*, 888 A.2d at 660 (citation omitted).

Like standing, the principle of ripeness "mandates the presence of an actual controversy." *Bayada Nurses, Inc. v. Department of Labor and Industry*, 8 A.3d

---

[3] There is no indication that the political branches are delaying; they appear to be actively moving the redistricting process forward. The U.S. Census Bureau released redistricting data in legacy format on August 12, 2021. *See* https://www.census.gov/programs-surveys/decennial-census/data/datasets/rdo.html. Using that data, the House State Government Committee is soliciting public input on new maps, including by holding a series of hearings across the Commonwealth. *See* http://www.paredistricting.com.  Governor Wolf is also soliciting the public's feedback, and has established a Redistricting Advisory Council to assist him in evaluating proposed maps. *See* https://www.governor.pa.gov/redistricting-feedback/; https://www.governor.pa.gov/wp-content/uploads/2021/09/20210913-EO-2021-05-Redistricting-Advisory-Council.pdf.

866, 874 (Pa. 2010). Unlike standing, however, ripeness "also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute." *Robinson Twp., Washington Cty. v. Com.*, 83 A.3d 901, 917 (Pa. 2013).

Here, all of Petitioners' claims turn on one key fact—whether or not there will be a new congressional district plan in place in time for the 2022 election. Petitioners allege only that it is "highly likely" that Pennsylvania's political branches will "be at an impasse this cycle" and "fail to enact a new congressional district plan." Pet. ¶ 33. That fact, as Petitioners acknowledge, is still unresolved: "there is still time for the General Assembly and the Governor to enact a new congressional plan[.]" Pet. ¶ 9. Because no one knows what will happen in the negotiations between the legislature and the Governor—let alone whether the negotiations will break down, a necessary prerequisite to Petitioners' claims—the facts underlying the Petition for Review are quintessentially "not sufficiently developed to permit judicial resolution of the dispute," and therefore are not ripe. *Robinson*, 83 A.3d at 917; *see also Philips Bros. Elec. Contractors, Inc. v. Pennsylvania Turnpike Comm'n*, 960 A.2d 941, 945 (Pa. Commw. Ct. 2008) (factors considered in ripeness inquiry include "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all") (citations omitted). Similarly, "any possible harm to Petitioners is wholly

contingent on future events." *Pittsburgh Palisades Park*, 888 A.2d at 660. "[A]s

Petitioners do not offer that [negotiation over a new congressional district plan] has

harmed them or will harm them in any way that is not remote or speculative, they

fail to demonstrate that they have an immediate interest," as is required for

standing. *Id.* (citation omitted).

Petitioners' Memorandum in Opposition to Respondents' Preliminary

Objections ("Mem. Opp.") sets forth no persuasive reason for the Court to

conclude that Petitioners have standing or that their claims are ripe. First,

Petitioners argue, courts in Minnesota and Wisconsin have exercised jurisdiction

under similar circumstances. *See* Mem. Opp. at 11-13, 15-16, 18-20. But the cases

Petitioners rely upon are not at all similar to this one. The Minnesota state court

cases of *Wattson v. Simon*, No. A21-0243, and *Sachs v. Simon*, No. A21-0546,

involve the work of a hybrid entity with no counterpart in Pennsylvania: a "special

redistricting panel," made up of judges, that conducts public outreach and

factfinding in order to prepare itself to address any redistricting litigation that may

arise. *See Wattson v. Simon*, Nos. A21-0243 and A21-0546 (Minn. Spec.

Redistricting Panel Sept. 13, 2021), *available at*

https://www.mncourts.gov/mncourtsgov/media/High-Profile-Cases/A21-

0243%202021%20Redistricting/A21-0243_Order-Briefing-Scheduling_9-13-

2021.pdf (stating that "the panel wishes to gather information about Minnesota

communities from Minnesota citizens" and scheduling ten public hearings across the state). Given the panel's expansive and time-consuming role, and the fact that Minnesota, unlike Pennsylvania, has statutory deadlines for the establishment of new maps, *see* Minn. Stat. Ann. § 204B.14(1a), it is not surprising that the Minnesota Supreme Court concluded that the panel should begin its work in the summer of 2021. *See Wattson v. Simon*, Nos. A21-0243 and A21-0546 (Minn. June 30, 2021) at 2. That decision, under those unique circumstances, has no bearing on the standing and ripeness questions here.

*Arrington v. Elections Board*, 173 F. Supp. 2d 856 (E.D. Wisc. 2001), is similarly unhelpful. In that case, two groups of legislators—the State Senate Democratic Caucus, who intervened as plaintiffs, and the State Senate's Speaker and Minority Leader, who intervened as defendants—filed briefs agreeing that the case was justiciable, and the Senate leaders agreed with the plaintiffs that impasse was a "very real possibility." *Id.* at 858-59, 864. The court relied on these admissions to conclude that it had jurisdiction. *Id.* at 864. In this case, the political branches have not taken such a position. Moreover, *Arrington* interprets federal law as applied to the Wisconsin legislative process, and thus has no persuasive force here.

Petitioners' second argument is that the Court must act now because the congressional districts are malapportioned. Mem. Opp. at 8-9. But the fact that the

current districts may not have equal numbers of voters causes no constitutional injury. "Malapportionment's harm is felt by individuals in overpopulated districts who actually suffer a diminution in the efficacy of their votes and their proportional voice in the legislature." *Garcia v. 2011 Legislative Reapportionment Commission*, 559 Fed. Appx. 128, 133 (3d Cir. 2014). Accordingly, malapportionment cannot cause injury until an election occurs using the malapportioned districts—and, as discussed above, at this point such an injury is wholly speculative.

There may come a time when Petitioners' claim ripens and they have standing, but as the allegations in their Petition show, that time has not arrived and may never arrive. Accordingly, this case cannot proceed.

## VI.   CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court sustain their Preliminary Objection for lack of standing and ripeness and enter an order dismissing the Petition for Review without prejudice.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: September 16, 2021       By: */s/ Michele D. Hangley*
Michele D. Hangley (ID No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)

One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300

OFFICE OF ATTORNEY GENERAL

Karen M. Romano (I.D. No. 88848)
Keli M. Neary (I.D. No. 205178)
Caleb Enerson (I.D. No. 313832)
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-2717

PENNSYLVANIA GOVERNOR'S OFFICE
OF GENERAL COUNSEL

Kenneth L. Joel (I.D. No. 72370)
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 787-9348

PENNSYLVANIA DEPARTMENT OF
STATE

Kathleen M. Kotula (I.D. No. 318947)
Kimberly A. Adams (I.D. No. 205848)
306 North Office Bldg., 401 North Street
Harrisburg, PA 17120-0500
(717) 783-1657

TUCKER LAW GROUP, LLC

Joe H. Tucker, Jr. (I.D. No. 56617)
Dimitrios Mavroudis (I.D. No. 93773)
Jessica A. Rickabaugh (I.D. No. 200189)
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
***Counsel for Respondents***

