IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | |
|---|---|
| CAROL ANN CARTER, MONICA PARRILLA, REBECCA POYOUROW, WILLIAM TUNG, ROSEANNE MILAZZO, BURT SIEGEL, SUSAN CASSANELLI, LEE CASSANELLI, LYNN WACHMAN, MICHAEL GUTTMAN, MAYA FONKEU, BRADY HILL, MARY ELLEN BALCHUNIS, TOM DEWALL, STEPHANIE MCNULTY AND JANET TEMIN,<br><br>                    Petitioners<br><br>                v.<br><br>VERONICA DEGRAFFENREID, IN HER OFFICIAL CAPACITY AS THE ACTING SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA; JESSICA MATHIS, IN HER OFFICIAL CAPACITY AS DIRECTOR FOR THE PENNSYLVANIA BUREAU OF ELECTION SERVICES AND NOTARIES,<br><br>                    Respondents | No. 141 MM 2021 |

## ORDER

**PER CURIAM**

**AND NOW**, this 10th day of January, 2022, the Application for Extraordinary Relief is DENIED, WITHOUT PREJUDICE to Petitioners to reapply for similar relief in this Court, as future developments may dictate. Additionally, the denial is without prejudice to Petitioners to file an application in the Commonwealth Court, requesting that court to accelerate the timetable set forth in its December 20, 2021 scheduling order.

The Application for Leave to File Proposed Intervenors-Petitioners' Response and the Application to Intervene of Senator Jay Costa, et al., are DISMISSED AS MOOT.

Justice Wecht files a dissenting statement.

Justice Donohue notes her dissent.

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | |
|---|---|
| CAROL ANN CARTER, MONICA PARRILLA, REBECCA POYOUROW, WILLIAM TUNG, ROSEANNE MILAZZO, BURT SIEGEL, SUSAN CASSANELLI, LEE CASSANELLI, LYNN WACHMAN, MICHAEL GUTTMAN, MAYA FONKEU, BRADY HILL, MARY ELLEN BALCHUNIS, TOM DEWALL, STEPHANIE MCNULTY AND JANET TEMIN,<br><br>    Petitioners<br><br>v.<br><br>VERONICA DEGRAFFENREID, IN HER OFFICIAL CAPACITY AS THE ACTING SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA; JESSICA MATHIS, IN HER OFFICIAL CAPACITY AS DIRECTOR FOR THE PENNSYLVANIA BUREAU OF ELECTION SERVICES AND NOTARIES,<br><br>    Respondents | : No. 141 MM 2021 |

## DISSENTING STATEMENT

**JUSTICE WECHT**                     **FILED: January 10, 2022**

   I disagree with the Court's decision not to assume plenary jurisdiction of this matter under the power of extraordinary jurisdiction we are granted by 42 Pa.C.S. § 726. The adoption of a congressional map that satisfies the dictates of state and federal law is of immediate public importance to the citizens of the Commonwealth,[1] and considerations

---

[1] *League of Women Voters v. Commonwealth*, 178 A.3d 737, 766-67 & n.35 (Pa. 2018).

occasioned by further delay of these proceedings counsel strongly in favor of this Court's intervention. Neither the parties nor the proposed intervenors object to the commencement of parallel judicial proceedings in furtherance of expediting a potential resolution while the political branches continue to seek agreement over a map that can be adopted by the General Assembly and signed into law by the Governor, which would render this case moot. Although redistricting "is primarily the duty and responsibility of the State through its legislature or other body,"[2] unless and until the political process produces such a map, this Court must be prepared to act to safeguard and vindicate the guarantee of "free and equal" elections and the equal protection of the law.[3]

Presently, our principal concern at this stage is time. The Commonwealth Court has established a deadline of January 30, 2022, for the political branches to adopt a congressional map, with court proceedings to follow should those branches fail to do so. For its part, the Department of State has indicated a preference for having a final map chosen by January 24. While neither of these dates is statutorily mandated, practically speaking any judicial resolution of this matter is temporally cabined by the election calendar, which is set forth in the Election Code. Pennsylvania's primary election is scheduled for May 17, 2022.[4] Accordingly, the first day that candidates for Congress may circulate and file nomination petitions to seek a political party's nomination for those

---

[2]   *Chapman v. Meier*, 420 U.S. 1, 27 (1975).

[3]   *See* Pa. Const. art. I, § 5; U.S. Const. amend. XIV.

[4]   *See* 25 P.S. § 2753(a) ("There shall be a General primary preceding each general election which shall be held on the third Tuesday of May in all even-numbered years, except in the year of the nomination of a President of the United States . . . . Candidates for all offices to be filled at the ensuing general election shall be nominated at the General primary.").

offices at the "General primary" is February 15, and they must be filed by March 8.[5] Those seeking the nomination of political bodies may begin circulating nominating papers on March 9, with a filing deadline of August 1.[6]

Federal law provides something of a backstop in the event that a State fails to adopt a congressional map in accordance with the constitutionally mandated reapportionment process following a decennial census:

> Until a State is redistricted in the manner provided by the law thereof after an apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: . . . (5) if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large.

2 U.S.C. § 2a(c). Pennsylvania has not resorted to this method since that federal law was adopted. In fact, Pennsylvania has not elected the entirety of its congressional delegation using at-large districts since the eighteenth century. The Commonwealth utilized a statewide general ticket in 1788 for the First United States Congress, adopted congressional districts for the election of 1790, and then reverted to at-large elections in 1792 for the Third Congress. Although at-large elections occasionally were used to elect a handful of Representatives in the late nineteenth- and early-twentieth centuries—with no more than four members of Congress elected in that manner in a given election year—Congress reserved statewide general tickets for special use with the 1842 Apportionment Bill. Since 1967, States have been obligated to "establish[] by law a number of districts

---

[5] *See id.* § 2868 (providing that "[n]o nomination petition shall be circulated prior to the thirteenth Tuesday before the primary, and no signature shall be counted unless it bears a date affixed not earlier than the thirteenth Tuesday nor later than the tenth Tuesday prior to the primary").

[6] *See id.* § 2913(b) (providing that "[n]o nomination paper shall be circulated prior to the tenth Wednesday prior to the primary, and no signature shall be counted unless it bears a date affixed not earlier than the tenth Wednesday prior to the primary nor later than the second Friday subsequent to the primary").

equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established, no district to elect more than one Representative . . . ." *Id.* § 2c.  Moreover, to risk defaulting to at-large elections now would raise significant equal protection and Voting Rights Act concerns given the dilutive effect that exclusively statewide congressional elections would have upon minority voters, particularly in Philadelphia County.

Given these weighty concerns and the tight time frame that will result from leaving the case with the Commonwealth Court to adjudicate in the meanwhile, our immediate intervention is warranted.  To that end, I would take jurisdiction now and appoint a special master to consolidate this matter and its companion case, to resolve the numerous pending intervention petitions, to solicit proposed maps along with the requisite constitutional and technical analyses, and to make a recommendation to this Court as to which map should be adopted, which we may then consider *de novo* with or without additional changes.  Otherwise, delays arising from the typical trial and appellate process may drag out our ultimate resolution of this case until mid-March or even April.  This expedited approach is not without precedent; in *Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992), the political branches failed to timely promulgate a congressional map using data from the 1990 census, following which the Commonwealth lost two congressional seats.  On that occasion, this Court stepped in to ensure that federal law was complied with and that Pennsylvanians' due representation was assured by an orderly election.  Because time is of the essence, I see no good reason not to follow that example today.

For these reasons, I respectfully dissent.