UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAMSPORT DIVISION

| | |
|---|---|
| **William C. Toth Jr.**, et al.<br><br>Plaintiffs,<br><br>v.<br><br>**Lehigh M. Chapman**, et al.,<br><br>Defendants | Case No. 1:22-cv-00208-JPW |

### BRIEF IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

On February 9, 2022, the Supreme Court of Pennsylvania announced that it was "suspending" the General Primary Election calendar codified in 25 Pa. Stat. §§ 2868 and 2873. *See* Exhibit 1. But the state's election officials are constitutionally forbidden to disregard the primary-election calendar that the Pennsylvania legislature has established for congressional and senatorial elections. Under the U.S. Constitution, the "legislature" of each state is charged with prescribing the "times, places, and manner" of electing Senators and Representatives. *See* U.S. Const. art. I, § 4, cl. 1. The state judiciary has no authority to alter or "suspend" the primary-election calendar that the legislature has enacted, and it is constitutionally prohibited from doing so. The state supreme court's attempt to "suspend" the legislature's primary-election calendar is also inflicting irreparable injury by hindering Mr. Bognet's and Mr.

Bashir's campaigns, and by threatening Mr. Hall's ability to fulfill his obligations as a member of the Susquehanna County Board of Elections. The Court should promptly order state officials to adhere to the General Primary Election calendar that the legislature enacted—as the Constitution requires—rather than the unconstitutional edict announced by Supreme Court of Pennsylvania.

The Supreme Court of Pennsylvania also intends to impose a court-drawn congressional map for the 2022 elections, because the General Assembly and Governor Wolf have been unable to agree on a new map in time for the primary. On Friday the state supreme court held oral argument on this matter, and it is clear that the Court intends to announce a court-drawn map to govern the 2022 congressional elections in the next few days or weeks. But any map imposed by the state supreme court will be flatly unconstitutional. The Elections Clause says that "the Legislature"—not the judiciary—must "prescribe" the manner of electing representatives, and the General Assembly has not authorized the state judiciary to draw congressional maps or participate in the redistricting process. If the General Assembly fails to enact a new congressional map in time for the 2022 primary elections, then the remedy is set forth in 2 U.S.C. § 2a(c)(5): The state's congressional delegation shall be elected at-large.

> Until a State is redistricted in the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: . . . (5) if there is a decrease in the number of Representatives and the number of districts in such State

> exceeds such decreased number of Representatives, they shall be elected from the State at large.

2 U.S.C. § 2a(c). The court should order state election officials to conduct at-large elections for the state's 2022 congressional delegation, regardless of anything that the state supreme court might say, unless and until the General Assembly enacts a new congressional map.

## FACTS

The state of Pennsylvania lost a congressional seat in the most recent decennial census. Before the 2020 census, Pennsylvania had 18 seats in the U.S. House of Representatives. But the results of the 2020 census left Pennsylvania with 17 seats, one less than before. *See* U.S. Dept. of Commerce, Table 1. Apportionment Population and Number of Representatives by State: 2020 Census.

On August 20, 2021, the census-block results of the 2020 Census were delivered to Governor Wolf and the leaders of the General Assembly. This allowed the legislature to begin the process of drawing a new congressional map. On December 15, 2021, the House State Government Committee approved a new congressional map (HB 2541), in a 14-11 vote. The General Assembly eventually passed HB 2541, but it was vetoed by Governor Wolf on January 26, 2022.

On December 17, 2021, eighteen voters filed a lawsuit in the Commonwealth Court of Pennsylvania, asking the state judiciary to impose a map for the 2022 congressional elections. *See* Exhibit 1. Later that day, a separate group

of twelve voters filed a similar lawsuit. The Commonwealth Court consolidated the two redistricting cases on December, 20, 2021, and the cases were assigned to Judge Patricia McCullough.

On December 21, 2021, the petitioners in those cases filed an application for extraordinary relief in the Supreme Court of Pennsylvania, asking the state supreme court to exercise extraordinary jurisdiction over the case. *See* Exhibit 2. On January 10, 2022, the state supreme court declined to invoke its extraordinary jurisdiction and denied the application for extraordinary relief without prejudice. *See* Exhibit 3.

