**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM C. TOTH JR., *et al.*, | : | |
| *Plaintiffs,* | : | |
| | : | No. 1:22-cv-00208-JPW |
| v. | : | |
| | : | Honorable Jennifer P. Wilson |
| LEIGH M. CHAPMAN, *et al.*, | : | |
| *Defendants.* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO INTERVENE AS DEFENDANTS</u>**

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................1

**BACKGROUND** ...............................................................................................2

**ARGUMENT** ....................................................................................................5

   I.  The Carter Petitioners are entitled to intervene as a matter of right under
     Rule 24(a)(2)...............................................................................................6

     A.  The Carter Petitioners' motion to intervene is timely..............................6

     B.  The Carter Petitioners possess a significant, legally cognizable interest in
       this litigation...........................................................................................7

     C.  The disposition of this lawsuit will impair the Carter Petitioners' ability
       to protect their interests.......................................................................10

     D.  The Carter Petitioners' interests are not adequately represented by
       Defendants............................................................................................12

   II. In the alternative, the Carter Petitioners request that the Court grant them
     permission to intervene under Rule 24(b). .................................................15

**CONCLUSION**................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
   701 F.3d 938 (3d Cir. 2012) ..............................................................7

*Branch v. Smith*,
   538 U.S. 254 (2003)..........................................................................10

*Brody By and Through Sugzdinis v. Spang*,
   957 F.2d 1108 (3d Cir. 1992) .........................................................11

*Carter v. Degraffenreid*,
   No. 132 M.D. 2021, 2021 WL 4735059 (Pa. Commw. Ct. Oct. 8, 2021) ........3

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ..........................................................10

*Corman v. Torres*,
   287 F. Supp. 3d 558 (M.D. Pa. 2018)..............................................14

*Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*,
   54 F.3d 156 (3d Cir. 1995) .............................................................12

*Growe v. Emison*,
   507 U.S. 25 (1993)..............................................................................9

*Harris v. Pernsley*,
   820 F.2d 592 (3d Cir. 1987) ........................................................6, 10

*Hoots v. Pennsylvania*,
   672 F.2d 1133 (3d Cir. 1982) .........................................................15

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) .............................................................7

*Jansen v. City of Cincinnati*,
   904 F.2d 336 (6th Cir. 1990) ............................................................8

*Kleissler v. U.S. Forest Serv.*,
   157 F.3d 964 (3d Cir. 1998) ...........................................................12

*Mausolf v. Babbitt*,
    85 F.3d 1295 (8th Cir. 1996) ............................................................................12

*Teague v. Bakker*,
    931 F.2d 259 (4th Cir. 1991) ............................................................................11

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)............................................................................12

*United States v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3d Cir. 1994) ............................................................................11

**Statutes**

2 U.S.C. § 2c ............................................................................ 3, 6, 9, 11

Fed. R. Civ. P. 24 ............................................................................ 2, 6, 10, 15

Fed. R. Civ. P. 24(a)(2) ............................................................................2, 6

Rule 24(a)(2) ............................................................................6

Rule 24(b)(1)(B) ............................................................................6

**INTRODUCTION**

This lawsuit is a collateral attack on litigation pending in the Pennsylvania Supreme Court, which was brought by a group of Pennsylvania voters (the "Carter Petitioners").[1] The Carter Petitioners first initiated that state court action two months ago, when it became evident that Pennsylvania's political branches would reach an impasse and not enact a lawful congressional map during this redistricting cycle in time for the coming election deadlines. Now that the Pennsylvania Supreme Court is on the cusp of approving a map that would remedy the Carter Petitioners' (and millions of other Pennsylvania voters') injuries, the Plaintiffs in this case have taken the radical step of initiating this action in the hopes that they can convince the federal judiciary to void the Pennsylvania Supreme Court's remedy. Specifically, Plaintiffs ask this Court to effectively override and nullify the Pennsylvania Supreme Court's order and whatever new map it adopts by directing Defendants to implement an at-large election. As such, this lawsuit unquestionably implicates the Carter Petitioners' interests. Not only does it threaten the remedy that they have worked to secure in the

---

[1] The proposed intervenors are Carol Ann Carter, Monica Parrilla, Rebecca Poyourow, William Tung, Roseanne Milazzo, Burt Siegel, Susan Cassanelli, Lee Cassanelli, Lynn Wachman, Michael Guttman, Maya Fonkeu, Brady Hill, Mary Ellen Balchunis, Tom Dewall, and Stephanie McNulty. In the action now pending before the Pennsylvania Supreme Court, the proposed intervenors (along with an additional individual voter who joined that suit but is not seeking intervention here) are styled as "petitioners." *Carter v. Chapman*, No. 7 MM 2022, 2022 WL 304580 (Pa. Feb. 2, 2022). Accordingly, this motion refers to the proposed intervenors as the "Carter Petitioners."

course of the state court litigation, it also threatens to force the Carter Petitioners to vote in an election without any adopted congressional district map as required by law.

The Carter Petitioners' motion to intervene is timely, they clearly possess an interest in the subject matter of the action such that denial of their intervention motion would severely affect or impair their ability to protect their interests, and their interests are not adequately represented by the existing parties to the lawsuit. As such, the Carter Petitioners are entitled to intervene in this case as a matter of right. *See* Fed. R. Civ. P. 24(a)(2). In the alternative, the Carter Petitioners respectfully request that the Court grant them permissive intervention under Rule 24(b).

## BACKGROUND

Following the 2020 Census, Pennsylvania lost a seat in the U.S. House of Representatives. As a result, and due to general population shifts, the state had to redraw its existing congressional district map. *See* Am. Compl. Ex. 1 ¶¶ 2-3, ECF No. 7-1. Although the Pennsylvania General Assembly and Governor had several months to enact a new congressional district map, the two sides failed to reach an agreement and came to an impasse. *Id.* ¶ 5. The Carter Petitioners foresaw this impasse and initially filed a lawsuit to prepare for the eventuality in April 2021. *See* Exhibit A. That action was dismissed without prejudice based on the state court's

2

conclusion that it was not yet ripe. *See Carter v. Degraffenreid*, No. 132 M.D. 2021, 2021 WL 4735059, at *7 (Pa. Commw. Ct. Oct. 8, 2021). When the political branches then failed to reach agreement, the Carter Petitioners filed a new complaint in Pennsylvania Commonwealth Court on December 17, 2021, challenging the existing 2018 court-drawn map as violating: (1) the Free and Equal Elections Clause of the Pennsylvania Constitution; (2) Article I, Section 2 of the U.S. Constitution requiring equal population in congressional districts; and (3) 2 U.S.C. § 2c (2018), which provides that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled." Am. Compl. Ex. 1 ¶ 3. The Carter Petitioners asked the Commonwealth Court to declare Pennsylvania's existing 2018 congressional district map unconstitutional and adopt a new congressional district map that satisfies constitutional requirements. *Id.* at 18-19.

That litigation continued apace through December, January, and February. On January 24, 2022, the Carter Petitioners, along with other petitioners, intervenors, and *amicus* participants, submitted proposed congressional redistricting maps to the Commonwealth Court for consideration. *See* Am. Compl. Ex. 4, ECF No. 7-4. The Commonwealth Court held an evidentiary hearing on January 27 and January 28 on the proposed maps, and provided notice that if the General Assembly and Governor failed to adopt a new congressional district map by January 30, the Commonwealth

3

Court would proceed to issue an opinion adopting a new congressional district map. *See* Am. Compl. Ex. 7 at 14-15, ECF No. 7-7. The General Assembly and Governor subsequently failed to adopt a new congressional district map by January 30. *See id.* at 15.

On February 2, the Pennsylvania Supreme Court took extraordinary jurisdiction over the redistricting litigation. *See* Am. Compl. Exs. 5, 6, ECF Nos. 7-5, 7-6.[2] In doing so, the Pennsylvania Supreme Court designated the Commonwealth Court judge who presided over the hearing as Special Master and ordered oral argument for February 18. *Id.* On February 9, citing the upcoming oral argument on the proposed congressional district maps, the Pennsylvania Supreme Court ordered that the state's General Primary Calendar be "temporarily suspended" pending further order from the Supreme Court. *See* Am. Compl. Ex. 8, ECF No. 7-8.

Plaintiffs did not initiate the instant action until February 11, 2022. *See generally* Compl., ECF No. 1. Nine days after that, Plaintiffs filed an Amended Complaint adding an additional plaintiff. *See generally* Am. Compl., ECF No. 7. In this action, Plaintiffs seek an extraordinary remedy: they ask this Court to override

---

[2] The Carter Petitioners previously filed an application for extraordinary relief in December 2021 requesting that the Pennsylvania Supreme Court exercise extraordinary jurisdiction and/or King's Bench power over these matters. *See* Am. Compl. Ex. 2, ECF No. 7-2. The Supreme Court denied the application at that time, but did so specifically without prejudice to the Carter Petitioners' right to seek the same relief in the future. *See* Am. Compl. Ex. 3, ECF No. 7-3.

the impending Pennsylvania Supreme Court ruling adopting a new congressional district map and enjoin any relief ordered by that court to remedy the Carter Petitioners' constitutional and statutory injury. Plaintiffs allege that the Elections Clause of the United States Constitution prohibits Defendants from implementing a congressional district map drawn by the Pennsylvania Supreme Court because the state's judiciary is not part of "the Legislature." *Id.* ¶ 42. Plaintiffs also allege that 2 U.S.C. § 2a(c)(5) requires Pennsylvania to hold at-large elections. *Id.* ¶ 43.

On the same day that Plaintiffs filed their Amended Complaint, Plaintiffs also filed an Emergency Motion for Temporary Restraining Order or Preliminary Injunction seeking an order that Pennsylvania state election officials must conduct at-large elections for the state's 2022 congressional delegation, regardless of the Pennsylvania Supreme Court's resolution of the ongoing state court action, unless and until the General Assembly enacts a new congressional district map. *See* Mot. Prelim. Inj. at 12, ECF No. 11.

## ARGUMENT

This federal lawsuit is a collateral attack on the state court litigation brought by the Carter Petitioners. Plaintiffs seek to nullify the relief that is shortly anticipated from the Pennsylvania Supreme Court, including a permanent injunction on the use of the state's current, unconstitutional 2018 congressional district map and the implementation of a new constitutional district map. As a result, this lawsuit

threatens the Carter Petitioners' constitutional and statutory rights and leaves them with no alternate means by which to vindicate them.

The Carter Petitioners' interests will not be adequately represented by the existing Defendants in this case, none of whom shares the Carter Petitioners' rights and interests as voters who will elect Representatives from each of the districts to which the state is entitled. *See* 2 U.S.C. § 2c. The Carter Petitioners are thus entitled to intervene in this action as of right under Rule 24(a)(2), or alternatively by permission under Rule 24(b)(1)(B).

## I.    The Carter Petitioners are entitled to intervene as a matter of right under Rule 24(a)(2).

The Carter Petitioners satisfy the requirements to intervene as of right because (1) their motion to intervene is timely, (2) they possess an interest in the subject matter of the action, (3) denial of the motion to intervene would affect or impair their ability to protect their interests, and (4) their interests are not adequately represented by the existing parties to the lawsuit. Fed. R. Civ. P. 24(a)(2); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987).

## A.    The Carter Petitioners' motion to intervene is timely.

Intervention will neither delay the resolution of this matter nor prejudice any party. This motion to intervene follows just two days after Plaintiffs filed their Amended Complaint and Motion for Temporary Restraining Order or Preliminary Injunction. Just yesterday the Court issued the current Scheduling Order, no motions

6

have been fully briefed and no hearings have been held—and thus no party can legitimately claim that intervention by the Carter Petitioners would cause any prejudicial delay. *See* Order ¶¶ 1-5, ECF No. 9. The Carter Petitioners are prepared to follow the Court's current briefing schedule, as well as any future briefing schedules the Court orders, including on Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction. Far from delaying, the Carter Petitioners have an interest in resolving this matter as quickly as possible to ensure the Pennsylvania Supreme Court's ordered map goes into effect in time for the state's upcoming 2022 elections. For all of these reasons, the motion is timely. *See, e.g.*, *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) (finding intervention timely where hearing schedule had been set but no hearing had yet been conducted).

## B. The Carter Petitioners possess a significant, legally cognizable interest in this litigation.

The Carter Petitioners are entitled to intervene because they have a "significant protectable" interest in the outcome of this lawsuit. *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 951 (3d Cir. 2012) (proposed intervenors "are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable").

This lawsuit threatens the Carter Petitioners' interests in voting in properly apportioned congressional districts and protecting the ongoing state court litigation

that they brought. When it became clear that Pennsylvania's redistricting process was headed for an impasse, the Carter Petitioners promptly filed a petition in Commonwealth Court seeking to replace the unconstitutional existing map with a new congressional district map that is both equally apportioned and fair. The Carter Petitioners submitted a congressional district map for consideration and defended that map through multiple rounds of briefing and in-person proceedings in the Commonwealth Court and the Pennsylvania Supreme Court in order to secure a constitutional map in time for the upcoming 2022 elections. The Pennsylvania Supreme Court indicated it will likely adopt a new, lawful congressional district map this week.

Through the instant lawsuit, Plaintiffs seek to nullify that forthcoming ruling from the Pennsylvania Supreme Court by ordering Defendants to hold at-large congressional elections, thereby precluding the relief that the Carter Petitioners will obtain in state court. When an action is brought that, if successful, could alter a favorable judgment secured by a proposed intervenor, that intervenor has a substantial interest in the action. *See Jansen v. City of Cincinnati*, 904 F.2d 336, 342 (6th Cir. 1990) (holding that district court was required to grant intervention in a case challenging a fire department's use of affirmative action, where fire department implemented affirmative action program as part of a consent decree to which proposed intervenors were a party). Thus, the relief Plaintiffs seek directly implicates

the Carter Petitioners' significant and cognizable interests in both the state court litigation they brought and the continued protection of their constitutional and statutory rights.

The Carter Petitioners' interests in this lawsuit could not be more significant. The Pennsylvania Supreme Court will imminently adopt a new congressional district map because the state's current congressional district map violates the Carter Petitioners' rights under the Free and Equal Elections Clause of the Pennsylvania Constitution, Article I, Section 2 of the U.S. Constitution, and 2 U.S.C. § 2c. Plaintiffs seek to force the 2022 elections to proceed under a map that violates the Carter Petitioners' rights to elect congressional representatives according to a map that includes 17 districts, equal to the number of representatives to which Pennsylvania is entitled. 2 U.S.C. § 2c. The Carter Petitioners thus have a protectable interest in enforcing these rights guaranteed to them by law.

There can be no greater evidence of that "significant" legal interest at stake than the fact that Plaintiffs are attempting to change the outcome of the Carter Petitioners' state court lawsuit by attempting to override the forthcoming state court remedy. Indeed, a long line of federal court jurisprudence requires federal courts to abstain from interfering while redistricting is before a state court, as it is here. *Growe v. Emison*, 507 U.S. 25, 33 (1993) ("In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting

9

where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself."). Additionally, the United States Supreme Court has squarely held that the federal provision for at-large elections, upon which Plaintiffs' lawsuit is based, is "inapplicable *unless* the state legislature, and state . . . courts, have all failed to redistrict pursuant to § 2c," and thus only functions as a "last-resort remedy to be applied when . . . no constitutional redistricting plan exists and there is no time for either the State's legislature or the courts to develop one." *Branch v. Smith*, 538 U.S. 254, 275 (2003) (emphasis in original). Because Plaintiffs' core claims ignore prevailing U.S. Supreme Court precedent and fail to recognize the primacy of the Pennsylvania Supreme Court's role in ordering the enactment of a constitutional district map at this juncture, the Carter Petitioners have demonstrated the existence of a "significant" legal interest to warrant intervention in this case.

## C.    The disposition of this lawsuit will impair the Carter Petitioners' ability to protect their interests.

Denial of the motion to intervene will, as a practical matter, impair or impede the Carter Petitioners' ability to protect their interests. Where a proposed intervenor has a protectable interest in the outcome of the litigation, courts have "little difficulty concluding" that their interests will be impaired. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). When weighing this factor, courts are to "consider the practical consequences of the litigation in passing on an application to intervene as of right." *Harris*, 820 F.2d at 601; Fed. R. Civ. P. 24

advisory committee's note to 1966 amendment ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .").

Intervention is warranted if the proposed remedy threatens to harm intervenors. *See Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 n.15 (3d Cir. 1994). And litigants that obtained a judgment in a prior action are entitled to intervene as of right in a later action that threatens the relief awarded under the prior judgment. *See Teague v. Bakker*, 931 F.2d 259, 261-62 (4th Cir. 1991) (finding that intervenors' "ability to protect their interest would be impaired or impeded" by a judgment that would put the intervenors' ability to satisfy a prior judgment at risk).

Here, the Pennsylvania Supreme Court will imminently approve a new congressional district map in the ongoing state court case, thus remedying the Carter Petitioners' constitutional and statutory injuries in time for the state to conduct primary elections using that new map this spring. Plaintiffs' lawsuit not only puts the remedy the Carter Petitioners will inevitably obtain at risk, but also threatens to force the Carter Petitioners to vote in an election without any enacted congressional district map as required by law. *See* 2 U.S.C. § 2c. As a result, this lawsuit unquestionably threatens the Carter Petitioners' ability to protect their interests.

**D.    The Carter Petitioners' interests are not adequately represented by Defendants.**

The existing Defendants do not adequately represent the Carter Petitioners' interests. The burden to satisfy this factor is "minimal." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995). In particular, when one of the original parties to the suit is a government entity whose positions "are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," the Third Circuit has found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)). Moreover, intervenors need only show that "representation of [their] interest *may* be inadequate," and a court need only find "sufficient doubt about the adequacy of representation to warrant intervention." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added) (quoting 3B J. Moore, Fed. Prac. 24.09-1(4) (1969)).

Under these circumstances, the Carter Petitioners clearly satisfy the "minimal" burden of demonstrating their "interests are not adequately represented by the existing parties." *Dev. Fin. Corp.*, 54 F.3d at 162 (quoting *Brody*, 957 F.2d at 1115). The arguments that Defendants have asserted in the related state redistricting actions

in the Commonwealth Court and Pennsylvania Supreme Court clearly illustrate that they do not adequately represent the Carter Petitioners as Pennsylvania voters. Defendants' primary interest is an institutional one—the administration of elections. For example, in response to the Special Master's Report on a remedial map, two of the Defendants in this case (the Acting Secretary of State and Director of Elections), as Respondents in the state court proceedings, stated that their "roles are two-fold: (1) to provide the Court with information where necessary; and (2) to minimize disruption of the 2022 elections by keeping the Court and the other parties apprised of election schedules and potential alterations to those schedules." *See* Exhibit B. Governor Wolf's involvement in both the state court proceeding and this one is likewise limited to his institutional and constitutional role. *See* Exhibit C (explaining that the Governor's "legally enforceable interest" is "by virtue of his constitutional role in the redistricting process"). Thus, all three Defendants' primary interest in these matters is distinct from the Carter Petitioners' interest, which is their constitutional and statutory rights as voters.

Notably, Defendants do not hold or assert the same rights as the Carter Petitioners. The Carter Petitioners are voters whose individual constitutional and statutory rights will be violated absent a constitutional congressional district map. Defendants are all parties in their official capacities as government officials and, in that capacity, have no constitutional voting rights that are implicated in this case

or threatened by the lack of a lawful congressional district map. Indeed, no existing party to this litigation asserts that Pennsylvania's current map violates their constitutional rights.

Nor does any existing party have the same interest as the Carter Petitioners in defending the state court litigation and the remedy that the Pennsylvania Supreme Court will imminently order to resolve the Carter Petitioners' state court lawsuit. The Carter Petitioners must be permitted to intervene to represent their own interests as the petitioners in the state court action that this case seeks to collaterally attack.

In *Corman v. Torres,* the court granted intervention in strikingly similar circumstances. There, a group of voters had successfully challenged Pennsylvania's congressional district map in state court, and the Pennsylvania Supreme Court enjoined use of the map and ordered use of a new map for the upcoming election. Thereafter, a group of Republican legislators and congressmen filed a collateral attack in federal court, asking the federal court to undo the Pennsylvania Supreme Court's remedy. *See Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018). The state court plaintiffs moved to intervene in the federal suit, asserting virtually identical interests as the Carter Petitioners here. The three-judge federal panel— comprised of Circuit Judge Jordan, Chief District Judge Conner, and District Judge Simandle—granted the motion to intervene, even though the original defendants in the case included state election officials who supported the state court's judgment

14

and opposed the relief that the congressmen sought. Order at 1-2, *Corman v. Torres*, 287 F. Supp. 3d 558, No 1:18-cv-00443-CCC-KAJ-JBS (M.D. Pa. Mar. 2, 2018), ECF No. 85. *Corman* strongly supports intervention by the Carter Petitioners— indeed, if anything, the case for intervention is even stronger here, given that the state court lawsuit here is ongoing, whereas in *Corman* it had already concluded.

## II. In the alternative, the Carter Petitioners request that the Court grant them permission to intervene under Rule 24(b).

Even if the Carter Petitioners were not entitled to intervene as of right, permissive intervention would be warranted under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention when it determines that: (1) the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact," and (2) the "intervention will not unduly delay the proceedings or prejudice the original parties' rights." *See* Fed. R. Civ. P. 24(b)(1)(B) and (b)(3). Even where courts deny intervention as of right, permissive intervention may nonetheless be proper or warranted. *See Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982).

For the reasons set forth above, the motion is timely, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties, and the Carter Petitioners are not adequately represented by the existing defendants. The Carter Petitioners will undoubtedly raise common questions of law and fact in defending this lawsuit and the Pennsylvania Supreme Court's adoption of a new

congressional district map that is constitutionally and statutorily compliant, including questions regarding this Court's authority to enjoin that state court's remedy. Beyond that, the Carter Petitioners' interests implicate some of the most fundamental rights protected by the Pennsylvania Constitution: the right to free elections, to equal protection under the law, and to freedom of speech and assembly. Their participation in this action will contribute to the full development of the factual and legal issues and will aid the Court in the adjudication of this matter. And it would be highly unfair to adjudicate a collateral attack on an ongoing state court lawsuit without allowing the petitioners in that state court suit to participate and defend their rights. This federal suit directly threatens the Carter Petitioners' rights and the relief forthcoming in state court, and the Carter Petitioners therefore should be able to participate in this case.

## CONCLUSION

For the reasons stated above, the Carter Petitioners respectfully request that the Court grant their motion to intervene as a matter of right under Fed. R. Civ. P. Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

Dated: February 22, 2022.                    Respectfully submitted,

                                             */s/ Elizabeth V. Wingfield*
                                             Timothy D. Katsiff (PA 75490)
                                             Elizabeth V. Wingfield (PA 32477)
                                             Edward D. Rogers (PA 69337)*
                                             Marcel S. Pratt (PA 307483)*
                                             Robert J. Clark (PA 308105)*
                                             Michael R. McDonald (PA 326873)*
                                             Paul K. Ort (PA 326044)*
                                             Ballard Spahr LLP
                                             1735 Market Street, 51st Floor
                                             Philadelphia, PA 19103
                                             KatsiffT@ballardspahr.com
                                             WingfieldE@ballardspahr.com
                                             RogersE@ballardspahr.com
                                             PrattM@ballardspahr.com
                                             ClarkR@ballardspahr.com
                                             McDonaldM@ballardspahr.com
                                             OrtP@ballardspahr.com
                                             T: (215) 665-8500
                                             F: (215) 864-8999

                                             Abha Khanna*
                                             Elias Law Group LLP
                                             1700 Seventh Ave, Suite 2100
                                             Seattle, WA 98101
                                             akhanna@elias.law
                                             T: (206) 656-0177

                                             Lalitha D. Madduri*
                                             Jyoti Jasrasaria*
                                             Tina Meng*
                                             Elias Law Group LLP
                                             10 G St. NE, Suite 600
                                             Washington, D.C. 20002
                                             lmadduri@elias.law
                                             jjasrasaria@elias.law
                                             tmeng@elias.law
                                             T: (202) 968-4490

Matthew Gordon*
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

*Counsel for Proposed Intervenors*

*\*Motions for Pro Hac Vice*
*Forthcoming*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum of Law in Support of Motion to Intervene as Defendants contains 3,869 words, based on the word count of the word processing system used to prepare this brief, and thereby complies with the Local Civil Rule 7.8.


DATED: February 22, 2022        */s/ Elizabeth V. Wingfield*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, February 22, 2022, I caused the foregoing document to be filed and served on all counsel of record by operation of the CM/ECF system for the United States District Court for the Middle District of Pennsylvania.

DATED: February 22, 2022          */s/ Elizabeth V. Wingfield*