# Exhibit A

Ex. A

Received 4/26/2021 8:17:19 PM Commonwealth Court of Pennsylvania

Filed 4/26/2021 8:17:00 PM Commonwealth Court of Pennsylvania
132 MD 2021

Marc E. Elias
Aria C. Branch
Lalitha D. Madduri
Christina A. Ford
Jyoti Jasrasaria
Perkins Coie LLP
700 Thirteenth Street NW Suite 800
Washington, D.C. 20005-3960
MElias@perkinscoie.com
ABranch@perkinscoie.com
LMadduri@perkinscoie.com
ChristinaFord@perkinscoie.com
JJasrasaria@perkinscoie.com
T: (202) 654-6200
F: (202) 654-6211

Abha Khanna
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
AKhanna@perkinscoie.com
T: (206) 359-8000
F: (206) 359-9000

Edward D. Rogers, No. 69337
Marcel S. Pratt, No. 307483
Robert J. Clark, No. 308105
Michael R. McDonald, No. 326873
Paul K. Ort, No. 326044
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

Counsel for Petitioners

---

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN,<br><br>                  Petitioners,<br><br>     v.<br><br>VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for | No. _____ |

the Pennsylvania Bureau of Election Services and Notaries,

Respondents.

## PETITION FOR REVIEW
## <u>ADDRESSED TO THE COURT'S ORIGINAL JURISDICTION</u>

### INTRODUCTION

1.      This is an action challenging Pennsylvania's current congressional district map, which has been rendered unconstitutionally malapportioned by a decade of population shifts. Petitioners ask this Court to declare Pennsylvania's current congressional district plan unconstitutional; enjoin Respondents from using the current plan in any future elections; and implement a new congressional district plan that adheres to the constitutional requirement of one-person, one-vote should the General Assembly and Governor fail to do so.

2.      On April 26, 2021, the U.S. Secretary of Commerce delivered the apportionment data obtained by the 2020 Census to the President. Those data confirm the inevitable reality that population shifts that occurred during the last decade have rendered Pennsylvania's congressional plan unconstitutionally malapportioned. *See Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (three-judge court) (explaining that "existing apportionment schemes become instantly unconstitutional upon the release of new decennial census data" (internal quotation marks omitted)).

3.      Specifically, the current configuration of Pennsylvania's congressional

districts violates (1) the Free and Equal Elections Clause of the Pennsylvania Constitution; (2) Article I, Section 2 of the U.S. Constitution; (3) 2 U.S.C. § 2c; and (4) the Petition Clause of the Pennsylvania Constitution. The Pennsylvania Constitution's Free and Equal Elections Clause guarantees its citizens the right to "make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share." *Patterson v. Barlow*, 60 Pa. 54, 75 (1869). Article 1, Section 2 of the U.S. Constitution requires states to "achieve population equality 'as nearly as is practicable'" when drawing congressional districts. *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964)). 2 U.S.C. § 2c provides that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled." And the Petition Clause of the Pennsylvania Constitution secures voters' right to associate with other voters to elect their preferred candidates, "not simply as [a] restriction[] on the powers of government, as found in the Federal Constitution, but as [an] inherent and 'invaluable' right[] of man." *Commonwealth v. Tate*, 432 A.2d 1382, 1388 (Pa. 1981).

4.      Petitioners will be forced to cast unequal votes if the current congressional map is not brought into compliance with constitutional requirements. Because the current congressional plan is unconstitutionally malapportioned, it cannot be used in any future election. Moreover, if a new congressional plan is not

in place in a timely manner, Petitioners' right to associate with other voters in support of their preferred candidates will be infringed.

5.     While "the primary responsibility and authority for drawing federal congressional legislative districts rests squarely with the state legislature," when "the legislature is unable or chooses not to act, it becomes the judiciary's role to determine the appropriate redistricting plan." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 821-22 (Pa. 2018) (*League of Women Voters I*).

6.     In Pennsylvania, congressional district plans must be enacted through legislation, which requires the consent of both legislative chambers and the Governor (unless both legislative chambers override the Governor's veto by a two-thirds vote). *League of Women Voters I*, 178 A.3d at 742; Pa. Const., Art. III, § 4; Pa. Const., Art. IV, § 15.

7.     There is no reasonable prospect that Pennsylvania's political branches will reach consensus to enact a lawful congressional district plan in time to be used in the upcoming 2022 election. Currently, Republicans hold majorities (though not veto-proof majorities) in both chambers of the General Assembly, and Governor Wolf, who has veto power, is a Democrat. The last time Pennsylvania began a redistricting cycle in which its political branches were politically split as they are now, those branches failed to enact a congressional redistricting plan, forcing Pennsylvania's judiciary to take responsibility for enacting a new plan. *See Mellow*

*v. Mitchell*, 607 A.2d 204 (Pa. 1992).

8.      Given the long and acrimonious history of partisan gerrymandering litigation challenging Pennsylvania's previous congressional district map, it is clear that Pennsylvania's political branches are extremely unlikely to agree to a new congressional district plan prior to the 2022 election. Just three years ago, the Republican-controlled General Assembly and Governor Wolf failed to agree on a new congressional plan following the Pennsylvania Supreme Court's invalidation of the plan enacted in 2011, forcing the Court to draw its own. *See League of Women Voters of Pa. v. Commonwealth*, 181 A.3d 1083, 1086 (Pa. 2018) (*League of Women Voters II*). Because there is no reason to believe that the General Assembly and the Governor will be able to reach agreement this time around, this Court should intervene to protect the constitutional rights of Petitioners and voters across the Commonwealth.

9.      While there is still time for the General Assembly and the Governor to enact a new congressional plan, this Court should assume jurisdiction now and establish a schedule that will enable the Court to adopt its own plan in the near-certain event that the political branches fail to timely do so.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over this Verified Petition for Review under 42 Pa. C.S. § 761(a)(1) because this matter is asserted against

Commonwealth officials in their official capacities.

**PARTIES**

11.    Petitioners are citizens of the United States and are registered to vote in Pennsylvania. Petitioners intend to advocate and vote for Democratic candidates in the upcoming 2022 primary and general elections. Petitioners reside in the following congressional districts.

| Petitioner's Name | County of Residence | Congressional District |
|---|---|---|
| Carol Ann Carter | Bucks | 1 |
| Monica Parrilla | Philadelphia | 2 |
| Rebecca Poyourow | Philadelphia | 3 |
| William Tung | Philadelphia | 3 |
| Roseanne Milazzo | Montgomery | 4 |
| Burt Siegel | Montgomery | 4 |
| Susan Cassanelli | Delaware | 5 |
| Lee Cassanelli | Delaware | 5 |
| Lynn Wachman | Chester | 6 |
| Michael Guttman | Chester | 6 |
| Maya Fonkeu | Northampton | 7 |
| Brady Hill | Northampton | 7 |
| Mary Ellen Balchunis | Dauphin | 10 |
| Tom DeWall | Cumberland | 10 |
| Stephanie McNulty | Lancaster | 11 |
| Janet Temin | Lancaster | 11 |

12.    As shown below, Petitioners reside in districts that are likely overpopulated relative to other districts in the state. Thus, they are deprived of the right to cast an equal vote, as guaranteed to them by the U.S. Constitution and the Pennsylvania Constitution.

13.    Respondent Veronica Degraffenreid is the Acting Secretary of the

Commonwealth and is sued in her official capacity only. In that capacity, Acting Secretary Degraffenreid is charged with general supervision and administration of Pennsylvania's elections and election laws. Acting Secretary Degraffenreid is Pennsylvania's Chief Election Official and a member of the Governor's Executive Board. Among her numerous responsibilities in administering elections, Acting Secretary Degraffenreid is responsible for receiving election results from counties for each congressional district in the Commonwealth, and tabulating, computing, canvassing, certifying, and filing those results. 25 P.S. § 3159.

14.    Respondent Jessica Mathis is the Director for the Bureau of Election Services and Notaries, a branch of the Pennsylvania Department of State, and she is sued in her official capacity only. In this capacity, Director Mathis is charged with supervising and administering the Commonwealth's elections and electoral process. The Bureau of Election Services and Notaries is responsible for planning, developing, and coordinating the statewide implementation of the Election Code.

## FACTUAL ALLEGATIONS

## I.    Pennsylvania's current congressional districts were drawn using 2010 Census data.

15.    Pennsylvania's congressional district map was most recently redrawn in 2018. On January 22, 2018, the Pennsylvania Supreme Court held that the then-controlling congressional district map enacted in 2011 by a Republican-controlled General Assembly and Republican Governor "plainly and palpably" violated the

Pennsylvania Constitution's Free and Equal Elections Clause because it was "corrupted by extensive, sophisticated gerrymandering and partisan dilution." *See League of Women Voters I*, 178 A.3d at 741, 821. The Court provided the General Assembly and the Governor an opportunity to enact a lawful map, but they failed to do so. Thus, the Court adopted its own map on February 19, 2018. *League of Women Voters II*, 181 A.3d 1083.

16.    Because the results of the 2010 Census were the most accurate population data to date, the Court relied exclusively on those data when drawing the new map. According to the 2010 Census, Pennsylvania had a population at that time of 12,702,379. Therefore, a decade ago, the ideal population for each of Pennsylvania's congressional districts (i.e., the state's total population divided by the number of districts) was 705,688 persons.

17.    While the districts crafted by the Court in 2018 had perfectly equal populations (with each district's population deviating from all others by no more than one person), those populations were determined using 2010 data.

**II.    The 2020 Census is complete.**

18.    In 2020, the U.S. Census Bureau conducted the decennial census required by Article I, Section 2 of the U.S. Constitution. On April 26, 2021, the U.S. Secretary of Commerce delivered the results of the 2020 Census to the President.

19.    The results of the 2020 Census report that Pennsylvania's resident

population, as of April 2020, is 13,002,700. This is a significant increase from a decade ago, when the 2010 Census reported a total population of 12,702,379.

20.     However, because Pennsylvania's population growth over the last decade has been slower compared to many other states, Pennsylvania has lost a congressional district. Pennsylvania has been apportioned 17 congressional seats for the 2020 cycle, one fewer than the 18 seats Pennsylvania was apportioned following the 2010 Census. Thus, beginning with the upcoming 2022 election, Pennsylvania voters will elect only 17 members to the U.S. House of Representatives.

21.     According to the 2020 Census results, the ideal population for each of Pennsylvania's congressional districts is 764,865.

**III.   As a result of significant population shifts in the past decade, Pennsylvania's congressional districts are unconstitutionally malapportioned.**

22.     In the past decade, Pennsylvania's population has shifted significantly. Because the 2020 Census has now been completed, the 2010 population data used to draw Pennsylvania's congressional districts are obsolete, and any prior justifications for the existing maps' deviations from population equality are no longer applicable.

23.     By mid-to-late August 2021, the U.S. Secretary of Commerce will deliver to Pennsylvania its redistricting data file in a legacy format, which the Commonwealth may use to tabulate the new population of each political

subdivision.[1] On or around September 30, 2021, the U.S. Secretary of Commerce will deliver to Pennsylvania that same detailed population data showing the new population of each political subdivision in a tabulated format.[2] These data are commonly referred to as "P.L. 94-171 data," a reference to the 1975 legislation that first required this process, and are typically delivered no later than April of the year following the Census. *See* Pub. L. No. 94-171, 89 Stat. 1023 (1975).

24.   2019 Census Bureau data make clear that significant population shifts have occurred in Pennsylvania's congressional districts since 2010, skewing the current districts far from population equality.

25.   The table below estimates how the populations of each of Pennsylvania's congressional districts shifted between 2010 and 2019. For each district, the "2010 Population" column represents the district's 2010 population according to the 2010 Census, and the "2019 Population" column indicates the estimated 2019 population according to the U.S. Census Bureau's 2019 American Community Survey (ACS) 1-Year Survey. The "Shift" column represents the difference in district population between 2010 and 2019. The "Deviation from Ideal 2019 Population" column shows how far the estimated 2019 population of each

---

[1] *See U.S. Census Bureau Statement on Release of Legacy Format Summary Redistricting Data File*, U.S. Census Bureau (Mar. 15, 2021), https://www.census.gov/newsroom/press-releases/2021/statement-legacy-format-redistricting.html.

[2] *See Census Bureau Statement on Redistricting Data Timeline*, U.S. Census Bureau (Feb. 12, 2021), https://www.census.gov/newsroom/press-releases/2021/statement-redistricting-data-timeline.html.

district strays from the estimated ideal 2019 congressional district population. And the "Percent Deviation" column shows that deviation as a percentage of the ideal district population as of 2019.

| District | 2010 Population | 2019 Population | Shift | Deviation from Ideal 2019 Population | Percent Deviation |
|---|---|---|---|---|---|
| 1 | 705,687 | 713,411 | +7,724 | +2,189 | +0.31% |
| 2 | 705,688 | 722,722 | +17,034 | +11,500 | +1.62% |
| 3 | 705,688 | 741,654 | +35,966 | +30,432 | +4.28% |
| 4 | 705,687 | 730,701 | +25,014 | +19,479 | +2.74% |
| 5 | 705,688 | 719,973 | +14,285 | +8,751 | +1.23% |
| 6 | 705,688 | 735,283 | +29,595 | +24,061 | +3.38% |
| 7 | 705,688 | 731,467 | +25,779 | +20,245 | +2.85% |
| 8 | 705,687 | 698,973 | -6,714 | -12,249 | -1.72% |
| 9 | 705,687 | 699,832 | -5,855 | -11,390 | -1.60% |
| 10 | 705,688 | 744,681 | +38,993 | +33,459 | +4.70% |
| 11 | 705,688 | 734,038 | +28,350 | +22,816 | +3.21% |
| 12 | 705,688 | 701,387 | -4,301 | -9,835 | -1.38% |
| 13 | 705,688 | 697,051 | -8,637 | -14,171 | -1.99% |
| 14 | 705,688 | 678,915 | -26,773 | -32,307 | -4.54% |
| 15 | 705,688 | 672,749 | -32,939 | -38,473 | -5.41% |
| 16 | 705,687 | 678,333 | -27,354 | -32,889 | -4.62% |
| 17 | 705,688 | 706,961 | +1,273 | -4,261 | -0.60% |
| 18 | 705,688 | 693,858 | -11,830 | -17,364 | -2.44% |

26.    The table above indicates population shifts since 2010 have rendered Congressional Districts 8, 9, 12, 13, 14, 15, 16, 17, and 18 significantly underpopulated, and Congressional Districts 1, 2, 3, 4, 5, 6, 7, 10, and 11 significantly overpopulated. Indeed, the figures in the table above indicate that, between 2010 and 2019, the maximum deviation among Pennsylvania's 18

congressional districts (*i.e.*, the difference between the most and least populated districts divided by the ideal district population) increased from 0 to more than 10 percent. Notably, this table does not account for the severe malapportionment that will result from the fact that Pennsylvania has lost a congressional district.

27. Due to these population shifts, Pennsylvania's existing congressional district configuration is unconstitutionally malapportioned. It also contains more districts than the number of representatives that Pennsylvanians may send to the U.S. House in 2022.

28. If used in any future election, the current congressional district configuration will unconstitutionally dilute the strength of Petitioners' votes because they live in districts with populations that are significantly larger than those in which other voters live.

## IV. Pennsylvania's political branches will likely fail to enact lawful congressional district maps in time for the next election.

29. In Pennsylvania, congressional district plans are enacted via legislation, which must pass both chambers of the General Assembly and be signed by the Governor (unless the General Assembly overrides the Governor's veto by a two-thirds vote in both chambers). *League of Women Voters I*, 178 A.3d at 742; Pa. Const., Art. III, § 4; Pa. Const., Art. IV, § 15. Currently, both chambers of Pennsylvania's General Assembly are controlled by the Republican Party, and the Governor is a Democrat. Republican control of the General Assembly is not large

enough to override a gubernatorial veto. This partisan division among Pennsylvania's political branches makes it extremely unlikely they will enact a lawful congressional districting plan in time to be used during the upcoming 2022 election.

30.    Pennsylvania law does not set a deadline by which congressional redistricting plans must be in place prior to the first congressional election following release of the Census. Nonetheless, it is in the interests of voters, candidates, and Pennsylvania's entire electoral apparatus that finalized congressional districts be put in place as soon as possible, well before candidates in those districts must begin to collect signatures on their nomination papers. Potential congressional candidates cannot make strategic decisions—including, most importantly, whether to run at all—without knowing their district boundaries. And voters have a variety of interests in knowing as soon as possible the districts in which they reside and will vote, and the precise contours of those districts. These interests include deciding which candidates to support and whether to encourage others to run; holding elected representatives accountable for their conduct in office; and advocating for and organizing around candidates who will share their views, including by working together with other district voters in support of favored candidates.

31.    Nomination papers for candidates seeking to appear on the ballot for the 2022 partisan primary election can be circulated as early as February 15, 2022,

less than a year away. 25 P.S. § 2868. And the deadline for filing those papers falls just a few weeks later. *Id.* It is in everyone's interest—candidates and voters alike— that district boundaries are set well before this date. Delaying the adoption of the new plan even until the ballot petition deadline will substantially interfere with Petitioners' abilities to associate with like-minded citizens, educate themselves on the positions of their would-be representatives, and advocate for the candidates they prefer. *Cf. Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983) ("The [absence] of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens.").

32.     While the General Assembly was able to enact redistricting plans after the 2010 Census without court intervention, Republicans had trifecta control over the state government at that time. The last time Pennsylvania began a redistricting cycle with political branches divided along partisan lines, as they are now, they failed to enact a new congressional redistricting plan. This failure required intervention by Pennsylvania's judiciary, which drew and adopted a congressional district map. *Mellow*, 607 A.2d 204. Similarly, after the Pennsylvania Supreme Court invalidated Pennsylvania's congressional plan three years ago, the Republican-controlled General Assembly was unable to come to agreement with Governor Wolf on a new plan, forcing the Court to draw a remedial map. *League of Women Voters II*, 181

A.3d at 1086.

33.     Pennsylvania is once again entering a redistricting cycle with political branches divided between the two major parties. If anything, the partisan differences among the major parties have only grown starker since their last attempt to reach consensus on redistricting plans in 1991. In just the last two years, Governor Wolf and the Republican-controlled General Assembly have repeatedly conflicted over a broad range of policies such as the state's response to the COVID-19 pandemic, emergency executive powers, environmental issues, and gun regulations, with the Governor using his veto power on numerous occasions. Additionally, the Census delays have compressed the amount of time during which the legislative process would normally take place. As a result, the political branches are highly likely to be at an impasse this cycle and to fail to enact a new congressional district plan. This would deprive Petitioners of equal representation in Congress and their freedom of association. To avoid such an unconstitutional outcome, this Court must intervene to ensure Petitioners and other Pennsylvanians' voting strength is not diluted.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of Free and Equal Elections Clause**
**Pa. Const., Art. I, § 5**
**Congressional Malapportionment**

34.     Petitioners reallege and reincorporate by reference all prior paragraphs

- 15 -

of this Petition and the paragraphs in the count below as though fully set forth herein.

35.     The Pennsylvania Constitution's Free and Equal Elections Clause provides: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const., Art. I, § 5. This clause "should be given the broadest interpretation, one which governs all aspects of the electoral process, and which provides the people of this Commonwealth an equally effective power to select the representative of his or her choice, and bars the dilution of the people's power to do so." *League of Women Voters I*, 178 A.3d at 814.

36.     The Free and Equal Elections Clause "establishe[s] a critical 'leveling' protection in an effort to establish the uniform right of the people of this Commonwealth to select their representatives in government." *Id.* at 807.

37.     The "equality" prong of the Free and Equal Elections Clause requires that voting districts be drawn "by laws which shall arrange all the qualified electors into suitable districts, and make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share." *Id.* at 809 (quoting *Patterson*, 60 Pa. at 75). Thus, any scheme that "has the effect of impermissibly diluting the potency of an individual's vote for candidates for elective office relative to that of other voters will violate the guarantee of 'free and equal' elections afforded by Article I, Section 5." *Id.*

38.     Pennsylvania's current congressional district plan places voters into districts with significantly disparate populations, causing voters in underpopulated districts to have more "potent" votes compared to voters, like Petitioners, who live in districts with comparatively larger populations.

39.     Any future use of Pennsylvania's current congressional district plan would violate Petitioners' right to an undiluted vote under the Free and Equal Elections Clause.

## COUNT II

### Violation of Article I, Section 2 of the United States Constitution
### Congressional Malapportionment

40.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

41.     Article 1, Section 2 of the U.S. Constitution provides that members of the U.S. House of Representatives "shall be apportioned among the several States . . . according to their respective Numbers." This provision "intends that when qualified voters elect members of Congress each vote be given as much weight as any other vote," *Wesberry*, 376 U.S. at 7, meaning that state congressional districts must "achieve population equality 'as nearly as is practicable,'" *Karcher*, 462 U.S. at 730 (quoting *Wesberry*, 376 U.S. at 7-8).

42.     Article I, Section 2 "permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for

which justification is shown." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969)). And "the State must justify each variance, no matter how small." *Id.* (quoting *Kirkpatrick*, 394 U.S. at 530-31). Given this requirement, when the Pennsylvania Supreme Court adopted its own congressional plan in 2018, it crafted a plan in which the population deviation among districts was no more than *one person*. Now, as indicated in the table above, the population deviation among Pennsylvania's congressional districts may be as high as 71,932 people.

43.     In light of the significant population shifts that have occurred since the 2010 Census, and the recent publication of the results of the 2020 Census, the current configuration of Pennsylvania's congressional districts—which was drawn based on 2010 Census data—is now unconstitutionally malapportioned. No justification can be offered for the deviation among the congressional districts because any justification would be based on outdated population data.

44.     Any future use of Pennsylvania's current congressional district plan would violate Petitioners' constitutional right to cast an equal, undiluted vote.

## COUNT III

### Violation of 2 U.S.C. § 2c
### Congressional Malapportionment

45.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

46.     2 U.S.C. § 2c provides that, in a state containing "more than one Representative," "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled."

47.     Pennsylvania's current congressional district plan contains 18 districts. But Pennsylvania is currently allotted only 17 seats in the U.S. House. As a result, the current congressional district plan violates Section 2c's requirement that the number of congressional districts be "equal to the number of Representatives to which [Pennsylvania] is so entitled."

48.     Any future use of Pennsylvania's current congressional district plan would violate 2 U.S.C. § 2c and would unlawfully dilute Petitioners' votes.

## COUNT IV

**Violation of Petition Clause**
**Pa. Const., Art. I, § 20**
**Freedom of Association**

49.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

50.     The Pennsylvania Constitution's Petition Clause provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance." Pa. Const., Art. I, § 20. "The Pennsylvania Constitution affords greater protection of

speech and associational rights than does our Federal Constitution." *Working Families Party v. Commonwealth*, 169 A.3d 1247, 1260 (Pa. Commw. Ct. 2017) (citing *DePaul v. Commonwealth*, 969 A.2d 536, 546 (Pa. 2009)); *see also Commonwealth v. Tate*, 432 A.2d 1382, 1388 (Pa. 1981) ("It is small wonder, then, that the rights of freedom of speech, assembly, and petition have been guaranteed since the first Pennsylvania Constitution, not simply as restrictions on the powers of government, as found in the Federal Constitution, but as inherent and 'invaluable' rights of man.").

51.     Impeding candidates' abilities to run for political office—and consequently Petitioners' abilities to assess candidate qualifications and positions, organize and advocate for preferred candidates, and associate with like-minded voters—infringes on Petitioners' right to association.

52.     Given the delay in publication of the 2020 Census data and the near-certain deadlock among the political branches in adopting a new congressional district plan, it is significantly unlikely that the legislative process will timely yield a new plan. This would deprive Petitioners of the ability to associate with others from the same lawfully apportioned congressional district, and, therefore, is likely to significantly, if not severely, burden Petitioners' right to association.

53.     There is no legitimate or compelling interest that can justify this burden.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that this Court:

a.  Declare that the current configuration of Pennsylvania's congressional districts violates Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; 2 U.S.C. § 2c; and Article I, Section 20 of the Pennsylvania Constitution;

b.  Enjoin Respondents, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to Pennsylvania's current congressional district plan;

c.  Establish a schedule that will enable the Court to adopt and implement a new congressional district plan by a date certain should the political branches fail to enact such plan by that time;

d.  Implement a new congressional district plan that complies with Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; 2 U.S.C. § 2; and Article I, Section 20 of the Pennsylvania Constitution, if the political branches fail to enact a plan by a date certain set by this Court;

e.  Award Petitioners their costs, disbursements, and reasonable attorneys' fees; and

f.   Grant such other and further relief as the Court deems just and proper.


Dated: April 26, 2021                              Respectfully submitted,

Marc E. Elias                                      /s/ *Edward D. Rogers*
Aria C. Branch                                     Edward D. Rogers, No. 69337
Lalitha D. Madduri                                 Marcel S. Pratt, No. 307483
Christina A. Ford                                  Robert J. Clark, No. 308105
Jyoti Jasrasaria                                   Michael R. McDonald, No. 326873
Perkins Coie LLP                                   Paul K. Ort, No. 326044
700 Thirteenth Street NW Suite 800                 Ballard Spahr LLP
Washington, D.C. 20005-3960                        1735 Market Street, 51st Floor
MElias@perkinscoie.com                             Philadelphia, PA 19103
ABranch@perkinscoie.com                            RogersE@ballardspahr.com
LMadduri@perkinscoie.com                           PrattM@ballardspahr.com
ChristinaFord@perkinscoie.com                      ClarkR@ballardspahr.com
JJasrasaria@perkinscoie.com                        McDonaldM@ballardspahr.com
T: (202) 654-6200                                  OrtP@ballardspahr.com
F: (202) 654-6211                                  T: (215) 665-8500
                                                   F: (215) 864-8999
Abha Khanna
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
AKhanna@perkinscoie.com
T: (206) 359-8000
F: (206) 359-9000

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Edward D. Rogers

Signature:      /s/ *Edward D. Rogers*

Name:           Edward D. Rogers

Attorney No.: 69337

## VERIFICATION

I, Carol Ann Carter, hereby state:

1.     I am a petitioner in this action;

2.     I verify that the statements made in the foregoing Petition for Review are true and correct to the best of my knowledge, information, and belief; and

3.     I understand that the statements in said Petition for Review are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signed: *[signature]*

Dated: *April 26, 2021*

## **NOTICE TO PLEAD**

**TO:**        Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

You are hereby notified to file a written response to the enclosed

Petition for Review within thirty (30) days from service hereof or a judgment may

be entered against you.

Dated:        April 26, 2010

/s/ *Robert J. Clark*
Robert J. Clark, No. 308105
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Clarkr@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the date set forth below, I caused the foregoing

Petition for Review to be served upon the following parties and in the manner

indicated below, which service satisfies the requirements of Pa. R.A.P. 1514 and

121:

<u>By Certified Mail:</u>

Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

Dated:        April 26, 2021

/s/ *Robert J. Clark*
Robert J. Clark, No. 308105
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Clarkr@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999
