# Exhibit C

Received 12/31/2021 6:56:47 PM Commonwealth Court of Pennsylvania

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN,<br><br>Petitioners,<br><br>v.<br><br>VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries,<br><br>Respondents/Appellants. | No. 464 MD 2021 |
| PHILIP T. GRESSMAN; RON Y. DONAGI; KRISTOPHER R. TAPP; PAMELA GORKIN; DAVID P. MARSH; JAMES L. ROSENBERGER; AMY MYERS; EUGENE BOMAN; GARY GORDON; LIZ MCMAHON; TIMOTHY G. FEEMAN; and GARTH ISAAK,<br><br>Petitioners,<br><br>v.<br><br>VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries,<br><br>Respondents/Appellants. | No. 465 MD 2021 |

# **[PROPOSED] ORDER**

AND NOW, this _____ day of January, 2022, upon consideration of the

Application for Leave to Intervene of Tom Wolf, Governor of the Commonwealth

of Pennsylvania ("Application"), and any response thereto, it is hereby ORDERED

that the Application is GRANTED.

IT IS FURTHER ORDERED that Governor Wolf shall be allowed to

participate in these consolidated actions as a respondent.

BY THE COURT:

_____

J.

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200

*Counsel for Proposed Intervenor Tom
Wolf, Governor of the Commonwealth
of Pennsylvania*

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN,<br><br>        Petitioners,<br><br>    v.<br><br>VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries,<br><br>        Respondents/Appellants. | No. 464 MD 2021 |
| PHILIP T. GRESSMAN; RON Y. DONAGI; KRISTOPHER R. TAPP; PAMELA GORKIN; DAVID P. MARSH; JAMES L. ROSENBERGER; AMY MYERS; EUGENE BOMAN; GARY GORDON; LIZ MCMAHON; TIMOTHY G. FEEMAN; and GARTH ISAAK, | No. 465 MD 2021 |

Petitioners,

v.

VERONICA DEGRAFFENREID, in her official capacity as
the Acting Secretary of the Commonwealth of
Pennsylvania; JESSICA MATHIS, in her official capacity
as Director for the Pennsylvania Bureau of Election
Services and Notaries,

Respondents/Appellants.

**APPLICATION FOR LEAVE TO INTERVENE OF
TOM WOLF, GOVERNOR OF THE COMMONWEALTH OF
PENNSYLVANIA**

Pursuant to Pennsylvania Rules of Appellate Procedure 106 and 1531(b) and Pennsylvania Rules of Civil Procedure 2326-29, Tom Wolf, Governor of the Commonwealth of Pennsylvania, hereby files this Application for Leave to Intervene in the consolidated cases pending in the Commonwealth Court at docket numbers 464 MD 2021 and 465 MD 2021, respectively entitled *Carter v. Degraffenreid* and *Gressman v. Degraffenreid* (the "Consolidated Actions").

In support of the Application, Governor Wolf respectfully states as follows:

1.     As a result of population changes, Pennsylvania's congressional district map no longer conforms to the requirements of the Pennsylvania Constitution, *see* Pa. Const. art. I, § 5, the United States Constitution, *see* U.S. Const. art. I, § 2, or federal law, *see* 2 U.S.C. § 2c.

2.     Accordingly, Pennsylvania must have a new congressional district map, but the hour for adoption of such a map is growing late. The Department of State and county boards of elections have historically needed approximately three weeks to prepare the Statewide Uniform Registry of Electors ("SURE") to facilitate the nomination petition process, which is statutorily mandated to begin on February 15, 2022. *See* 25 P.S. § 2868. It is therefore imperative that Pennsylvania's new congressional district map goes into effect very soon.

3.     In the ordinary course of events, Pennsylvania's congressional districts "are drawn by the state legislature as a regular statute, subject to veto by

1

the Governor." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 742

(Pa. 2018).

4.     Petitioners in the Consolidated Actions, however, contend that

because the General Assembly has not yet passed a map, the Court must step in to

adopt Pennsylvania's new congressional district plan.

5.     Governor Wolf is entitled to intervene as a respondent in the

Consolidated Actions on at least two different grounds.

6.     First, Governor Wolf could have been joined as an original party in

the Consolidated Actions. *See* Pa. R. Civ. P. 2327(3).

7.     Governor Wolf was joined as a respondent in *League of Women*

*Voters*, the most recent prior case in which Pennsylvania courts were asked to

adopt a new congressional district plan. The Governor actively participated in the

litigation, vigorously advocating for the principles he believed should guide the

redistricting process, crafting and submitting his own proposed redistricting plan,

and critiquing maps proposed by other litigants. *See, e.g.*, Statement of Respondent

Thomas W. Wolf in Support of His Proposed Remedial Congressional Map

Pursuant to Court's Orders of January 22 and January 26, 2018 (filed Feb. 15,

2018), No. 159 MM 2017, *League of Women Voters of Pa. v. Commonwealth* (Pa.

Sup. Ct.).

8.     Second, by virtue of his constitutional role in the redistricting process, the Governor has a "legally enforceable interest" in litigation seeking a court-ordered redistricting plan.

9.     The Governor has the constitutional authority to approve or veto a congressional district map. *See* Pa. Const. art. IV, § 15; *League of Women Voters*, 178 A.3d at 742; *see also Brouillette v. Wolf*, 213 A.3d 341, 360 (Pa. Commw. Ct. 2019) ("The Governor's powers include his power to veto legislation to the extent that this power is vested in him by Sections 15 and 16 of Article IV.").

10.    Further, the Governor's approval power over a congressional district map demonstrates that the Governor has an enforceable interest not only in ultimately deciding whether or not Pennsylvania will enact a particular map, but also in giving input into the reapportionment process.

11.    This Court has recognized these types of interests on multiple occasions. *See Allegheny Reprod. Health Ctr. v. Pa. Dept. of Human Servs.*, 225 A.3d 902, 913 (Pa. Commw. 2020) (permitting intervention by group of legislators seeking to preserve interest in "constitutional authority" to participate in legislative process); Memorandum Opinion at 12, *Carter v. Degraffenreid*, No. 132 MD 2021 (Pa. Commw. Ct. Sept. 2, 2021) (*Carter I*) (granting four individual legislators leave to intervene in a previous version of this redistricting litigation to preserve

3

interests in (1) their ability to legislate and (2) the submission of a proposed plan for the Court's consideration).

12.     In sum, the Governor is the only person in Pennsylvania who, as an individual, has a constitutionally prescribed role in the selection of a congressional district plan, and he is the only person with any constitutionally prescribed role in legislative redistricting who is elected by *all* Pennsylvania voters. Given this unique role, the Court should grant Governor Wolf leave to intervene so that he can defend the interests of all Pennsylvania citizens in the redistricting process.

13.     In support of this Application, Governor Wolf is contemporaneously filing (1) a Memorandum of Law, which is incorporated herein by reference (2) Proposed Answers to the Petitions for Review in the Consolidated Actions (Exhibits A and B hereto), (3) a Verification affirming the truth of the facts set forth in this Application, and (4) a Proposed Order.

14.     For the foregoing reasons, and as set forth more fully in the accompanying Memorandum of Law, the Court should grant Governor Wolf's Application for Leave to Intervene.

**WHEREFORE,** Governor Wolf respectfully requests that the Court grant the Application for Leave to Intervene and allow him to intervene as a Respondent in the Consolidated Actions.

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: December 31, 2021        By:  /s/ Robert A. Wiygul
                                     Robert A. Wiygul (I.D. No. 310760)
                                     John B. Hill (I.D. No. 328340)
                                One Logan Square, 27th Floor
                                Philadelphia, PA 19103
                                Tel: (215) 568-6200
                                Fax: (215) 568-0300

                                *Counsel for Proposed Intervenor Tom Wolf,
                                Governor of the Commonwealth of
                                Pennsylvania*

## **VERIFICATION**

      I, Thomas W. Wolf, Governor of the Commonwealth of Pennsylvania, verify that the facts set forth in the foregoing Application for Leave to Intervene are true and correct to the best of my information, knowledge and belief. I understand that the statements contained herein are subject to the penalties of 18 P.S. § 4904 relating to unsworn falsification to authorities.


Dated: December 30, 2021

Thomas W. Wolf
Governor
Commonwealth of Pennsylvania

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200

*Counsel for Proposed Intervenor Tom*
*Wolf, Governor of the Commonwealth*
*of Pennsylvania*

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN,<br><br>                    Petitioners,<br><br>          v.<br><br>VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries,<br><br>                    Respondents/Appellants. | No. 464 MD 2021 |
| PHILIP T. GRESSMAN; RON Y. DONAGI; KRISTOPHER R. TAPP; PAMELA GORKIN; DAVID P. MARSH; JAMES L. ROSENBERGER; AMY MYERS; EUGENE BOMAN; GARY GORDON; LIZ MCMAHON; TIMOTHY G. FEEMAN; and GARTH ISAAK, | No. 465 MD 2021 |

|  | Petitioners, |
| --- | --- |
| v. | |
| | |
| VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries, | |
| | |
| | Respondents/Appellants. |

**MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR LEAVE TO INTERVENE OF
TOM WOLF, GOVERNOR OF THE COMMONWEALTH OF
PENNSYLVANIA**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................1

II.    GOVERNOR WOLF IS ENTITLED TO INTERVENE AS OF
RIGHT ..........................................................................................................3

     A.     Intervention Is Proper Under Rule 2327(3) Because Governor
Wolf Could Have Been Joined in the Consolidated Actions as
an Original Respondent ..........................................................................4

     B.     Intervention Is Proper Under Rule 2327(4) Because a Grant of
the Relief Sought Will Affect Governor Wolf's Legally
Enforceable Interest in Congressional Reapportionment.......................5

     C.     None of the Exceptions to Intervention Applies Here ........................10

III.   CONCLUSION..............................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Reprod. Health Ctr. v. Pa. Dept. of Human Servs.*,
    225 A.3d 902 (Pa. Commw. Ct. 2020)........................................................ 6, 7, 8

*Beavidez v. Eu*,
    34 F.3d 825 (9th Cir. 1994).................................................................5

*Brouillette v. Wolf*,
    213 A.3d 341 (Pa. Commw. Ct. 2019)................................................5

Memorandum Opinion, *Carter v. Degraffenreid*,
    No. 132 MD 2021 (Pa. Commw. Ct. Sept. 2, 2021) .........................7, 9

*Colleton Cnty. Council v. McConnell*,
    201 F. Supp. 2d 618 (D.S.C. 2002) ....................................................5

*Favors v. Cuomo*,
    No. 11-5632, 2012 WL 928216 (E.D.N.Y. Mar. 12, 2012)................5

*Growe v. Emison*,
    507 U.S. 25 (1993) .............................................................................6

*In re Pa. Crime Comm.*,
    309 A.2d 401 (Pa. 1973)......................................................................3

*J. Edward Connelly Assocs., Inc. v. Landmark Sav. Ass'n*,
    35 Pa. D. & C.3d 322 (Pa. Com. Pl. 1985) ......................................10

*Larock v. Sugarloaf Tp. Zoning Hrg. Bd.*,
    740 A.2d 308 (Pa. Commw. Ct. 1999).................................................3

*League of Women Voters v. Commonwealth*,
    178 A.3d 737 (Pa. 2018).................................................... 2, 4, 5, 7, 10

*Mellow v. Mitchell*,
    607 A.2d 204 (Pa. 1992)......................................................................6

*Moyer v. Gudknecht*,
    67 A.3d 71 (Pa. Commw. Ct. 2013)...................................................10

*Scott v. Germano*,
   381 U.S. 407 (1965) ...............................................................................6

*Smith v. Clark*,
   189 F. Supp. 2d 503 (S.D. Miss. 2002) ................................................5

**Statutes**

2 U.S.C. § 2c ...............................................................................................1

25 P.S. § 2868 ............................................................................................2

**Other Authorities**

Letter from Governor Tom Wolf to Speaker and Majority Leader of
   Pennsylvania House of Representatives (Dec. 28, 2021),
   https://www.governor.pa.gov/wp-content/uploads/2021/12/12.28.21-TWW-
   Cutler-Benninghoff-HB-2146-Final.pdf ...............................................8

Redistricting Principles, Pennsylvania Redistricting Advisory Council
   (Nov. 24, 2021), https://www.governor.pa.gov/wp-
   content/uploads/2021/11/Redistricting-Advisory-Council-Final-Principles.pdf...8

Statement of Respondent Thomas W. Wolf in Support of His Proposed Remedial
   Congressional Map Pursuant to Court's Orders of January 22 and January 26,
   2018 (filed Feb. 15, 2018), No. 159 MM 2017, *League of Women Voters
   of Pa. v. Commonwealth* (Pa. Sup. Ct.)................................................4

**Rules**

Pa. R. Civ. P. 2327 ......................................................................... 2, 3, 4, 5, 6

Pa. R. Civ. P. 2329 ......................................................................... 3, 4, 10, 11

**Constitutional Provisions**

Pa. Const. art. I, § 5....................................................................................1

Pa. Const. art. IV, § 15 ........................................................................ 5, 7, 10

U.S. Const. art. I, § 2....................................................................................1

Tom Wolf, Governor of the Commonwealth of Pennsylvania, hereby files this Memorandum of Law in support of his Application for Leave to Intervene in the consolidated cases pending in the Commonwealth Court at docket numbers 464 MD 2021 and 465 MD 2021, respectively entitled *Carter v. Degraffenreid* and *Gressman v. Degraffenreid* (the "Consolidated Actions").

## I.     INTRODUCTION

Pennsylvania's redistricting process is enormously consequential. Properly drawn congressional districts will ensure that all Pennsylvanians receive equal and fair representation in the United States House of Representatives, that communities of interest are respected and maintained, and that it is the voters who choose their elected representatives—rather than, as has been true all too often in Pennsylvania's history, the elected representatives choosing their voters.

It is not disputed that, as a result of population changes, Pennsylvania's congressional district map no longer conforms to the requirements of the Pennsylvania Constitution, *see* Pa. Const. art. I, § 5, the United States Constitution, *see* U.S. Const. art. I, § 2, or federal law, *see* 2 U.S.C. § 2c. Accordingly, Pennsylvania must have a new congressional district map, but the hour for adoption of such a map is growing late. The Department of State and county boards of elections have historically needed approximately three weeks to prepare the Statewide Uniform Registry of Electors ("SURE") to facilitate the nomination

1

petition process, which is statutorily mandated to begin on February 15, 2022. *See* 25 P.S. § 2868. It is therefore imperative that Pennsylvania's new congressional district map goes into effect very soon.

In the ordinary course of events, Pennsylvania's congressional districts "are drawn by the state legislature as a regular statute, subject to veto by the Governor." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 742 (Pa. 2018). Petitioners in the Consolidated Actions, however, contend that because the General Assembly has not yet passed a map, the Court must step in to adopt Pennsylvania's new congressional district plan.

Governor Wolf is entitled to intervene as a respondent in the Consolidated Actions on at least two different grounds. First, Governor Wolf could have been joined as an original party in the Consolidated Actions. *See* Pa. R. Civ. P. 2327(3). Indeed, Governor Wolf *was* joined as a respondent in *League of Women Voters*, the most recent prior case in which Pennsylvania courts were asked to adopt a new congressional district plan. Second, by virtue of his constitutional role in the redistricting process, the Governor has a "legally enforceable interest" in litigation seeking a court-ordered redistricting plan.

In sum, the Governor is the only person in Pennsylvania who, as an individual, has a constitutionally prescribed role in the selection of a congressional district plan, and he is the only person with any constitutionally prescribed role in

legislative redistricting who is elected by *all* Pennsylvania voters. Given this unique role, the Court should grant Governor Wolf leave to intervene so that he can defend the interests of all Pennsylvania citizens in the redistricting process.

## II.   GOVERNOR WOLF IS ENTITLED TO INTERVENE AS OF RIGHT

Pennsylvania Rule 2327 provides that a person "not a party" to an action "*shall* be permitted to intervene" in certain enumerated circumstances, Pa. R. Civ. P. 2327 (emphasis added), including when (1) the joining party "could have joined as an original party in the action or could have been joined therein[,]" Pa. R. Civ. P. 2327(3); or (2) determination of an action "may affect any legally enforceable interest" of the joining party, Pa. R. Civ. P. 2327(4). Rule 2329, in turn, provides that, with limited exceptions, after a person files a petition for leave to intervene, "the court, if the allegations of the petition have been established and are found to be sufficient, *shall* enter an order allowing intervention[.]" Pa. R. Civ. P. 2329 (emphasis added). "Considering Rules 2327 and 2329 together, the effect of Rule 2329 is that if the petitioner is a person within one of the classes described in Rule 2327, the allowance of intervention is mandatory, not discretionary, unless one of the grounds for refusal under Rule 2329 is present." *Larock v. Sugarloaf Tp. Zoning Hrg. Bd.*, 740 A.2d 308, 313 (Pa. Commw. Ct. 1999); *accord In re Pa. Crime Comm.*, 309 A.2d 401, 408 n.11 (Pa. 1973) (same). Governor Wolf satisfies each of the independent grounds for intervention described in Rule 2327(3) and

(4), and none of the exceptions discussed in Rule 2329 are present. Accordingly,

the Court should grant the Governor's Application for Leave to Intervene.

### A. Intervention Is Proper Under Rule 2327(3) Because Governor Wolf Could Have Been Joined in the Consolidated Actions as an Original Respondent

Petitioners in the Consolidated Actions could have joined Governor Wolf as

a respondent. In *League of Women Voters of Pennsylvania v. Commonwealth*, the

last time a set of petitioners challenged Pennsylvania's congressional district map

and sought judicial reapportionment, Governor Wolf was named as a respondent in

the action. 178 A.3d at 741. Indeed, the Governor actively participated in the

litigation, vigorously advocating for the principles he believed should guide the

redistricting process, crafting and submitting his own proposed redistricting plan,

and critiquing maps proposed by other litigants. *See, e.g.*, Statement of Respondent

Thomas W. Wolf in Support of His Proposed Remedial Congressional Map

Pursuant to Court's Orders of January 22 and January 26, 2018 (filed Feb. 15,

2018), No. 159 MM 2017, *League of Women Voters of Pa. v. Commonwealth* (Pa.

Sup. Ct.). Given that both *League of Women Voters* and the Consolidated Actions

involve challenges to Pennsylvania's congressional district plan and a request that

the judiciary assume responsibility for adopting a lawful map, Governor Wolf's

presence as a defendant in the former case confirms that he could have been joined

as an original party to the present Consolidated Actions.[1] Under Rule 2327(3), that alone is sufficient to demonstrate an entitlement to intervention. The Court need go no further.

### B. Intervention Is Proper Under Rule 2327(4) Because a Grant of the Relief Sought Will Affect Governor Wolf's Legally Enforceable Interest in Congressional Reapportionment

Governor Wolf has at least two legally enforceable interests in congressional redistricting. First, Governor Wolf has a legally enforceable and constitutionally mandated interest in the process by which a congressional district map is adopted. As the Supreme Court stated in *League of Women Voters*, in Pennsylvania, congressional districts "are drawn by the state legislature as a regular statute, subject to veto by the Governor." 178 A.3d at 742; *see* Pa. Const. art. IV, § 15; *see also Brouillette v. Wolf*, 213 A.3d 341, 360 (Pa. Commw. Ct. 2019) ("The Governor's powers include his power to veto legislation to the extent that this power is vested in him by Sections 15 and 16 of Article IV." (quotation and citation omitted)). Here, Petitioners effectively ask this Court to declare that the time for legislative redistricting has expired, and to step into the place of the

---

[1] *Accord, e.g.*, *Favors v. Cuomo*, No. 11-5632, 2012 WL 928216 (E.D.N.Y. Mar. 12, 2012) (New York Governor named as defendant in "impasse" litigation regarding congressional redistricting); *Colleton Cnty. Council v. McConnell*, 201 F. Supp. 2d 618 (D.S.C. 2002) (South Carolina Governor named as defendant in "impasse" litigation regarding congressional redistricting and allowed to intervene in related action); *Beavidez v. Eu*, 34 F.3d 825 (9th Cir. 1994) (California governor named as defendant in redistricting suit); *Smith v. Clark*, 189 F. Supp. 2d 503 (S.D. Miss. 2002) (Mississippi Governor named as defendant in redistricting suit).

political branches by adopting a new district map by judicial order. This requested relief unquestionably implicates the Governor's constitutional interest and role in approving or disapproving a congressional district map, and intervention is therefore appropriate under Rule 2327(4).

To be sure, the Governor does not dispute that the passage of time may make it necessary and appropriate for the judiciary to adopt a map. *See, e.g.*, *Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992); *see also Growe v. Emison*, 507 U.S. 25, 33 (1993) ("The power of the judiciary of a State … to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged." (quoting *Scott v. Germano*, 381 U.S. 407, 409 (1965))). But that does not change the fact that the Governor has, by virtue of his office and role in the legislative process, a fundamental and legally enforceable interest in a lawsuit that seeks, in effect, to transfer a legislative responsibility to the courts. Indeed, among other things, the Governor has an interest in the determination of *when* exactly the legislative process will have failed, making issuance of a judicial map appropriate. Under the Rules of Civil Procedure, the Governor is entitled to protect this interest.

This Court has granted leave to intervene in circumstances that were similar—albeit where the intervenors had a *less obvious constitutional interest* in the litigation than the Governor has here. In *Allegheny Reproductive Health*

*Center. v. Pennsylvania Department of Human Services*, 225 A.3d 902 (Pa.

Commw. Ct. 2020), this Court granted leave to intervene to 18 members of the

Pennsylvania State Senate and eight members of the Pennsylvania House of

Representatives because the proposed intervenors sought to "preserve their

authority to propose and vote on funding legislation in the future. The

*constitutional authority* of the members of the General Assembly to control the

Commonwealth's finances constitutes a legally enforceable interest that entitles

them to intervene and be heard before the Court rules in this matter." *Id.* at 913

(emphasis added); *see also* Memorandum Opinion at 12, *Carter v. Degraffenreid*,

No. 132 MD 2021 (Pa. Commw. Ct. Sept. 2, 2021) (Wojcik, J.) (*Carter I*)

(granting four individual legislators leave to intervene in a previous version of this

redistricting litigation and observing that "Legislators' ability to legislate would be

impaired if the Court imposes a deadline on the General Assembly and the

Governor to put in place a new congressional district map and takes control of the

redistricting process"). In *Allegheny Reproductive Health Center*, however, the

intervenors were some, but not all, of the members of the General Assembly. The

intervenors therefore only represented their own individual interests in voting on

legislation. Here, conversely, Governor Wolf and Governor Wolf alone has the

power to approve and veto legislation, including a congressional district map. *See*

Pa. Const. art. IV, § 15; *League of Women Voters*, 178 A.3d at 742. In other words,

7

the individual legislators who were granted leave to intervene in *Allegheny Reproductive Health Center* represented only a fraction of the Legislative Branch, but the Governor acts on behalf of the *entire* Executive Branch. Consequently, Governor Wolf's "constitutional authority" is an even stronger legally enforceable interest than that held to warrant intervention in *Allegheny Reproductive Health Center*. 225 A.3d at 913.

Second, the Governor's approval power over a congressional district map demonstrates that the Governor has an enforceable interest not only in ultimately *deciding* whether or not Pennsylvania will enact a particular map, but also in giving *input* into the reapportionment process. Through his Redistricting Advisory Council, the Governor has laid out the principles that will guide his review of any map that the General Assembly passes. *See* Redistricting Principles, Pennsylvania Redistricting Advisory Council (Nov. 24, 2021), https://www.governor.pa.gov/wp-content/uploads/2021/11/Redistricting-Advisory-Council-Final-Principles.pdf. The Governor has also provided public feedback on a map currently under consideration in the Pennsylvania House of Representatives. *See* Letter from Governor Tom Wolf to Speaker and Majority Leader of Pennsylvania House of Representatives (Dec. 28, 2021), https://www.governor.pa.gov/wp-content/uploads/2021/12/12.28.21-TWW-Cutler-Benninghoff-HB-2146-Final.pdf. Should the Court ultimately conclude that there is a legislative impasse, the

Governor must be permitted to intervene to advocate for the principles that he would otherwise apply in the legislative process.

This Court recognized this type of enforceable interest earlier this year, in a previous lawsuit filed by the same Carter Petitioners and seeking similar relief. *See Carter I*, No. 132 MD 2021 (Pa. Commw. Ct. 2021). In *Carter I*, the Court permitted intervention by two members of the Pennsylvania House of Representatives and two members of the Pennsylvania Senate. *See* Memorandum Opinion, *Carter I*, No. 132 MD 2021 (Pa. Commw. Ct. Sept. 2, 2021) (unpublished opinion granting individual legislators' application for leave to intervene). The Court reasoned that the legislators "would have a legally enforceable interest in the submission of a proposed plan for the Court's consideration if called upon to draw a new congressional district map, as in the *Mellow* case." *Id.* at 12. The same is even truer of Governor Wolf because, as noted above, (1) the General Assembly and Governor have complementary roles in redistricting, with approval of both required to enact a congressional district map, and (2) unlike the handful of legislators who intervened in *Carter I*, who did not represent the interest of the General Assembly as a whole, the Governor represents the Executive Branch's entire institutional interest in the reapportionment process.

### C.     None of the Exceptions to Intervention Applies Here

Rule 2329 provides three limited circumstances in which intervention may not be appropriate,[2] none of which applies here. First, Governor Wolf's intervention will be "in subordination to and in recognition of the propriety of the action." Pa. R. Civ. P. 2329(1). For example, this case is already pending in the Commonwealth Court, so Governor Wolf's intervention does not affect the Court's jurisdiction. *Cf. J. Edward Connelly Associates, Inc. v. Landmark Sav. Ass'n*, 35 Pa. D. & C.3d 322, 325 (Pa. Com. Pl. 1985) (denying intervention under Rule 2329(1) because "the department [of banking]'s intervention would deprive the court of common pleas of jurisdiction since, as an agency of the Commonwealth, the department can be sued only in Commonwealth Court"). Nor does Governor Wolf's intervention otherwise implicate the exception in Rule 2329(1).

Second, Governor Wolf's interests are not "already adequately represented" in this litigation. Pa. R. Civ. P. 2329(2). The Governor's interests in the Consolidated Actions are unique to his elected office. First, no other party in the litigation—and, indeed, no one else in the Commonwealth—shares the Governor's authority to approve or veto a proposed congressional district map. *See* Pa. Const. art. IV § 15; *League of Women Voters*, 178 A.3d at 742. Although the Department

---

[2] Even if the Court determined that one of the items in Rule 2329 were applicable, the Rule "does not bar the court from granting intervention." *Moyer v. Gudknecht*, 67 A.3d 71, 79 (Pa. Commw. Ct. 2013).

of State is an executive agency and two of its leaders are named as Respondents, the Department of State's interest is in election administration. It does not share the Governor's interest in the determination of whether, and at what point in time, the judiciary should conclude that the political branches (which, of course, include the Governor) have "failed" to redistrict in a timely manner, and should thus step into their place to issue a court-ordered map. Nor does the Department of State share the Governor's interest in *which particular map* the Court should adopt (other than to the extent that issues of administrative feasibility might be implicated). Indeed, the Governor's interest is unique among all of the parties to this case.[3] The Governor is the only party elected to represent the political interests of all Pennsylvanians.

Third, Governor Wolf has not "unduly delayed in making application for intervention," and his intervention will not "unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties." Pa. R. Civ. P. 2329(3). Governor Wolf files this Application in accordance with the Court's Scheduling Order, and his intervention will not implicate any of the other concerns identified

---

[3] The Governor's Redistricting Advisory Council and the attendant principles for his review of any congressional district map, *see supra* p. 8, further demonstrate that the Governor's views and role in reapportionment are unique and not already represented in the Consolidated Actions.

in this provision. Instead, Governor Wolf's participation in the Consolidated

Actions will benefit the court's adjudication.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Governor Wolf's

Application for Leave to Intervene.


Respectfully submitted,

Dated: December 31, 2021

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By:  /s/ Robert A. Wiygul
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300

*Counsel for Proposed Intervenor Tom Wolf,
Governor of the Commonwealth of
Pennsylvania*

# Exhibit A

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200

*Counsel for Intervenor-Respondent Tom*
*Wolf, Governor of the Commonwealth*
*of Pennsylvania*

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN, | |
| Petitioners, | No. 464 MD 2021 |
| v. | |
| VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries, | |
| Respondents. | |
| PHILIP T. GRESSMAN; RON Y. DONAGI; KRISTOPHER R. TAPP; PAMELA GORKIN; DAVID P. MARSH; JAMES L. ROSENBERGER; AMY MYERS; EUGENE BOMAN; GARY GORDON; LIZ MCMAHON; TIMOTHY G. FEEMAN; and GARTH ISAAK, | No. 465 MD 2021 |

|  | Petitioners, |
| :-- | :-- |
| v. |  |
| VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries, |  |
|  | Respondents. |

**INTERVENOR-RESPONDENT GOVERNOR WOLF'S ANSWER TO**
***CARTER* PETITIONERS' PETITION FOR REVIEW**
<u>**ADDRESSED TO THE COURT'S ORIGINAL JURISDICTION**</u>

Intervenor-Respondent Tom Wolf, in his official capacity as Governor of the Commonwealth of Pennsylvania (the "Governor"), hereby answers the Petition for Review Addressed to the Court's Original Jurisdiction in case no. 464 MD 2021 as follows:

1. The allegations of this paragraph characterize Petitioners' filings in this action. Those filings speak for themselves, and any characterization thereof is denied.

2. It is admitted that the U.S. Secretary of Commerce delivered the Census data in August 2020 and that Pennsylvania will be allocated 17 members in Congress in the next Congress, which is one fewer than its current allocation. The remaining allegations of this paragraph constitute conclusions of law to which no response is required.

2

3.     The allegations of this paragraph constitute conclusions of law to which no response is required.

4.     It is admitted that this paragraph accurately quotes a portion of the opinion of the Supreme Court of Pennsylvania in *League of Women Voters v. Commonwealth*, 178 A.3d 737 (Pa. 2018).  That opinion speaks for itself, and any characterization thereof is denied.  The allegation that "[i]t is now clear that Pennsylvania's political branches will not timely act to pass a [congressional redistricting] plan" is denied.  By way of further answer, although it is still possible for a new redistricting map to be legislatively enacted on a timeline compatible with the primary election calendar, that prospect is in substantial doubt given, among other things, the current status of the General Assembly's consideration of potential maps, the fact that both chambers of the General Assembly are currently adjourned, and the paucity of sessions days scheduled by the House of Representatives and Senate in January 2022.  The Governor agrees that, if a new redistricting plan is not legislatively enacted in the near future, it will be necessary and appropriate for the judiciary to implement a plan, and that the judiciary should begin preparing for that eventuality now.  The remaining allegations of this paragraph constitute conclusions of law to which no response is required.

5.     Denied as stated.  By way of further answer, it is admitted that the General Assembly has not yet passed a plan for the Governor's approval.  It is also

admitted that the Governor convened a Pennsylvania Redistricting Advisory Council (the "Redistricting Council"), made up of members with expertise in redistricting, political science and mapmaking, to establish a set of principles to help guide the Governor's review of maps considered and ultimately passed by the General Assembly, and that the Governor has stated that the redistricting map passed by the House State Government Committee on December 15, 2021, by a 14-11 vote, does not comply with the principles outlined by the Redistricting Council.

6.     Admitted in part and denied in part.  It is admitted that the General Assembly has adjourned until January and has not passed a congressional redistricting plan, and that a new redistricting plan will therefore not be enacted by the end of December 2021.  To the extent the allegations of this paragraph characterize previous written statements of the Department of State or its officials, those statements speak for themselves, and the Governor denies any characterization thereof.  By way of further answer, the Governor incorporates by reference his answer to Paragraph 4 above.

7.     The facts and circumstances of *Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992), and *League of Women Voters of Pennsylvania v. Commonwealth*, 181 A.3d 1083 (Pa. 2018) are set forth in the Court's opinions.  Those opinions speak for themselves, and the Governor denies any characterization thereof.  The remaining

allegations of this paragraph constitute conclusions of law to which no response is required.

8.      The allegations of this paragraph constitute conclusions of law to which no response is required.

9.      After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and therefore denies them.

10.     After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and therefore denies them.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.

11.     It is admitted that Respondent Veronica Degraffenreid is the Acting Secretary of the Commonwealth and sued in her official capacity only.  It is also admitted that Respondent Degraffenreid is Pennsylvania's Chief Election Official and a member of the Governor's Executive Board.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.

12.     It is admitted that Respondent Jessica Mathis is the Director of the Bureau of Elections and Notaries, which is part of the Pennsylvania Department of State, and that Respondent Mathis is sued in her official capacity only.  The

remaining allegations of this paragraph constitute legal conclusions to which no response is required.

13.     Admitted.

14.     Admitted.

15.     Denied as stated.  It is admitted that, in the *League of Women Voters* litigation, the Supreme Court provided the General Assembly and the Governor an opportunity to enact a lawful map after the Court invalidated the map enacted in 2011, and that the General Assembly then failed to pass such a map by the deadline set forth by the Court.  It is further admitted that, following this failure to enact a lawful map, the Court adopted a lawful map.

16.     It is admitted that the Court made use of 2010 Census data in drawing a new map.  After reasonable investigation, the Governor is without knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph and therefore denies them.  To the extent the allegations of this paragraph characterize one or more judicial opinions in the *League of Women Voters* litigation, those opinions are in writing and speak for themselves, and the Governor denies any characterization thereof.

17.     Admitted in part and denied in part.  The allegation that the "ideal population" of each of Pennsylvania's congressional districts in 2010 was 705,688

is denied as vague.  It is admitted that, according to the 2010 Census, Pennsylvania

had a population of 12,702,379, and that, based on that data, the state's total

population divided by the number of districts allocated to Pennsylvania following

that Census, rounded to the nearest whole number, was 705,688.

18.    It is admitted that the Court-drawn map in *League of Women Voters*

was adopted on February 19, 2018.  The allegation that the districts in that map had

"perfectly equal populations" is denied, but it is admitted that each district's

population deviated from all others by no more than one person, based on the 2010

data.

19.    Admitted.

20.    Admitted.

21.    Admitted with the exception of the characterization of the population

increase as "significant," which is denied as vague.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Denied.  According to the 2020 Census results, if Pennsylvania's

population were apportioned as evenly as possible into the 17 congressional

districts to which it is entitled, each district would have approximately 764,865

persons, which is approximately 59,177 more persons per district than under the current plan.

26.     Admitted.

27.     Admitted.

28.     Denied as vague.  By way of further answer, in light of the 2020 Census data, Congressional Districts 8, 9, 12, 13, 14, 15, 16, and 18 have fewer persons than they would if the Districts were equally populated, and that Congressional Districts 1, 2, 3, 4, 5, 6, 7, 10, 11, and 17 have more persons than they would if the Districts were equally populated.

29.     The allegations of this paragraph constitute conclusions of law to which no response is required.

30.     The allegations of this paragraph constitute conclusions of law to which no response is required.

31.     Admitted.

32.     Admitted.

33.     Admitted.

34.     Admitted.

35.     It is admitted that the General Assembly has not enacted a congressional plan that contains only 17 congressional districts.  The remaining allegations of this paragraph constitute conclusions of law to which no response is required.

36.     The allegations of this paragraph constitute conclusions of law to which no response is required.

37.     It is admitted that the P.L. 94-171 data was released in August 2021, and that the General Assembly has not yet passed a map for presentment to the Governor.

38.     The allegations in this paragraph characterize written statements by the Governor and others.  Those statements speak for themselves, and the Governor denies any characterization thereof.  By way of further answer, in November 2021, Governor Wolf announced that the Pennsylvania Redistricting Advisory Council that he had convened had finalized a set of guiding principles. These principles include, among other things, legal principles serving as a minimal floor of protection, so that districts have compact and contiguous territory that minimizes as many divisions of political subdivisions as practicable; principles of representation, to maintain communities of interest and assure equal representation and fairness; and principles of process, to ensure that the public has an opportunity

9

to provide input on, and participate in the evaluation of, the map passed by the General Assembly.

39.     It is admitted that the redistricting map passed by the House State Government Committee on December 15, 2021, by a 14-11 vote, does not comply with the principles outlined by the Redistricting Council because, among other reasons, that map splits multiple communities of interest in ways that do not appear to be motivated by compelling legal principles, but rather by a desire to make districts more favorable to Republican candidates.

40.     Denied as vague.  By way of further answer, the Governor incorporates by reference his answer to Paragraph 39 above.

41.     It is admitted that the General Assembly has adjourned for the remainder of 2021 without passing any congressional plans, and that the General Assembly's timeline for considering and enacting a congressional plan is jeopardizing Pennsylvania's ability to conduct timely 2022 primary elections.

42.     The allegations of this paragraph characterize previous written statements of the Department of State or its officials.  Those statements speak for themselves, and the Governor denies any characterization thereof.  By way of further answer, the Governor agrees that, if a new redistricting plan is not legislatively enacted in the very near future, it will be necessary and appropriate

for the judiciary to implement a plan, and that the judiciary should begin preparing for that eventuality now.

43.     It is admitted that both houses of the General Assembly have announced that they will not reconvene any earlier than January 4, 2022, which would make it impossible for Pennsylvania's political branches to enact a congressional district map by the end of 2021.  In response to the allegation that "the Department of State's timeline cannot be met, thus jeopardizing Pennsylvania's ability to conduct timely elections for 2022," the Governor incorporates by reference his answers to Paragraphs 41 and 42 above.

44.     Admitted.

45.     It is admitted that, pursuant to the Pennsylvania Election Code, the first day on which nomination petitions may be circulated and filed for candidates seeking to appear on the ballot for the 2022 primary election is February 15, 2022, and the last day for circulating and filing such petitions is three weeks later.

46.     To the extent the allegations of this paragraph constitute legal conclusions, no response is required.  By way of further answer, it is admitted that, as a practical matter, finalized congressional districts need to be in place before candidates in those districts begin to collect signatures on their nomination petitions, so that the candidates know who is eligible to sign the petitions; that the

location of district boundaries bears on strategic decisions made by potential congressional candidates; and that many voters are interested in knowing, before the primary election process begins, the districts in which they reside and will vote.

47.     The facts and circumstances of *Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992), and *League of Women Voters of Pennsylvania v. Commonwealth*, 181 A.3d 1083 (Pa. 2018) are set forth in the Court's opinions.  Those opinions speak for themselves, and the Governor denies any characterization thereof.

48.     Denied as stated.  It is denied that the political branches are currently at an "impasse" over the enactment of a new congressional map, although the likelihood of an impasse is increasing.  By way of further answer, although it is still possible for a new redistricting map to be legislatively enacted on a timeline consistent with the current primary election calendar, that prospect is in substantial doubt given, among other things, the current status of the General Assembly's consideration of potential maps, the fact that both chambers of the General Assembly are currently adjourned, and the paucity of sessions days scheduled by the House of Representatives and Senate in January 2022.  The Governor agrees that, if a new redistricting plan is not legislatively enacted in the very near future, it will be necessary and appropriate for the judiciary to implement a plan, and that the judiciary should begin preparing for that eventuality now.

49.    The Governor incorporates by reference all prior paragraphs of this Answer and the paragraphs below as though fully set forth herein.

50.    The allegations of this paragraph constitute legal conclusions to which no response is required.

51.    The allegations of this paragraph constitute legal conclusions to which no response is required.

52.    The allegations of this paragraph constitute legal conclusions to which no response is required.

53.    Admitted in part, denied in part. It is admitted that, based on the 2020 Census results, Pennsylvania's current congressional district plan places voters into districts with disparate populations. After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and therefore denies them.

54.    The allegations of this paragraph constitute legal conclusions to which no response is required.

55.    The Governor incorporates by reference all prior paragraphs of this Answer and the paragraphs below as though fully set forth herein.

56.    The allegations of this paragraph constitute conclusions of law to which no response is required.

13

57.     It is admitted that, when the Pennsylvania Supreme Court adopted a congressional redistricting plan in 2018 in the *League of Women Voters* case, the Court crafted a plan in which the population deviation among districts was, based on the data relied on by the Court, no more than one person.  It is also admitted that, based on the 2020 Census data, the population deviation among Pennsylvania's congressional districts is now far greater, and the population of some districts now exceeds that of others by tens of thousands of people.  The remaining allegations of this paragraph constitute conclusions of law to which no response is required.

58.     It is admitted that, in light of the 2020 Census data, Pennsylvania's current congressional district plan is malapportioned.

59.     The allegations of this paragraph constitute legal conclusions to which no response is required.

60.     The Governor incorporates by reference all prior paragraphs of this Answer and the paragraphs below as though fully set forth herein.

61.     The allegations of this paragraph constitute conclusions of law to which no response is required.

62.     It is admitted that Pennsylvania is currently allotted 18 seats in the U.S. House of Representatives but that, starting with the next Congress, it will be

allotted only 17 seats.  The remaining allegations of this paragraph constitute conclusions of law to which no response is required.

63.    The allegations of this paragraph constitute conclusions of law to which no response is required.

**WHEREFORE**, the Governor respectfully requests that, if a new congressional district map is not legislatively enacted in a timely manner, the Court adopt a new congressional district map that complies with all applicable legal requirements and best promotes the fair and equal representation of all Pennsylvanians in the U.S. House of Representatives.

Dated:

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

By:  /s/ Robert A. Wiygul
    Robert A. Wiygul (I.D. No. 310760)
    John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300

*Counsel for Intervenor-Respondent Tom Wolf,*
*Governor of the Commonwealth of Pennsylvania*

## <u>VERIFICATION</u>

I, Thomas W. Wolf, Governor of the Commonwealth of Pennsylvania, verify that the facts set forth in the foregoing Answer to Petitioners' Petition for Review Addressed to the Court's Original Jurisdiction are true and correct to the best of my information, knowledge and belief. I understand that the statements contained herein are subject to the penalties of 18 P.S. § 4904 relating to unsworn falsification to authorities.

Dated: _____        _____

Thomas W. Wolf
Governor of the Commonwealth of Pennsylvania

# Exhibit B

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Robert A. Wiygul (I.D. No. 310760)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200

*Counsel for Intervenor Respondent*
*Governor Wolf*

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ANN CARTER; MONICA PARRILLA; REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE CASSANELLI; LYNN WACHMAN; MICHAEL GUTTMAN; MAYA FONKEU; BRADY HILL; MARY ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE MCNULTY; and JANET TEMIN, | |
| Petitioners, | No. 464 MD 2021 |
| v. | |
| VERONICA DEGRAFFENREID, in her official capacity as the Acting Secretary of the Commonwealth of Pennsylvania; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries, | |
| Respondents. | |
| PHILIP T. GRESSMAN; RON Y. DONAGI; KRISTOPHER R. TAPP; PAMELA GORKIN; DAVID P. MARSH; JAMES L. ROSENBERGER; AMY MYERS; EUGENE BOMAN; GARY GORDON; LIZ MCMAHON; TIMOTHY G. FEEMAN; and GARTH ISAAK, | |
| Petitioners, | No. 465 MD 2021 |

v.

VERONICA DEGRAFFENREID, in her official capacity as
the Acting Secretary of the Commonwealth of
Pennsylvania; JESSICA MATHIS, in her official capacity
as Director for the Pennsylvania Bureau of Election
Services and Notaries,

Respondents.

**INTERVENOR-RESPONDENT GOVERNOR WOLF'S ANSWER TO
*GRESSMAN* PETITIONERS' PETITION FOR REVIEW
ADDRESSED TO THE COURT'S ORIGINAL JURISDICTION**

Intervenor-Respondent Tom Wolf, in his official capacity as Governor of
the Commonwealth of Pennsylvania (the "Governor"), hereby answers the Petition
for Review Addressed to the Court's Original Jurisdiction in case no. 465 MD
2021 as follows:

1.     After reasonable investigation, the Governor lacks knowledge and
information sufficient to form a belief as to the truth or falsity of the allegation
Petitioners are registered voters and leading mathematicians and scientists in
Pennsylvania.  The remaining allegations of this paragraph contain Petitioners'
characterization of their action and legal conclusions to which no response is
required.

2.     It is admitted that Pennsylvania's congressional map was last drawn in
2018, using data from the 2010 Census; that, since that time, Pennsylvania has lost

a congressional seat; and that a new map is needed for the 2022 election cycle.  It is further admitted that, based on the 2020 Census results, the current congressional district map is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

3.      The allegations of this paragraph constitute conclusions of law to which no response is required.

4.      It is admitted that the House State Government Committee approved a preliminary congressional district plan, on a 14-11 vote, on December 15, 2021, but it is denied, on information and belief, that that plan has not received a first consideration in the House.  It is admitted that neither the House or the Senate has convened since December 15, 2021; that both chambers of the General Assembly have announced that they will not reconvene before January 2022; and that the General Assembly has not yet passed a new congressional district plan.  The remaining allegations of this paragraph constitute conclusions of law to which no response is required.

5.      It is admitted that, pursuant to the Pennsylvania Election Code, the period for circulating and filing candidate nomination petitions is scheduled to commence on February 15, 2022.

6.      The allegations of this paragraph characterize previous written statements by Respondents.  Those statements speak for themselves, and the Governor denies any characterization thereof.  By way of further answer, although it is still possible for a new redistricting map to be legislatively enacted on a timeline compatible with the primary election calendar, that prospect is in substantial doubt given, among other things, the current status of the General Assembly's consideration of potential maps, the fact that both chambers of the General Assembly are currently adjourned, and the paucity of session days scheduled by the House of Representatives and Senate in January 2022.  The Governor agrees that, if a new redistricting plan is not legislatively enacted in the near future, it will be necessary and appropriate for the judiciary to implement a plan, and that the judiciary should begin preparing for that eventuality now.

7.      Denied as stated.  By way of further answer, the Governor incorporates his answer to Paragraph 6 above.

8.      It is admitted that Petitioners filed an application asking the Supreme Court of Pennsylvania to exercise King's Bench power or extraordinary jurisdiction over this case, and that the Supreme Court's exercise of extraordinary jurisdiction is warranted to avoid or minimize disruption to the primary election process.

9.    The allegations of this paragraph constitute conclusions of law to which no response is required.

10.    After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and therefore denies them.  By way of further answer, the Governor incorporates his answers to Paragraphs 11-22 below.

11.    It is admitted that, based on the 2020 Census data, Congressional District 5 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

12.    It is admitted that, based on the 2020 Census data, Congressional District 5 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

13.    It is admitted that, based on the 2020 Census data, Congressional District 5 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

14.     It is admitted that, based on the 2020 Census data, Congressional District 12 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

15.     It is admitted that, based on the 2020 Census data, Congressional District 12 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

16.     It is admitted that, based on the 2020 Census data, Congressional District 12 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

17.     It is admitted that, based on the 2020 Census data, Congressional District 3 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

18.     It is admitted that, based on the 2020 Census data, Congressional District 10 is malapportioned.  After reasonable investigation, the Governor lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

19.     It is admitted that, based on the 2020 Census data, Congressional District 7 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

20.     It is admitted that, based on the 2020 Census data, Congressional District 7 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

21.     It is admitted that, based on the 2020 Census data, Congressional District 5 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

22.     It is admitted that, based on the 2020 Census data, Congressional District 5 is malapportioned.  After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and therefore denies them.

23.     It is admitted that Respondent Veronica Degraffenreid is the Acting Secretary of the Commonwealth and sued in her official capacity only.  It is also admitted that Respondent Degraffenreid is Pennsylvania's Chief Election Official and a member of the Governor's Executive Board.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.

24.     It is admitted that Respondent Jessica Mathis is the Director of the Bureau of Elections and Notaries, which is part of the Pennsylvania Department of State, and that Respondent Mathis is sued in her official capacity only.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.

25.     Admitted, except that it was the Supreme Court of Pennsylvania, rather than "[t]his Court," that adopted Pennsylvania's current congressional district map in 2018.

26.     Admitted.

27.     After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that "Pennsylvania's congressional districts vary in population by as much as 95,000 residents" and therefore denies that allegation.  The remaining allegations of this paragraph are admitted upon information and belief.

28.     After reasonable investigation, the Governor lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in this paragraph and therefore denies that allegation.

29.     The allegations of this paragraph characterize previous written statements of Respondents.  Those statements speak for themselves, and the Governor denies any characterization thereof.

30.     To the extent that the allegations of this paragraph characterize previous written statements of the Department of State or its officials, those statements speak for themselves, and the Governor denies any characterization thereof.  It is admitted that, pursuant to the Election Code, the first date for candidates to circulate nomination petitions for the 2022 primary election is February 15, 2022, and that the last date for circulating and filing such petitions is March 8, 2022.

31.     Admitted in part and denied in part.  It is admitted that the House State Government Committee approved a preliminary congressional district plan, on a 14-11 vote, on December 15, 2021, but it is denied, on information and belief, that that plan has not received a first consideration in the House.  It is admitted that neither the House or the Senate has convened since December 15, 2021; that both chambers of the General Assembly have announced that they will not reconvene before January 2022; and that the General Assembly has not yet passed a new

congressional district plan.  It is denied that it is presently impossible to enact a

timely congressional district map.  By way of further answer, although it is still

possible for a new redistricting map to be legislatively enacted on a timeline

compatible with the primary election calendar, that prospect is in substantial doubt

given, among other things, the current status of the General Assembly's

consideration of potential maps, the fact that both chambers of the General

Assembly are currently adjourned, and the paucity of sessions days scheduled by

the House of Representatives and Senate in January 2022.  The Governor agrees

that, if a new redistricting plan is not legislatively enacted in the near future, it will

be necessary and appropriate for the judiciary to implement a plan, and that the

judiciary should begin preparing for that eventuality now.

32.     Denied as stated.  To the extent that the allegations of this paragraph

characterize previous written statements of the Department of State or its officials,

those statements speak for themselves, and the Governor denies any

characterization thereof.  It is admitted that the General Assembly has not yet

passed a congressional redistricting plan.  By way of further answer, the Governor

incorporates his answer to Paragraph 31 above.

33.     It is admitted that Petitioners have asked the Supreme Court of

Pennsylvania to exercise its King's Bench power or extraordinary jurisdiction over

Petitioners' case.  It is further admitted that the Supreme Court's exercise of

extraordinary jurisdiction is warranted in both of these consolidated cases. By way of further answer, the Governor incorporates his answer to Paragraph 31 above.

34.     The Governor incorporates his answers to Paragraphs 1-33 above as if fully set forth herein.

35.     The allegations of this paragraph constitute conclusions of law to which no response is required.

36.     The allegations of this paragraph constitute conclusions of law to which no response is required.

37.     The allegations of this paragraph comprise characterizations of Petitioners' petition and claims and conclusions of law, and therefore no response is required.

38.     The allegation that "Petitioners' districts, and all other districts in the current plan, vary by as much as tens of thousands of persons relative to one another and to the ideal district population" is denied as vague and unclear. It is admitted that Pennsylvania's current congressional districts are malapportioned and that the population of certain districts in Pennsylvania's current congressional district plan varies by as much of tens of thousands of persons from the population of certain other districts.

39.     Denied as stated.  By way of further answer, the cause of these deviations from population equality is the shifting of Pennsylvania's population relative to the population measured in the 2010 Census.

40.     The allegations of this paragraph constitute conclusions of law to which no response is required.

41.     The Governor incorporates his answers to Paragraphs 1-33 above as if fully set forth herein.

42.     The allegations of this paragraph constitute conclusions of law to which no response is required.

43.     The allegations of this paragraph constitute conclusions of law to which no response is required.

44.     It is admitted that, because Pennsylvania does not yet have a lawful congressional district plan for the 2022 primary and general elections, voters do not know what the boundaries of the districts used in those elections will be.

45.     It is admitted that, because Pennsylvania does not yet have a lawful congressional district plan for the 2022 primary and general elections, potential candidates do not yet know the identity of all of their prospective constituents, and Petitioners do not yet know the identity of all of their fellow district residents.

46.    To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  To the extent the allegations of this paragraph require a response, the Governor incorporates his answer to Paragraphs 44 and 45 above.

47.    The allegations of this paragraph constitute conclusions of law to which no response is required.

48.    The Governor incorporates his answers to Paragraphs 1-33 above as if fully set forth herein.

49.    The allegations of this paragraph constitute conclusions of law to which no response is required.

50.    The allegations of this paragraph constitute conclusions of law to which no response is required.

51.    It is admitted that Pennsylvania's congressional districts are currently malapportioned, and that holding future elections based on such districts (which would be unlawful) would dilute the weight of certain Pennsylvania voters relative to others.

52.    The allegations of this paragraph constitute conclusions of law to which no response is required.

**WHEREFORE**, the Governor respectfully requests that, if a new congressional district map is not legislatively enacted in a timely manner, the Court adopt a new congressional district map that complies with all applicable legal requirements and best promotes the fair and equal representation of all Pennsylvanians in the U.S. House of Representatives.

Dated:

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By:  /s/ Robert A. Wiygul
  Robert A. Wiygul (I.D. No. 310760)
  John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300

*Counsel for Intervenor-Respondent Governor
Wolf*

14

## **<u>VERIFICATION</u>**

I, Thomas W. Wolf, Governor of the Commonwealth of Pennsylvania, verify that the facts set forth in the foregoing Answer to Petitioners' Petition for Review Addressed to the Court's Original Jurisdiction are true and correct to the best of my information, knowledge and belief. I understand that the statements contained herein are subject to the penalties of 18 P.S. § 4904 relating to unsworn falsification to authorities.

Dated: _____          _____

                         Thomas W. Wolf
                         Governor of the Commonwealth of Pennsylvania

## CERTIFICATION REGARDING PUBLIC ACCESS POLICY

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non–confidential information and documents.

Dated: December 31, 2021          /s/ *Robert A. Wiygul*
                                 Robert A. Wiygul