UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAMSPORT DIVISION

|   |   |
|---|---|
| **William C. Toth Jr.**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**Leigh M. Chapman**, et al.,<br><br>Defendants | Case No. 1:22-cv-00208-JPW |

### BRIEF IN SUPPORT OF RENEWED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Earlier today, the Supreme Court of Pennsylvania entered an order that purports to "adopt" a congressional map for the 2022 elections. *See* Exhibit 1. The state supreme court's order patently violates the Elections Clause and 2 U.S.C. § 2a(c)(5), and it will inflict irreparable injury and lead to chaos unless the defendants are promptly enjoined from implementing it. The Court should immediately grant a TRO while it considers the plaintiffs' request for preliminary-injunctive relief.

### FACTS

Most of the relevant facts are set forth in the plaintiffs' previous briefing. *See* Br. in Support of Emergency Motion for TRO and PI, ECF No. 11, at 3–5. But some additional developments have occurred since the plaintiffs moved for emergency relief on February 21, 2022.

On February 23, 2022, the Supreme Court of Pennsylvania entered an order that purports to "adopt" a congressional map for the 2022 elections. *See* Exhibit 1. The map chosen by the state supreme court is known as the "Carter plan," which was proposed by litigants represented by the Elias Law Group. Three justices dissented from the decision to adopt the Carter plan. *See id.*

The state supreme court's order instructs state election officials to "prepare textual language that describes the Carter Plan and submit the same to the Secretary of the Commonwealth without delay," and to "publish notice of the Congressional Districts in the Pennsylvania Bulletin." *Id.* The state supreme court also "modified" the statutory deadlines in General Primary Election calendar to accommodate its decision to impose a map for the 2022 congressional elections, and it commanded that its "modified" schedule "shall be implemented by the Secretary of the Commonwealth and all election officers within the Commonwealth." *Id.* It also directed the Secretary of the Commonwealth to "notify this Court by 4:00 P.M. on February 25, 2022, should it foresee any technical issues." A copy of the state supreme court's order is attached to this brief as Exhibit 1.

The plaintiffs respectfully renew their request for an emergency TRO in light of the state supreme court's order, and they respectfully ask the Court to immediately issue a TRO that restrains the defendants from implementing this unconstitutional order while the Court considers the plaintiffs' request for preliminary-injunctive relief.

## I. The Court Should Immediately Enjoin The Defendants From Implementing The Court-Drawn Map And Order Them To Comply With The Elections Clause And 2 U.S.C. § 2a(c)(5)

In deciding whether to issue a TRO, a Court must consider four factors: (1) whether the movant has "a reasonable probability of eventual success in the litigation"; (2) whether the movant "will be irreparably injured . . . if relief is not granted"; (3) "the possibility of harm to other interested persons from the grant or denial of the injunction"; and (4) "the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176–77 (3d Cir. 2017). All four factors favor immediate relief.

### A. The Plaintiffs Are Likely To Succeed On The Merits

The state supreme court's attempt to impose a court-drawn map for the 2022 congressional elections is a flagrant violation of the Elections Clause. Under the Constitution, only "the Legislature" of a state may "prescribe" the manner of electing its Senators and Representatives. *See* U.S. Const. art. I, § 4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations."). The state judiciary is not part of "the Legislature," so it cannot impose a congressional map or participate in the redistricting process unless it has been authorized to do so by "the Legislature." *See Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015). The state supreme court's actions usurp the legislature's constitutionally assigned role, and the

Court should promptly enjoin the defendants from implementing the state supreme court's unconstitutional edict.

The defendants will also violate 2 U.S.C. § 2a(c)(5) if they implement the court-drawn map. 2 U.S.C. § 2a(c) provides:

> Until a State is redistricted in the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: . . . (5) if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large.

2 U.S.C. § 2a(c). The State has not yet been "redistricted in the manner provided by the law thereof," because the General Assembly has not enacted a new congressional map, and the state supreme court's attempt to impose a court-drawn map violates the Elections Clause. The defendants must therefore conduct at-large elections unless and until the General Assembly enacts a new congressional map. That is especially true when the Supreme Court of Pennsylvania had to disrupt the General Primary Election calendar to accommodate its court-imposed redistricting plan. *See Branch v. Smith*, 538 U.S. 254, 273–76 (2003) (plurality opinion of Scalia, J.) (holding that 2 U.S.C. § 2a(c) is triggered when "the election is so imminent that no entity competent to complete redistricting pursuant to state law . . . is able to do so without disrupting the election process").

### B. The Plaintiffs Will Suffer Irreparable Harm Absent Relief From This Court

The plaintiffs have explained the irreparable harms that they will suffer in their previous briefing and declarations. *See* Br. in Support of Emergency Motion for TRO and PI, ECF No. 11, at 12–13; *see also* Bognet Decl. (ECF No. 11-10); Bashir Decl. (ECF No. 11-11); Hall Decl. (ECF No. 11-12). The state supreme court's order from this morning aggravates those harms by forcing Bognet and Bashir to campaign for office under an unconstitutional court-drawn map, which is likely to be declared unconstitutional and undone at the conclusion of these proceedings. The uncertainty surrounding whether they will need to campaign for office in statewide at-large elections, in the districts drawn by the state supreme court, or in districts drawn by subsequent legislative enactments inflicts irreparable harm on the candidates and their campaigns. Plaintiff Alan Hall is also suffering irreparable harm because the state supreme court's edict will force him to depart from the General Primary Calendar that the legislature enacted, in violation of the U.S. Constitution and in contravention of his oath to obey the Constitution. Finally, each of the five plaintiffs will suffer irreparable harm because the state supreme court's order deprives them of their right to vote for all 17 members of the Pennsylvania congressional delegation under 2 U.S.C. § 2a(c)(5).

### C. The Balance Of Equities Favors A TRO Or Preliminary Injunction

The balance of equities favors an immediate TRO because it is clear that any action taken to implement the state supreme court's order will violate the

Elections Clause and 2 U.S.C. § 2a(c)(5), and the need to enforce the Constitution and federal law outweighs any harms that might befall others from an injunction. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 597 (3d Cir. 2002) ("[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." (citation and internal quotation marks omitted)).

### D. The Public Interest Favors A TRO Or Preliminary Injunction

A preliminary injunction will ensure that the Constitution and 2 U.S.C. § 2a(c)(5) are obeyed, which is by definition in the public interest. *See Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 179 (3d Cir. 2018); *Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 884 (3d Cir. 1997).

## II. Immediate Injunctive Relief In Needed To Ensure That The Legislature And Governor Negotiate A New Map Against The Backdrop Of 2 U.S.C. § 2a(c)(5)

The Court should also order immediate injunctive relief to ensure that the General Assembly and Governor Wolf can negotiate a new congressional map against the backdrop of 2 U.S.C. § 2a(c)(5). By requiring at-large elections in the event of an impasse between the legislature and governor, 2 U.S.C. § 2a(c)(5) creates strong incentives for compromise among rival factions of state governments. But the Supreme Court of Pennsylvania has removed any incentive for Governor Wolf to negotiate or compromise with the Republican-controlled legislature. The governor knew from the outset that an impasse

would lead to a court-drawn map—and that this a map would be drawn by a state supreme court with a 5-2 Democratic majority. The state supreme court rewarded the governor's intransigence by adopting a congressional map proposed by the Elias Law Group, an outcome that the state's Democrats could have only dreamed of obtaining from a Republican-controlled legislature. The Court should immediately enforce the command of 2 U.S.C. § 2a(c)(5), which will compel the legislature and Governor Wolf to agree quickly on a new map (and a modified primary schedule) and avoid the spectacle of at-large elections for the state's 17 congressional representatives.

## CONCLUSION

The emergency motion for TRO should be granted, and the Court should immediately enjoin the defendants from implementing the state supreme court's order of February 23, 2022.

Respectfully submitted.

Walter S. Zimolong III
Pennsylvania Bar No. 89151
Zimolong LLC
Post Office Box 552
Villanova, Pennsylvania 19085
(215) 665-0842
wally@zimolonglaw.com

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Pennsylvania Bar No. 91505
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: February 23, 2022

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 23, 2022, I filed this document through CM/ECF, which will effectuate service on all counsel of record in this case. I also certify that I will serve this document by e-mail upon the following counsel, who represent the defendants in the state-court redistricting litigation:

Robert A. Wiygul
Cary L. Rice
John B. Hill
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103-6933
(215) 568-6200
rwiygul@hangley.com
crice@hangley.com
jhill@hangley.com

Joe H. Tucker Jr.
Dimitri Mavroudis
Jessica Rickabaugh
Tucker Law Group
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
(215) 875-0609
jtucker@tlgattorneys.com
dmavroudis@tlgattorneys.com
jrickabaugh@tlgattorneys.com

Caleb Curtis Enerson
Office Of Attorney General
15th Floor, Strawberry Square
Harrisburg, Pennsylvania 17120
1600 Arch Street, Suite 300
Philadelphia, Pennsylvania 19103
(717) 787-2717
cenerson@attorneygeneral.gov

Gregory G. Schwab
Office of General Counsel
333 Market Street
Harrisburg, Pennsylvania 17101
gschwab@ogc.pa.gov

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs*