UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **William C. Toth Jr.**, et al.<br><br>Plaintiffs,<br><br>v.<br><br>**Leigh M. Chapman**, et al.,<br><br>Defendants | Case No. 1:22-cv-00208-JPW |

# BRIEF IN OPPOSITION TO THE CARTER PETITIONERS' MOTION TO INTERVENE

The Carter petitioners' motion to intervene should be denied. The Carter petitioners are not entitled to intervene as of right because they have no "significantly protectable" interest in ensuring that Pennsylvania conducts its congressional elections in violation of the Elections Clause and 2 U.S.C. § 2a(c)(5). They have also failed to show that the defendants will not "adequately represent" whatever interests they might have, as each of the defendants has zealously defended the Supreme Court of Pennsylvania's authority to impose a map and alter the General Primary Calendar in the state-court proceedings. *See* Fed. R. Civ. P. 24(a)(2). Finally, the Carter petitioners do not qualify for permissive intervention because they do not have a "claim or defense" in this litigation. *See* Fed. R. Civ. P. 24(b)(1).

## I. The Court Should Deny Intervention As Of Right

Rule 24(a) sets forth the requirements for intervention as of right:

> On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a) (emphasis added). The Carter petitioners do not have a statutory right to intervene, so they must satisfy each requirement of Rule 24(a)(2).

The Carter petitioners face two separate and independent obstacles to intervention as of right. First, their "interests" in this litigation do not qualify as "significantly protectable" interests, because there is no "protectable" legal interest in ensuring that an election is conducted in violation of the Constitution and federal statutes. *See Donaldson v. United States*, 400 U.S. 517, 531 (1971) (requiring proposed intervenors under Rule 24(a)(2) to show a "significantly protectable" interest); *Benjamin ex rel. Yock v. Dep't of Public Welfare of Pennsylvania*, 701 F.3d 938, 951 (3d Cir. 2012) (same). Second, even if the Carter petitioners had a "significantly protectable" interest, they have made no showing that the defendants will not adequately represent those interests.

### A. The Carter Petitioners Have No "Significantly Protectable" Interest In This Litigation

To intervene as of right under Rule 24(a)(2), the Carter petitioners must show a "significantly protectable" interest in this litigation. *See Donaldson v. United States*, 400 U.S. 517, 531 (1971) ("This interest cannot be the kind contemplated by Rule 24(a)(2) when it speaks in general terms of 'an interest relating to the property or transaction which is the subject of the action.' What is obviously meant there is a significantly protectable interest."); *see also Benjamin*, 701 F.3d at 951. And to qualify as a "significantly protectable" interest, the asserted interest must be "accorded some degree of legal protection." *Diamond v. Charles*, 476 U.S. 54, 75 (1986) (O'Connor, J., concurring in part and concurring in the judgment); *see also id.* ("Clearly, *Donaldson's* requirement of a 'significantly protectable interest' calls for a direct and concrete interest that is accorded some degree of legal protection.").

The problem for the Carter petitioners is that their only "interests" in this litigation are in subverting the Constitution of the United States—and that is not an interest that is "accorded some degree of legal protection." *Id.* The command of the Elections Clause is clear:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations.

U.S. Const. art. I, § 4, cl. 1. The state judiciary is not part of "the Legislature" of Pennsylvania, and the General Assembly has not authorized the state judi-

ciary to draw a congressional map. In addition, Congress has exercised its powers under the Elections Clause to specify what must happen in the event of an impasse between the General Assembly and Governor Wolf: the state must elect its congressional delegation at-large. *See* 2 U.S.C. § 2a(c)(5). Not content to accept the outcome required by the Constitution and federal law, the Carter petitioners have induced the Pennsylvania Supreme Court to impose the congressional map that they want by judicial decree—in flagrant violation of the Elections Clause and 2 U.S.C. § 2a(c)(5)—and they claim that this unconstitutional judicial edict gives them a "significantly protectable" interest in the outcome of this litigation.

But the interest that the Carter petitioners are asserting is not an interest that is accorded any degree of legal protection under the Constitution and federal law. The state judiciary is constitutionally forbidden to impose a congressional map because the legislature has not authorized it to do so. *See* U.S. Const. art. I, § 4, cl. 1. *See Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015). The Carter petitioners' "interest" in defending the Pennsylvania Supreme Court's lawless and unconstitutional edict is not an interest protected by law—even though the Carter petitioners will undoubtedly be affected if the implementation of their preferred congressional map is enjoined. No one has a "significantly protectable" interest in subverting the rules for redistricting established in the Elections Clause and federal law.

The Carter petitioners try to downplay the lawlessness of their actions by claiming that their state-court lawsuit was needed to prevent an unconstitutional map from being used for the 2022 congressional elections. *See* Br. in Support of Mot. to Intervene, ECF No. 15, at 8 ("When it became clear that Pennsylvania's redistricting process was headed for an impasse, the Carter Petitioners promptly filed a petition in Commonwealth Court seeking to replace the unconstitutional existing map with a new congressional district map that is both equally apportioned and fair."). That is a misrepresentation of the law. The "existing map" that was used for the 2020 congressional elections would *never* have been used for the 2022 election cycle, because 2 U.S.C. § 2a(c)(5) will require at-large elections if the state fails to redistrict itself "in the manner provided by the law." 2 U.S.C. § 2a(c). So the Carter petitioners' lawsuit was not seeking to replace the defunct 2020 congressional map with a court-drawn map. It was seeking to supplant the congressionally mandated fallback regime in 2 U.S.C. § 2a(c)(5) with a map of their own creation—and to transfer the Pennsylvania legislature's map-drawing authority to their attorneys and a Democratic-controlled court. The Constitution does not tolerate behavior of this sort, and the Carter petitioners' desire to defend their ill-gotten gains is not an "interest" that is "significantly protectable." No one has a "significantly protectable" interest in subverting the Constitution and usurping authority that the Elections Clause vests exclusively with "the Legislature" of Pennsylvania.

The Carter petitioners also claim that their state-court lawsuit was needed to prevent a violation of 2 U.S.C. § 2c, which says, in pertinent part:

> In each State entitled in the Ninety-first Congress or in any subsequent Congress thereafter to more than one Representative under an apportionment made pursuant to the provisions of section 2a(a) of this title, there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established, no district to elect more than one Representative.

2 U.S.C. § 2c. The problem with this argument is that the Elections Clause prohibits the state judiciary from drawing a map unless "the Legislature" has authorized it to do so, and nothing in Pennsylvania law allows the state judiciary to draw a map in the event of an impasse between the legislature and the governor. The Carter petitioners cannot excuse their constitutional violation on the ground that it was necessary to prevent a supposed statutory violation. The petitioners' lawsuit also does nothing to prevent a violation of 2 U.S.C. § 2c, because the court-imposed map violates the Elections Clause and therefore is not "established by law." The state judiciary was required to wait for the General Assembly to enact a new congressional map, and if the General Assembly fails to act then the state must conduct at-large elections as required by 2 U.S.C. § 2a(c)(5). The Carter petitioners therefore lack a "significantly protectable" interest in this case, because the interests they assert are not protected by law.

### B. The Carter Petitioners Have Failed To Show That The Defendants Will Fail To Adequately Protect Their "Interests" In This Litigation

The Carter petitioners have also failed to demonstrate that the defendants will not "adequately represent" their interests in this litigation. Fed. R. Civ. P. 24(a)(2). The defendants in this case include the state's governor and election officials. See Complaint, ECF No. 1, at 8–10. And a presumption of adequate representation attaches when the defendants include government officers, as the government is charged with representing the interest of its citizenry. *See Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976) ("[A] presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee.").

The Carter petitioners have neither acknowledged nor rebutted this presumption. Instead, the Carter petitioners want to pretend as though their burden of demonstrating inadequate representation is "minimal." Br. in Support of Mot. to Intervene, ECF No. 15, at 12 (quoting *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995)). But the law of this circuit makes clear that the burden of showing inadequate representation is *much* more substantial when a would-be intervenor alleges that a government officer or agency is an inadequate representative of its interests. *See Rizzo*, 530 F.2d at 505 ("Where official policies and practices are challenged, it seems unlikely that anyone could be better situated to defend than the governmental department involved and its officers."); *Delaware Valley Citizens' Council for Clean*

*Air v. Commonwealth of Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) ("When a state is a party to a suit involving a matter of sovereign interest, it is presumed to represent the interests of its citizens"); *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) ("There is a presumption that if one party is a government entity charged by law with representing the interests of the applicant for intervention, then this representation will be adequate."); *Benjamin*, 701 F.3d at 958 ("There is a general presumption that a government entity is an adequate representative.").

To overcome this presumption, the Carter petitioners must show one of the following: (1) The existence of "collusion" between the plaintiffs and defendants; (2) That the defendants represent an interest "adverse" to the Carter petitioners; or (3) That the defendants have been less than "diligent" in prosecuting the litigation. *See Delaware Valley Citizens' Council*, 674 F.2d at 973 ("Representation is generally considered adequate if no collusion is shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor and if the representative has been diligent in prosecuting the litigation."). The Carter petitioners do not even allege (let alone show) that any of these three criteria has been met.

There is obviously no "collusion" between the plaintiffs and defendants. The defendants did not even raise an Elections Clause or 2 U.S.C. § 2a(c) defense in the state-court proceedings, and they never challenged the state supreme court's authority to impose a congressional map or rewrite the General

Primary Calendar despite the constitutional issues that were implicated by those actions. *See* Exhibits 1–2. Each of the three defendants *asked* the Supreme Court of Pennsylvania to alter the General Primary Calendar, and Governor Wolf went so far as to propose a map for the state supreme court to adopt. *See id.* And although the state supreme court adopted the map proposed by the Carter petitioners rather than the map proposed by Governor Wolf, it is unfathomable to think that the governor (or the remaining defendants) will turn around and deny the state supreme court's authority to impose a map or alter the election calendar when they affirmatively invited the court to take those actions in the state-court proceedings. There is no doubt that the defendants will vigorously defend the state supreme court's *prerogative* to act as it did—which is the only issue in this proceeding—even if they may have quibbles with the manner in which the state supreme court exercised this supposed authority.

The Carter petitioners observe that the district court in *Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018), allowed individual voters to intervene in an Elections Clause challenge to a court-imposed congressional map. *See* Br. in Support of Mot. to Intervene, ECF No. 15, at 14–15. But the order in *Corman* contains no reasoning or analysis; it simply grants intervention to 18 individual voters without explaining how the requirements of Rule 24 had been satisfied. *See* Exhibit 3. Indeed, the Court's order does not even state whether it was granting intervention as of right or permissive intervention. Equally notable is that the district court in *Corman* denied intervention to the League of

Women Voters of Pennsylvania and the National Democratic Redistricting Committee, although here too the order gives no indication of the Court's reasons for doing so. *See id.* The mere fact that the district court in *Corman* allowed some individual voters to intervene is meaningless, as a district-court decision has no precedential value—even when explained in a reasoned opinion. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation and internal quotation marks omitted)).[1] A district-court ruling may be followed as precedent only when there are persuasive reasons for doing so, and the *Corman* ruling on intervention provides no reasons at all. Neither do the Carter petitioners, who provide no reason to doubt the defendants' zeal in defending the state supreme court's actions.

## II. The Court Should Deny Permissive Intervention

The Carter petitioners also seek permissive intervention under Rule 24(b). *See See* Br. in Support of Mot. to Intervene, ECF No. 15, at 15–16. But the

---

1. *See In re Exec. Office of the President*, 215 F.3d 20, 24 (D.C. Cir. 2000) ("District court decisions do not establish the law of the circuit, . . . nor, indeed, do they even establish 'the law of the district.'" (citations omitted)); *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012) (Easterbrook, J.) ("[D]ecisions of district courts are not authoritative even within the rendering district. They cannot 'settle' any proposition."); *Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 n.2 (8th Cir. 2015) (noting that district court rulings "cannot be used as stare decisis").

Carter petitioners make no effort to explain how they have "a claim or defense" in this litigation, as required by Rule 24(b)(1)(B).

Rule 24(b)(1) sets forth the requirements for permissive intervention:

> On timely motion, the court may permit anyone to intervene who:
>
> (A) is given a conditional right to intervene by a federal statute; or
>
> (B) *has a claim or defense* that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1) (emphasis added). The Carter petitioners do not have a statutory right to intervene, so they must satisfy Rule 24(b)(1)(B).

Yet the Carter petitioners never identify the "claim or defense" that they "have." The Carter petitioners obviously have no "claim" because they are not suing any of the litigants. And the Carter petitioners have no "defense" because they will not be required to do anything—nor will they be restrained from doing anything—by the relief that the plaintiffs are seeking against the named defendants. *See* Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 274 (2020) ("[A] 'defense' is a particular type of legal argument that the targets of a claim assert to explain why the court should not grant relief against them."); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) ("The words 'claims or defenses' . . . in the context of Rule 24(b)(2) governing permissive intervention—manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit." (citation and internal quotation marks omitted)). The Carter petitioners do not "have" a

claim or defense against any of the litigants, so they have no grounds for permissive intervention.

\* \* \*

The Carter petitioners' interests in this litigation can be fully accommodated by filing an amicus curiae brief; they do not warrant intervention as a party with the right to take discovery and participate in the trial proceedings. Allowing the Carter petitioners to intervene when there is no reason to doubt the zealous advocacy of the defendants will serve no purpose other than to create opportunities for duplicative discovery and court filings that will delay the resolution of this case.

## CONCLUSION

The motion to intervene should be denied.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| Walter S. Zimolong III | Jonathan F. Mitchell |
| Pennsylvania Bar No. 89151 | Pennsylvania Bar No. 91505 |
| Zimolong LLC | Mitchell Law PLLC |
| Post Office Box 552 | 111 Congress Avenue, Suite 400 |
| Villanova, Pennsylvania 19085 | Austin, Texas 78701 |
| (215) 665-0842 | (512) 686-3940 (phone) |
| wally@zimolonglaw.com | (512) 686-3941 (fax) |
| | jonathan@mitchell.law |

Dated: February 24, 2022        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 24, 2022, I filed this document through CM/ECF, which will effectuate service on all counsel of record in this case. I also certify that I will serve this document by e-mail upon the following counsel, who represent the defendants in the state-court redistricting litigation:

Robert A. Wiygul
Cary L. Rice
John B. Hill
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103-6933
(215) 568-6200
rwiygul@hangley.com
crice@hangley.com
jhill@hangley.com

Joe H. Tucker Jr.
Dimitri Mavroudis
Jessica Rickabaugh
Tucker Law Group
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
(215) 875-0609
jtucker@tlgattorneys.com
dmavroudis@tlgattorneys.com
jrickabaugh@tlgattorneys.com

Karen M. Romano
Michael Fischer
Office Of Attorney General
15th Floor, Strawberry Square
Harrisburg, Pennsylvania 17120
(717) 787-2717
kromano@attorneygeneral.gov
mfischer@attorneygeneral.gov

Gregory G. Schwab
Office of General Counsel
333 Market Street
Harrisburg, Pennsylvania 17101
gschwab@ogc.pa.gov

                              /s/ Jonathan F. Mitchell
                              Jonathan F. Mitchell
                              *Counsel for Plaintiffs*