# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM C. TOTH JR., *et al.*, | |
| *Plaintiffs,* | No. 1:22-cv-00208-JPW |
| v. | Honorable Jennifer P. Wilson |
| LEIGH M. CHAPMAN, *et al.*, | |
| *Defendants.* | |

## CARTER PETITIONERS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO CARTER PETITIONERS' <u>MOTION TO INTERVENE AS DEFENDANTS</u>

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

   I.  The Carter Petitioners are entitled to intervene as a matter of right under Rule 24(a)(2). .........................................................................................2

      A.  The Carter Petitioners possess a significant, legally cognizable interest in this litigation. ..................................................................................3

      B.  The Carter Petitioners' interests are not adequately represented by Defendants. ..............................................................................................6

   II.  In the alternative, the Carter Petitioners request that the Court grant them permission to intervene under Rule 24(b). ....................................................11

CONCLUSION .....................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Brody By and Through Sugzdinis v. Spang*,
  957 F.2d 1108 (3d Cir. 1992) .......................................................................... 6

*Branch v. Smith*,
  538 U.S. 254 (2003) ........................................................................................ 4

*Corman v. Torres*,
  287 F. Supp. 3d 558 (M.D. Pa. 2018) ....................................................... 9, 10

*Growe v. Emison*,
  507 U.S. 25 (1993) ........................................................................................ 10

*Islamic Soc'y of Basking Ridge v. Twp. of Bernards*,
  681 F. App'x 110 (3d Cir. 2017) .................................................................. 11

*Issa v. Newsom*,
  No. 220CV01044MCECKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ... 8

*Jansen v. City of Cincinnati*,
  904 F.2d 336 (6th Cir. 1990) .......................................................................... 6

*Kleissler v. U.S. Forest Serv.*,
  57 F.3d 964 (3d Cir. 1998) ......................................................................... 6, 7

*McKay v. Heyison*,
  614 F.2d 899 (3d Cir. 1980) ......................................................................... 11

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) ............................................................................. 5

*N.C.A.A. v. Governor of New Jersey*,
  520 F. App'x 61 (3d Cir. 2013) .................................................................... 11

*Nash v. Blunt*,
  140 F.R.D. 400 (W.D. Mo. 1992) ................................................................. 10

*Paher v. Cegavske*,
  No. 320CV00243MMDWGC, 2020 WL 2042365 (D. Nev. Apr. 28,
  2020) .............................................................................................................. 8

*Pennsylvania v. President United States of Am.*,
    888 F.3d 52 (3d Cir. 2018) ............................................................................... 7

*Teague v. Bakker*,
    931 F.2d 259 (4th Cir. 1991) ........................................................................... 5

*Texas v. United States*,
    831 F. Supp. 2d 244 (D.D.C. 2011) ............................................................... 10

*Trbovich v. United Mine Workers*,
    202 U.S. 528 (1972) ......................................................................................... 9

*United States v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3d Cir. 1994) ............................................................................ 6

**Other Authorities**

2 U.S.C. § 2c .............................................................................................................. 4

Fed. R. Civ. P. 24(a)(2) ....................................................................................... 2, 12

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................... 11

## INTRODUCTION

Plaintiffs' lawsuit is a meritless eleventh-hour attempt to override and nullify the relief the Carter Petitioners obtained in state court. Just two days ago, the state court litigation initiated and prosecuted by the Carter Petitioners concluded when the Pennsylvania Supreme Court ordered the implementation of a constitutionally compliant congressional map—the map proposed and advocated for by the Carter Petitioners. The Commonwealth's highest court also directed Defendant Acting Secretary to implement the new map and begin conducting the election "without delay." Renewed Emergency Temporary Restraining Order ("Renewed TRO") Ex. 1 at 2-4, ECF No. 30-1. As a result, beginning today, congressional candidates can circulate nomination petitions under the new map approved by the Pennsylvania Supreme Court.

Nevertheless, Plaintiffs baselessly argue that the Carter Petitioners are not entitled to intervene in this case because they have no "significantly protectable interest." Opp'n Mot. Intervene at 1, ECF No. 38. But the Carter Petitioners unquestionably have an interest in this case, which not only threatens the remedy that they secured in the state court litigation they initiated, but also seeks to force the Carter Petitioners to vote in unconstitutional at-large elections despite the Commonwealth's adoption of a constitutional congressional plan. Plaintiffs' contention to the contrary rests on a legal argument that directly conflicts with

binding Supreme Court precedent on the use of at-large elections when a state court has already adopted and implemented a constitutional map.

Plaintiffs also wrongly argue that Defendants will adequately represent the Carter Petitioners, ignoring that Defendants' core interests as election officials are distinct from the individual and personal interests of the Carter Petitioners. Indeed, the Carter Petitioners are not only Pennsylvania voters but also the proponents of the map adopted by the Pennsylvania Supreme Court in a case they filed *against* the same Defendants as here.

Because the Carter Petitioners clearly possess an interest in the subject matter of the action and their interests are not adequately represented by the existing parties to the lawsuit, they are entitled to intervene in this case as a matter of right. *See* Fed. R. Civ. P. 24(a)(2). In the alternative, the Carter Petitioners respectfully request that the Court grant them permissive intervention under Rule 24(b).

## ARGUMENT

**I.     The Carter Petitioners are entitled to intervene as a matter of right under Rule 24(a)(2).**

Plaintiffs only contest two of the four requirements that the Carter Petitioners must satisfy to intervene as of right: that they possess an interest in the subject matter of the action, and that their interests are adequately represented by the existing parties in the lawsuit. *See* Opp'n Mot. Intervene at 2. Both arguments fall far short.

### A. The Carter Petitioners possess a significant, legally cognizable interest in this litigation.

Plaintiffs' argument that the Carter Petitioners lack an interest in this litigation is grounded entirely in baseless rhetoric, rather than a practical evaluation of the Carter Petitioners' actual interests. In essence, Plaintiffs argue that their proposed interpretation of the Elections Clause is so clearly correct that no party who disagrees with them may intervene. But that assertion badly misunderstands both the Constitution and the law of intervention. Thus, the Court can and should easily dismiss Plaintiffs' arguments and find that the Carter Petitioners satisfy this prong for intervention as of right.

Plaintiffs' assertion that the Carter Petitioners' only interest in this litigation is to "subvert[] the Constitution of the United States" is as ridiculous as it sounds. It is Plaintiffs who misunderstand the legal precedent; the Carter Petitioners seek to intervene in this litigation precisely to protect their rights, including under the Constitution, and defend against Plaintiffs' meritless attempt to collaterally void a judgment of Pennsylvania's Supreme Court. Under binding U.S. Supreme Court precedent, the federal provision for at-large elections, upon which Plaintiffs' lawsuit is based, is "inapplicable *unless* the state legislature, and *state . . . courts*, have *all* failed to redistrict pursuant to § 2c," and thus only functions as a "last-resort remedy to be applied when . . . no constitutional redistricting plan exists and there is no time

for either the State's legislature or the courts to develop one." *Branch v. Smith*, 538 U.S. 254, 275 (2003) (emphasis in original).

Here, it is indisputable that the conditions triggering the "last-resort remedy" Plaintiffs seek have not come to pass because Pennsylvania Supreme Court has adopted a plan that Defendants agree can be implemented in time for the state's primary elections in the spring. The provision for at-large elections is irrefutably "inapplicable" here given that the Commonwealth's highest court has timely redistricted. *Id.* Notably, Plaintiffs studiously avoid any substantive discussion of *Branch* in their briefing in this case.

In basing their opposition (and their entire case) on a misstatement of the law, Plaintiffs ignore the actual "significant" legal interest the Carter Petitioners have in this case. And that interest is multifold. It not only includes the Carter Petitioners' rights to vote in constitutionally apportioned districts under the Free and Equal Elections Clause of the Pennsylvania Constitution, Article I, Section 2 of the U.S. Constitution, and 2 U.S.C. § 2c, but also includes the Carter Petitioners' compelling interest in protecting the relief they obtained in state court. *See* Br. Supp. Mot. Intervene at 7-9, ECF No. 21; Renewed TRO Ex. 1 at 2. The Carter Petitioners not only brought the state court action, they also prepared and submitted the Commonwealth's now-implemented congressional plan. The Carter Petitioners thus have an overwhelming interest in ensuring that this federal action does not eviscerate

4

the relief they obtained in the Pennsylvania Supreme Court.

Indeed, while Plaintiffs focus their arguments on mischaracterizing the Carter Petitioners' interest as one that is not legally protectable, Opp'n Mot. Intervene at 4, Plaintiffs do *not* dispute that the Carter Petitioners have a unique and definite interest in ensuring that the relief they obtained in state court—relief that remedies violations of the Carter Petitioners' constitutional rights and implements a map they put forth—is not nullified. That interest alone independently meets the Third Circuit's definition of a "significantly protectable" legal interest under Rule 24(a)(2)—"a legal interest as distinguished from interests of a general and indefinite character"—and the Carter Petitioners have "demonstrate[d] that there is a tangible threat to [this] legally cognizable interest" that forms the basis of their right to intervene. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)).

In particular, litigants who obtained a judgment in a prior action are entitled to intervene as of right in a later action that threatens the relief awarded under the prior judgment. *See, e.g.*, *Teague v. Bakker*, 931 F.2d 259, 261–62 (4th Cir. 1991) (finding that intervenors' "ability to protect their interest would be impaired or impeded" by a judgment that would put the intervenors' ability to satisfy a prior judgment at risk); *Jansen v. City of Cincinnati*, 904 F.2d 336, 342 (6th Cir. 1990) (holding that the district court was required to grant intervention in a case

5

challenging a fire department's use of affirmative action, where the fire department implemented an affirmative action program as part of a consent decree to which proposed intervenors were a party). Similarly, the Third Circuit has repeatedly held that intervention is warranted if the proposed remedy threatens to harm intervenors. *See, e.g.*, *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992); *United States v. Alcan Aluminum, Inc*., 25 F.3d 1174, 1185 n.15 (3d Cir. 1994).

These precedents are directly applicable to the Carter Petitioners' motion to intervene. The Carter Petitioners have obtained relief for their constitutional injuries through the state court proceedings, and Plaintiffs seek to undo that relief and nullify the claims upon which the Carter Petitioners prevailed. Under these circumstances, there can be no doubt that the Carter Petitioners have demonstrated the existence of a significant and cognizable legal interest and their intervention is plainly warranted.

**B.    The Carter Petitioners' interests are not adequately represented by Defendants.**

Plaintiffs are wrong that a presumption of adequate representation attaches in the present case just because Defendants include government officers. As a general matter, the Third Circuit has found that "[t]he burden of establishing inadequacy of representation by existing parties *varies with each case*." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (emphasis added). While in some circumstances "a rebuttable presumption of adequacy applies if one party is a

government entity charged . . . with representing the interests of the applicant for intervention," *Pennsylvania v. President United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018) (quoting *United States v. Territory of the Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014)), the Third Circuit has specified that such a presumption usually applies "when the concerns of the proposed intervenor, e.g., a 'public interest' group, closely parallel those of the public agency." *Kleissler*, 157 F.3d at 972; *see also President United States*, 888 F.3d at 60–61 (noting that the presumption of adequacy of representation is "particularly strong" when the governmental and private interests "closely parallel" one another or are "nearly identical"). Those circumstances are absent here because the Carter Petitioners are a group of individual voters, not a cohesive public interest group whose interests, activities, mission, or organization closely parallel those of the Defendants, who are state election officials.

Instead, this case falls within the line of cases holding that when the government's "views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to [them], the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler*, 157 F.3d at 972 (citing *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir.1996) ("[W]hen the proposed intervenors' concern is not a matter of 'sovereign interest,' there is no reason to think the government will represent it.")); *see also*

7

*Issa v. Newsom*, No. 220CV01044MCECKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (finding inadequacy of representation where "[State] Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws" while, for example, "Proposed Intervenors are concerned with ensuring . . . the voters they represent have the opportunity to vote in the upcoming federal election"); *Paher v. Cegavske*, No. 320CV00243MMDWGC, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (finding inadequacy of representation where proposed intervenors, despite sharing goals with State Defendants, "do not agree" with them about all aspects of the underlying issue, "as evidenced by their State Court Action, and may present arguments about the need to safeguard [the] right to vote that are distinct from Defendants' arguments"). These are precisely the circumstances at issue here.

Defendants' primary interests in these matters are clearly distinct from the Carter Petitioners' interests, and therefore Defendants can hardly be said to adequately represent the interests of the Carter Petitioners. Defendants are government officials whose interests are in the orderly operation of the law, and they have no constitutional voting rights that are implicated or threatened by Plaintiffs' lawsuit. In contrast, the Carter Petitioners are voters whose interests are in voting under the congressional districts that they proposed and the Pennsylvania Supreme Court has now adopted. *See* Brief in Support of Mot. Intervene at 13; *see*

8

*also id.* Exs. B and C. Indeed, Defendants in this case are largely the same defendants the Carter Petitioners sued in state court to obtain a constitutional congressional plan. *See Paher*, 2020 WL 2042365, at *3 (finding proposed intervenors-defendants' state court action was evidence of divergent interest with state defendants). Those same Defendants cannot be said to have "closely parallel" or "nearly identical" interests as the Carter Petitioners. *See President United States*, 888 F.3d at 60–61. Thus, the Carter Petitioners have clearly satisfied the applicable "minimal" burden that applies in this case. *Trbovich v. United Mine Workers*, 202 U.S. 528, 538 n.10 (1972). ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should" thus "be treated as minimal.").

Finally, Plaintiffs' attempt to diminish *Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018), ignores that the factual and procedural posture of that case is virtually identical to this one. In *Corman*, a group of voters, just like the Carter Petitioners, successfully challenged the Commonwealth's congressional district map in state court, and as a remedy, the Pennsylvania Supreme Court ordered use of a new map for the upcoming election. Subsequently, a group of Republican legislators and congressmen filed a collateral attack in federal court—just as Plaintiffs do here—asking a federal court to undo the Pennsylvania Supreme Court's decision. *See generally id*. The state court petitioners were granted intervention in that federal

9

suit. Order at 1-2, *Corman v. Torres*, 287 F. Supp. 3d 558, No 1:18-cv-00443-CCC-KAJ-JBS (M.D. Pa. Mar. 2, 2018), ECF No. 85. Thus, contrary to Plaintiffs' argument, *Corman* strongly supports intervention of the Carter Petitioners. If anything, the case for intervention is even stronger here now that the Pennsylvania Supreme Court has adopted the Carter Petitioners' proposed plan and has continued to retain jurisdiction over the case. *See Growe v. Emison*, 507 U.S. 25, 33 (1993) ("In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative or judicial branch, has begun to address that highly political task itself.").

Indeed, federal courts routinely allow parties like the Carter Petitioners to intervene in redistricting litigation because such cases implicate unique interests beyond those of the state. *See, e.g.*, *Nash v. Blunt*, 140 F.R.D. 400, 403 (W.D. Mo. 1992) (holding that despite the general rule that state defendants can adequately defend official enactments, "[r]edistricting cases seem typically to follow the exception rather than the general rule"); *Texas v. United States*, 831 F. Supp. 2d 244, 247 n.2 (D.D.C. 2011) (noting grant of "seven parties status as Defendant–Intervenors" in redistricting case). The Carter Petitioners should similarly be allowed to intervene to protect their unique interests.

## II. In the alternative, the Carter Petitioners request that the Court grant them permissive intervention under Rule 24(b).

Even if the Carter Petitioners were not entitled to intervene as of right, permissive intervention would be warranted under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention, and courts that deny intervention as of right often grant permissive intervention. *See, e.g.*, *McKay v. Heyison*, 614 F.2d 899, 906 (3d Cir. 1980).

Plaintiffs contest only whether the Carter Petitioners have "a claim or defense that shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1)(B); Opp'n Mot. Intervene at 11-12. But Plaintiffs misconstrue the standard for permissive intervention. The Third Circuit, in assessing whether to grant permissive intervention, asks whether proposed intervenors' interests share "any questions of law or fact" with the questions at the center of the core lawsuit. *See, e.g.*, *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 681 F. App'x 110, 112 (3d Cir. 2017); *N.C.A.A. v. Governor of New Jersey*, 520 F. App'x 61, 63 (3d Cir. 2013).

Plaintiffs do not dispute that the Carter Petitioners' defenses share common questions of law and fact with the existing suit, including whether Plaintiffs have standing to assert violations of the Elections Clause, whether the Pennsylvania Supreme Court's adoption of a map violates the Elections Clause, and whether the Carter Petitioners and other voters will suffer irreparable harm if Plaintiffs' requested relief is granted. Thus, if the Court fails to find the Carter Petitioners may

11

intervene as of right, the Court should exercise its discretion and grant the Carter Petitioners permissive intervention. *See, e.g.*, Order at 1-2, *Banerian v. Benson*, No 1:22-cv-00054-PLM-SJB (W.D. Mich. Feb. 11, 2022), ECF No. 31 (in granting permissive intervention, the court asserted that "the plaintiffs speculate that the intervenors' arguments would duplicate those of the named defendants in this case. But that would be our problem more than the plaintiffs'; and meanwhile the intervenors might just as easily help to clarify the issues before the court.").

## CONCLUSION

For the reasons stated above and in their motion to intervene, the Carter Petitioners respectfully request that the Court grant their motion to intervene as a matter of right under Fed. R. Civ. P. Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

Dated: February 25, 2022.　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Elizabeth V. Wingfield*
　　　　　　　　　　　　　　　　　　　　　Timothy D. Katsiff (PA 75490)
　　　　　　　　　　　　　　　　　　　　　Elizabeth V. Wingfield (PA 32477)
　　　　　　　　　　　　　　　　　　　　　Edward D. Rogers (PA 69337)*
　　　　　　　　　　　　　　　　　　　　　Marcel S. Pratt (PA 307483)*
　　　　　　　　　　　　　　　　　　　　　Robert J. Clark (PA 308105)*
　　　　　　　　　　　　　　　　　　　　　Michael R. McDonald (PA 326873)*
　　　　　　　　　　　　　　　　　　　　　Paul K. Ort (PA 326044)*
　　　　　　　　　　　　　　　　　　　　　Ballard Spahr LLP
　　　　　　　　　　　　　　　　　　　　　1735 Market Street, 51st Floor
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　　KatsiffT@ballardspahr.com
　　　　　　　　　　　　　　　　　　　　　WingfieldE@ballardspahr.com

RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
T: (206) 656-0177

Lalitha D. Madduri**
Jyoti Jasrasaria**
Tina Meng**
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
lmadduri@elias.law
jjasrasaria@elias.law
tmeng@elias.law
T: (202) 968-4490

Matthew Gordon**
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

*Counsel for Proposed Intervenors*

*\*Motions for Pro Hac Vice Forthcoming*

*\*\* Admitted Pro Hac Vice*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Reply to Plaintiffs' Opposition to the Carter Petitioners' Motion to Intervene as Defendants contains 2,745 words, based on the word count of the word processing system used to prepare this brief, and thereby complies with the Local Civil Rule 7.8.

DATED: February 25, 2022          */s/ Elizabeth V. Wingfield*