Received 12/17/2021 9:08:12 AM Commonwealth Court of Pennsylvania

Filed 12/17/2021 9:08:00 AM Commonwealth Court of Pennsylvania
464 MD 2021

Lalitha D. Madduri*
Christina A. Ford*
Jyoti Jasrasaria*
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
lmadduri@elias.law
cford@elias.law
jjasrasaria@elias.law
T: (202) 968-4490

Abha Khanna*
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
T: (206) 656-0177

Matthew Gordon*
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

Edward D. Rogers, No. 69337
Marcel S. Pratt, No. 307483
Robert J. Clark, No. 308105
Michael R. McDonald, No. 326873
Paul K. Ort, No. 326044
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

*Counsel for Petitioners*

* *Pro hac vice* forthcoming

RETRIEVED FROM DEMOCRACYDOCKET.COM

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAROL ANN CARTER; MONICA PARRILLA;
REBECCA POYOUROW; WILLIAM TUNG; ROSEANNE
MILAZZO; BURT SIEGEL; SUSAN CASSANELLI; LEE
CASSANELLI; LYNN WACHMAN; MICHAEL
GUTTMAN; MAYA FONKEU; BRADY HILL; MARY
ELLEN BALCHUNIS; TOM DEWALL; STEPHANIE
MCNULTY; and JANET TEMIN,

                Petitioners,

     v.

VERONICA DEGRAFFENREID, in her official capacity as
the Acting Secretary of the Commonwealth of Pennsylvania;
JESSICA MATHIS, in her official capacity as Director for
the Pennsylvania Bureau of Election Services and Notaries,

                Respondents.

No.

_____

## PETITION FOR REVIEW
## ADDRESSED TO THE COURT'S ORIGINAL JURISDICTION

## INTRODUCTION

1.    This is an action challenging Pennsylvania's lack of constitutional

congressional district boundaries for the 2022 election cycle. Petitioners ask the

Court to (1) declare unconstitutional Pennsylvania's current congressional district

plan, which has become malapportioned by a decade of population shifts and now

allocates more congressional districts than Pennsylvania has been lawfully allotted;

(2) enjoin Respondents from using the current plan in any future elections; and (3)

adopt a new congressional district plan that adheres to the constitutional requirement

of one-person, one-vote now that it is clear that the General Assembly and Governor will not timely act to do so.

2.     This past August, the U.S. Secretary of Commerce delivered census-block results of the 2020 Census to Pennsylvania's Governor and legislative leaders. These data confirm the inevitable reality that population shifts in the last decade have rendered Pennsylvania's congressional plan unconstitutionally malapportioned. *See Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (three-judge court) (explaining that "existing apportionment schemes become instantly unconstitutional upon the release of new decennial census data" (internal quotation marks omitted)). Census data also confirmed that Pennsylvania will be allocated only 17 Members in the next Congress, one fewer than currently allocated.

3.     These changes render Pennsylvania's current congressional districts both unlawful and unconstitutional. Specifically, the current configuration of Pennsylvania's congressional districts violates (1) the Free and Equal Elections Clause of the Pennsylvania Constitution, which guarantees its citizens the right to "make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share." *Patterson v. Barlow*, 60 Pa. 54, 75 (1869); (2) Article I, Section 2 of the U.S. Constitution's requirement that states "achieve population equality 'as nearly as is practicable'" when drawing congressional districts. *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting

*Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964)); and (3) 2 U.S.C. § 2c's requirement that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled."

4.    While "the primary responsibility and authority for drawing federal congressional legislative districts rests squarely with the state legislature," when "the legislature is unable or chooses not to act, it becomes the judiciary's role to determine the appropriate redistricting plan." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 821-22 (Pa. 2018) (*League of Women Voters I*). It is now clear that Pennsylvania's political branches will not timely act to pass such a plan, requiring the judiciary to step in.

5.    Although Pennsylvania's General Assembly and its Governor have now had months to attempt to reach compromise on a congressional plan, they have not done so. They are not even in agreement over basic criteria: shortly after Governor Wolf explicitly identified the criteria that any congressional plan would need to meet in order to receive his signature, the General Assembly released a plan violating those criteria.

6.    More importantly, however, beyond this dispute over the substance of a new congressional plan, the General Assembly has now adjourned for the remainder of 2021 without passing a new constitutional congressional plan and will not reconvene until January 2022. This delay means that it is now impossible for

Pennsylvania's political branches to reach agreement on a congressional plan by the end of December 2021, the time by which the Department of State previously explained it would be necessary for the political branches to have enacted a map for the 2022 elections to proceed on time.

7.     This mimics what happened the last time Pennsylvania began a redistricting cycle in which its political branches were politically split as they are now: they failed to enact a congressional redistricting plan, forcing Pennsylvania's judiciary to take responsibility for enacting a new plan. *See Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992). And, more recently, just three years ago, the General Assembly and Governor Wolf could not agree on a new congressional plan following the Pennsylvania Supreme Court's invalidation of the plan enacted in 2011, forcing the Court to draw its own. *See League of Women Voters of Pa. v. Commonwealth*, 181 A.3d 1083, 1086 (Pa. 2018) (*League of Women Voters II*). This time, too, the Court should intervene to protect the constitutional rights of Petitioners and voters across the Commonwealth.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction over this Verified Petition for Review under 42 Pa. C.S. § 761(a)(1) because this matter is asserted against Commonwealth officials in their official capacities.

**PARTIES**

9.      Petitioners are citizens of the United States and are registered to vote in

Pennsylvania. Petitioners reside in the following congressional districts:

| Petitioner's Name | County of Residence | Congressional District |
|---|---|---|
| Carol Ann Carter | Bucks | 1 |
| Monica Parrilla | Philadelphia | 2 |
| Rebecca Poyourow | Philadelphia | 3 |
| William Tung | Philadelphia | 3 |
| Roseanne Milazzo | Montgomery | 4 |
| Burt Siegel | Montgomery | 4 |
| Susan Cassanelli | Delaware | 5 |
| Lee Cassanelli | Delaware | 5 |
| Lynn Wachman | Chester | 6 |
| Michael Guttman | Chester | 6 |
| Maya Fonkeu | Northampton | 7 |
| Brady Hill | Northampton | 7 |
| Mary Ellen Balchunis | Dauphin | 10 |
| Tom DeWall | Cumberland | 10 |
| Stephanie McNulty | Lancaster | 11 |
| Janet Temin | Lancaster | 11 |

10.     As shown below, Petitioners reside in districts that are overpopulated

relative to other districts in the state. Thus, they are deprived of the right to cast an

equal vote, as guaranteed to them by the U.S. Constitution and the Pennsylvania

Constitution.

11.     Respondent Veronica Degraffenreid is the Acting Secretary of the

Commonwealth and is sued in her official capacity only. In that capacity, Acting

Secretary Degraffenreid is charged with general supervision and administration of

Pennsylvania's elections and election laws. Acting Secretary Degraffenreid is

Pennsylvania's Chief Election Official and a member of the Governor's Executive Board. Among her numerous responsibilities in administering elections, Acting Secretary Degraffenreid is responsible for receiving election results from counties for each congressional district in the Commonwealth, and tabulating, computing, canvassing, certifying, and filing those results. 25 P.S. § 3159.

12.     Respondent Jessica Mathis is the Director for the Bureau of Election Services and Notaries, a branch of the Pennsylvania Department of State, and she is sued in her official capacity only. In this capacity, Director Mathis is charged with supervising and administering the Commonwealth's elections and electoral process. The Bureau of Election Services and Notaries is responsible for planning, developing, and coordinating the statewide implementation of the Election Code.

## FACTUAL ALLEGATIONS

## I.     Pennsylvania's current congressional districts were drawn using 2010 Census data.

13.     Pennsylvania's current congressional district map was drawn in 2018 as the result of litigation over the map that had been drawn and enacted in 2011.

14.     On January 22, 2018, the Pennsylvania Supreme Court held that the then-controlling congressional district map "plainly and palpably" violated the Pennsylvania Constitution's Free and Equal Elections Clause because it was "corrupted by extensive, sophisticated gerrymandering and partisan dilution." *League of Women Voters I*, 178 A.3d at 741, 821.

15.    The Court provided the General Assembly and the Governor an opportunity to enact a lawful map, but they failed to do so. Thus, the task of drawing a constitutionally compliant map fell to the Court. *See generally League of Women Voters II*, 181 A.3d at 1083.

16.    Because the results of the 2010 Census were the most accurate population data at the time, the Court relied exclusively on that data in drawing a new map.

17.    According to the 2010 Census, Pennsylvania had a population of 12,702,379. Based on that data, the ideal population for each of Pennsylvania's congressional districts (the state's total population divided by the number of districts) in 2010 was 705,688 persons.

18.    The Court-drawn map was adopted on February 19, 2018. *See generally League of Women Voters II*, 181 A.3d at 1083. In it, the districts had perfectly equal populations, with each district's population deviating from all others by no more than one person, based on the 2010 data.

## II.    The 2020 Census is complete.

19.    In 2020, the U.S. Census Bureau conducted the decennial census required by Article I, Section 2 of the U.S. Constitution.

20.    On April 26, 2021, the U.S. Secretary of Commerce delivered the results of the 2020 Census to the President, and on August 12, 2021, the U.S.

Secretary of Commerce delivered census-block results of the 2020 Census to Pennsylvania's Governor and legislative leaders.

21.     The results of the 2020 Census report that Pennsylvania's resident population is 13,002,700. This is a significant increase from a decade ago, when the 2010 Census reported a total population of 12,702,379.

22.     Because Pennsylvania's population growth over the last decade has been slower compared to many other states, however, Pennsylvania lost a congressional district.

23.     Pennsylvania has been apportioned only 17 congressional seats for the next Congress, one fewer than the 18 seats it was apportioned following the 2010 Census.

24.     Thus, beginning with the upcoming 2022 election, Pennsylvania voters will elect only 17 members to the U.S. House of Representatives.

25.     According to the 2020 Census results, the ideal population for each of Pennsylvania's congressional districts under a 17-seat allocation is 722,372, approximately 17,000 more persons per district than under the 2010 Census allocations.

III.    **As a result of significant population shifts, Pennsylvania's congressional districts are unconstitutionally malapportioned.**

26.     In the past decade, Pennsylvania's population has shifted significantly, skewing the presently drawn congressional districts far from population equality.

RETRIEVED FROM DEMOCRACYDOCKET.COM

And now that the 2020 Census is complete, the 2010 population data used to draw those districts are obsolete, making any prior justifications for the existing map's deviations from population equality no longer applicable.

27.     In August 2021, the U.S. Secretary of Commerce delivered detailed population data to the Commonwealth of Pennsylvania, which the State may use to tabulate the new population of each subdivision. These data are commonly referred to as "P.L. 94-171 data," a reference to the legislation enacting this process. *See* Pub. L. No. 94-171, 89 Stat. 1023 (1975).

28.     This P.L. 94-171 data demonstrated that population shifts since 2010 have rendered Congressional Districts 8, 9, 12, 13, 14, 15, 16, and 18 significantly underpopulated, and Congressional Districts 1, 2, 3, 4, 5, 6, 7, 10, 11, and 17 significantly overpopulated.

29.     Due to these population shifts, Pennsylvania's existing congressional districts are unconstitutionally malapportioned.

30.     If used in any future election, the current congressional plan will unconstitutionally dilute the strength of Petitioners' votes because they live in districts with populations that are significantly larger than those in which other voters live.

**IV.   As a result of significant population shifts in the past decade across the United States, Pennsylvania's congressional districts are also unlawfully apportioned.**

31.    In addition to malapportionment, Pennsylvania's congressional plan also contains more districts than the number of representatives that Pennsylvanians may send to the U.S. House in the next Congress.

32.    After the 2010 Census, Pennsylvania was allocated 18 seats in the United States House of Representatives.

33.    While Pennsylvania gained population over the past decade, it did not keep pace with the population growth across the rest of the United States, meaning that Pennsylvania is entitled to only 17 congressional seats for the next Congress.

34.    2 U.S.C. § 2c provides that a state should have "a number of [congressional] districts equal to the number of Representatives to which such State is so entitled."

35.    Because the General Assembly and Governor have not reached agreement on a congressional plan that contains only 17 congressional districts, any future use of Pennsylvania's current apportionment plan would be unlawful.

**V.    Pennsylvania's political branches will not enact lawful congressional district maps in time for the next election.**

36.    In Pennsylvania, congressional district plans are enacted via legislation, which must pass both chambers of the General Assembly and be signed by the Governor (unless the General Assembly overrides the Governor's veto by a two-thirds vote in both chambers). *League of Women Voters I*, 178 A.3d at 742; Pa. Const., Art. III, § 4; Pa. Const., Art. IV, § 15.

37.   The General Assembly and Governor Wolf have had months to reach agreement on a congressional district plan. They have not done so.

38.   Weeks ago, Governor Wolf released criteria that he announced he would consider in deciding whether to approve the General Assembly's proposed congressional plans. These criteria were consistent with Pennsylvania law and straightforward: maps should be compact, contiguous, nearly as equal in population as practicable, should maintain communities of interest, and reflect the state's voter preferences as a whole, to name just a few.

39.   Recently, the Pennsylvania House State Government Committee approved a redistricting plan that violates Governor's Wolf pre-existing criteria for congressional district plans across several fronts. Overall, contrary to Governor Wolf's redistricting criteria, the House Committee's congressional plan is not compact and fails to maintain communities of interest.

40.   For example, the House Committee's congressional plan has several irregularly shaped districts that sprawl unnecessarily from central areas in districts such as CD 5 and CD 6. The House's congressional plan also splits clear communities of interest, by, for example, cracking Harrisburg's AAPI, Black, and Hispanic communities, as well as cracking Hispanic communities in Wilkes-Barre and throughout Chester County.

41.   Even more concerning, however, the Pennsylvania General Assembly

has now adjourned for the year without even passing any congressional plans. By doing so, the General Assembly has jeopardized Pennsylvania's ability to conduct timely 2022 primary elections.

42.    Specifically, the Pennsylvania Department of State has previously explained that it must receive final and legally binding district maps no later than January 24, 2022, and that, to meet that deadline, Pennsylvania's political branches must enact a congressional plan no later than December 2021. *See* State Respondents' Brief in Support of Preliminary Objections to Petitioners' Petition for Review at 5, *Carter v. Degraffenreid*, No. 132 MD 2021 (Sept. 16, 2021).

43.    Because the General Assembly will not reconvene until January 4, 2022, it is no longer even possible for Pennsylvania's political branches to enact such a map by the end of 2021, and the Department of State's timeline cannot be met, thus jeopardizing Pennsylvania's ability to conduct timely elections for 2022.

## VI.    Pennsylvania needs a lawful congressional map imminently.

44.    Voters, candidates, and Pennsylvania's election administration apparatus need new districts, and they need them soon.

45.    Nomination papers for candidates seeking to appear on the ballot for the 2022 partisan primary election begin circulating February 15, 2022. 25 P.S. § 2868. And the deadline for filing those papers falls just a few weeks later. *Id.*

46.    Finalized congressional districts need to be in place as soon as possible,

RETRIEVED FROM DEMOCRACYDOCKET.COM

well before candidates in those districts must begin to collect signatures on their nomination papers. Potential congressional candidates cannot make strategic decisions—including, most importantly, whether to run at all—without knowing their district boundaries. And voters have a variety of interests in knowing as soon as possible the districts in which they reside and will vote, and the precise contours of those districts.

47.     Pennsylvania's judiciary is familiar with resolving this kind of impasse. The last time Pennsylvania's political branches failed to adopt a congressional districting plan after a new census, it fell to the judiciary to adopt a congressional district map for the Commonwealth. *Mellow*, 607 A.2d 204. Similarly, after the Pennsylvania Supreme Court invalidated Pennsylvania's congressional plan three years ago, the General Assembly was unable to come to agreement with Governor Wolf on a new plan, and the judiciary stepped in to adopt a remedial map. *League of Women Voters II*, 181 A.3d at 1086.

48.     Now too, the current impasse over Pennsylvania's congressional district plan must end, and Pennsylvania's judiciary is the only actor able to break the stalemate.

# CLAIMS FOR RELIEF

## COUNT I

**Violation of Free and Equal Elections Clause**
**Pa. Const., Art. I, § 5**
**Congressional Malapportionment**

49.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

50.     The Pennsylvania Constitution's Free and Equal Elections Clause provides: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const., Art. I, § 5. This clause "should be given the broadest interpretation, one which governs all aspects of the electoral process, and which provides the people of this Commonwealth an equally effective power to select the representative of his or her choice, and bars the dilution of the people's power to do so." *League of Women Voters I*, 178 A.3d at 814.

51.     The Free and Equal Elections Clause "establishe[s] a critical 'leveling' protection in an effort to establish the uniform right of the people of this Commonwealth to select their representatives in government." *Id.* at 807.

52.     The "equality" prong of the Free and Equal Elections Clause requires that voting districts be drawn "by laws which shall arrange all the qualified electors into suitable districts, and make their votes equally potent in the election; so that

some shall not have more votes than others, and that all shall have an equal share." *Id.* at 809 (quoting *Patterson*, 60 Pa. at 75). Thus, any scheme that "has the effect of impermissibly diluting the potency of an individual's vote for candidates for elective office relative to that of other voters will violate the guarantee of 'free and equal' elections afforded by Article I, Section 5." *Id.*

53.    Pennsylvania's current congressional district plan places voters into districts with significantly disparate populations, causing voters in underpopulated districts to have more "potent" votes compared to voters, like Petitioners, who live in districts with comparatively larger populations.

54.    Any future use of Pennsylvania's current congressional district plan would violate Petitioners' right to an undiluted vote under the Free and Equal Elections Clause.

## COUNT II

**Violation of Article I, Section 2 of the United States Constitution
Congressional Malapportionment**

55.    Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

56.    Article 1, Section 2 of the U.S. Constitution provides that members of the U.S. House of Representatives "shall be apportioned among the several States . . . according to their respective Numbers." This provision "intends that when qualified voters elect members of Congress each vote be given as much weight as

- 16 -

any other vote," *Wesberry*, 376 U.S. at 7, meaning that state congressional districts must "achieve population equality 'as nearly as is practicable,'" *Karcher*, 462 U.S. at 730 (quoting *Wesberry*, 376 U.S. at 7-8).

57.     Article I, Section 2 "permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for which justification is shown." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969)). *Any* variation from exact population equality must be narrowly justified. *Id.* at 731. Given this requirement, when the Pennsylvania Supreme Court adopted its own congressional plan in 2018, it crafted a plan in which the population deviation among districts was no more than *one person*. Now, the population deviation among Pennsylvania's congressional districts is far higher, on the order of tens of thousands of people.

58.     In light of the significant population shifts that have occurred since the 2010 Census, and the recent publication of the results of the 2020 Census, the current configuration of Pennsylvania's congressional districts—which was drawn based on 2010 Census data—is now unconstitutionally malapportioned. No justification can be offered for the deviation among the congressional districts because any justification would be based on outdated population data.

59.     Any future use of Pennsylvania's current congressional district plan would violate Petitioners' constitutional right to cast an equal, undiluted vote.

## COUNT III

**Violation of 2 U.S.C. § 2c
Congressional Malapportionment**

60.     Petitioners reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

61.     2 U.S.C. § 2c provides that, in a state containing "more than one Representative," "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled."

62.     Pennsylvania's current congressional district plan contains 18 districts. But Pennsylvania is currently allotted only 17 seats in the U.S. House. As a result, the current congressional district plan violates Section 2c's requirement that the number of congressional districts be "equal to the number of Representatives to which [Pennsylvania] is so entitled."

63.     Any future use of Pennsylvania's current congressional district plan would violate 2 U.S.C. § 2c and would unlawfully dilute Petitioners' votes.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioners respectfully request that this Court:

a. Declare that the current configuration of Pennsylvania's congressional districts violates Article I, Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S. Constitution; and 2 U.S.C. § 2c.

b. Enjoin Respondents, their respective agents, officers, employees, and

successors, and all persons acting in concert with each or any of them, from
implementing, enforcing, or giving any effect to Pennsylvania's current
congressional district plan;

c. Adopt a new congressional district plan that complies with Article I,
Section 5 of the Pennsylvania Constitution; Article I, Section 2 of the U.S.
Constitution; and 2 U.S.C. § 2.

d. Award Petitioners their costs, disbursements, and reasonable attorneys'
fees; and

e. Grant such other and further relief as the Court deems just and proper.


Dated: December 17, 2021                      Respectfully submitted,

Lalitha D. Madduri*                           */s/ Edward D. Rogers*
Christina A. Ford*                            Edward D. Rogers, No. 69337
Jyoti Jasrasaria*                             Marcel S. Pratt, No. 307483
Elias Law Group LLP                           Robert J. Clark, No. 308105
10 G St. NE, Suite 600                        Michael R. McDonald, No. 326873
Washington, D.C. 20002                        Paul K. Ort, No. 326044
lmadduri@elias.law                            Ballard Spahr LLP
cford@elias.law                               1735 Market Street, 51st Floor
jjasrasaria@elias.law                         Philadelphia, PA 19103
T: (202) 968-4490                             RogersE@ballardspahr.com
                                              PrattM@ballardspahr.com
Abha Khanna*                                  ClarkR@ballardspahr.com
Elias Law Group LLP                           McDonaldM@ballardspahr.com
1700 Seventh Ave, Suite 2100                  OrtP@ballardspahr.com
Seattle, WA 98101                             T: (215) 665-8500
akhanna@elias.law                             F: (215) 864-8999
T: (206) 656-0177

                                              * *pro hac vice* forthcoming

Matthew Gordon*
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

## **VERIFICATION**

I, Rebecca Poyourow, hereby state:

1.     I am a petitioner in this action;

2.     I verify that the statements made in the foregoing Petition for Review are true and correct to the best of my knowledge, information, and belief; and

3.     I understand that the statements in said Petition for Review are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Signed: _____

RETRIEVED FROM DEMOCRACYDOCKET.COM

## **NOTICE TO PLEAD**

**TO:**                Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

You are hereby notified to file a written response to the enclosed

Petition for Review within thirty (30) days from service hereof or a judgment may

be entered against you.

Dated:          December 17, 2021

*/s/ Edward D. Rogers*
Edward D. Rogers, No. 69337
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the date set forth below, I caused the foregoing

Petition for Review to be served upon the following parties and in the manner

indicated below, which service satisfies the requirements of Pa. R.A.P. 1514 and

121:

<u>By Certified Mail:</u>

Acting Secretary Veronica Degraffenreid
Pennsylvania Department of State
Office of the Secretary
302 North Office Building, 401 North Street
Harrisburg, PA 17120

Director Jessica Mathis
Pennsylvania Bureau of Election Services and Notaries
210 North Office Building, 401 North Street
Harrisburg, PA 17120

<u>By Certified Mail and PACFile:</u>

Office of Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120

Dated:        December 17, 2021

*/s/ Edward D. Rogers*
Edward D. Rogers, No. 69337
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
RogersE@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999
