## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM C. TOTH JR., *et al.*, | : | Civil No. 1:22-CV-00208 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| LEHIGH M. CHAPMAN, in her official | : | |
| capacity as Acting Secretary for the | : | |
| Commonwealth, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## ORDER

Before the court is a motion to intervene as Defendants filed by Carol Ann Carter, Monica Parrilla, Rebecca Poyourow, William Tung, Roseanne Milzaao, Burt Siegel, Susan Cassanelli, Lee Cassanelli, Lynn Wachman, Michael Guttman, Maya Fonkeu, Brady Hill, Mary Ellen Balchunis, Tom Dewall, and Stephanie McNulty (the "Carter Petitioners"). (Doc. 14.) For the reasons that follow, the motion will be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This declaratory action was initiated via complaint on February 11, 2022. (Doc. 1.) On February 20, 2022, Plaintiffs William C. Toth Jr., William J. Hall, James Bognet, Aaron Bashir, and Alan M. Hall (collectively, "Plaintiffs") filed a first amended complaint alleging violations of the Elections Clause and requesting that the court enter declaratory and injunctive relief against Defendants Lehigh M. Chapman, Acting Secretary of the Commonwealth of Pennsylvania ("Secretary

Chapman"); Jessica Mathis, Director of the Pennsylvania Bureau of Election Services and Notaries ("Director Mathis"); and Tom Wolf, Governor of Pennsylvania ("Governor Wolf") (collectively, "Defendants").  (Doc. 7.)

Therein, Plaintiffs allege that due to the 2020 census results, Pennsylvania went from eighteen to seventeen seats in the United States House of Representatives, requiring the drawing of a new congressional map.  (*Id.* ¶¶ 12–13, 15.)  The Pennsylvania General Assembly passed a new congressional map, which was vetoed by Governor Wolf on January 26, 2022.  (*Id.* ¶ 16.)  Meanwhile, on December 17, 2021, the Carter Petitioners,[1] a group of Pennsylvania voters, initiated a lawsuit in the Commonwealth Court of Pennsylvania requesting that the judiciary impose a congressional map for the 2022 elections.  (*Id.* ¶ 17.)  The Pennsylvania Supreme Court granted the Carter Petitioners' application to exercise extraordinary jurisdiction over the congressional map litigation in the Commonwealth Court on February 2, 2022.  (*Id.* ¶¶ 26–28.)  Per the Pennsylvania Supreme Court's instructions, the Commonwealth Court, acting as Special Master, issued findings and a recommendation that the map passed by the General Assembly be used as the 2022 congressional map.  (*Id.* ¶¶ 29, 31.)  The

---

[1] The Carter Petitioners note in their motion that the proposed intervenors here are identical to the petitioners who initiated the Pennsylvania Supreme Court action with exception to one voter who is not seeking intervention in this action.  (Doc. 15, p. 5, n.1.)

Pennsylvania Supreme Court permitted the filing of exceptions to the findings and recommendation, scheduled oral argument for February 18, 2022, and suspended the General Primary Election calendar pending the Court's decision.[2] (*Id.* ¶¶ 32–33.)

Ultimately, in this litigation, Plaintiffs request that the court: (1) "declare that the Elections Clause and 2 U.S.C. § 2a(c)(5) require the defendants to hold at-large elections for the Pennsylvania congressional delegation, unless and until the General Assembly enacts a new congressional map;" and (2) "enter a preliminary and permanent injunction that compels the defendants to hold at-large elections for the Pennsylvania congressional delegation, unless and until the General Assembly enacts a new congressional map." (Doc. 7, p. 13.)[3]

On February 20, 2022, Plaintiffs also filed an emergency motion for temporary restraining order or preliminary injunction. (Doc. 8.)  The following day, the court issued a scheduling order requiring expedited briefing on Plaintiffs' request for a three-judge district court and scheduling an on-the-record telephone conference to discuss procedural and scheduling considerations regarding Plaintiffs' motion for temporary restraining order. (Doc. 9.)  Thereafter, on

---

[2] On February 23, 2022, the Pennsylvania Supreme Court issued an order wherein, among other things, the Court adopted the "Carter Plan" as the congressional map, lifted the suspension of the General Primary Election calendar and set modified deadlines for the General Primary Election. (Doc. 31-1.)

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

February 22, 2022, the Carter Petitioners filed the pending motion to intervene and brief in support. (Docs. 14, 15.) The court subsequently ordered expedited briefing on this motion. (Doc. 21.) Plaintiffs timely filed a brief in opposition on February 24, 2022, and the Carter Petitioners docketed a reply on February 25, 2022. (Docs. 38, 41.) Thus, the motion to intervene is ripe for disposition.

## DISCUSSION

In support of their motion to intervene, the Carter Petitioners argue that they should be granted leave to intervene because, generally, this case is "a collateral attack on litigation pending in the Pennsylvania Supreme Court" initiated by the Carter Petitioners as Pennsylvania voters. (Doc. 15, p. 5.) The Carter Petitioners assert that their interests are not adequately represented by Defendants in this case, who do not share their rights and interests as voters in Pennsylvania, thus, entitling the Carter Petitioners to intervene in this action as of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, by permission under Rule 24(b)(1)(B).

### A. Intervention as of Right

Federal Rule of Civil Procedure 24 provides that:

[T]he court must permit anyone to intervene who:

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Court of Appeals for the Third Circuit has held that:

4

> [A] non-party is permitted to intervene under Rule 24(a)(2) only if: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365–66 (3d Cir. 1995). Each of these requirements must be met to permit a party to intervene as of right. *Id.* at 366. The court will discuss these intervention elements seriatim.

### 1. Timeliness[4]

Courts consider "the totality of the circumstances" when conducting a timeliness analysis. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005). "Among the factors to be considered are: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Id.* (citing *Mountain Top*, 72 F.3d at 369).

The Carter Petitioners moved to intervene two days after Plaintiffs filed their amended complaint and motion for temporary restraining order and preliminary injunction ("PI motion"). (*See* Docs. 7, 8, 14.) At that time, the court had not yet established a briefing schedule for the PI motion and no telephone conference or hearings had been held. To avoid any delay by their intervention, the Carter

---

[4] The court notes that Plaintiffs do not set forth any arguments regarding the timeliness of the motion to intervene. (*See* Doc. 38.)

Petitioners assert that they are prepared to follow any briefing schedules set by the court. (Doc. 15, p. 11.) Indeed, the Carter Petitioners requested leave to file a letter brief regarding Plaintiffs' request for a three-judge district court within the timeframe ordered by the court for Defendants to respond.[5] (*See* Docs. 9, 37.)

Accordingly, the court finds that the Carter Petitioners timely requested to intervene in this action.

### 2. Interest in Litigation

Rule 24(a)(2) requires an intervenor to establish "an interest relating to the property or transaction which is the subject of the action." *Mountain Top*, 72 F.3d at 366. Such interest must be "significantly protectable," meaning that the lawsuit in which the party seeks to intervene must present "a tangible threat to a legally cognizable interest." *Id.* As the Third Circuit noted in *Kleissler v. U.S. Forest Service*:

> [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantial concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

157 F.3d at 972.

---

[5] Because the motion was unopposed, the court granted the Carter Petitioners' request and accepted their letter brief. (Doc. 40.)

The Carter Petitioners argue that this action threatens their interests "in voting in properly apportioned congressional districts and protecting the ongoing state court litigation" brought by them. (Doc. 15, pp. 11–12.) They further submit that their interest in this litigation is substantial because the relief Plaintiffs seek would essentially nullify the Pennsylvania Supreme Court's ruling in litigation brought by the Carter Petitioners to protect their constitutional and statutory rights. (*Id.* at 12–13.) According to the Carter Petitioners, "[t]here can be no greater evidence of that 'significant' legal interest at stake than the fact that Plaintiffs are attempting to change the outcome of the Carter Petitioners' state court lawsuit by attempting to override the forthcoming state court remedy." (*Id.* at 13.)

Plaintiffs vigorously contest that the Carter Petitioners have any significantly protectable interest in this case. (Doc. 38, pp. 3–6.) They argue that the Carter Petitioners' only interest is "subverting the Constitution of the United States." (*Id.* at 3.) According to Plaintiffs, simply because the Carter Petitioners have "induced the Pennsylvania Supreme Court to impose the congressional map that they want," that "unconstitutional judicial edict" does not afford the Carter Petitioners a significantly protectable interest in this case. (*Id.* at 3–4.) Nonetheless, Plaintiffs concede that the Carter Petitioners "will undoubtedly be affected if the implementation of their preferred congressional map is enjoined." (*Id.* at 4.) Plaintiffs continue by arguing the merits of their claim but skirt the question of

how any action by this court would impact the litigation pursued by the Carter Petitioners before the Pennsylvania Supreme Court.  (*Id.* at 4–6.)

In response to these claims, the Carter Petitioners identify two significantly protectable interests in this action: (1) their "rights to vote in constitutionally apportioned districts under the Free and Equal Elections Clause of the Pennsylvania Constitution;" and (2) their "compelling interest in protecting the relief" obtained with the Pennsylvania Supreme Court, particularly because they initiated the state court litigation and prepared and submitted the plan adopted by the Pennsylvania Supreme Court.  (Doc. 41, p. 8–9.)

The court finds that the Carter Petitioners have a significant protectable interest in this litigation.  The Carter Petitioners initiated the action that resulted in the Pennsylvania Supreme Court adopting a congressional map for the 2022 elections.  While that litigation is still ongoing, the Supreme Court selected a map that Defendants are charged with implementing and will govern the upcoming election cycle.  (*See* Doc. 31-1.)  The litigation before this court requests specific relief that, if granted, would eviscerate the ruling obtained by the Carter Petitioners before the Pennsylvania Supreme Court – specifically, Defendants would be ordered to ignore the Pennsylvania Supreme Court's ruling and hold at-large elections unless and until the General Assembly enacts a new congressional map. Consistent with *Kleissler*, this interest is direct, specific to the Carter Petitioners as

8

the moving party in the Pennsylvania Supreme Court action, clearly defined, and concretely impacted if this court grants the relief sought by Plaintiffs.

### 3. Protection of Interests[6]

Next, the court must determine whether the Carter Petitioners' interest, as a practical matter, may be affected or impaired by the disposition of this litigation. *See Mountain Top Condo. Ass'n.*, 72 F.3d at 365–66. Courts should "consider the practical consequences of the litigation," which "is not limited to consequences of a strictly legal nature . . . [but] may consider any significant legal effect on the applicant's interest." *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) (quoting *Nat'l Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). To intervene as of right, however, "the applicant must do more than show that his or her interest may be affected in some incidental manner. Rather, the applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Id.* (citing *United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978)).

The Carter Petitioners argue that the Pennsylvania Supreme Court will approve a new congressional district map, which has now occurred, "thus remedying the Carter Petitioners' constitutional and statutory injuries in time" for

---

[6] The court notes that Plaintiffs do not set forth any arguments regarding this element of the intervention standard. (*See* Doc. 38.)

primary elections in May.  (Doc. 15, p. 15.)  However, Plaintiffs' litigation puts the remedy obtained by the Pennsylvania Supreme Court at risk and "threatens to force" the Carter Petitioners to vote in an at-large election.  (*Id.*)

The court agrees with the Carter Petitioners in that the Carter Petitioners' interest will be impacted by this litigation.  Practically and legally, the Carter Petitioners have demonstrated that the result of their litigation before the Pennsylvania Supreme Court will be rendered moot if Plaintiffs are successful in the case before this court.  Thus, the Carter Petitioners have met this element for intervening as of right.

### 4.  Representation of Interests

The final element the Carter Petitioners must show is that their interest in this litigation is not adequately represented by Defendants in this case.  *Mountain Top Condo. Ass'n*, 72 F.3d at 365–66.  This burden, which varies with each case, has been described as "minimal." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995) (quoting *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir., 1992)); *Kleissler*, 157 F.3d at 972.  Generally, potential intervenors can satisfy this burden in three ways: (1) by demonstrating "that its interests, though similar to those of an existing party, are nevertheless sufficiently different" that the defendants cannot give the potential intervenor's interests "proper attention;" (2) by establishing "collusion" between the parties in the litigation; or

(3) by indicating that the defendants "have not been diligent in prosecuting the litigation." *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982) (citations omitted); *see also Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) (setting forth the same factors for consideration).  In the context of this case where Defendants represent the interests of the Commonwealth of Pennsylvania, the Third Circuit has provided additional guidance:

> A government entity charged by law with representing a national policy is presumed adequate for the task, particularly when the concerns of the proposed intervenor, *e.g.,* a "public interest" group, closely parallel those of the public agency.  In that circumstance, the "would-be intervenor [must make] a strong showing of inadequate representation." But the presumption notwithstanding, when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of the proposed intervenor whose interest is personal to it, the burden is comparatively light.

*Kleissler*, 157 F.3d at 972 (citations omitted); *see also Mausolf v. Babbitt*, 85 F.3d 1295, (8th Cir. 1996) ("when the proposed intervenors' concern is not a matter of 'sovereign interest,' there is no reason to think the government will represent it").

The Carter Petitioners argue that they clearly satisfy this burden because Defendants' arguments in the state court litigation "illustrate that Defendants to not adequately represent the Carter Petitioners as Pennsylvania voters." (Doc. 15, pp. 16–17.)  They submit, based on documents submitted in the state court litigation, that Secretary Chapman and Director Mathis' interest is in the administration of

elections. (*Id.* at 17.) Specifically, their "roles are two-fold: (1) to provide the Court with information where necessary; and (2) to minimize disruption of the 2022 elections by keeping the Court and the other parties appraised of election schedules and potential alterations to those schedules." (*Id.*; Doc. 15-2, p. 3.) Similarly, Governor Wolf describes that his "legally enforceable interest" in the state court litigation is "by virtue of his constitutional role in the redistricting process." (Doc. 15, p. 17; Doc. 15-3, p. 8.) Therefore, the Carter Petitioners assert that Defendants interests are distinct from "their constitutional and statutory right as voters." (Doc. 15, p. 17.)

In further support of this element, the Carter Petitioners submit that no party in this case has any interest in defending the litigation and remedy pursued by the Carter Petitioners before the Pennsylvania Supreme Court. (*Id.* at 17–18.) Intervention is required, according to the Carter Petitioners, in order to protect this collateral attack to their Pennsylvania Supreme Court litigation. (*Id.* at 18.)

Conversely, citing *Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir. 1976), Plaintiffs assert that "the burden of showing inadequate representation is *much* more substantial when a would-be intervenor alleges that a government office or agency is an inadequate representative of its interests." (Doc. 38, p. 7.) Plaintiffs submit that the Carter Petitioners must show one of following to overcome this presumption: (1) "collusion" between the parties in this case; (2) that Defendants'

interest is "adverse" to the Carter Petitioners' interest; or (3) that Defendants' have not been "diligent" in prosecuting this case. (*Id.* at 8 (citing *Del. Valley Citizens' Council for Clean Air*, 674 F.2d at 973).) Plaintiffs walk the court through this standard and submit that the Carter Petitioners cannot meet their burden. (*Id.* at 8–9.)

Although Plaintiffs attempt to enhance the Carter Petitioners' burden by applying *Rizzo*, the Third Circuit applied the same standard in that case as in *Kleissler*. In *Rizzo*, the court stated that the burden "should be treated as minimal" and "remains on the proposed intervenor." 530 F.2d at 505 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 528 n.10 (1972)). Like in *Kleissler*, the court noted that "a presumption of adequate representation generally arises when the representative is a governmental body or officer charged with representing the interests of the absentee." *Id.* (citing 7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1909 (1972)). Thus, the court is satisfied that the standards set forth in *Rizzo* and *Kleissler* are consistent.

The court agrees with Plaintiffs that the Carter Petitioners cannot establish that there is collusion between the parties in this action or that Defendants have been dilatory in prosecuting this case. Nevertheless, the court finds that the Carter Petitioners have demonstrated that Defendants' interests are sufficiently different to satisfy this element of intervention as of right. The Carter Petitioners' interests

13

are those of individual Pennsylvania voters' constitutional and statutory rights, as well as protecting the remedy they requested, and were awarded, before the Pennsylvania Supreme Court.  In contrast, Defendants are tasked with overseeing the 2022 elections and implementing any orders from the Pennsylvania Supreme Court and, if Plaintiffs succeed in this litigation, this court.  While these interests are similar, they are distinguishable, thus fulfilling the element that the Carter Petitioners interests are not adequately represented by Defendant in this case.[7] Accordingly, the court finds that the Carter Petitioners meet the standard for intervention as of right and their motion will be granted.

### B. Permissive Intervention

Alternatively, the Carter Petitioners argue that the court should grant them permission to intervene under Rule 24(b).  Although the court finds that the Carter Petitioners meet the standard for intervention as of right, the court will address the permissive intervention standard as well.

Permissive intervention under Rule 24(b)(2) is allowed on timely application "when an applicant's claim or defense and the main action have a question of law

---

[7] Plaintiffs and the Carter Petitioners refer the court to the similar 2018 congressional district map case from this District, *Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018).  There, following a ruling stated on the record at the close of a hearing, the court issued an order permitting the individual Pennsylvania voters to intervene.  *Corman v. Torres*, No. 1:18-cv-00443, Doc. 85 (M.D. Pa. Mar. 2, 2018).  While the court takes note of this ruling, because there is no reasoning for the court to review, it will not rely on *Corman* in ruling on the present motion to intervene.

or fact in common." Fed. R. Civ. P. 24(b)(2).  In deciding whether to permit intervention under Rule 24(b), "courts consider whether the proposed intervenors will add anything to the litigation."  *See Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 471 (M.D. Pa. 2005).  Courts should also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  *Nat'l Collegiate Athletic Ass'n v. Corbett*, No. 1:30-cv-457, 296 F.R.D. 342, 350 (M.D. Pa. Oct. 15, 2013).

As previously discussed, while the Carter Petitioners have different interests from Defendants with respect to the issues presented in this case, they share common defenses to the legal questions at issue in this case.  As such, the Carter Petitioners will add a different perspective to the litigation that Defendants will not adequately present.  *See Kitzmiller*, 229 F.R.D. at 471.  Further, there is no undue delay or prejudice by permitting the Carter Petitioners to intervene.  Lastly, the Carter Petitioners have complied with Federal Rule of Civil Procedure 24(c), which requires a potential intervenor to file a pleading "that sets out the claim or defense for which intervention is sought."  (Docs. 14-2, 14-3.)

## CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED THAT** the

Carter Petitioners' motion to intervene, Doc. 14, is **GRANTED**.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: February 28, 2022