## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM C. TOTH JR., *et al.*,

       *Plaintiffs,*

    v.

LEIGH M. CHAPMAN, *et al.*,

       *Defendants.*

    v.

CAROL ANN CARTER, *et al.*,

       *Intervenor-Defendants.*

No. 1:22-cv-00208-JPW

Honorable Jennifer P. Wilson

## CARTER PETITIONERS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION....................................................................................................1

BACKGROUND ...................................................................................................3

LEGAL STANDARD ...........................................................................................7

ARGUMENT .......................................................................................................7

      I.      Plaintiffs lack standing to assert violations of the Elections
              Clause. ....................................................................................8

             A.      Plaintiffs do not meet the constitutional requirements of
                    standing. ..................................................................9

             B.      Plaintiffs do not meet the requirements for prudential
                    standing. ................................................................16

      II.     The Court should dismiss Plaintiffs' Elections Clause claims
              because Plaintiffs' request for relief is moot or, in the
              alternative, Plaintiffs fail to state a claim upon which relief may
              be granted. .............................................................................17

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. Wright*,
   468 U.S. 737 (1984), *abrogated on other grounds by Lexmark
   Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).............9, 12

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
   576 U.S. 787 (2015).......................................................................................14, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................7

*Bognet v. Sec'y Commonwealth of Pennsylvania*,
   980 F.3d 336 (3d Cir. 2020), *cert. granted, judgment vacated sub
   nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021).........................11, 12, 15

*Branch v. Smith*,
   538 U.S. 254 (2003).........................................................................................17, 18

*Carter v. Degraffenreid*,
   No. 132 M.D. 2021, 2021 WL 4735059 (Pa. Commw. Ct. Oct. 8,
   2021) .......................................................................................................................4

*City of Phila. v. Klutznick*,
   503 F. Supp. 663 (E.D. Pa. 1980)........................................................................14

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013).........................................................................................13, 14

*Corman v. Torres*,
   287 F. Supp. 3d 558 (M.D. Pa. 2018)........................................................10, 14, 16

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)..............................................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Donald J. Trump for President, Inc. v. Boockvar*,
    502 F. Supp. 3d 899 (M.D. Pa. 2020), *aff'd sub nom. Donald J.*
    *Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377 (3d
    Cir. 2020), *and appeal dismissed sub nom. Signed v. PA*, No. 20-
    3384, 2021 WL 807531 (3d Cir. Jan. 7, 2021)...................................................14

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ........................................................................17, 18

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018)........................................................................................15

*Growe v. Emison*,
    507 U.S. 25 (1993)..........................................................................................2, 19

*Harper v. Hall*,
    No. 413P21 (N.C. Dec. 8, 2021)........................................................................19

*In the Matter of 2022 Legislative Districting of the State*, Misc. Nos.
    21, 24, 25, 26, 27 (Md. Feb. 11, 2022) .............................................................19

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004)........................................................................................9, 16

*Lance v. Coffman*,
    549 U.S. 437 (2007)............................................................................................10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................9, 13

*Md. Citizens for A Representative Gen. Assembly v. Governor of Md.*,
    429 F.2d 606 (4th Cir. 1970) ...............................................................................8

*Page v. Bartels*,
    248 F.3d 175 (3d Cir. 2001) ............................................................................3, 8

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) ................................................................................13

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Samuel-Bassett v. KIA Motors Am., Inc.*,
   357 F.3d 392 (3d Cir. 2004) ...................................................................7

*Shapiro v. McManus*,
   577 U.S. 39 (2015)...................................................................................3, 8

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...................................................................................9

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)...................................................................................7

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)............................................................................9

*United States v. Richardson*,
   418 U.S. 166 (1974)................................................................................10

*Virginia v. Am. Booksellers Ass'n Inc.*,
   484 U.S. 383 (1988)................................................................................16

*Wise v. Circosta*,
   2020 WL 6156302 (4th Cir. Oct. 20, 2020) .........................................10

**STATUTES**

2 U.S.C. § 2a(c)(5)...................................................................................3, 7, 17

2 U.S.C. § 2c ............................................................................................17, 18

28 U.S.C. § 2284 ......................................................................................3, 7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1) ...............................................7

Federal Rule of Civil Procedure Rule 12(b)(6) ......................................7

iv

# INTRODUCTION

After Pennsylvania's political branches were unable to enact a new congressional redistricting plan following the 2020 Census, litigation commenced in the Commonwealth's state courts for the express purpose of adopting a new map. That litigation involved Defendants, the Carter Petitioners, and more than a dozen other parties, including political parties, legislators, and candidates. Its ultimate result was the Pennsylvania Supreme Court's adoption of the map that Plaintiffs now seek to invalidate (the "2022 Congressional Map").

At no point did Plaintiffs seek to intervene in those proceedings to make the argument that they now make to this Court: that the 2022 Congressional Map violates the U.S. Constitution because the state courts lacked authority to approve a map in the first place. Instead, Plaintiffs simply waited—for months. They did absolutely nothing until it was evident that, having carefully considered all of the evidence and multiple different proposed maps before it, the Pennsylvania Supreme Court was poised to adopt the Carter Plan, which was the plan that deviated the least from the previously court-approved plan that Pennsylvanians have been voting under since 2018.

Only then did Plaintiffs file this lawsuit in which they make a remarkable request for relief that, if granted, would violate federal law and binding U.S. Supreme Court precedent. Plaintiffs ask this Court to override the Pennsylvania

Supreme Court's order and force Pennsylvania to implement at-large elections for the first time in centuries. But Plaintiffs' claims fail on every level, including jurisdictionally. And the relief they request would also cause widespread confusion for voters and candidates, force the election calendar to reset entirely, and potentially require moving the primary. Upon approving the 2022 Congressional Map, the Pennsylvania Supreme Court ordered Defendants to begin conducting the election "without delay." Renewed Emergency Temporary Restraining Order ("Renewed TRO") Ex. 1 at 2-4, ECF No. 30-1. As a result, congressional elections in Pennsylvania are well underway; candidates have been circulating nomination petitions for almost a week, and the primary election is less than three months away.

Plaintiffs would have this Court upend all of this, yet they provide no basis for the extraordinary relief they request, nor can they justify the consequent intrusion on state sovereignty. In fact, Plaintiffs have failed to even demonstrate that any court has jurisdiction to hear their Elections Clause claims (Claims 1 and 2 of the Second Amended Complaint): they cite only generalized and speculative injuries that do not implicate any constitutional rights, they fail to identify a single injured party who could support a claim under the Elections Clause, and their request defies the Supreme Court's clear directive that "a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Growe v. Emison*, 507 U.S. 25, 34 (1993); *see also id.* (affirming state courts have a

role in congressional reapportionment and holding that lower courts should not "ignore[e] the . . . legitimacy of state *judicial* redistricting") (emphasis in original).

Under 28 U.S.C. § 2284, this Court has authority to dismiss Plaintiffs' Elections Clause claims without convening a three-judge court because Plaintiffs lack standing to assert those claims, and their Elections Clause challenges are "legally . . . insubstantial." *Page v. Bartels*, 248 F.3d 175, 191 (3d Cir. 2001) (citing *Goosby v. Osser*, 409 U.S. 512, 518 (1973); *Shapiro v. McManus*, 577 U.S. 39, 44-45 (2015).

For these reasons, and those discussed below, this Court should dismiss Plaintiffs' Claim 1 (implementation of the 2022 Congressional Plan violates the Elections Clause and 2 U.S.C. § 2a(c)(5)) and Claim 2 (changes to the election deadlines prior to the primary election violate the Elections Clause) (the "Elections Clause claims").[1]

## BACKGROUND

After the 2020 Census, which resulted in Pennsylvania losing a seat in the U.S. House of Representatives, Pennsylvania had to redraw its congressional district map. *See* Second Am. Compl. ("SAC") Ex. 1 ¶¶ 2-3, ECF No. 49-2. But the General

---

[1] The Carter Petitioners are not moving to dismiss Plaintiffs' Claim 3 (the 2022 Congressional Plan violates the Equal-Population Rule) at this time, but reserve the right to do so at a later time, pursuant to the Court's February 25 Order. *See* Order ¶ 2, ECF No. 43.

Assembly and Governor failed to reach agreement and came to an impasse. *Id.* ¶ 5. Foreseeing this outcome, the Carter Petitioners filed a lawsuit in April 2021, noting that the 2020 census results rendered the prior court-drawn congressional map malapportioned and asking the Commonwealth Court to adopt a new constitutional congressional map should the political branches fail to come to agreement. *See Carter v. Degraffenreid*, No. 132 M.D. 2021, 2021 WL 4735059, at *7 (Pa. Commw. Ct. Oct. 8, 2021). After considering multiple intervention motions and briefing and argument on objections, the Commonwealth Court dismissed that case without prejudice on ripeness grounds.

On December 17, 2021, once it became unmistakable that the political branches would in fact not reach agreement, the Carter Petitioners filed a new petition, once again asking the Pennsylvania Commonwealth Court to declare the 2018 congressional map unconstitutional and adopt a constitutional congressional districting plan. SAC ¶ 3, at 18-19. That litigation continued apace for the following three months. Pursuant to the court's scheduling order, ten parties sought intervention by December 31, 2021; the court subsequently granted intervention for six of those parties and allowed the other four to participate as *amici*. On January

24, 2022, the Carter Petitioners, along with ten other participating parties,[2] submitted a total of 13 proposed maps to the Commonwealth Court for consideration. SAC Ex. 4, ECF No. 49-4. The Commonwealth Court held a two-day evidentiary hearing on the proposed maps, stating at the start that it would proceed to adopt a new congressional district map if the General Assembly and Governor failed to adopt one by January 30. *See* SAC Ex. 9 at 14-15, ECF No. 49-9. That deadline passed without a legislatively enacted map.

On February 2, the Pennsylvania Supreme Court asserted extraordinary jurisdiction over the redistricting litigation and scheduled oral argument. A week later, the Court ordered that the state's General Primary Calendar be "temporarily suspended" pending further order to allow for adoption of a court-ordered plan. *See* SAC Exs. 8, 10, ECF Nos. 49-8, 49-10.

Plaintiffs initiated this action on February 11. They argue that the Elections Clause forbids the state courts from adopting a map, and seek an injunction compelling Defendants to hold at-large congressional elections instead. *See generally* Compl., ECF No. 1. On February 20, more than a week after they first

---

[2] This includes the Gressman Petitioners, who filed a petition that was consolidated with the Carter Petitioners' case, as well as the following: (1) Republican Legislative Intervenors, (2) Governor Wolf, (3) Senate Democratic Caucus Intervenors, (4) House Democratic Caucus Intervenors, (5) Republican Congressional Intervenors, (6) Voters of the Commonwealth *amicus*, (7) Citizen-Voters *amicus*, (8) Draw the Lines PA *amicus*, and (9) Ali et al. *amicus* group.

filed their complaint, Plaintiffs amended their complaint to add an additional plaintiff. *See generally* Am. Compl., ECF No. 7. That same day, Plaintiffs also filed an Emergency Motion for TRO or Preliminary Injunction seeking the same relief. *See* Mot. Prelim. Inj. at 12, ECF No. 11.

The state case continued and, on February 23, the Pennsylvania Supreme Court ordered the implementation of the congressional plan submitted by Carter Petitioners. SAC Ex. 11 at 2, ECF No. 49-11. Pursuant to the court-ordered election calendar, congressional candidates began circulating nomination petitions under the new map almost a week ago. State Defendants have also taken steps to implement the 2022 Congressional Map. *See id.* at 3; *see generally* Exhibit A (filed. Feb. 25, 2022).

After the Pennsylvania Supreme Court issued its ruling, Plaintiffs filed a renewed Emergency Motion for TRO, which this Court denied on February 25 while also setting a schedule for motions to dismiss and Plaintiffs' pending Preliminary Injunction motion. *See* Order at 1-2 ECF No. 43. On February 28, Plaintiffs appealed that denial to the U.S. Supreme Court. *See* Notice of Appeal, ECF No. 50. That same day, Plaintiffs sought leave to file a second amended complaint, which the Court granted. *See generally* SAC; Order at 1, ECF No. 55.

Through the SAC, Plaintiffs continue to ask this Court to abrogate the Pennsylvania Supreme Court's order adopting a new congressional map. SAC ¶ 75.

6

Plaintiffs' theory is that the Elections Clause of the U.S. Constitution prohibits Defendants from implementing the new map and elections calendar adopted by the Pennsylvania Supreme Court, and that 2 U.S.C. § 2a(c)(5) requires Pennsylvania to hold at-large elections. *See* SAC ¶¶ 59-62, 64-66. Plaintiffs additionally allege that the 2022 Congressional Map violates the Fourteenth Amendment's equal population requirement for congressional districts. *Id.* at 5, ¶¶ 6, 68.

## LEGAL STANDARD

Plaintiffs' Elections Clause claims should be dismissed under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). The existence of subject matter jurisdiction is a threshold issue, and absent a proper basis for it, a case must be dismissed. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998). Plaintiffs bear the burden of showing that federal jurisdiction is appropriate. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Under Rule 12(b)(6), the Court shall dismiss a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint must "state a claim to relief that is plausible on its face").

## ARGUMENT

Under 28 U.S.C. § 2284, "[a] three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not

7

justiciable in the federal courts." *Shapiro*, 577 U.S. at 44–45 (quoting *Gonzalez v. Automatic Emps. Credit Union*, 419 U.S. 90, 100 (1974)). Thus, this Court has authority to dismiss Plaintiffs' Elections Clause claims without convening a three-judge court because Plaintiffs lack standing and their Elections Clause claims are legally insubstantial. *Page*, 248 F.3d at 191. "Insubstantiality in the claim may appear because of absence of federal jurisdiction or lack of substantive merit" in a claim. *Md. Citizens for A Representative Gen. Assembly v. Governor of Md.*, 429 F.2d 606, 611 (4th Cir. 1970); *see also id.* ("When it thus appears that there is no substantial question for a three-judge court to answer, dismissal of the claim for injunctive relief by the single district judge is consistent with the purpose of the three-judge statutes, and it avoids the waste and delay inherent in a cumbersome procedure.").

In this case, Plaintiffs' Elections Clause claims should be dismissed for three independently sufficient reasons. *First*, Plaintiffs lack both Article III and prudential standing to advance these claims. *Second*, Plaintiffs' request for relief is moot. *Third*, Plaintiffs fail to state a claim for relief. Each is addressed below.

## I.    Plaintiffs lack standing to assert violations of the Elections Clause.

The inquiry into standing "asks whether a litigant is entitled to have a federal court resolve his grievance," and "[t]his inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'"

*Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Plaintiffs cannot meet the requirements of constitutional or prudential standing for their Elections Clause claims.

**A.      Plaintiffs do not meet the constitutional requirements of standing.**

Plaintiffs lack Article III standing to assert Elections Clause claims because their only purported injuries are (1) common to all voters in Pennsylvania or (2) speculative grievances untethered to any cognizable right.

At its "irreducible constitutional minimum," Article III standing requires (1) an injury-in-fact that is (2) fairly traceable to the defendant's conduct, and (3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). As a general matter, asserting a right "to have the Government act in accordance with law" does not confer standing. *Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–27 (2014); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("[U]nder Article III, an *injury in law* is not an *injury in fact*. Only those plaintiffs who have been concretely harmed by a defendant's . . . violation may sue . . . over that violation in federal court.") (emphasis added). When the injury alleged by plaintiffs is undifferentiated and common to all members of the broader

electorate, courts routinely dismiss such cases as "generalized grievances" that do not support standing. *See, e.g.*, *United States v. Richardson*, 418 U.S. 166, 173-74 (1974). This is the case here and this Court should dismiss.

### 1.   Individual voters lack standing to assert Elections Clause claims.

The U.S. Supreme Court has held that private citizens do not have standing to assert a claim under the Elections Clause absent a "particularized stake in the litigation." *Lance v. Coffman*, 549 U.S. 437, 442 (2007). In *Lance*, individual private citizens launched a collateral attack on a congressional districting plan adopted by the Colorado Supreme Court, arguing that only the state legislature could redistrict under the Elections Clause. *Id.* at 438. After describing the Court's "lengthy" jurisprudence holding that federal courts should not serve as a forum for generalized grievances," the Court articulated the "obvious" problem with the plaintiffs' standing:

> The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is *precisely the kind of undifferentiated, generalized grievance* about the conduct of government that we have refused to countenance in the past. It is quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing.

*Id.* (emphasis added). Consistent with *Lance*, federal courts have repeatedly declined to adjudicate Elections Clause claims brought by individual plaintiffs. *See, e.g.*, *Wise v. Circosta*, 2020 WL 6156302, at *6 (4th Cir. Oct. 20, 2020); *Corman v. Torres*,

287 F. Supp. 3d 558, 567 (M.D. Pa. 2018) (three-judge court holding plaintiffs lacked standing because claims "rest[ed] solely on the purported usurpation of the Pennsylvania General Assembly's exclusive rights under the Elections Clause" which plaintiffs had no legal right to assert).

In fact, the Third Circuit recently dismissed strikingly similar Elections Clause claims asserted by one of the Plaintiffs currently before this Court, Jim Bognet, for this same reason. In that case, Bognet, a congressional candidate at the time, filed a lawsuit alleging violations of the Elections Clause after the Pennsylvania Supreme Court extended elections deadline and addressed rules relating to presumed timeliness of mail ballots. *Bognet v. Sec'y Commonwealth of Pennsylvania*, 980 F.3d 336, 346 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021). The Third Circuit dismissed the case, holding that private individuals like Bognet lack standing to sue for alleged injuries attributable to a state government's purported violations of the Elections Clause because those are not the type of particularized injuries giving rise to a federal claim. *Id.* at 349-51.

Plaintiffs' claims fare no better this time. Bognet and the other Plaintiffs are individual voters and private citizens who allege that Defendants' enforcement of the 2022 Congressional Map violates the Elections Clause. SAC ¶¶ 4-6, 52-53. In other words, Plaintiffs once again assert an interest in "hav[ing] the Government act

11

in accordance with law," which is insufficient for Article III standing. *Bognet*, 980

F.3d at 348-49 (quoting *Allen*, 468 U.S. at 754). Any purported deprivation of rights,

if it exists, is felt by all Pennsylvania voters equally, and Plaintiffs thus lack standing.

*See Allen*, 468 U.S. at 754; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344

(2006) (finding plaintiffs did not have standing where plaintiff "suffers in some

indefinite way in common with people generally").

### 2. Candidate plaintiffs lack standing to assert Elections Clause claims.

Plaintiffs Bognet and Bashir additionally claim they are injured because they

are running for Congress, but their candidacy does not confer standing. In fact,

Bognet made the same claim in 2020, and the Third Circuit rejected it, finding that

such allegations still failed to establish that the challenged law affects the plaintiffs

"in a particularized way when, in fact, all candidates in Pennsylvania, including

[their] opponent[s]," are in a similar posture. *Bognet*, 980 F.3d at 351.

Implicitly recognizing that *Bognet* forecloses their claim to candidate

standing, Bognet and Bashir try another gambit here, alleging injury based on the

"uncertain[ty] of how they should campaign for a seat" because the 2022

Congressional Map may be declared unlawful. SAC ¶ 56. But any such uncertainty

is *caused by their own meritless lawsuit*. It is well established that plaintiffs cannot

manufacture an injury and then claim standing, as plaintiffs attempt here. *See*

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) (Plaintiffs "cannot manufacture standing" by incurring burdens "in anticipation of non-imminent harm"). Even if there were a "substantial risk" that a federal court will "declare the map unlawful," SAC ¶ 56, that is a risk Plaintiffs chose to incur when they filed this lawsuit. As reflected in the state court litigation, Pennsylvania voters, candidates, and legislators—Republicans and Democrats alike—all agree that Pennsylvania courts have authority to adopt and order the implementation of a congressional plan. *See*, *e.g.*, Exhibit B at 3 n.2 (filed Dec. 27, 2021). Plaintiffs alone are the ones to call the finality of the 2022 Congressional Map into question. *See Lujan*, 504 U.S. at 564 n.2 (1992) (standing "has been stretched beyond the breaking point when, as here . . . the acts necessary to make the injury happen are at least partly within the plaintiff's own control); *Clapper*, 568 U.S. 416 ("an enterprising plaintiff" should not be able to achieve Article III standing by simply alleging injury they chose to incur "based on a nonparanoid fear").

Bashir and Bognet's allegations that the alleged "uncertainty" and "risk" caused by their lawsuit will make it more difficult for them to raise money for their campaigns is even more far afield. SAC ¶ 56. Injuries that "stem[] from an indefinite risk of future harms inflicted by unknown third parties" are insufficient to confer standing. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (citing *Lujan*, 504 U.S. at 564). And even if Plaintiffs could assert a cognizable injury based on the

13

speculative fundraising concerns prompted by their own litigation, any alleged injury would be inflicted not by Defendants, but by the Court should it grant Plaintiffs' requested relief. *See Clapper*, 568 U.S. at 418 (finding plaintiffs did not have standing where their "self-inflicted injuries are not fairly traceable to" defendants).

Finally, Bashir separately alleges that he is injured because the 2022 Congressional Map "forc[es] him to run in a congressional district" that is more Democratic than the Commonwealth overall. SAC ¶ 55. But elected officials and candidates have "no legally cognizable interest in the composition of the district" they hope to represent, *Corman*, 287 F. Supp. 3d at 569, and a legislator, or in this case a candidate, "suffers no cognizable injury, in a due process sense or otherwise, when the boundaries of his district are adjusted by reapportionment," *City of Phila. v. Klutznick*, 503 F. Supp. 663, 672 (E.D. Pa. 1980). Indeed, it is a "core principle of republican government" that voters "choose their representatives, not the other way around." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 823 (2015). This same principle necessarily extends to Bashir, who also has "no . . . interest in representing any particular constituency." *Klutznick*, 503 F. Supp. at 672; *see also Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899, 916 (M.D. Pa. 2020), *aff'd sub nom. Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377 (3d Cir. 2020), *and appeal dismissed sub nom. Signed v. PA*, No.

14

20-3384, 2021 WL 807531 (3d Cir. Jan. 7, 2021) (rejecting Plaintiffs' assertion of "competitive standing" based on the potential loss of an election).[3]

### 3. County election official Plaintiff Alan Hall lacks standing to assert Elections Clause claims.

The final Plaintiff, Alan Hall, claims that, as a member of the Susquehanna Board of Elections, he has an injury-in-fact because Defendants' failure to implement at-large elections leaves him with uncertainty about how to administer the upcoming primary. *See* SAC ¶ 57. The infirmities of this claim are evident. First, once again the grievance is highly generalized. *See Bognet*, 980 F.3d at 351. The Supreme Court has rejected standing based on undifferentiated grievances or abstract policy statements, *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018), such as an interest in overseeing the lawful administration of elections, as Hall alleges here. *See* SAC ¶ 57. Second, there is no uncertainty as to how to proceed—other than of Plaintiffs' own making—because the 2022 Congressional Map has been adopted, and Hall is legally required to implement it.

---

[3] Indeed, regardless of how a congressional map is adopted, Bashir is not "forced" into any particular district or election and has no entitlement to or reason to expect a district that aligns with his election prospects. Nothing in the Pennsylvania Supreme Court's decision precludes Bashir—or any other candidate—from running for election in any district he wants.

**B.     Plaintiffs do not meet the requirements for prudential standing.**

Even if any Plaintiff had suffered an injury sufficient for Article III purposes, their claim would still be barred under prudential standing, as it is premised on the *General Assembly's* alleged exclusive authority to draw congressional districts. *See* SAC ¶¶ 60-61. Prudential limitations require "that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski*, 543 U.S. at 129 (quoting *Warth*, 422 U.S. at 499). But Plaintiffs' claims rest entirely on the alleged usurpation of institutional rights held by the General Assembly, which is not before the Court and whose interests cannot be advanced by individuals lacking authority to act on its behalf.

Plaintiffs have also failed to identify any "'hindrance' to the [General Assembly's] ability to protect [its] own interests," *id*. at 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). "Absent a 'hindrance' to the third-party's ability to defend its own rights, this prudential limitation on standing cannot be excused." *Corman*, 287 F. Supp. 3d at 572 (quoting *Kowalski*, 543 U.S. at 130). Thus, applying the "usual rule" of prudential standing, *Virginia v. Am. Booksellers Ass'n Inc.*, 484 U.S. 383, 392 (1988), Plaintiffs cannot assert claims on behalf of the General Assembly. *Corman*, 287 F. Supp. 3d at 571-73. For these reasons, Plaintiffs have failed to demonstrate that they have standing, and their Elections Clause claims must be dismissed. *See id*.

16

**II.    The Court should dismiss Plaintiffs' Elections Clause claims because Plaintiffs' request for relief is moot or, in the alternative, Plaintiffs fail to state a claim upon which relief may be granted.**

This Court should dismiss Plaintiffs' Elections Clause claims (Claims 1 and 2 of the Second Amended Complaint) because they are now moot. "The mootness doctrine is centrally concerned with the court's ability to grant effective relief: If developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot.'" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010)). Plaintiffs argue that Defendants must hold at-large elections pursuant to 2 U.S.C. § 2a(c)(5). However, the Supreme Court unequivocally stated in *Branch v. Smith* that § 2a(c)(5) is to be used only as a last resort and "inapplicable *unless* the state legislature, *and* state . . . courts, have all failed to redistrict pursuant to § 2c." 538 U.S. 254, 275 (2003) (emphasis in original).

The last-resort remedy of § 2a(c)(5) is available only when, "on the eve of a congressional election, no constitutional redistricting plan exists and there is no time for either the State's legislature *or the courts* to develop one." *Id.* at 275 (emphasis added). Here, the Pennsylvania Supreme Court has already adopted a lawful congressional plan and State Defendants have already implemented that plan, in accordance with 2 U.S.C. § 2c and U.S. Supreme Court precedent. Therefore, "§2a(c) cannot be properly applied" because the state "court[] . . . effect[ed] the

17

redistricting mandated by § 2c." *Id.* As a result, the Court cannot "grant the requested relief," so "the case must be dismissed as moot.'" *Ehrheart*, 609 F.3d at 596.

*Branch* also squarely forecloses Plaintiffs' claims that only the state legislature and not Pennsylvania state courts may redistrict. The Court in *Branch* specifically held that 2 U.S.C. § 2c authorizes both state and federal courts "to redistrict" and "embraces action by state and federal courts when the prescribed legislative action has not been forthcoming." 538 U.S. at 270, 272. As the Supreme Court explained, "[Section] 2c is as readily enforced by courts as it is by state legislatures." *Id.* at 272. The Court reaffirmed this in *Arizona State Legislature v. Arizona Independent Redistricting Committee*. Under § 2a(c), "Congress expressly directed that when a State has been 'redistricted in the manner provided by [state] law'—whether by the legislature, *court decree*, or a commission established by the people's exercise of the initiative—the resulting districts are the ones that presumptively will be used to elect Representatives." 576 U.S. at 812 (quoting *Branch*, 538 U.S. at 274; emphasis added).

Indeed, the Supreme Court has been clear that not only *may* state courts step in when the legislative process results in impasse over congressional plans, but they *should* do so. As the Court explained in *Growe v. Emison*, "[t]he power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action

18

by the States in such cases has been specifically encouraged." 507 U.S. at 33 (quotations omitted). In recognizing the state courts' role to craft remedial plans, the unanimous Court held that "[t]he District Court erred in not deferring to the state court's efforts to redraw Minnesota's . . . federal congressional districts." *Id.* at 42. Far from restricting apportionment responsibilities to a state's legislative branch alone, the Court affirmed that congressional reapportionment may be conducted "through [a state's] legislative *or* judicial branch." *Id.* at 33 (emphasis in original). As a result, the Court found that the state court's "issuance of its plan (conditioned on the legislature's failure to enact a constitutionally acceptable plan)" by a date certain was "precisely the sort of state judicial supervision of redistricting [the Court] has encouraged." *Id.* Thus, the Supreme Court was clear in *Growe* that the district court erred in "ignoring the . . . legitimacy of state *judicial* redistricting." *Id.* at 34 (emphasis in original). The Court should decline Plaintiffs' invitation to make the same mistake here.

Plaintiffs are also mistaken that courts may not alter election-related deadlines, which they can and routinely do. *See, e.g.*, Order, *Harper v. Hall*, No. 413P21 (N.C. Dec. 8, 2021) (postponing 2022 primary filing deadlines months before primary); Order, *In the Matter of 2022 Legislative Districting of the State*, Misc. Nos. 21, 24, 25, 26, 27 (Md. Feb. 11, 2022) (postponing candidate filing and related deadlines months before 2022 primaries). Particularly where federal law

strongly encourages state courts to implement congressional plans when the political branches fail to act, judicial modification of election deadlines to effectuate those maps is not only authorized, but essential.

## CONCLUSION

For the foregoing reasons, the Court should grant the Carter Petitioners' Motion to Dismiss Claim 1 and Claim 2 of the Plaintiffs' Second Amended Complaint.

Dated: March 1, 2022

Respectfully submitted,

*/s/ Elizabeth V. Wingfield*
Timothy D. Katsiff (PA 75490)
Elizabeth V. Wingfield (PA 32477)
Edward D. Rogers (PA 69337)*
Marcel S. Pratt (PA 307483)*
Robert J. Clark (PA 308105)*
Michael R. McDonald (PA 326873)**
Paul K. Ort (PA 326044)*
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
KatsiffT@ballardspahr.com
WingfieldE@ballardspahr.com
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
T: (206) 656-0177

Lalitha D. Madduri**
Jyoti Jasrasaria**
Tina Meng**
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
lmadduri@elias.law
jjasrasaria@elias.law
tmeng@elias.law

21

T: (202) 968-4490
Matthew Gordon**
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

*Counsel for Carter Petitioners*

*\*Motions for Pro Hac Vice*
*Forthcoming*
*\*\*Admitted Pro Hac Vice*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing contains 4,647 words, based on the word count of the word processing system used to prepare this brief, and thereby complies with the Local Civil Rule 7.8.


DATED: March 1, 2022

*/s/ Elizabeth V. Wingfield*
Elizabeth V. Wingfield
