## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM C. TOTH, JR., et al,
*Plaintiffs,*

v.

LEIGH M. CHAPMAN, in her official capacity as Acting Secretary of the Commonwealth; JESSICA MATHIS, in her official capacity as Director for the Pennsylvania Bureau of Election Services and Notaries; and TOM WOLF, in his official capacity as Governor of Pennsylvania,

*Defendants.*

No. 1:22 Civ. 208 (JPW)

Electronically Filed

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE ELECTIONS CLAUSE CLAIMS IN THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

KAPLAN HECKER & FINK LLP

Joshua Matz
(admitted pro hac vice)
1050 K Street NW | Suite 1040
Washington, DC 20001
Telephone: (929) 294-2537
jmatz@kaplanhecker.com


HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Robert A. Wiygul (Pa. I.D. No.
310760)
Cary L. Rice (Pa. I.D. No. 325227)
(admitted pro hac vice)
John B. Hill (Pa. I.D. No. 328340)
(admitted pro hac vice)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300

Marina Eisner
(admitted pro hac vice)
Christine P. Sun
(admitted pro hac vice)
States United Democracy Center
1101 17th Street, NW
Washington, DC 20036
(240) 600-1316
marina@statesuniteddemocracy.org
(615) 574-9108
christine@
statesuniteddemocracy.org

Michael J. Fischer (Pa. I.D. No.
322311)
(application for admission
forthcoming)
Aimee D. Thomson (Pa. I.D. No.
326328)

(application for admission
forthcoming)
PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103
mfischer@attorneygeneral.gov
(215) 560-2171

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

STANDARD OF REVIEW .....................................................................5

ARGUMENT ..........................................................................................6

  I.  PLAINTIFFS LACK STANDING ...................................................6

    A.   Plaintiffs' Alleged Injuries as Voters Do Not Establish Standing ...........6

    B.   Plaintiffs Bashir and Bognet's Alleged Injuries as Congressional Candidates Do Not Establish Standing ...............................................9

    C.   Plaintiff Alan M. Hall's Alleged Injuries as a Member of the Susquehanna County Board of Elections Do Not Establish Standing .............13

    D.   Plaintiffs Have Not Established Causation or Redressability ................14

  II.    PLAINTIFFS LACK A CAUSE OF ACTION ..........................................16

  III.   PLAINTIFFS SEEK RELIEF PRECLUDED BY LACHES AND *PURCELL* ....................................................................................17

CONCLUSION .....................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
576 U.S. 787 (2015) ........................................................................12

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ........................................................................16

*Bd. of Ed. of Cent. Sch. Dist. No. 1 v. Allen*,
392 U.S. 236 (1968) ........................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................5

*Bennett v. Spear*,
520 U.S. 154 (1997) ........................................................................11

*Berg v. Obama*,
586 F.3d 234 (3d Cir. 2009) ..............................................................9

*Bognet v. Sec'y Commonwealth of Pennsylvania*,
980 F.3d 336 (3d Cir. 2020) ............................................................13

*Branch v. Smith*,
538 U.S. 254 (2003) ............................................................ 8, 15, 17

*Carney v. Adams*,
141 S. Ct. 493 (2020)..........................................................................7

*Carter v. Chapman*,
No. 7 MM 2022, 2022 WL 304580 (Pa. Feb. 2, 2022) .........................3

*Carter v. Chapman*,
No. 7 MM 2022, 2022 WL 549106 (Pa. Feb. 23, 2022)....................3, 4

*Carter v. Degraffenreid*, No.,
  464 M.D. 2021 (Pa. Commw. Ct. Dec. 20, 2021) ................................................ 2

*City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*,
  625 F.2d 231 (9th Cir. 1980) ............................................................................. 13

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...................................................................................... 10, 12

*Corman v. Torres*,
  287 F. Supp. 3d ................................................................... 11, 12, 14, 16

*Crane v. Johnson*,
  783 F.3d 244 (5th Cir. 2015) ............................................................................. 13

*Crookston v. Johnson*,
  841 F.3d 396 (6th Cir. 2016) ............................................................................. 17

*Democratic Nat'l Comm. v. Wisconsin State Legislature*,
  No. 20A66, 2020 WL 6275871 (U.S. Oct. 26, 2020) ......................................... 18

*Finkelman v. Nat'l Football League*,
  810 F.3d 187 (3d Cir. 2016) ....................................................................... 6, 14, 15

*Georgia Voter All. v. Fulton Cty.*,
  499 F. Supp. 3d 1250 (N.D. Ga. 2020) ............................................................. 16

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002) ........................................................................................... 17

*Growe v. Emison*,
  507 U.S. 25 (1993) .............................................................................................. 4

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ........................................................................................... 16

*Johnson v. Mason*,
  No. 1:19 Civ. 2217, 2020 WL 905578 (M.D. Pa. Feb. 25, 2020) ......................... 5

*King v. Whitmer*,
    505 F. Supp. 3d 720 (E.D. Mich. 2020) .................................................... 8, 12, 16

*Lance v. Coffman*,
    549 U.S. 437 (2007) ...........................................................................................7, 8

*League of Women Voters of Pennsylvania v. Commonwealth*,
    645 Pa. 576 (2018)..................................................................................................2

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................................6

*Maher Terminals, LLC v. Port Auth.*,
    805 F.3d 98 (3d Cir. 2015) ...................................................................................16

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
    571 U.S. 191 (2014) .............................................................................................17

*Mellow v. Mitchell*,
    530 Pa. 44 (1992)....................................................................................................5

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022)............................................................................................20

*Nigro v. Pennsylvania Higher Educ. Assistance Agency*,
    No. 1:19 Civ. 2000, 2020 WL 5369980 (M.D. Pa. Sept. 8, 2020)........................5

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) .................................................................................................18

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019)..........................................................................................20

*Shapiro v. McManus*,
    577 U.S. 39 (2015) .................................................................................................1

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................6, 7

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ...........................................................................7

*Tex. Voters All. v. Dallas County*,
  495 F. Supp. 3d 441 (E.D. Tex. 2020) ..............................................16

*Va. House of Delegates* v. *Bethune-Hill*,
  139 S. Ct. 1945 (2019)......................................................................14

*Vita Nuova, Inc. v. Azar*,
  458 F. Supp. 3d 546 (N.D. Tex. 2020) ..............................................11

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...........................................................................7

*Wood v. Raffensperger*,
  981 F.3d 1307 (11th Cir. 2020) ..........................................................8

**Statutes**

2 U.S.C. §2a(c)(5) ................................................................ 6, 8, 15, 17

2 U.S.C. § 2c ................................................................................ 15, 19

25 Pa. Cons. Stat. § 2868 ........................................................................19

28 U.S.C. § 2284 .....................................................................................1

42 U.S.C. § 1983 ....................................................................................17

Sections 2a(c) and 2c .............................................................................17

U.S. Const., art.  I ....................................................................................4

U.S. Const., art. III .................................................................................6, 9

**Rules**

Fed. R. Civ. P. 12(b)(1).......................................................................... i, 5

Fed. R. Civ. P. 2(b)(6)..............................................................................5

**Other**

Opp. to App. for Extraordinary Relief of Cutler et al. at 3 fn.2, No.,
141 MM 2021 (Pa. Dec. 27, 2021)..........................................................................3

Support of App. for Leave to Intervene of Cutler et al. at ¶ 6, No.,
464 MD 2021 (Pa. Dec. 27, 2021)..........................................................................3

Support of Judge McCullough's Report and Recommendation, No.,
7 MM 2022 (Pa. Feb. 14, 2022) ..............................................................................3

Support of Report and Recommendation of Special Master, No.,
7 MM 2022 (Pa. Feb. 14, 2022) ..............................................................................4

# INTRODUCTION

As it has done many times before, the Supreme Court of Pennsylvania adopted a map of congressional districts after the General Assembly and Governor were unable to agree upon one. Now, on the eve of the 2022 primary election, Plaintiffs allege that Defendants have violated the Elections Clause by implementing that map. Plaintiffs demand that Pennsylvania depart from longstanding practice and instead elect its entire congressional delegation on at-large, statewide basis. Rather than burden a three-judge court with these meritless claims, the Court should exercise its gatekeeping authority under 28 U.S.C. § 2284 and *Shapiro v. McManus*, 577 U.S. 39 (2015), to dismiss them as nonjusticiable. Plaintiffs lack standing and a cause of action, and their claims are barred by laches and the *Purcell* principle. Plaintiffs have separately alleged a one-person, one-vote challenge to the map adopted by the Supreme Court of Pennsylvania. Defendants reserve all rights to contest that claim but do not object to it being heard by a three-judge district court, which should consider the issue without the distraction of nonjusticiable Elections Clause claims.[1]

---

[1] This brief addresses only justiciability arguments concerning Plaintiffs' Elections Clause claims. *See* Second Am. Compl. ("SAC") ¶¶ 59-67. Defendants reserve all rights to raise additional jurisdictional arguments—as well as arguments concerning the merits of Plaintiffs claims (and whether Plaintiffs have stated claims upon which relief can be granted)—if the Court does not dismiss on the grounds set forth herein.

## BACKGROUND

Pennsylvania lost a congressional seat in the 2020 decennial census. SAC ¶ 14. The General Assembly and Governor have been unable to agree on a new congressional map. *Id.* ¶¶ 17, 25. When the political branches are unable to agree, "it becomes the judiciary's role to ensure a valid districting scheme." *League of Women Voters of Pennsylvania v. Commonwealth*, 645 Pa. 576, 582 n.6 (2018). On December 17, 2021, anticipating the need for judicial resolution, the Intervenor Carter Petitioners filed suit in the Commonwealth Court. SAC ¶ 18.

Three days later, the Commonwealth Court directed that "if the General Assembly and the Governor fail to enact a congressional reapportionment plan by January 30, 2022, the Court will select a plan from those plans timely filed by the parties." *Carter v. Degraffenreid*, No. 464 M.D. 2021, slip op. at 2 (Pa. Commw. Ct. Dec. 20, 2021). In so doing, the court established a schedule for hearings, evidence, and briefing, and directed that its order be served on leaders in the General Assembly. *Id.* at 3. On January 14, 2022, Judge McCullough of the Commonwealth Court reaffirmed that if the General Assembly "has not produced a new congressional map by January 30, 2022, the Court shall proceed to issue an opinion based on the hearing and evidence presented by the Parties." SAC ¶ 24.

By this point, it was crystal clear that the state courts would issue a map if the political branches were unable to agree by January 30. When Governor Wolf vetoed

the General Assembly's proposed map on January 26, *id.* ¶ 25, a judicially drawn map became a certainty. The Supreme Court of Pennsylvania therefore exercised extraordinary jurisdiction on February 2, 2022. *See Carter v. Chapman*, No. 7 MM 2022, 2022 WL 304580, at *1 (Pa. Feb. 2, 2022) (explaining that this expedited approach was warranted "[g]iven the impasse between the legislative and executive branches concerning the adoption of congressional districts, and in view of the impact that protracted appeals will have on the election calendar, and time being of the essence . . ."). The exercise of extraordinary jurisdiction here was consistent with Pennsylvania law past practice: "over the last six decades," the Supreme Court of Pennsylvania has exercised extraordinary jurisdiction "in every single case in which the task of drawing Pennsylvania's election districts has fallen to the judiciary." *Id.* at *3 (Dougherty, J., concurring) (collecting cases). To expedite proceedings, Judge McCullough was designated as the Special Master and instructed to submit a report and proposed map by February 7, 2022. *See id.* at 1. On February 9, 2022, the Supreme Court of Pennsylvania also temporarily suspended the general election calendar. SAC ¶ 40.

On February 23, 2022, the Supreme Court of Pennsylvania issued an order adopting the congressional map proposed by the Carter Intervenors. *Carter v. Chapman*, No. 7 MM 2022, 2022 WL 549106, at *1 (Pa. Feb. 23, 2022). This order vacated the earlier order temporarily suspending the calendar. *See id.* It also

3

extended seven interim deadlines by a few days, including the first day to circulate and file nomination petitions, which had been February 15 and (given the passage of that date) was reset to February 25. *Id*. The calendar was otherwise left untouched. Its original April and May deadlines and the General Primary Date remain. *Id.* at *2.

Throughout these proceedings, the leadership of the General Assembly repeatedly and affirmatively agreed that it was proper for the Supreme Court of Pennsylvania to act. For instance, the Speaker and Majority Leader of the Pennsylvania House of Representatives, joined by the President *Pro Tempore* and Majority Leader of the Pennsylvania Senate, stated as follows:

> Officers of the General Assembly have argued in prior litigation . . . that the "Elections Clause" of Article I, section 4 of the U.S. Constitution forecloses state courts from enforcing state law against an act of the state's legislature, or at least imposes limitations when they do so. The difference here is that the current congressional plan contravenes the U.S. Constitution, and it is settled law that state courts have authority to declare and remedy violations of the U.S. Constitution, even with respect to laws governing congressional elections. *See Growe v. Emison*, 507 U.S. 25, 32-36 (1993). Proposed Intervenors do not dispute that the Pennsylvania courts have the authority to adjudicate Petitioners' claims for violations of the U.S. Constitution or other federal laws, and it appears that the state-law issues they raise implicate standards that duplicate federal standards.

Opp. to App. for Extraordinary Relief of Cutler et al. at 3 fn.2, No. 141 MM 2021 (Pa. Dec. 27, 2021). Those same legislative officials also expressly endorsed the state courts' power to modify the election schedule: "[I]n the past, those nominating petition deadlines have been moved for Congressional elections, and therefore could

still be moved in this election cycle." Memo. of Law in Support of App. for Leave to Intervene of Cutler et al., at ¶ 6, No. 464 MD 2021 (Pa. Dec. 27, 2021) (citing *Mellow v. Mitchell*, 530 Pa. 44, 103 (1992)). When they later filed exceptions to Judge McCullough's Report and Recommendation, neither the House GOP Intervenors nor the Senate GOP Intervenors objected to the state election calendar changes she had proposed. *See generally* Br. of House Republican Intervenors in Support of Judge McCullough's Report and Recommendation, No. 7 MM 2022 (Pa. Feb. 14, 2022); Senate Republican Intervenors' Br. in Support of Report and Recommendation of Special Master, No. 7 MM 2022 (Pa. Feb. 14, 2022).

## STANDARD OF REVIEW

When presented with a facial challenge under Rule 12(b)(1)—where the movant contests jurisdiction without contesting the non-conclusory facts alleged in the Complaint—the Court applies the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6). *See Nigro v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19 Civ. 2000, 2020 WL 5369980, at *5 (M.D. Pa. Sept. 8, 2020) (Wilson, J.). "A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson v. Mason*, No. 1:19 Civ. 2217, 2020 WL 905578, at *1 (M.D. Pa. Feb. 25, 2020) (Wilson, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**ARGUMENT**

## I.   PLAINTIFFS LACK STANDING

Under Article III, the jurisdiction of the federal judiciary is confined to "Cases" and "Controversies." U.S. Const., art. III, § 2. To comply with Article III, a plaintiff bears the burden of establishing that they have standing, which requires "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). A plaintiff cannot rely upon a mere "generalized grievance" shared generally with the public at large "in the proper application of the Constitution and laws." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). They must instead prove they have suffered a "concrete" and "particularized" injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Here, accepting their non-conclusory allegations, Plaintiffs fail that requirement as to their Elections Clause claims.

### A.   Plaintiffs' Alleged Injuries as Voters Do Not Establish Standing

Plaintiffs allege that they have been injured in their capacity as voters by "defendants' implementation of the unconstitutional Carter Plan and their refusal to hold at-large elections for the state's congressional delegation, as required by the Elections Clause and 2 U.S.C. §2a(c)(5)." SAC ¶ 52. This claim rests on several premises: first, that the order of the Supreme Court of Pennsylvania adopting a

congressional map violates the Elections Clause; second, that Defendants are violating the Elections Clause by implementing that order; and third, that Defendants are thereby injuring Plaintiffs as voters by preventing them from casting ballots in an at-large election.

This theory is foreclosed by Supreme Court precedent. As noted above, to support standing, a plaintiff's injuries must be "concrete and particularized." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). To be "particularized," an injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. The opposite of a particularized injury is a generalized grievance, "shared in substantially equal measure by all or a large class of citizens[.]" *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Simply put, "a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'" *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).

In *Lance v. Coffman*, 549 U.S. 437 (2007), the Supreme Court applied those principles to the Elections Clause in a manner that controls here. In *Lance*, a group of Colorado voters filed suit to invalidate a Colorado redistricting plan for alleged violations of the Elections Clause. *See* 549 U.S. at 438. They insisted that a plan adopted by the state courts usurped the constitutional role of the state legislature. *Id.* at 441. But the Supreme Court held that these voters lacked standing because they

"assert[ed] no particularized stake in the litigation." *Id.* at 442. "The only injury" the plaintiffs asserted was "that the law—specifically the Elections Clause—[had] not been followed." *Id.* The Supreme Court held that this was "precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance[.]" *Id.* Since *Lance*, courts have dismissed suits in which plaintiffs sought to raise Elections Clause arguments in their capacity as voters. *See, e.g.*, *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020); *King v. Whitmer*, 505 F. Supp. 3d 720, 735–36 (E.D. Mich. 2020). This Court should do the same.

Plaintiffs cannot escape *Lance* by citing 2 U.S.C. § 2a(c)(5), which (in their view) entitles them as voters to cast ballots in an at-large election. *First*, the actual injury they allege is traceable solely to Defendants' supposed violations of the Elections Clause. *Second*, 2 U.S.C. § 2a(c)(5) does not vest any rights, the deprivation of which could constitute an injury: it merely offers a "a last-resort remedy" to allow for an election to take place where "there is no time . . . to develop" a single-member district plan. *Branch v. Smith*, 538 U.S. 254, 275 (2003); *accord id.* at 285 (Stevens, J., concurring in part). *Finally*, even if Plaintiffs could trace an injury to violations of 2 U.S.C. § 2a(c)(5), it too would be a generalized grievance, since every voter in Pennsylvania could claim to be equally aggrieved. *See Lance*,

549 U.S. at 442; *Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009) (voter lacked standing where he shared his purported interest "pari passu with all voters").

### B. Plaintiffs Bashir and Bognet's Alleged Injuries as Congressional Candidates Do Not Establish Standing

Plaintiffs Bashir and Bognet are both congressional candidates. *See* SAC ¶¶ 7 & 8. They allege that they have been injured in that capacity because they are "uncertain of how they should campaign." *Id.* at ¶ 56. In particular, they believe that Defendants' implementation of the map adopted by the Supreme Court of Pennsylvania creates a "substantial risk that a federal court or the Supreme Court of the United States will declare the map unlawful after they have spent time and resources campaigning in the court-drawn congressional districts." *Id.* They also complain that this "cloud of legal uncertainty" has made it harder to raise money. *Id.* Finally, Plaintiff Bashir alone claims injury "because the Carter plan is forcing him to run in a congressional district with a massive Democratic voter-registration advantage, rather than in a statewide at-large election where the number of Democratic and Republican voters are more evenly split." *Id.* ¶ 55.

These allegations fail as a matter of law. We address them in turn.

*First*, Plaintiffs Bashir and Bognet have not alleged a proper injury based on their own subjective anxiety that a federal court might someday invalidate the map adopted by the Supreme Court of Pennsylvania. Article III would mean little in the electoral setting if any candidate could show injury by claiming "uncertainty" about

the outcome of potential future judicial review. That is not the law. In fact, the Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted). The Supreme Court has also confirmed that a party cannot demonstrate injury-in-fact by asserting that fear or uncertainty about non-imminent future developments is affecting their present conduct: "Respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416 (collecting cases). Here, it cannot be said that federal judicial invalidation of the map adopted by the Supreme Court of Pennsylvania is "certainly impending." *Id.* at 409. Only in the rarest circumstance (if ever) could the result of federal judicial review of state action be seen as sufficiently foreordained and unavoidable to constitute a "certainly impending" injury. That standard is not met in this case.

*Second*, any difficulties experienced by Plaintiffs Bashir and Bognet in raising money do not give rise to standing. Here, too, *Clapper* states the law: "[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." 568 U.S. at 413. Federal courts rarely accept theories of injury that depend on the reasons why third parties (who are not before the court) might make complex decisions in the future. *See, e.g.*,

10

*Bennett v. Spear*, 520 U.S. 154, 167 (1997) ("[T]he injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."). There are many reasons why someone may, or may not, donate to a candidate. Just as a candidate cannot manufacture injury by worrying that a map will be judicially invalidated, neither can a candidate claim injury by asserting that their donors are worried that a map will be judicially invalidated. *See Vita Nuova, Inc. v. Azar*, 458 F. Supp. 3d 546, 556-57 (N.D. Tex. 2020) (holding that "inhibition of fundraising efforts" due to uncertainty about the legality of a regulation did not create injury-in-fact, since a plaintiff "may not manufacture standing through the affidavits of potential donors withholding funds when it cannot show a certainly impending future injury").

*Third*, Plaintiff Bashir has not alleged a cognizable injury by claiming that he would prefer to compete in an at-large election rather than in his assigned congressional district. This follows from the decision of a three-judge panel of this Court in *Corman v. Torres*, which concluded that "[c]ase law strongly suggests that a legislator has no legally cognizable interest in the composition of the district he or she represents." 287 F. Supp. 3d 558, 569 (M.D. Pa. 2018) (discussing cases). *Corman* further reasoned that this asserted injury suffers from a closely related traceability defect: "The cost of shifting district boundaries—in terms of both campaign funding and constituent fealty—is surely appreciable. But [the plaintiffs]

11

have identified no legal principle tethering that cost to a legally cognizable interest in the composition of their electoral districts under the Elections Clause of the Constitution." *Id.* at 570. Both of those conclusions apply here. Moreover, under *Clapper*, the mere possibility that Plaintiff Bashir will face more advantageous odds in an at-large election does not render any injury from adoption of the *Carter* map "certainly impending." 568 U.S. at 409. In this nation, voters should choose their representatives—not the other way around—and candidates have no protected interest in determining their own districts.

*Finally*, as *Corman* held, it is particularly improper to endorse expansive standing theories for the Elections Clause, which "affirmatively grants rights to state legislatures, and under Supreme Court precedent, to other entities to which a state may, consistent with the Constitution, delegate lawmaking authority." 287 F. Supp. 3d at 573; *see also Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 800-802 (2015). Because this constitutional provision exists to define the prerogatives of state legislatures, the proper party to assert an injury from alleged violations of the Elections Clauses will generally be the legislature itself. *See id.* ("As far as we can tell on this record, the Elections Clause claims asserted in the verified complaint belong, if they belong to anyone, only to the Pennsylvania General Assembly."); *King*, 505 F. Supp. 3d at 736. In an opinion that has since been vacated on procedural grounds, Judge Smith offered a thorough

analysis of this point. *See Bognet v. Sec'y Commonwealth of Pennsylvania*, 980 F.3d 336, 350 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) ("Because Plaintiffs are not the General Assembly, nor do they bear any conceivable relationship to state lawmaking processes, they lack standing to sue over the alleged usurpation of the General Assembly's rights under the Elections and Electors Clauses."). Here, the leaders of the General Assembly recognized the power of the Supreme Court of Pennsylvania to adopt a map and modify the election schedule; third parties should not be allowed to coopt and direct the constitutional interests of the General Assembly.

### C.   Plaintiff Alan M. Hall's Alleged Injuries as a Member of the Susquehanna County Board of Elections Do Not Establish Standing

Plaintiff Alan M. Hall, a member of the Susquehanna County Board of Elections, alleges two forms of injury, neither of which withstands scrutiny. He first alleges that Defendants are injuring him by forcing him to implement an unconstitutional order in violation of his oath of office. SAC ¶ 57. This theory of standing would allow any official charged with implementing any statute or rule to challenge it on any ground—and has been rejected by many courts. *See, e.g.*, *Crane v. Johnson*, 783 F.3d 244, 253 (5th Cir. 2015) ("[T]he violation of one's oath alone is an insufficient injury to support standing."); *City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 237 (9th Cir. 1980); *but see Bd. of Ed. of*

13

*Cent. Sch. Dist. No. 1 v. Allen*, 392 U.S. 236, 241 n.5 (1968). Second, he alleges that he will have to complete his duties on a faster schedule. SAC ¶ 58. But we are aware of no case holding that it ranks as Article III injury-in-fact for a government official to have do their job while implementing a valid court order. It is particularly unlikely that a single member of a county board of elections could have standing on such a theory, since any potential burden would accrue to the board in an institutional capacity rather than to its individual members. *Cf. Va. House of Delegates* v. *Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019) ("Individual members lack standing to assert the institutional interests of a legislature.").

Independently, for the reasons given above, Plaintiff Hall is not an appropriate party to assert injury-in-fact under the Elections Clause, which exists to protect the prerogatives of state legislatures. *See Corman*, 287 F. Supp. 3d at 573 (indicating that Elections Clause claims belong "if they belong to anyone, only to the Pennsylvania General Assembly").

### D.    Plaintiffs Have Not Established Causation or Redressability

In addition to their failure to establish a cognizable injury, Plaintiffs have not met the other elements of Article III standing. To demonstrate causation, the injury alleged must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Finkelman*, 810 F.3d at 193. To demonstrate redressability, Plaintiffs must show that

"it is 'likely, as opposed to merely speculative,' that the alleged injury will be redressed by a favorable decision." *Id.* at 194.

At bottom, Plaintiffs complain that Defendants' adherence to the map adopted by the Supreme Court of Pennsylvania has injured them (and caused them and their donors uncertainty) by preventing at-large elections under 2 U.S.C. § 2a(c)(5). But this argument rests on speculation and counterfactual reasoning. In *Branch v. Smith*, the Supreme Court rejected the interpretation of 2 U.S.C. § 2a(c)(5) that Plaintiffs advance here, holding instead that 2 U.S.C. § 2c (which was enacted later in time) still "requires courts, when they are remedying a failure to redistrict constitutionally, to draw single-member districts whenever possible." 538 U.S. at 270. Recounting a long history of state and federal court intervention, *Branch* emphasized that 2 U.S.C. § 2c "embraces action by state and federal courts when the prescribed legislative action has not been forthcoming." *Id.* at 272. Thus, even if the *Carter* map were enjoined, it remains unlikely that Pennsylvania will actually hold an at-large election for congressional seats in 2022. And to the extent Plaintiffs' alleged injuries arise from uncertainty about the election (which they have themselves caused by filing this case), it is not substantially likely that engineering a massive disruption to the method of congressional selection at this late stage will reduce uncertainty. For these reasons—and given their lack of a cognizable injury—Plaintiffs lack Article III standing.

15

## II.   PLAINTIFFS LACK A CAUSE OF ACTION

Dismissal is separately required because Plaintiffs lack a private right of action. As Judge Mazzant has reasoned, because the Elections Clause "does not speak to individual rights" and instead "outlines a structural principle of the American system of federalism," "no cause of action based solely on the text of the Elections Clause exists for [plaintiffs] to plead." *Tex. Voters All. v. Dallas County*, 495 F. Supp. 3d 441, 462 (E.D. Tex. 2020). As a fallback, Plaintiffs may seek to rely on a cause of action in equity to pursue their Elections Clause claim. To do so, however, they must demonstrate that they fall within the zone of interests of that constitutional provision. *See Maher Terminals, LLC v. Port Auth.*, 805 F.3d 98, 105 (3d Cir. 2015). For the reasons given above, Plaintiffs do not satisfy that requirement: the Elections Clause exists to clarify the role of the state legislative process in federal elections—and to balance power between Congress and state legislatures—and so its interests belong to state legislative bodies rather than private plaintiffs. *See, e.g.*, *Corman*, 287 F. Supp. 3d at 573; *King*, 505 F. Supp. 3d at 736; *Georgia Voter All. v. Fulton Cty.*, 499 F. Supp. 3d 1250, 1255 (N.D. Ga. 2020) ("[T]he Elections Clause does not, on its own, provide Plaintiffs with a basis to sue Fulton County."). Further, given the significant federalism and separation of powers concerns at play here, it would not be "proper," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015), or consistent with traditions of equity, *see Grupo*

16

*Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999), to imply the expansive cause of action that Plaintiffs seek to invoke.

Plaintiffs' glancing invocation of 42 U.S.C. § 1983 does not cure this infirmity. Section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). The same holds true for the Declaratory Judgment Act, which establishes a procedural mechanism to vindicate substantive rights found elsewhere. *See Medtronic, Inc. v. Mirowski Fam. Ventures, LL*C, 571 U.S. 191, 199 (2014). The Elections Clause is not itself a source of individual rights enforceable through these provisions. And to the extent Plaintiffs cite § 2a(c)(5), the Supreme Court has already held that it creates only a remedy, not a right. *See Branch*, 538 U.S. at 275 (plurality opinion); *accord id.* at 300 (O'Connor, J., concurring in part and dissenting in part) ("Sections 2a(c) and 2c do not create independently enforceable private rights of action themselves."). Thus, Plaintiffs' Elections Clause claims should be dismissed.

## III.   PLAINTIFFS SEEK RELIEF PRECLUDED BY LACHES AND *PURCELL*

A final basis for dismissal is that Plaintiffs unreasonably and prejudicially delayed in filing suit. "Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (Sutton, J.). As Justice Kavanaugh has explained, "federal courts ordinarily

should not alter state election laws in the period close to an election"—even if those rules are flawed—since that risks confusing voters, sowing doubt about election results, and inviting further late-in-the-day litigation. *Democratic Nat'l Comm. v. Wisconsin State Legislature*, No. 20A66, 2020 WL 6275871, at *3 (U.S. Oct. 26, 2020) (Kavanaugh, J., concurring); *accord Purcell v. Gonzalez*, 549 U.S. 1 (2006). Those concerns are especially stark here. Plaintiffs' stated goal is to force at-large elections, which on their own flawed theory would occur *only* if the congressional map were invalidated without enough time for state or federal courts (or the state legislative process) to fashion new districts. In other words, Plaintiffs' whole strategy depends on springing a legal attack too late for any alternative remedy.

That strategy should not be condoned. As explained above, when Governor Wolf vetoed the General Assembly's proposed map on January 26, it became a virtual certainty that the state courts would adopt a congressional map. This was clear from Judge McCullough's December 20 order, which she reaffirmed on January 14. Nonetheless, rather than file suit on January 26 or shortly thereafter (for instance, on February 2, when the Supreme Court of Pennsylvania exercised extraordinary jurisdiction), Plaintiffs waited until February 11 to file suit—and then, remarkably, waited until February 20 to seek "emergency" relief. As evidenced by the fact that Plaintiffs filed suit before the Supreme Court of Pennsylvania even adopted a map, their theory in seeking such relief under the Elections Clause had

nothing to do with which map was selected. Instead, their Elections Clause theory was (and remains) that it was unconstitutional from the very outset for *any* state court to adopt a map, even if the General Assembly and Governor reach an impasse. On that (mistaken) view, the moment Judge McCullough announced her intent to adopt a map—or, at least, the day Governor Wolf announced his veto—Plaintiffs should have rushed to court. But instead, they waited *weeks* to file suit and then waited *nine more days* to seek interim relief.

This delay was as inexcusable as it was prejudicial: when it comes to the election calendar, every day between January 26 and February 20 is significant. Indeed, by waiting as long as they did, Plaintiffs did not even seek relief until *after* the first day to circulate and file nomination petitions (February 15) had already passed. *See* 25 Pa. Cons. Stat. § 2868. (Of course, this moots at least part of their request that the Court re-impose the statutory election calendar.)

Even more problematically, Plaintiffs' delay appears to have been calculated. Their legal theory would fail on its own terms if they sued earlier, since there would still be time for state or federal courts to redistrict under 2 U.S.C. § 2c (or for the political branches to re-engage). Thus, Plaintiffs could achieve their stated goals only by attempting to explode the map with no time left on the clock. Accepting that strategy would be an invitation to mischief and chaos in future elections—and would involve federal courts in heated, late-stage partisan controversy. *See Rucho v.*

*Common Cause*, 139 S. Ct. 2484, 2507 (2019) (refusing an "expansion of judicial authority" into "one of the most intensely partisan aspects of American political life"); *see also Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring in grant of applications for stays) ("When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others. It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election.").

## CONCLUSION

For the foregoing reasons, the Elections Clause claims alleged in the Second Amended Complaint should be dismissed.[2]


Dated:        March 1, 2022                    Respectfully submitted,


                                               /s/ Joshua Matz
                                               KAPLAN HECKER & FINK LLP

                                               Joshua Matz
                                               (admitted pro hac vice)
                                               1050 K Street NW | Suite 1040
                                               Washington, DC 20001
                                               Telephone: (929) 294-2537
                                               jmatz@kaplanhecker.com

                                               HANGLEY ARONCHICK SEGAL
                                               PUDLIN & SCHILLER
                                               Robert A. Wiygul (Pa. I.D. No. 310760)
                                               Cary L. Rice (Pa. I.D. No. 325227)
                                               (admitted pro hac vice)
                                               John B. Hill (Pa. I.D. No. 328340)
                                               (admitted pro hac vice)
                                               One Logan Square, 27th Floor
                                               Philadelphia, PA 19103
                                               Tel: (215) 568-6200
                                               Fax: (215) 568-0300

                                               Marina Eisner
                                               (admitted pro hac vice)
                                               Christine P. Sun
                                               (admitted pro hac vice)

---

[2] Defendants would consent—in the event of dismissal—to the entry of partial final judgment under Rule 54(b) on Plaintiffs' Elections Clause claims.

States United Democracy Center
1101 17th Street, NW
Washington, DC 20036
(240) 600-1316
marina@statesuniteddemocracy.org
(615) 574-9108
christine@
statesuniteddemocracy.org

Michael J. Fischer (Pa. I.D. No.
322311)
(application for admission
forthcoming)
Aimee D. Thomson (Pa. I.D. No.
326328)
(application for admission
forthcoming)
PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103
mfischer@attorneygeneral.gov
(215) 560-2171

*Counsel for Defendants*

**Certification of Word Count**

Pursuant to Local Rule 7.8, I certify that this brief contains 4,997 words and thus complies with the 5,000 word limitation.


Dated:          March 1, 2022                    /s/ Joshua Matz_____
                                                 Joshua Matz

## CERTIFICATE OF SERVICE

I hereby certify that on this 1ˢᵗ day of March 2022, a true and correct copy of the foregoing was served upon all counsel of record via the court's CM/ECF electronic filing system.

<u>/s/Joshua Matz</u>