- 11 -

# Exhibit C

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Ann Carter; Monica Parrilla;          :
Rebecca Poyourow; William Tung;             :
Roseanne Milazzo; Burt Siegel;              :
Susan Cassanelli; Lee Cassanelli;           :
Lynn Wachman; Michael Guttman;              :
Maya Fonkeu; Brady Hill; Mary Ellen         :
Balchunis; Tom DeWall; Stephanie            :
McNulty; and Janet Temin,                   :
                                            :
                       Petitioners          :
                                            :
                v.                          :   No. 132 M.D. 2021
                                            :   Argued: October 5, 2021
Veronica Degraffenreid, in her official     :
capacity as the Acting Secretary of         :
the Commonwealth of Pennsylvania;           :
Jessica Mathis, in her official             :
capacity as Director for the                :
Pennsylvania Bureau of Election             :
Services and Notaries,                      :
                                            :
                       Respondents          :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  October 8, 2021


        Before this special panel[1] are the Preliminary Objections (POs) of

Respondents Veronica Degraffenreid, in her official capacity as the Acting Secretary

---

[1] *See* Section 112(b) of the Internal Operating Procedures of the Commonwealth Court,
210 Pa. Code §69.112(b) ("The President Judge may designate Judges to serve on a special court
. . . panel to hear election law matters, appellate or original jurisdiction, on an expedited basis.").

of the Commonwealth of Pennsylvania, Jessica Mathis, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries (collectively, Respondents), and Intervenors Speaker of the Pennsylvania House of Representatives Bryan Cutler, Majority Leader of the Pennsylvania House of Representatives Kerry Benninghoff, President Pro Tempore of the Pennsylvania Senate Jake Corman, and Majority Leader of the Pennsylvania Senate Kim Ward (collectively, Intervenors)[2] to Petitioners'[3] Petition for Review (Petition) addressed to this Court's original jurisdiction.[4]

## I. Petition for Review

On April 26, 2021, Petitioners filed the Petition against Respondents challenging the current congressional district map based on the 2020 Census. Petitioners identify themselves as 16 citizens of the United States (U.S.) who are registered to vote in Pennsylvania in 11 different federal congressional districts.[5]

---

[2] Following a hearing, by Memorandum Opinion and Order dated September 2, 2021, this Court granted Intervenors leave to intervene.  *Carter v. DeGraffenreid* (Pa. Cmwlth., No. 132 M.D. 2021, filed September 2, 2021).

[3] Petitioners are Carol Ann Carter, Monica Parrilla, Rebecca Poyourow, William Tung, Roseanne Milazzo, Burt Siegel, Susan Cassanelli, Lee Cassanelli, Lynn Wachman, Michael Guttman, Maya Fonkeu; Brady Hill; Mary Ellen Balchunis, Tom DeWall, Stephanie McNulty, and Janet Temin.

[4] Pursuant to Section 761(a)(1) of the Judicial Code, this Court has "original jurisdiction of all civil actions or proceedings . . . [a]gainst the Commonwealth, including any officer thereof, acting in his official capacity."  42 Pa. C.S. §761(a)(1).

[5] Specifically, Petitioners reside in Bucks, Chester, Cumberland, Dauphin, Delaware, Lancaster, Montgomery, Northampton, and Philadelphia Counties and in congressional districts 1 through 7, 10, and 11.

Petitioners intend to advocate and vote for Democratic candidates in the upcoming 2022 primary and general elections.  Petition, ¶11.

As we detailed in the September 2, 2021 Memorandum Opinion,[6] the Petition provides details regarding the results of the 2020 Census, the dates by which the U.S. Secretary of Commerce must provide the U.S. President and the states with the apportionment data, and the effect of the COVID-19 pandemic on the delivery of that data.  The Petition further explains that, while the Commonwealth's population increased from the last decennial census, the 2020 Census shows that the Commonwealth will lose a representative seat in the U.S. House of Representatives. Starting with the upcoming 2022 elections, the Commonwealth will have 17 representatives in the U.S. House of Representatives, 1 fewer than the current 18 representatives.  The Commonwealth's congressional district map must be redrawn to accommodate for the loss of a seat in the U.S. House of Representatives. Petitioners claim that the Commonwealth's current congressional districts are "unconstitutionally malapportioned" due to shifts in population within the Commonwealth.  Petition, ¶2.  They believe that the congressional districts in which they live are overpopulated, while other districts are underpopulated, and that, consequently, their votes for members of the U.S. House of Representatives are diluted.  Petition, ¶¶18-21.

The Petition observes that Pennsylvania law does not set a deadline by which a new congressional district map must be put in place prior to the first congressional election following a census.  According to Petitioners, it is in the best interest of voters, candidates, and the Commonwealth's entire electoral apparatus to have a new, final congressional district map in place prior to February 15, 2022, the

---

[6] *See Carter*, slip op. at 3-6.

date on which candidates may begin collecting signatures on nomination petitions for placement on the primary election ballot.  Petition, ¶¶30-31.

The Petition informs that the Commonwealth's current congressional district map was drawn by the Pennsylvania Supreme Court in *League of Women Voters of Pennsylvania v. Commonwealth*, 181 A.3d 1083 (Pa. 2018) (*League of Women Voters III*), after the Republican-controlled General Assembly and Democratic Governor failed to agree upon a new congressional district map following the Supreme Court's invalidation of the Commonwealth's 2011 congressional district map.  The current political climate has not changed since 2018, as Republican representatives maintain the majority in both houses of the General Assembly and Governor Tom Wolf is a Democrat.  For these reasons, Petitioners contend that it is "unlikely" that the political branches of the government will agree upon a new congressional district map.  Petition, ¶¶8, 29, 32, 42, 52.

Petitioners present four counts alleging that the current congressional district map violates:  (1) Article I, Section 5 of the Pennsylvania Constitution (free and equal elections clause);[7] (2) 2 U.S.C. §2c (relating to districting for U.S. House of Representatives);[8] (3) Article I, Section 20 of the Pennsylvania Constitution

---

[7] Pa. Const. art. I, §5.   Article I, Section 5 of the Pennsylvania Constitution, states: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

[8] 2 U.S.C. §2c provides:

In each State entitled in the Ninety-first Congress or in any subsequent Congress thereafter to more than one Representative under an apportionment made pursuant to the provisions of section 2a(a) of this title, there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from

**(Footnote continued on next page…)**

4

(relating to right to petition);[9] and (4) Article I, Section 2 of the U.S. Constitution (relating to qualifications for member of the U.S. House of Representatives).[10]

_____

districts so established, no district to elect more than one Representative (except that a State which is entitled to more than one Representative and which has in all previous elections elected its Representatives at Large may elect its Representatives at Large to the Ninety-first Congress).

[9] Pa. Const. art. I, §20.  Article I, Section 20 of the Pennsylvania Constitution provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance."

[10] U.S. Const. art. I, §2.  Article I, Section 2 of the U.S. Constitution provides:

The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

No Person shall be a Representative who shall not have attained to the Age of twenty[-]five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

[Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons.] The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct.  The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to chuse three, Massachusetts eight, Rhode-Island and Providence Plantations one, Connecticut five, New-York six, New Jersey four,

**(Footnote continued on next page…)**

5

For relief, Petitioners seek both declaratory and injunctive relief. Specifically, they ask the Court to:

> a. Declare that the current configuration of Pennsylvania's congressional districts violates . . . the Pennsylvania Constitution [and] . . . the U.S. Constitution . . . ;
>
> b. Enjoin Respondents, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to Pennsylvania's current congressional district plan;
>
> c. Establish a schedule that will enable the Court to adopt and implement a new congressional district plan by a date certain should the political branches fail to enact such plan by that time;
>
> d. Implement a new congressional district plan that complies with . . . the Pennsylvania Constitution [and] . . . the U.S. Constitution . . . , if the political branches fail to enact a plan by a date certain set by this Court;
>
> e. Award Petitioners their costs, disbursements, and reasonable attorneys' fees; and
>
> f. Grant such other and further relief as the Court deems just and proper.

Petition at 21-22.

---

Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three.

When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies. The House of Representatives shall chuse their Speaker and other Officers; and shall have the sole Power of Impeachment.

## II. Preliminary Objections

In response to the Petition, Respondents and Intervenors filed POs. Both Respondents and Intervenors preliminarily object on the bases that Petitioners lack standing and their claims are not ripe pursuant to Pa.R.Civ.P. 1028(a)(4), (5).[11] Additionally, Intervenors object on the grounds that the claims are nonjusticiable and that Petitioners fail to otherwise state a claim upon which relief may be granted.[12]

### A. Standing

With regard to standing, Respondents and Intervenors both assert that Petitioners lack capacity to sue because they are not aggrieved. Petitioners' claims turn on one key fact – whether or not there will be a new congressional district plan in time for the 2022 primary election. Petitioners' claims are predicated on the supposition that because the General Assembly is controlled by one political party, the Governor is a member of another political party, and there has been "conflict" between these actors in the past, it is highly unlikely that Pennsylvania will enact a new congressional district plan in time for the 2022 primary election, which would cause them harm. The possible harm is wholly contingent on future events, which

---

[11] Pa.R.Civ.P. 1028(a)(4), (5) provides: "Preliminary objections may be filed by any party to any pleading and are limited to the following grounds: . . . (4) legal insufficiency of a pleading (demurrer); [and] (5) lack of capacity to sue[.]"

[12] "In ruling on preliminary objections, the courts must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts." *Pennsylvania Independent Oil and Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1123 (Pa. Cmwlth. 2015), *aff'd*, 161 A.3d 949 (Pa. 2017) (quoting *Guarrasi v. Scott*, 25 A.3d 394, 400 n.5 (Pa. Cmwlth. 2011)). "However, we 'are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion.'" *Id.* (quoting *Guarrasi*, 25 A.3d at 400 n.5). "To sustain preliminary objections, 'it must appear with certainty that the law will permit no recovery' and '[a]ny doubt must be resolved in favor of the non-moving party.'" *Id.* (quoting *Guarrasi*, 25 A.3d at 400 n.5).

may never happen. Petitioners' failure to demonstrate an immediate interest defeats standing.

The hallmark of standing is that "a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby." *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975). An individual is aggrieved if he has a "substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009). "[A]n interest is 'immediate' if the causal connection is not remote or speculative." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005).

Our Supreme Court addressed standing in *Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014), explaining:

> In Pennsylvania, the doctrine of standing ... is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. *In re Hickson*, [821 A.2d 1238, 1243 (Pa. 2003)]. For standing to exist, the underlying controversy *must be real and concrete*, such that the party initiating the legal action has, in fact, been "aggrieved." *Pittsburgh Palisades Park*, [888 A.2d at 659]. ... As this Court explained in *William Penn Parking Garage*, "the core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge." 346 A.2d at 280-81. A party is aggrieved for purposes of establishing standing when the party has a "substantial, direct and immediate interest" in the outcome of litigation. *Johnson* [*v. American Standard*, 8 A.3d 318, 329 (Pa. 2010)] (quoting *Fumo*[, 972 A.2d at 496]). A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, *a party's interest is immediate when the causal*

> *connection with the alleged harm is neither remote nor*
> *speculative. Id.* [[emphasis added).]

Here, Petitioners' allegations fail to meet the immediacy test. Petitioners do not allege that they have sustained a present or imminent legally cognizable injury or otherwise sufficiently develop facts to permit judicial resolution at this juncture. Petitioners' claims are predicated on what may happen in the event a new congressional map is not enacted before the 2022 primary election.

At this juncture, Petitioners' claims are premature. Petitioners filed this suit in April 2021 on the heels of the 2020 Census release without ever giving the General Assembly and the Governor an opportunity to act. In fact, Petitioners allege that the U.S. Secretary of Commerce was not expected to deliver to Pennsylvania the redistricting data in legacy format until mid-to-late-August 2021, or the same detailed population data showing the new population of each political subdivision in a tabulated format until September 30, 2021.[13]  Petition, ¶23.

Petitioners' action is premised on their belief that it is "extremely unlikely" that the branches will pass a lawful congressional redistricting plan in time for the upcoming 2022 election. Petition, ¶29. Petitioners attribute this unlikelihood to the divided political branches. Petition, ¶29. Both chambers of the General Assembly are controlled by the Republican Party and the Governor is a Democrat. Petition, ¶29. The Republican control of the General Assembly is not large enough to override a gubernatorial veto. Petition, ¶29. However, Petitioners do not allege that the political branches have announced a present impasse.

---

[13] The U.S. Census Bureau provided redistricting data in legacy format for all states on August 12, 2021. *See* https://www.census.gov/programs-surveys/decennial-census/data/datasets/rdo.html (last visited October 5, 2021).

Nor do they allege that a legislative impasse is a *fait accompli* based on the political divide between the General Assembly and the Governor.  In fact, Petitioners admit that, in the last two years, legislation has passed with bipartisan support and without a gubernatorial veto, despite the current political division. Respondents' Preliminary Objections, ¶10; Petitioners' Answer to Respondents' Preliminary Objections, ¶10; *see, e.g.*, Act 77 of 2019[14] (allowing all eligible voters to vote by mail-in ballot); Act 12 of 2020[15] (changes to voting by mail-in electors and sweeping temporary measures to respond to the COVID-19 pandemic).

Petitioners acknowledge, as they must, that "there is still time for the General Assembly and the Governor to enact a new congressional plan."  Petition, ¶9.  Petitioners also acknowledge that Pennsylvania law does not set a deadline by which congressional redistricting plans must be in place prior to the first congressional election following the census.  Petition, ¶30.  Petitioners allege that "it is in everyone's interests – candidates and voters alike – that district boundaries are set" prior to February 15, 2022 – the first day for candidates to circulate and file nomination petitions for the 2022 primary election.  Petition, ¶31.  There is still ample time for the lawmakers to act.[16]  *See League of Women Voters of Pennsylvania v. Commonwealth*, 178 A.3d 737, 743 (Pa. 2018) (*League of Women Voters II*)

---

[14] Act of October 31, 2019, P.L. 552, No. 77.

[15] Act of March 27, 2020, P.L. 41, No. 12.

[16] Respondents concede that February 15, 2022, is a key date for redistricting.  "In order to ensure efficient election administration, allow for timely notice to candidates, and permit proper implementation of the new congressional districts," Respondents assert that "the Department of State must receive a final and legally binding congressional district map no later than January 24, 2022."  Respondents' Brief at 5; *see* Respondents' Preliminary Objections, ¶¶13-17.  "In order to account for potential litigation, Respondents believe that a new map must be signed into law by the end of December 2021."  Respondents' Brief at 5; *see* Respondents' Preliminary Objections, ¶17.

(noting that the congressional district map that followed the 2010 Census was signed into law on December 22, 2011).

Should lawmakers fail to act, Pennsylvania courts have demonstrated the ability to move swiftly to implement remedial congressional districting plans, which further undermines Petitioners' demand for immediate, premature relief.  In *Mellow v. Mitchell*, 607 A.2d 204, 205 (Pa. 1992), eight Democratic state senators brought an action on January 28, 1992, the first day to circulate nominating petitions that year, asking the Supreme Court to create a new congressional district plan due to an impasse.  On March 10, 1992, only 42 days after the suit was filed, the Supreme Court adopted a remedial plan.   Similarly, in *League of Women Voters of Pennsylvania v. Commonwealth*, 175 A.3d 282 (Pa. 2018) (*League of Women Voters I*), on January 22, 2018, the Supreme Court struck down the 2011 congressional district plan.  *See League of Women Voters II*, 178 A.3d at 825.  On February 19, 2018, just 28 days later, the Supreme Court adopted a remedial plan.  *League of Women Voters III*, 181 A.3d at 1089-1121.

Although it is possible that the General Assembly and the Governor may reach an impasse on the congressional redistricting legislation, the mere possibility is not sufficient to state a cognizable claim.  "[A]ny possible harm to Petitioners is wholly contingent on future events," which may never occur. *Pittsburgh Pallisades Park*, 888 A.2d at 660.  Because no one can predict what will happen in negotiations between the General Assembly and the Governor, the facts underlying the Petition and alleged harm are far too speculative and uncertain to

constitute an immediate interest.  Petitioners cannot reserve their place in line to be the lead petitioners in the event that future impasse litigation becomes necessary.[17]

---

[17] Petitioners rely upon jurisprudence from Wisconsin and Minnesota to support their position that they have standing to prosecute their claims and that their claims are ripe at this juncture.  Petitioners' Memorandum of Law in Opposition to Preliminary Objections, at 2; *see Arrington v. Elections Board*, 173 F. Supp. 2d 856 (E.D. Wis. 2001); *Wattson v. Simon* (Minn., Nos. A21-0243, A21-0546, filed June 30, 2021); *see also Sachs v. Simon* (Minn., No. A21-0546, filed May 20, 2021).  According to Petitioners, the courts in Wisconsin and Minnesota accepted jurisdiction in similar redistricting cases where a risk of impasse was alleged.  The Wisconsin Supreme Court found that the complaint presented a justiciable controversy upon recognizing that "challenges to districting laws may be brought immediately upon release of official data showing district imbalance." *Arrington*, 173 F. Supp. 2d at 860 (citations omitted).  Recently, the Minnesota Supreme Court appointed a special redistricting panel to "order implementation of judicially determined redistricting plans for state legislative and congressional seats that satisfy constitutional and statutory requirements in the event that the Legislature and the Governor have not done so in a timely manner," noting that the redistricting panel's "work . . . must commence soon in order to permit the judicial branch to fulfill its proper role in assuring that valid redistricting plans are in place for the state legislative and congressional election in 2022." *Wattson*, Order at 2-3.

First, we are not bound by decisions from courts in other jurisdictions. *E.N. v. M. School District*, 928 A.2d 453, 466 n.20 (Pa. Cmwlth. 2007); *Ferraro v. Temple University*, 185 A.3d 396, 404 (Pa. Super. 2018).  Second, although we may use such decisions "for guidance to the degree they are found to be useful, persuasive, and . . . not incompatible with Pennsylvania law," such is not the case here. *Ferraro*, 185 A.3d at 404.  In Minnesota, a "special redistricting panel," comprised of judges, conducts public outreach and factfinding to prepare itself to address any redistricting litigation that may arise. *Wattson*, Order at 2-3.  Pennsylvania has no such counterpart.  Minnesota also has statutory deadlines. *Wattson*, Order at 2 (citing "Minn. Stat. §204B.14, subd. 1a (2020)," which provides that redistricting plans are to be implemented no "later than 25 weeks before the state primary election" in 2022).  Given the panel's expansive role and the statutory deadline, the Minnesota Supreme Court concluded that the panel should commence its work in the summer of 2021. *Wattson*, Order at 3.  That decision, under those unique circumstances, has no bearing on the standing and ripeness issues under Pennsylvania jurisprudence.  Furthermore, the Minnesota orders do not contain any analysis regarding the standing and ripeness issues presented here.

*Arrington* is similarly unpersuasive.  There, two groups of legislators - the Wisconsin State Senate Democratic Caucus, who intervened as plaintiffs, and the Wisconsin State Senate's Speaker and Minority Leader, who intervened as defendants - filed briefs agreeing that the case was **(Footnote continued on next page…)**

Although we recognize that Petitioners' rights might be abridged at some future point in time, at this juncture, the alleged harm is too remote and too speculative to warrant judicial resolution of the dispute. Petitioners' allegations fail to demonstrate the immediacy required to confer standing. We, therefore, sustain Respondents' and Intervenors' POs on the basis that Petitioners lack standing to litigate their claims.

### B. Ripeness

Next, Respondents and Intervenors preliminarily object to the Petition on the basis that Petitioners' claims are not ripe because the claims are based on uncertain and contingent events that may never occur.

"There is considerable overlap between the doctrines of standing and ripeness, especially where the contentions regarding lack of justiciability are focused on arguments that the interest asserted by the petitioner is speculative, not concrete, or would require the court to offer an advisory opinion." *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013). Like standing, the principles of ripeness "mandates the presence of an actual controversy." *Bayada Nurses, Inc. v. Department of Labor and Industry*, 8 A.3d 866, 874 (Pa. 2010). Unlike standing, "ripeness also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute." *Robinson Township*, 83 A.3d at 917.

Under the ripeness doctrine, "[w]here no actual controversy exists, a claim is not justiciable and a declaratory judgment action cannot be maintained."

---

justiciable and that "legislative failure to redistrict is a very real possibility." 173 F. Supp. 2d at 858-59, 864. Based on these admissions, the *Arrington* Court accepted jurisdiction. *Id.* at 864. Conversely, here, the political branches have not taken such a position. Further, *Arrington* interpreted federal law as applied to the Wisconsin legislative process, which is not applicable here.

*Cherry v. City of Philadelphia*, 692 A.2d 1082, 1085 (Pa. 1997).  In other words, declaratory judgment is not appropriate to determine rights in anticipation of events that may never occur; the presence of an actual controversy is generally required. *Id.*  The same holds true for actions seeking injunctive relief.  *Mazur v. Washington County Redevelopment Authority*, 954 A.2d 50, 56 (Pa. Cmwlth. 2008).

"In deciding whether the doctrine of ripeness bars our consideration . . . we consider [(1)] whether the issues are adequately developed for judicial review and [(2)] what hardships the parties will suffer if review is delayed."  *Township of Derry v. Pennsylvania Department of Labor and Industry*, 932 A.2d 56, 57-58 (Pa. 2007) (internal citations and quotations omitted).  As for whether the issues are "adequately developed," we examine "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the amount of fact finding required to resolve the issue; and whether the parties to the action are sufficiently adverse."  *Id.*

Rooted in the first part of this test is the principle that "[o]nly where there is a real controversy may a party obtain a declaratory judgment.  A declaratory judgment must not be employed to determine rights in anticipation of events [that] may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic."  *Gulnac by Gulnac v. South Butler County School District*, 587 A.2d 699, 701 (Pa. 1991) (internal citations omitted); *accord City of Philadelphia v. Philadelphia Transportation Co.*, 171 A.2d 768, 770 (Pa. 1961).  "Under the 'hardship' analysis, we may address the merits even if the case is not as fully developed as we would like, *if refusal to do so would place a demonstrable hardship on the party*."  *Township of Derry*, 932 A.2d at 58 (emphasis added).

Petitioners' claims are premised on the fear that there will not be a new congressional district plan in place in time for the 2022 primary election. Petitioners allege that it is highly likely that Pennsylvania's political branches will "be at an impasse this cycle" and "fail to enact a new congressional district plan." Petition, ¶33. However, the issues are not adequately developed because these events may never occur. As Petitioners acknowledge, there is still time for lawmakers to enact a new congressional district plan. Petition, ¶9. Petitioners' claims also ignore the presumption that public officials will faithfully discharge their duties. *In re Redevelopment Authority of Philadelphia*, 938 A.2d 341, 345 (Pa. 2007).

Additionally, Petitioners will not suffer any hardship if review is delayed. *Only if* the General Assembly and the Governor fail to adopt a new congressional district plan by an arbitrary deadline will the alleged constitutional and statutory violations occur. As this Court observed, "[a]t this juncture, it is not known how the redistricting process will proceed." *Carter*, slip op. at 12. "The events which might bring these parties into actual conflict are thus too remote to justify our resolution of this dispute by declaratory judgment." *South Whitehall Township v. Department of Transportation*, 475 A.2d 166, 169 (Pa. Cmwlth. 1984).

The fact that the current districts may not have equal numbers of voters does not give rise to a constitutional injury. "Malapportionment's harm is felt by individuals in overpopulated districts who actually suffer a diminution in the efficacy of their votes and the proportional voice in the legislature." *Garcia v. 2011 Legislative Reapportionment Commission*, 559 F. App'x 128, 133 (3d Cir. 2014). Petitioners will not suffer an injury based on malapportionment harm until an election occurs using malapportioned districts.

15

Because Petitioners have alleged no immediate harm and their claims are contingent on future uncertainties, Petitioners' claims are not ripe for disposition. We, therefore, sustain Respondents' and Intervenors' POs on the basis that the dispute is not ripe.[18]

### III. Conclusion

Based on the foregoing discussion, we sustain Respondents' and Intervenors' POs based on a lack of standing and ripeness as to all four counts of the Petition.  Accordingly, we dismiss the Petition without prejudice.[19]

_____
MICHAEL H. WOJCIK, Judge

---

[18] We recognize that there may come a time when Petitioners' claims ripen, and they will have standing to pursue the claims in the Petition; however, that time is not now.

[19] In light of this disposition, we decline to address Intervenors' additional POs.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Ann Carter; Monica Parrilla;    :
Rebecca Poyourow; William Tung;    :
Roseanne Milazzo; Burt Siegel;    :
Susan Cassanelli; Lee Cassanelli;    :
Lynn Wachman; Michael Guttman;    :
Maya Fonkeu; Brady Hill; Mary Ellen  :
Balchunis; Tom DeWall; Stephanie   :
McNulty; and Janet Temin,    :
    :
            Petitioners    :
    :
          v.           :  No. 132 M.D. 2021
    :
Veronica Degraffenreid, in her official :
capacity as the Acting Secretary of   :
the Commonwealth of Pennsylvania;  :
Jessica Mathis, in her official    :
capacity as Director for the    :
Pennsylvania Bureau of Election    :
Services and Notaries,    :
    :
          Respondents   :

# **O R D E R**

AND NOW, this 8th day of October, 2021, Respondents' and Intervenors' Preliminary Objections relating to lack of standing and ripeness are SUSTAINED. Petitioners' Petition for Review is DISMISSED WITHOUT PREJUDICE.

_____
MICHAEL H. WOJCIK, Judge

Order Exit
10/08/2021

# Exhibit D

Received 12/17/2021 9:08:12 AM Commonwealth Court of Pennsylvania

Filed 12/17/2021 9:08:00 AM Commonwealth Court of Pennsylvania
464 MD 2021

Lalitha D. Madduri*
Christina A. Ford*
Jyoti Jasrasaria*
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
lmadduri@elias.law
cford@elias.law
jjasrasaria@elias.law
T: (202) 968-4490

Abha Khanna*
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
T: (206) 656-0177

Matthew Gordon*
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

Edward D. Rogers, No. 69337
Marcel S. Pratt, No. 307483
Robert J. Clark, No. 308105
Michael R. McDonald, No. 326873
Paul K. Ort, No. 326044
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

*Counsel for Petitioners*

* *Pro hac vice* forthcoming

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAROL ANN CARTER; MONICA PARRILLA;
REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE
MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE
CASSANELLI; LYNN WACHMAN; MICHAEL
GUTTMAN; MAYA FONKEU; BRADY HILL; MARY
ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE
MCNULTY; and JANET TEMIN,

               Petitioners,

     v.

VERONICA DEGRAFFENREID, in her official capacity as
the Acting Secretary of the Commonwealth of Pennsylvania;
JESSICA MATHIS, in her official capacity as Director for
the Pennsylvania Bureau of Election Services and Notaries,

               Respondents.

No.

_____

## PETITION FOR REVIEW
## ADDRESSED TO THE COURT'S ORIGINAL JURISDICTION

### INTRODUCTION

1.    This is an action challenging Pennsylvania's lack of constitutional

congressional district boundaries for the 2022 election cycle. Petitioners ask the

Court to (1) declare unconstitutional Pennsylvania's current congressional district

plan, which has become malapportioned by a decade of population shifts and now

allocates more congressional districts than Pennsylvania has been lawfully allotted;

(2) enjoin Respondents from using the current plan in any future elections; and (3)

adopt a new congressional district plan that adheres to the constitutional requirement

of one-person, one-vote now that it is clear that the General Assembly and Governor will not timely act to do so.

2.      This past August, the U.S. Secretary of Commerce delivered census-block results of the 2020 Census to Pennsylvania's Governor and legislative leaders. These data confirm the inevitable reality that population shifts in the last decade have rendered Pennsylvania's congressional plan unconstitutionally malapportioned. *See Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (three-judge court) (explaining that "existing apportionment schemes become instantly unconstitutional upon the release of new decennial census data" (internal quotation marks omitted)). Census data also confirmed that Pennsylvania will be allocated only 17 Members in the next Congress, one fewer than currently allocated.

3.      These changes render Pennsylvania's current congressional districts both unlawful and unconstitutional. Specifically, the current configuration of Pennsylvania's congressional districts violates (1) the Free and Equal Elections Clause of the Pennsylvania Constitution, which guarantees its citizens the right to "make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share." *Patterson v. Barlow*, 60 Pa. 54, 75 (1869); (2) Article I, Section 2 of the U.S. Constitution's requirement that states "achieve population equality 'as nearly as is practicable'" when drawing congressional districts. *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting

- 3 -

*Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964)); and (3) 2 U.S.C. § 2c's requirement that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled."

4.      While "the primary responsibility and authority for drawing federal congressional legislative districts rests squarely with the state legislature," when "the legislature is unable or chooses not to act, it becomes the judiciary's role to determine the appropriate redistricting plan." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 821-22 (Pa. 2018) (*League of Women Voters I*). It is now clear that Pennsylvania's political branches will not timely act to pass such a plan, requiring the judiciary to step in.

5.      Although Pennsylvania's General Assembly and its Governor have now had months to attempt to reach compromise on a congressional plan, they have not done so. They are not even in agreement over basic criteria: shortly after Governor Wolf explicitly identified the criteria that any congressional plan would need to meet in order to receive his signature, the General Assembly released a plan violating those criteria.

6.      More importantly, however, beyond this dispute over the substance of a new congressional plan, the General Assembly has now adjourned for the remainder of 2021 without passing a new constitutional congressional plan and will not reconvene until January 2022. This delay means that it is now impossible for

Pennsylvania's political branches to reach agreement on a congressional plan by the end of December 2021, the time by which the Department of State previously explained it would be necessary for the political branches to have enacted a map for the 2022 elections to proceed on time.

7. This mimics what happened the last time Pennsylvania began a redistricting cycle in which its political branches were politically split as they are now: they failed to enact a congressional redistricting plan, forcing Pennsylvania's judiciary to take responsibility for enacting a new plan. *See Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992). And, more recently, just three years ago, the General Assembly and Governor Wolf could not agree on a new congressional plan following the Pennsylvania Supreme Court's invalidation of the plan enacted in 2011, forcing the Court to draw its own. *See League of Women Voters of Pa. v. Commonwealth*, 181 A.3d 1083, 1086 (Pa. 2018) (*League of Women Voters II*). This time, too, the Court should intervene to protect the constitutional rights of Petitioners and voters across the Commonwealth.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this Verified Petition for Review under 42 Pa. C.S. § 761(a)(1) because this matter is asserted against Commonwealth officials in their official capacities.

## PARTIES

9.     Petitioners are citizens of the United States and are registered to vote in

Pennsylvania. Petitioners reside in the following congressional districts:

| Petitioner's Name | County of Residence | Congressional District |
|---|---|---|
| Carol Ann Carter | Bucks | 1 |
| Monica Parrilla | Philadelphia | 2 |
| Rebecca Poyourow | Philadelphia | 3 |
| William Tung | Philadelphia | 3 |
| Roseanne Milazzo | Montgomery | 4 |
| Burt Siegel | Montgomery | 4 |
| Susan Cassanelli | Delaware | 5 |
| Lee Cassanelli | Delaware | 5 |
| Lynn Wachman | Chester | 6 |
| Michael Guttman | Chester | 6 |
| Maya Fonkeu | Northampton | 7 |
| Brady Hill | Northampton | 7 |
| Mary Ellen Balchunis | Dauphin | 10 |
| Tom DeWall | Cumberland | 10 |
| Stephanie McNulty | Lancaster | 11 |
| Janet Temin | Lancaster | 11 |

10.     As shown below, Petitioners reside in districts that are overpopulated

relative to other districts in the state. Thus, they are deprived of the right to cast an

equal vote, as guaranteed to them by the U.S. Constitution and the Pennsylvania

Constitution.

11.     Respondent Veronica Degraffenreid is the Acting Secretary of the

Commonwealth and is sued in her official capacity only. In that capacity, Acting

Secretary Degraffenreid is charged with general supervision and administration of

Pennsylvania's elections and election laws. Acting Secretary Degraffenreid is

Pennsylvania's Chief Election Official and a member of the Governor's Executive Board. Among her numerous responsibilities in administering elections, Acting Secretary Degraffenreid is responsible for receiving election results from counties for each congressional district in the Commonwealth, and tabulating, computing, canvassing, certifying, and filing those results. 25 P.S. § 3159.

12.     Respondent Jessica Mathis is the Director for the Bureau of Election Services and Notaries, a branch of the Pennsylvania Department of State, and she is sued in her official capacity only. In this capacity, Director Mathis is charged with supervising and administering the Commonwealth's elections and electoral process. The Bureau of Election Services and Notaries is responsible for planning, developing, and coordinating the statewide implementation of the Election Code.

## FACTUAL ALLEGATIONS

**I.     Pennsylvania's current congressional districts were drawn using 2010 Census data.**

13.     Pennsylvania's current congressional district map was drawn in 2018 as the result of litigation over the map that had been drawn and enacted in 2011.

14.     On January 22, 2018, the Pennsylvania Supreme Court held that the then-controlling congressional district map "plainly and palpably" violated the Pennsylvania Constitution's Free and Equal Elections Clause because it was "corrupted by extensive, sophisticated gerrymandering and partisan dilution." *League of Women Voters I*, 178 A.3d at 741, 821.

15.     The Court provided the General Assembly and the Governor an opportunity to enact a lawful map, but they failed to do so. Thus, the task of drawing a constitutionally compliant map fell to the Court. *See generally League of Women Voters II*, 181 A.3d at 1083.

16.     Because the results of the 2010 Census were the most accurate population data at the time, the Court relied exclusively on that data in drawing a new map.

17.     According to the 2010 Census, Pennsylvania had a population of 12,702,379. Based on that data, the ideal population for each of Pennsylvania's congressional districts (the state's total population divided by the number of districts) in 2010 was 705,688 persons.

18.     The Court-drawn map was adopted on February 19, 2018. *See generally League of Women Voters II*, 181 A.3d at 1083. In it, the districts had perfectly equal populations, with each district's population deviating from all others by no more than one person, based on the 2010 data.

## II.     The 2020 Census is complete.

19.     In 2020, the U.S. Census Bureau conducted the decennial census required by Article I, Section 2 of the U.S. Constitution.

20.     On April 26, 2021, the U.S. Secretary of Commerce delivered the results of the 2020 Census to the President, and on August 12, 2021, the U.S.

Secretary of Commerce delivered census-block results of the 2020 Census to Pennsylvania's Governor and legislative leaders.

21.     The results of the 2020 Census report that Pennsylvania's resident population is 13,002,700. This is a significant increase from a decade ago, when the 2010 Census reported a total population of 12,702,379.

22.     Because Pennsylvania's population growth over the last decade has been slower compared to many other states, however, Pennsylvania lost a congressional district.

23.     Pennsylvania has been apportioned only 17 congressional seats for the next Congress, one fewer than the 18 seats it was apportioned following the 2010 Census.

24.     Thus, beginning with the upcoming 2022 election, Pennsylvania voters will elect only 17 members to the U.S. House of Representatives.

25.     According to the 2020 Census results, the ideal population for each of Pennsylvania's congressional districts under a 17-seat allocation is 722,372, approximately 17,000 more persons per district than under the 2010 Census allocations.

**III.    As a result of significant population shifts, Pennsylvania's congressional districts are unconstitutionally malapportioned.**

26.     In the past decade, Pennsylvania's population has shifted significantly, skewing the presently drawn congressional districts far from population equality.

And now that the 2020 Census is complete, the 2010 population data used to draw those districts are obsolete, making any prior justifications for the existing map's deviations from population equality no longer applicable.

27. In August 2021, the U.S. Secretary of Commerce delivered detailed population data to the Commonwealth of Pennsylvania, which the State may use to tabulate the new population of each subdivision. These data are commonly referred to as "P.L. 94-171 data," a reference to the legislation enacting this process. *See* Pub. L. No. 94-171, 89 Stat. 1023 (1975).

28. This P.L. 94-171 data demonstrated that population shifts since 2010 have rendered Congressional Districts 8, 9, 12, 13, 14, 15, 16, and 18 significantly underpopulated, and Congressional Districts 1, 2, 3, 4, 5, 6, 7, 10, 11, and 17 significantly overpopulated.

29. Due to these population shifts, Pennsylvania's existing congressional districts are unconstitutionally malapportioned.

30. If used in any future election, the current congressional plan will unconstitutionally dilute the strength of Petitioners' votes because they live in districts with populations that are significantly larger than those in which other voters live.

**IV.    As a result of significant population shifts in the past decade across the United States, Pennsylvania's congressional districts are also unlawfully apportioned.**

31.    In addition to malapportionment, Pennsylvania's congressional plan also contains more districts than the number of representatives that Pennsylvanians may send to the U.S. House in the next Congress.

32.    After the 2010 Census, Pennsylvania was allocated 18 seats in the United States House of Representatives.

33.    While Pennsylvania gained population over the past decade, it did not keep pace with the population growth across the rest of the United States, meaning that Pennsylvania is entitled to only 17 congressional seats for the next Congress.

34.    2 U.S.C. § 2c provides that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled."

35.    Because the General Assembly and Governor have not reached agreement on a congressional plan that contains only 17 congressional districts, any future use of Pennsylvania's current apportionment plan would be unlawful.

**V.     Pennsylvania's political branches will not enact lawful congressional district maps in time for the next election.**

36.    In Pennsylvania, congressional district plans are enacted via legislation, which must pass both chambers of the General Assembly and be signed by the Governor (unless the General Assembly overrides the Governor's veto by a two-thirds vote in both chambers). *League of Women Voters I*, 178 A.3d at 742; Pa. Const., Art. III, § 4; Pa. Const., Art. IV, § 15.

37.     The General Assembly and Governor Wolf have had months to reach agreement on a congressional district plan. They have not done so.

38.     Weeks ago, Governor Wolf released criteria that he announced he would consider in deciding whether to approve the General Assembly's proposed congressional plans. These criteria were consistent with Pennsylvania law and straightforward: maps should be compact, contiguous, nearly as equal in population as practicable, should maintain communities of interest, and reflect the state's voter preferences as a whole, to name just a few.

39.     Recently, the Pennsylvania House State Government Committee approved a redistricting plan that violates Governor's Wolf pre-existing criteria for congressional district plans across several fronts. Overall, contrary to Governor Wolf's redistricting criteria, the House Committee's congressional plan is not compact and fails to maintain communities of interest.

40.     For example, the House Committee's congressional plan has several irregularly shaped districts that sprawl unnecessarily from central areas in districts such as CD 5 and CD 6. The House's congressional plan also splits clear communities of interest, by, for example, cracking Harrisburg's AAPI, Black, and Hispanic communities, as well as cracking Hispanic communities in Wilkes-Barre and throughout Chester County.

41.     Even more concerning, however, the Pennsylvania General Assembly

has now adjourned for the year without even passing any congressional plans. By doing so, the General Assembly has jeopardized Pennsylvania's ability to conduct timely 2022 primary elections.

42.  Specifically, the Pennsylvania Department of State has previously explained that it must receive final and legally binding district maps no later than January 24, 2022, and that, to meet that deadline, Pennsylvania's political branches must enact a congressional plan no later than December 2021. *See* State Respondents' Brief in Support of Preliminary Objections to Petitioners' Petition for Review at 5, *Carter v. Degraffenreid*, No. 132 MD 2021 (Sept. 16, 2021).

43.  Because the General Assembly will not reconvene until January 4, 2022, it is no longer even possible for Pennsylvania's political branches to enact such a map by the end of 2021, and the Department of State's timeline cannot be met, thus jeopardizing Pennsylvania's ability to conduct timely elections for 2022.

## VI.  Pennsylvania needs a lawful congressional map imminently.

44.  Voters, candidates, and Pennsylvania's election administration apparatus need new districts, and they need them soon.

45.  Nomination papers for candidates seeking to appear on the ballot for the 2022 partisan primary election begin circulating February 15, 2022. 25 P.S. § 2868. And the deadline for filing those papers falls just a few weeks later. *Id.*

46.  Finalized congressional districts need to be in place as soon as possible,

well before candidates in those districts must begin to collect signatures on their nomination papers. Potential congressional candidates cannot make strategic decisions—including, most importantly, whether to run at all—without knowing their district boundaries. And voters have a variety of interests in knowing as soon as possible the districts in which they reside and will vote, and the precise contours of those districts.

47.     Pennsylvania's judiciary is familiar with resolving this kind of impasse. The last time Pennsylvania's political branches failed to adopt a congressional districting plan after a new census, it fell to the judiciary to adopt a congressional district map for the Commonwealth. *Mellow*, 607 A.2d 204. Similarly, after the Pennsylvania Supreme Court invalidated Pennsylvania's congressional plan three years ago, the General Assembly was unable to come to agreement with Governor Wolf on a new plan, and the judiciary stepped in to adopt a remedial map. *League of Women Voters II*, 181 A.3d at 1086.

48.     Now too, the current impasse over Pennsylvania's congressional district plan must end, and Pennsylvania's judiciary is the only actor able to break the stalemate.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**Violation of Free and Equal Elections Clause
Pa. Const., Art. I, § 5
Congressional Malapportionment**

49.    Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

50.    The Pennsylvania Constitution's Free and Equal Elections Clause provides: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const., Art. I, § 5. This clause "should be given the broadest interpretation, one which governs all aspects of the electoral process, and which provides the people of this Commonwealth an equally effective power to select the representative of his or her choice, and bars the dilution of the people's power to do so." *League of Women Voters I*, 178 A.3d at 814.

51.    The Free and Equal Elections Clause "establish[es] a critical 'leveling' protection in an effort to establish the uniform right of the people of this Commonwealth to select their representatives in government." *Id.* at 807.

52.    The "equality" prong of the Free and Equal Elections Clause requires that voting districts be drawn "by laws which shall arrange all the qualified electors into suitable districts, and make their votes equally potent in the election; so that

- 15 -

some shall not have more votes than others, and that all shall have an equal share." *Id.* at 809 (quoting *Patterson*, 60 Pa. at 75). Thus, any scheme that "has the effect of impermissibly diluting the potency of an individual's vote for candidates for elective office relative to that of other voters will violate the guarantee of 'free and equal' elections afforded by Article I, Section 5." *Id.*

53.    Pennsylvania's current congressional district plan places voters into districts with significantly disparate populations, causing voters in underpopulated districts to have more "potent" votes compared to voters, like Petitioners, who live in districts with comparatively larger populations.

54.    Any future use of Pennsylvania's current congressional district plan would violate Petitioners' right to an undiluted vote under the Free and Equal Elections Clause.

## COUNT II

### Violation of Article I, Section 2 of the United States Constitution
### Congressional Malapportionment

55.    Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

56.    Article 1, Section 2 of the U.S. Constitution provides that members of the U.S. House of Representatives "shall be apportioned among the several States . . . according to their respective Numbers." This provision "intends that when qualified voters elect members of Congress each vote be given as much weight as

- 16 -

any other vote," *Wesberry*, 376 U.S. at 7, meaning that state congressional districts must "achieve population equality 'as nearly as is practicable,'" *Karcher*, 462 U.S. at 730 (quoting *Wesberry*, 376 U.S. at 7-8).

57.    Article I, Section 2 "permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for which justification is shown." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969)). *Any* variation from exact population equality must be narrowly justified. *Id.* at 731. Given this requirement, when the Pennsylvania Supreme Court adopted its own congressional plan in 2018, it crafted a plan in which the population deviation among districts was no more than *one person*. Now, the population deviation among Pennsylvania's congressional districts is far higher, on the order of tens of thousands of people.

58.    In light of the significant population shifts that have occurred since the 2010 Census, and the recent publication of the results of the 2020 Census, the current configuration of Pennsylvania's congressional districts—which was drawn based on 2010 Census data—is now unconstitutionally malapportioned. No justification can be offered for the deviation among the congressional districts because any justification would be based on outdated population data.

59.    Any future use of Pennsylvania's current congressional district plan would violate Petitioners' constitutional right to cast an equal, undiluted vote.

## COUNT III

### Violation of 2 U.S.C. § 2c
### Congressional Malapportionment

60.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

61.     2 U.S.C. § 2c provides that, in a state containing "more than one Representative," "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled."

62.     Pennsylvania's current congressional district plan contains 18 districts. But Pennsylvania is currently allotted only 17 seats in the U.S. House. As a result, the current congressional district plan violates Section 2c's requirement that the number of congressional districts be "equal to the number of Representatives to which [Pennsylvania] is so entitled."

63.     Any future use of Pennsylvania's current congressional district plan would violate 2 U.S.C. § 2c and would unlawfully dilute Petitioners' votes.

### PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that this Court:

a. Declare that the current configuration of Pennsylvania's congressional districts violates Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; and 2 U.S.C. § 2c.

b. Enjoin Respondents, their respective agents, officers, employees, and

successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to Pennsylvania's current congressional district plan;

c.  Adopt a new congressional district plan that complies with Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; and 2 U.S.C. § 2.

d.  Award Petitioners their costs, disbursements, and reasonable attorneys' fees; and

e.  Grant such other and further relief as the Court deems just and proper.

Dated: December 17, 2021

Lalitha D. Madduri*
Christina A. Ford*
Jyoti Jasrasaria*
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
lmadduri@elias.law
cford@elias.law
jjasrasaria@elias.law
T: (202) 968-4490

Abha Khanna*
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
T: (206) 656-0177

Respectfully submitted,

*/s/ Edward D. Rogers*
Edward D. Rogers, No. 69337
Marcel S. Pratt, No. 307483
Robert J. Clark, No. 308105
Michael R. McDonald, No. 326873
Paul K. Ort, No. 326044
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

* *pro hac vice* forthcoming

- 19 -

Matthew Gordon*
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

## **VERIFICATION**

I, Rebecca Poyourow, hereby state:

      1.     I am a petitioner in this action;

      2.     I verify that the statements made in the foregoing Petition for Review are true and correct to the best of my knowledge, information, and belief; and

      3.     I understand that the statements in said Petition for Review are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signed: _____

## <u>NOTICE TO PLEAD</u>

**TO:**    Acting Secretary Veronica Degraffenreid
      Pennsylvania Department of State
      Office of the Secretary
      302 North Office Building, 401 North Street
      Harrisburg, PA 17120

      Director Jessica Mathis
      Pennsylvania Bureau of Election Services and Notaries
      210 North Office Building, 401 North Street
      Harrisburg, PA 17120

    You are hereby notified to file a written response to the enclosed

Petition for Review within thirty (30) days from service hereof or a judgment may

be entered against you.

Dated:   December 17, 2021

            */s/ Edward D. Rogers*
            Edward D. Rogers, No. 69337
            Ballard Spahr LLP
            1735 Market Street, 51st Floor
            Philadelphia, PA 19103
            RogersE@ballardspahr.com
            T: (215) 665-8500
            F: (215) 864-8999

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I caused the foregoing

Petition for Review to be served upon the following parties and in the manner

indicated below, which service satisfies the requirements of Pa. R.A.P. 1514 and

121:

<u>By Certified Mail:</u>

Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

<u>By Certified Mail and PACFile:</u>

Office of Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120

Dated:        December 17, 2021

*/s/ Edward D. Rogers*
Edward D. Rogers, No. 69337
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

# Exhibit E

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carol Ann Carter, Monica Parrilla, | : | **CASES CONSOLIDATED** |
| Rebecca Poyourow, William Tung, | : | |
| Roseanne Milazzo, Burt Siegel, | : | |
| Susan Cassanelli, Lee Cassanelli, | : | |
| Lynn Wachman, Michael Guttman, | : | |
| Maya Fonkeu, Brady Hill, Mary Ellen | : | |
| Balchunis, Tom DeWall, | : | |
| Stephanie McNulty and Janet Temin, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 464 M.D. 2021 |
| | : | |
| Veronica Degraffenreid, in her official | : | |
| capacity as the Acting Secretary of the | : | |
| Commonwealth of Pennsylvania; | : | |
| Jessica Mathis, in her official capacity | : | |
| as Director for the Pennsylvania Bureau | : | |
| of Election Services and Notaries, | : | |
| Respondents | : | |

| | | |
|---|---|---|
| Philip T. Gressman; Ron Y. Donagi; | : | |
| Kristopher R. Tapp; Pamela Gorkin; | : | |
| David P. Marsh; James L. Rosenberger; | : | |
| Amy Myers; Eugene Boman; | : | |
| Gary Gordon; Liz McMahon; | : | |
| Timothy G. Feeman; and Garth Isaak, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 465 M.D. 2021 |
| | : | |
| Veronica Degraffenreid, in her official | : | |
| capacity as the Acting Secretary of the | : | |
| Commonwealth of Pennsylvania; | : | |
| Jessica Mathis, in her official capacity | : | |
| as Director for the Pennsylvania Bureau | : | |
| of Election Services and Notaries, | : | |
| Respondents | : | |

**PER CURIAM**                            **O R D E R**

AND NOW, this 20th day of December, 2021, in consideration of the petitions for review filed in the above-consolidated actions, which are addressed to this Court's original jurisdiction, and consistent with the process established in *Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992), it is hereby ORDERED:

1.      Any applications to intervene, *see* Pa. R.A.P. 1531(b), shall be filed by December 31, 2021.  Answers thereto shall be due within four (4) days of the date the application to intervene is filed.

2.      Any party to this proceeding who wishes to submit to the Court for its consideration a proposed 17-district congressional reapportionment plan consistent with the results of the 2020 Census shall file the proposed plan by January 28, 2022.

3.      If the General Assembly and the Governor fail to enact a congressional reapportionment plan by January 30, 2022, the Court will select a plan from those plans timely filed by the parties.

4.      In the event the Court must select a congressional reapportionment plan, the Court will hold a final hearing beginning on January 31, 2022, to receive evidence and consider all timely filed proposed plans. The Court will also consider revisions to the 2022 election schedule/calendar as part of the hearing.  The hearing will begin at 9:30 a.m. in Courtroom 3001 of the Pennsylvania Judicial Center, Harrisburg, PA.  It shall be the responsibility of Petitioners to secure the services of a court reporter(s) throughout the duration of the hearing.

5.      Consistent with the authority granted to the General Assembly under the Elections Clause of the United States Constitution, art. I, § 4, cl. 1, Petitioners are hereby directed to serve immediately a copy of this Order on the Pennsylvania Senate Majority and Democratic Leaders and on the Pennsylvania House of Representatives Majority and Democratic Leaders and file proof of service with this Court.