On January 14, 2022, Judge McCullough ordered all parties and intervenors to submit proposed maps and expert reports by January 24, 2022. Judge McCullough also scheduled an evidentiary hearing for January 27 and 28, 2022, and announced that if the General Assembly "has not produced a new congressional map by January 30, 2022, the Court shall proceed to issue an opinion based on the hearing and evidence presented by the Parties." *See* Exhibit 4. On January 26, 2022, Governor Wolf vetoed HB 2541, a congressional map that had been approved by the General Assembly. On January 27 and 28, 2022, Judge McCullough presided over the evidentiary hearings that had been scheduled in her order of January 14, 2022.

On January 29, 2022, the petitioners in the state redistricting lawsuit filed a new "emergency application" with the Supreme Court of Pennsylvania, asking the state supreme court to immediately exercise "extraordinary jurisdiction" and take over the redistricting litigation from Judge McCullough. *See*

Exhibit 5. On February 1, 2022, Judge McCullough announced that her ruling in the redistricting cases would issue no later than February 4, 2022.

On February 2, 2022, before Judge McCullough had issued her ruling, the Pennsylvania Supreme Court granted the application to exercise extraordinary jurisdiction. The state supreme court's order designated Judge McCullough to serve as a "Special Master," and instructed her to file with the Supreme Court of Pennsylvania, on or before February 7, 2022, "a report containing proposed findings of fact and conclusions of law supporting her recommendation of a redistricting plan from those submitted to the Special Master, along with a proposed revision to the 2022 election schedule/calendar." *See* Exhibit 6. Justice Mundy and Justice Brobson dissented from the state supreme court's order granting extraordinary relief and exercising extraordinary jurisdiction.

On February 7, 2022, Judge McCullough issued her findings and recommended that the map approved by the General Assembly (HB 2541) be used as the congressional map. *See* Exhibit 7. On February 9, 2022, the state supreme court issued an order sua sponte that purports to "suspend" the General Primary Election calendar codified in 25 Pa. Stat. §§ 2868 and 2873. *See* Exhibit 8. No litigant had asked the state supreme court to suspend the primary-election calendar or issue an order of that sort.

The state supreme court held oral arguments on Judge McCullough's findings and recommendation on February 18, 2022.

## I. The Plaintiffs Are Entitled To A TRO Or Preliminary Injunction

In deciding whether to issue a TRO or preliminary injunction, a Court must consider four factors: (1) whether the movant has "a reasonable probability of eventual success in the litigation"; (2) whether the movant "will be irreparably injured . . . if relief is not granted"; (3) "the possibility of harm to other interested persons from the grant or denial of the injunction"; and (4) "the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176–77 (3d Cir. 2017). All four factors favor relief.

### A. The Plaintiffs Are Likely To Succeed On The Merits

The state supreme court's order that "suspends" the General Primary Election is a flagrant violation of the Elections Clause. Under the Constitution, only "the Legislature" of a state may "prescribe" the manner of electing its Senators and Representatives. *See* U.S. Const. art. I, § 4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations."). The state judiciary is not part of "the Legislature," so it cannot "suspend" the congressional primary election calendar that the legislature has "prescribed"—and it cannot replace the legislatively enacted primary calendar with a calendar of its own choosing. Nor is there any statute or constitutional provision that purports to delegate the General Assembly's power to prescribe the deadlines for congres-

sional primary elections to the state judiciary or any other institution of government. *See, e.g.*, *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015). The defendants must therefore enforce the General Primary Election calendar that "the Legislature" has "prescribed"—regardless of any edict that might emanate from the state judiciary. *See* U.S. Const. art. 1, § 4, cl. 1. The Court should promptly restore the legislatively prescribed primary calendar and enjoin the defendants from departing from it.

The state supreme court's efforts to impose a court-drawn congressional map are equally unconstitutional. Under the Elections Clause of the U.S. Constitution, "the Legislature" of Pennsylvania must prescribe the "manner" by which its representatives are elected, while Congress "may at any time by Law make or alter such Regulations." U.S. Const. art. I, § 4, cl. 1; *see also id.* ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations."). The powers conferred by the Elections Clause include the prerogative to draw a new congressional map in response to the decennial census. *See Arizona State Legislature*, 576 U.S. 787.

The Pennsylvania legislature, however, has not yet enacted a congressional map for the 2022 elections. Although the General Assembly passed a new congressional map earlier this year, it was vetoed by Governor Wolf. *See Smiley v. Holm*, 285 U.S. 355 (1932) (redistricting legislation that is vetoed by the governor is not "prescribed . . . by the Legislature" within the meaning of the

Elections Clause). In the meantime, a group of litigants has repaired to state court in the hopes of inducing the Supreme Court of Pennsylvania to impose a congressional map for the 2022 elections—and the state supreme court held oral arguments on this matter on February 18, 2022. But the state supreme court is constitutionally forbidden to draw a map for the state's congressional races, because the Elections Clause requires "the Legislature" (not the judiciary) to "prescribe" the manner of electing representatives, and the General Assembly has not authorized the state judiciary to draw congressional maps or participate in the redistricting process. The state judiciary must therefore wait for the General Assembly to act. And any attempt by the state judiciary to usurp the legislature's constitutionally assigned role must be disregarded by state officials, who are compelled to honor the Elections Clause over any contrary edicts from a state court.

It is also too late for the Supreme Court of Pennsylvania to draw a congressional map for the 2022 elections without disrupting the election process that the state legislature has prescribed. Under Pennsylvania law, candidates for Congress are to begin circulating their nomination petitions on February 15, 2022, and their final day to obtain signatures to appear on the ballot is March 8, 2022. 25 Pa. Stat. § 2753. The state supreme court cannot impose a congressional map at this late date without cutting into the three-week period that the legislature has provided for obtaining the needed signatures to appear on the ballot. The state supreme court appears to have recognized as much, be-

cause its order on February 9, 2022, purports to "suspend" the General Primary Election calendar codified in 25 Pa. Stat. §§ 2868 and 2873, in flat contravention of the Elections Clause. *See* Exhibit 8. The defendants have also acknowledged in the state-court proceedings that a court-imposed map will lead to "disruption of the 2022 elections," and that "changes to the 2022 election calendar" will become "necessary":

> The Secretary of the Commonwealth is Pennsylvania's chief election official, and Respondents are both election administrators charged with ensuring that Pennsylvania's elections are conducted in a fair, lawful, and orderly manner. Thus, in this litigation, Respondents' roles are two-fold: (1) to provide the Court with information where necessary; and (2) to *minimize disruption of the 2022 elections* by keeping the Court and the other parties apprised of election schedules and potential alterations to those schedules. In keeping with those roles, Respondents respectfully submit these Exceptions to assist the Court in determining *what changes to the 2022 election calendar are feasible and necessary based on the existence of other deadlines and the demands of election administration*.

Respondents' Exceptions Regarding The Special Master's Proposed Revision To The 2022 Election Calendar/Schedule, *Carter v. Chapman*, No. 7 MM 2022 (Pa.) at 1 (emphasis added) (footnote omitted) (attached as Exhibit 9). The defendants have also warned the Supreme Court of Pennsylvania that a judicial order changing the primary date for the state's congressional and senatorial elections "would be challenged under the Elections Clause." *Id.* at 2. The defendants, however, have made no attempt to explain how the Elections Clause would allow the state judiciary to modify other statutory deadlines in

the General Primary Calendar, despite the fact that they have asked the Supreme Court of Pennsylvania to make extensive and far-reaching revisions to those deadlines. *See id.* at 5–14.

When it becomes impossible for a new map to be drawn without disrupting the calendars and deadlines that the legislature has prescribed, the state election officials (and the state judiciary) must obey the command of 2 U.S.C. § 2a(c)(5) and hold at-large elections:

> Until a State is redistricted in the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: . . . (5) if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large.

2 U.S.C. § 2a(c). The State has not yet been "redistricted in the manner provided by the law thereof," because the General Assembly has not enacted a new congressional map and no court has imposed one. And because there is no longer time to draw a new congressional map given the deadlines prescribed in the General Primary Election calendar, the courts must order at-large elections as required by 2 U.S.C. § 2a(c)(5). *See Branch v. Smith*, 538 U.S. 254, 273–76 (2003) (plurality opinion of Scalia, J.) (holding that 2 U.S.C. § 2a(c) is triggered when "the election is so imminent that no entity competent to complete redistricting pursuant to state law . . . is able to do so without disrupting

the election process"). Having a court "suspend" or delay the primary-election calendar to accommodate the judicial creation of a new congressional map is not an option.

The Elections Clause also requires state election officials to implement the requirements of 2 U.S.C. § 2a(c)(5) if there is insufficient time to draw a new congressional map without altering the deadlines prescribed in the General Primary Election calendar. Congress, in enacting 2 U.S.C. § 2a(c)(5), has "ma[de] . . . Regulations" that govern the election of representatives pursuant to its authority under the Elections Clause, and the state officials are constitutionally obligated to follow this congressional command rather than any court-drawn map or "suspension" order. The Supreme Court of Pennsylvania is constitutionally forbidden to "suspend" or alter a congressional primary calendar that the legislature has prescribed, and it cannot remedy the failure to enact a new congressional map by disrupting the election process rather than ordering at-large elections under 2 U.S.C. § 2a(c)(5).

The notion that the Supreme Court of Pennsylvania can replace the fallback regime that Congress has established in 2 U.S.C. § 2a(c)(5) with a congressional map of its own creation violates the Constitution in at least two respects. First, it usurps the authority that the Elections Clause assigns to the state legislature, because the Elections Clause gives "the Legislature" and not the judiciary the power to "prescribe" the manner of electing representatives. Second, it usurps the authority that the Elections Clause confers upon Con-

gress, because Congress has enacted a statute requiring Pennsylvania's representatives to be elected at large if the General Assembly fails to enact a map in time for the 2022 primary elections. The Court should therefore enter injunctive relief that compels the defendants to hold at-large elections for the 2022 Pennsylvania congressional delegation, notwithstanding any ruling that might issue from the Supreme Court of Pennsylvania, unless and until the General Assembly enacts a new congressional map.

### B. The Plaintiffs Will Suffer Irreparable Harm Absent Relief From This Court

The plaintiffs are suffering irreparable harm from the defendants' failure to obey the requirements of the Elections Clause and 2 U.S.C. § 2a(c). Plaintiffs Bognet and Bashir are candidates for Congress who have been unable to gather signatures for their nomination petitions, even though the legislatively prescribed calendar allowed them to begin doing so on February 15, 2022. *See* Bognet Decl. ¶ 17 (attached as Exhibit 10); Bashir Decl. ¶ 11 (attached as Exhibit 11). The purported "suspension" of the General Primary Calendar has also left their campaigns in limbo, as they have no idea where the congressional district lines will be drawn, who their voters will be, or who their primary and general-election opponents will be. *See* Bognet Decl. ¶¶ 4–9, 19; Bashir Decl. ¶¶ 3–6, 17. It has also hindered their fundraising. *See* Bognet Decl. ¶¶ 10–12; Bashir Decl. ¶¶ 8–10. These injuries are especially harmful to challengers who

are attempting to unseat incumbents, as challengers must act quickly to establish name recognition and organize an effective campaign. *See* Bognet Decl. ¶¶ 13–16.

Plaintiff Alan Hall is also suffering irreparable harm as a member of the Susquehanna County Board of Elections. Mr. Hall is currently unable to prepare for the upcoming May 2022 primary because the defendants are refusing to implement the at-large congressional elections required by 2 U.S.C. § 2a(c)(5), and are instead waiting on the Supreme Court of Pennsylvania to impose an unconstitutional court-drawn map. *See* Hall Decl. ¶ 5 (attached as Exhibit 12). Mr. Hall's office has no idea when it will begin receiving nominating petitions, because the defendants are complying with the state supreme court's unconstitutional "suspension" of the General Primary Calendar—rather than obeying the Elections Clause, which requires state officials to honor the calendar that "the Legislature" has "prescribed." U.S. Const. art. I, § 4, cl. 1; *see also* Hall Decl. ¶ 7. The defendants are also threatening Mr. Hall's ability to comply with the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), which requires his office to send absentee ballots to overseas military members at least 45 days before the primary election. *See* 52 U.S.C. § 20302(a)(8)(A); Hall Decl. ¶ 10. None of these injuries can be compensated with monetary relief after trial, as each of the defendants enjoys sovereign immunity from damages. *See Marland v. Trump*, 498 F. Supp. 3d 624, 642 (E.D. Pa. 2020).

### C. The Balance Of Equities Favors A TRO Or Preliminary Injunction

The third factor requires a court to consider the balance of equities, which includes consideration of harms to others from the grant or denial of an injunction. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176–78 (3d Cir. 2017). But the unconstitutionality of the defendants' conduct is clear, and the need to enforce the commands of the Elections Clause outweighs any harms that might befall others from an injunction. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 597 (3d Cir. 2002) ("[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." (citation and internal quotation marks omitted)). There will be doubtless be some congressional candidates and voters who will benefit from an unconstitutional map drawn by the Supreme Court of Pennsylvania—and who will therefore be harmed by an injunction that compels the defendants to follow the Elections Clause rather than the edicts of the Pennsylvania judiciary. But other candidates and voters will benefit from the proposed injunction, and the Constitution trumps in these situations.

### D. The Public Interest Favors A TRO Or Preliminary Injunction

A preliminary injunction will ensure that the Constitution and federal statutes are obeyed, which is by definition in the public interest. *See Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 179 (3d Cir. 2018); *Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 884 (3d Cir. 1997).

## II. THE COURT SHOULD EXPEDITE CONSIDERATION OF THIS MOTION

According to the General Primary Election calendar, the nominating petitions should have begun circulating on Tuesday, February 15, 2022. The unconstitutional "suspension" of the legislatively prescribed calendar should be rectified as soon as possible. We respectfully ask the Court to grant an immediate TRO and instruct the defendants to respond within seven days of this filing.

## CONCLUSION

The motion for TRO and preliminary injunction should be granted. The Court should expedite its consideration of this motion.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| WALTER S. ZIMOLONG III | JONATHAN F. MITCHELL |
| Pennsylvania Bar No. 89151 | Pennsylvania Bar No. 91505 |
| Zimolong LLC | Mitchell Law PLLC |
| Post Office Box 552 | 111 Congress Avenue, Suite 400 |
| Villanova, Pennsylvania 19085 | Austin, Texas 78701 |
| (215) 665-0842 | (512) 686-3940 (phone) |
| wally@zimolonglaw.com | (512) 686-3941 (fax) |
| | jonathan@mitchell.law |

Dated: February 21, 2022       *Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that I will serve this document by e-mail upon the following counsel, who represent the defendants in the state-court redistricting litigation:

Robert A. Wiygul
Cary L. Rice
John B. Hill
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103-6933
(215) 568-6200
rwiygul@hangley.com
crice@hangley.com
jhill@hangley.com

Joe H. Tucker Jr.
Dimitri Mavroudis
Jessica Rickabaugh
Tucker Law Group
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
(215) 875-0609
jtucker@tlgattorneys.com
dmavroudis@tlgattorneys.com
jrickabaugh@tlgattorneys.com

Caleb Curtis Enerson
Office Of Attorney General
15th Floor, Strawberry Square
Harrisburg, Pennsylvania 17120
1600 Arch Street, Suite 300
Philadelphia, Pennsylvania 19103
(717) 787-2717
cenerson@attorneygeneral.gov

Gregory G. Schwab
Office of General Counsel
333 Market Street
Harrisburg, Pennsylvania 17101
gschwab@ogc.pa.gov

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs*