# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILLIAM C. TOTH, JR., *et al.*, | : | |
| *Plaintiffs,* | : | |
| v. | : | |
| LEIGH M. CHAPMAN, *et al.*, | : | No. 1:22-cv-00208-JPW-KAJ-PS |
| *Defendants.* | : | Honorable Kent A. Jordan |
| v. | : | Honorable Patty Shwartz |
| CAROL ANN CARTER, *et al.*, | : | Honorable Jennifer P. Wilson |
| *Intervenor-Defendants.* | : | |

## CARTER PETITIONERS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................3

    I.     Plaintiffs lack standing to assert violations of the Elections
        Clause or 2 U.S.C. § 2a(c)(5). .............................................3

        A.    The individual voter Plaintiffs lack standing. ...........................4

        B.    The candidate Plaintiffs lack standing. ....................................8

        C.    The county election official Plaintiff lacks standing. ..............13

        D.    Plaintiffs cannot assert the Pennsylvania General
              Assembly's rights under the Elections Clause.........................14

    II.    Plaintiffs' request for relief is moot, and Plaintiffs fail to state a
        claim upon which relief may be granted. ..........................................15

CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. Johnson*,
    521 U.S. 74 (1997).............................................................................20

*Allen v. Wright*,
    468 U.S. 737 (1984), *abrogated on other grounds by Lexmark
    Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)............3, 4, 7

*Baker v. Carr*,
    369 U.S. 186 (1962)........................................................................7, 12

*Board of Education of Central School District No. 1 v. Allen*,
    389 U.S. 1031 (1968)..........................................................................13

*Bognet v. Sec'y Commonwealth of Pennsylvania*,
    980 F.3d 336 (3d Cir. 2020), *cert. granted, judgment vacated sub
    nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021)..............................*passim*

*Branch v. Smith*,
    538 U.S. 254 (2003).................................................2, 15, 16, 17, 18

*City of Phila. v. Klutznick*,
    503 F. Supp. 663 (E.D. Pa. 1980)........................................................12

*City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*,
    625 F.2d 231 (9th Cir. 1980), *cert denied*, 449 U.S. 1039 (1980) ....................13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)........................................................................9, 11

*Corman v. Torres*,
    287 F. Supp. 3d 558 (M.D. Pa. 2018).................................................12, 14, 15

*Crane v. Johnson*,
    783 F.3d 244 (5th Cir. 2015) ..............................................................13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)............................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Department of Commerce v. New York,*
   139 S. Ct. 2551 (2019) ...................................................................10, 11

*Ehrheart v. Verizon Wireless,*
   609 F.3d 590 (3d Cir. 2010) .....................................................................17

*Finkelman v. Nat'l Football League,*
   810 F.3d 187 (3d Cir. 2016) ....................................................................11

*Florida v. Powell,*
   559 U.S. 50 (2010) ...................................................................................19

*Growe v. Emison,*
   507 U.S. 25 (1993) ...............................................................2, 15, 16, 18

*Kowalski v. Tesmer,*
   543 U.S. 125 (2004) .................................................................................14

*Lance v. Coffman,*
   549 U.S. 437 (2007) ..........................................................................*passim*

*Larios v. Cox,*
   305 F. Supp. 2d 1335 (N.D. Ga. 2004) ...................................................19

*League of United Latin American Citizens v. Perry,*
   548 U.S. 399 (2006) .................................................................................12

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ........................................................................9, 11, 14

*Morse v. Lower Merion Sch. Dist.,*
   132 F.3d 902 (3d Cir. 1997) ....................................................................11

*Mullaney v. Wilbur,*
   421 U.S. 684 (1975) .................................................................................19

*Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,*
   710 F.3d 71 (2d Cir. 2013) .........................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)......................................................................................13

*Powers v. Ohio*,
  499 U.S. 400 (1991)......................................................................................14

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011) ...........................................................................11

*Reynolds v. Sims*,
  377 U.S. 533 (1964)..................................................................................7, 12

*Scott v. Germano*,
  381 U.S. 407 (1965)......................................................................................18

*Sierra Club v. Morton*,
  405 U.S. 727 (1972)......................................................................................13

*Sixty-Seventh Minn. State Senate v. Beens*,
  406 U.S. 187 (1972)......................................................................................19

*Smiley v. Holm*,
  285 U.S. 355 (1932)......................................................................................18

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)....................................................................................3, 4

*United States v. Richardson*,
  418 U.S. 166 (1974)...............................................................................3, 6, 8

*Upham v. Seamon*,
  456 U.S. 37 (1982)........................................................................................18

*Wilder v. Va. Hosp. Ass'n*,
  496 U.S. 498 (1990)......................................................................................15

*Wittman v. Personhuballah*,
  578 U.S. 539 (2016)......................................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**STATUTES**

2 U.S.C. § 2a(c)......................................................................................................17

2 U.S.C. § 2a(c)(5).......................................................................................3, 7, 4, 17

2 U.S.C. § 2c..................................................................................................2, 16, 17

42 U.S.C. § 1983................................................................................................3, 15

## INTRODUCTION

Plaintiffs seek extraordinary relief. They ask this Court to override a Pennsylvania Supreme Court order, throw out Pennsylvania's congressional map under which elections are already proceeding, and force Pennsylvanians to elect their congressional representatives in at-large elections for the first time since the eighteenth century. But as the Carter Petitioners argued in their original motion, *see generally* Carter Petitioners' Mot. Dismiss ("Carter Mot. Dismiss"), ECF No. 59, there is no legal basis for Plaintiffs' claims, which fail on every level, including jurisdictionally.[1]

In opposition, Plaintiffs repeatedly fail to confront binding U.S. Supreme Court precedent and ignore or misconstrue black letter law. As a threshold matter, *Lance v. Coffman*, a case nearly identical to this one, squarely forecloses Plaintiffs' claims through its holding that the alleged injury upon which Plaintiffs' claims rely, "is *precisely the kind of undifferentiated, generalized grievance* about the conduct of government that we have refused to countenance in the past." 549 U.S. 437, 442 (2007) (emphasis added). Plaintiffs' other attempts to manufacture standing have similarly been rejected by courts across the country, including the Supreme Court,

---

[1] As noted in the Carter Petitioners' motion to dismiss, this motion concerns Claim 1 and Claim 2 (the "Elections Clause claims") in the Second Amended Complaint. *See* Carter Mot. Dismiss at 3. Pursuant to the Court's February 25 Order, ECF No. 43 ¶ 2, Carter Petitioners reserve the right to separately move to dismiss Plaintiffs' Claim 3.

the Third Circuit, and courts in this district. All these cases point to the same unavoidable conclusion: Plaintiffs lack standing because they allege only generalized and speculative injuries that do not implicate any federal rights, and they fail to identify a single party who could support a claim under the Elections Clause.

Faced with a wall of binding precedent rejecting their substantive arguments, Plaintiffs appear to walk them back and offer a new theory in support of their Elections Clause claims. While Plaintiffs' Second Amended Complaint expressly argues that only legislatures may redistrict, *see, e.g.*, Second Amended Complaint ("SAC") at 4, ECF No. 49, Plaintiffs' opposition to the motions to dismiss now "readily acknowledge[s] that *Branch* [*v. Smith*] allows courts to remedy violations of 2 U.S.C. § 2c by drawing single-member districts," Opposition to Motion to Dismiss ("Opp.") at 13. Instead, Plaintiffs now claim that the Pennsylvania Supreme Court's only mistake was altering administrative pre-primary election deadlines. *Id.* Putting aside that a party cannot amend a complaint in an opposition to a motion to dismiss, this position, too, is unsustainable as a matter of law. Essential to state courts' ability to adjudicate impasse redistricting litigation (an authority that Plaintiffs now apparently no longer dispute state courts have) is their power to facilitate that adjudication. In fact, this is a power the Supreme Court has "not only" "recognized," but "specifically encouraged." *Growe v. Emison*, 507 U.S. 25, 33 (1993).

2

For the reasons set forth in Plaintiffs' original motion and below, the Court should dismiss Plaintiffs' Elections Clause claims.

## ARGUMENT

**I.    Plaintiffs lack standing to assert violations of the Elections Clause or 2 U.S.C. § 2a(c)(5).**

Plaintiffs' Opposition lays bare that the only relief Plaintiffs seek is to have the government follow the law as they perceive it, a remedy that would impact all Pennsylvanians in the same way. But it is black letter law that asserting a right "to have the Government act in accordance with law" does not confer standing. *Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–27 (2014). The same is true when a plaintiff's alleged injury is undifferentiated and common to all members of the broader electorate, as is the case here. *See, e.g.*, *United States v. Richardson*, 418 U.S. 166, 173–74 (1974). Plaintiffs have accordingly failed to demonstrate "an invasion of a legally protected interest" that is sufficiently "concrete and particularized" to confer upon the Court the power to adjudicate their claims. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). But even if Plaintiffs could demonstrate Article III standing, they identify no instance where a court has permitted private litigants to assert Elections Clause claims on behalf of a legislative body, nor any court that has accepted their novel theory that they have a cognizable right or privilege under 42 U.S.C. § 1983. Thus, the Court can and should easily find

3

that Plaintiffs do not meet the requirements of constitutional or prudential standing and dismiss their Elections Clause claims on these grounds.

###### A.     The individual voter Plaintiffs lack standing.

Plaintiffs do not dispute that they seek only "to have the Government act in accordance with the law," but as the Supreme Court has found time and again, "[a]ssertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III." *Allen*, 468 U.S. at 754 (quotations omitted). Plaintiffs "allege that the defendants' refusal to conduct at-large elections is depriving them of their right to vote in all 17 of the state's congressional races." Opp. at 6 (citing SAC ¶ 53). *Even if* such a right existed, it would belong to every single voter in Pennsylvania and is therefore a quintessential generalized grievance. As a result, it is not sufficiently "concrete and particularized," and Plaintiffs lack standing. *Spokeo*, 578 U.S. at 339. Although Plaintiffs are correct that the fact that an injury may be felt by many people does not necessarily mean it is not sufficiently particularized to confer standing, Opp. at 7, precedent establishes that where *all* voters experience the same alleged injury, it is too generalized to confer standing, *Bognet v. Sec'y Commonwealth of Pennsylvania*, 980 F.3d 336, 349 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) (finding plaintiffs lack standing to pursue Elections Clause claims because "[t]heir relief would have no

more directly benefitted them than the public at large"). Tellingly, Plaintiffs identify *no* case where private plaintiffs were found to have standing to assert an Elections Clause injury.

The Supreme Court's directly applicable binding precedent in *Lance v. Coffman*, 549 U.S. 437 (2007), forecloses Plaintiffs' claims. The circumstances presented in *Lance* are identical to those here: individual private citizens launched a collateral attack on a congressional districting plan adopted by a state supreme court, arguing that the court's adopted plan could not be used in upcoming elections because only the state legislature could redistrict under the Elections Clause. *Id.* at 442. The Supreme Court held that the plaintiffs lacked standing because their alleged injury "is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Id*.

Plaintiffs attempt to distinguish *Lance* by arguing that the Court's conclusion about standing resulted from the plaintiffs' failure to "explain[] *how* defendants' failure to follow the law is inflicting Article III injury." Opp. at 7 (emphasis in original). But that's incorrect: the Court expressly held that the plaintiffs lacked standing because "[t]he only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed," *Lance*, 549 U.S. 437 at 442. This is precisely the same injury alleged by Plaintiffs. *See*, *e.g*., SAC at 4 ("The Elections Clause says that 'the Legislature'—not the judiciary—must 'prescribe' the manner

of electing representatives, and the General Assembly has not adopted or approved the [adopted map] as the state's congressional map."). Thus, for the same reasons, *Lance* requires that this Court conclude that, "[b]ecause [P]laintiffs assert no particularized stake in the litigation . . . they lack standing to bring their Elections Clause claim[s]." *Lance*, 549 U.S. 437 at 442.

Plaintiffs' attempt to distinguish the Third Circuit's holding in *Bognet* on the same ground—that plaintiffs in that case simply did a poor job of explaining *how* defendants' failure to follow the law was injuring them—fares no better. Just as in *Lance*, the Third Circuit's dispositive reasoning in *Bognet* did *not* turn on some failure of explanation by the plaintiffs. Rather, the court's reasoning turned on the fact that the plaintiffs' requested "*relief* would have *no more directly benefitted them* than the public at large." *Bognet*, 980 F.3d at 349 (emphasis added); *see also id.* (finding that plaintiffs' alleged harm is merely a right to have government administered in compliance with the Elections Clause, an injury that is "undifferentiated and common to all members of the public," and thus "courts routinely dismiss such cases as 'generalized grievances' that cannot support standing) (quoting *Richardson*, 418 U.S. at 173–175). The same is true of Plaintiffs' identical claim here—that they were injured by the court's approval of a map. If this were a cognizable injury, it would be felt by all Pennsylvania voters. There is nothing particularized about Plaintiffs' claims. *See also DaimlerChrysler Corp. v. Cuno*, 547

6

U.S. 332, 344 (2006) (finding plaintiffs did not have standing where plaintiff "suffers in some indefinite way in common with people generally").

Plaintiffs' appeal to § 2a(c)(5) does not save their Elections Clause claims. The actual injury they allege is inseparable from Defendants' supposed violations of the Elections Clause, and *Lance* forecloses any such claim. But even if that statute could provide the relief Plaintiffs seek, any right under § 2a(c)(5) is again merely a request that the government follow the law as Plaintiffs perceive it, and for all the reasons just described, any purported injury would be shared by all Commonwealth voters and is thus too generalized to confer standing. *See Allen*, 468 U.S. at 754.

Plaintiffs' reliance on cases observing that the right to vote is "personal in nature" does not help their cause. *See* Opp. at 6. As the Supreme Court found in *Lance*, the injuries that Plaintiffs allege are "quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing." 549 U.S. at 442. And as the Third Circuit explained, "it does not follow from the labeling of the right to vote as 'personal' in *Baker* [*v. Carr*, 369 U.S. 186 (1962)] and *Reynolds* [*v. Sims*, 377 U.S. 533 (1964),] that any alleged illegality affecting voting rights rises to the level of an injury in fact." *Bognet*, 980 F.3d at 358. This is because in cases like *Baker* and *Reynolds* "a disadvantage to the plaintiff exist[ed] only" because "the plaintiff [was] part of a group of voters whose votes w[ere] . . . weighed differently compared to another group." *Id.* In contrast, here, every voter in Pennsylvania could

claim to be equally aggrieved by the same injuries that Plaintiffs allege gives them the right to adjudicate their claims. Plaintiffs "lack[] Article III standing because they claim[] harm only to their interest, and that of every citizen, in proper application of the Elections Clause." *Id.* at 349 (citing *Lance*, 437 U.S. at 442). The Court should accordingly dismiss Plaintiffs' Elections Clause claims.

**B.    The candidate Plaintiffs lack standing.**

As noted in the motion to dismiss, the Third Circuit recently dismissed a case in which one of the same Plaintiffs here (Bognet, who was then a candidate for office) made the exact same claims that Bognet and Bashir now make regarding their standing as candidates to pursue this case. Carter Mot. Dismiss at 11-12; *Bognet*, 980 F.3d at 351. Plaintiffs do not dispute this. Nor do they make any attempt to establish how Bognet or Bashir are affected "in a[ny] particularized way when, in fact, all candidates in Pennsylvania, including [their] opponent[s]," are in a similar posture. *Bognet*, 980 F.3d at 351. Plaintiffs' silence is fatal—because neither Bognet nor Bashir can demonstrate how their injuries go beyond "generalized grievances," the Court need go no further. Both lack standing to assert violations of the Elections Clause. *Richardson*, 418 U.S. at 173; *Bognet*, 980 F.3d at 351.

Instead, Bognet and Bashir argue they have standing by contesting the applicability of the self-inflicted harm doctrine. That argument, too, cannot survive scrutiny. Bognet and Bashir contend that their injuries would still have occurred

even if *they* had not participated in this lawsuit, because their *co-plaintiffs* would have brought the same claims that create the uncertainties that they claim befall their campaigns. Opp. at 10. In doing so, Bognet and Bashir concede that the "uncertainty" they claim stems *not* from Defendants' actions but from the filing of *this lawsuit*. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring alleged injury be "fairly traceable" to *defendants'* conduct).

A plaintiffs' own litigation activity is insufficient to confer standing. *See* Carter Mot. Dismiss at 12-14; *Lujan*, 504 U.S. at 564 n.2 (1992) (standing "has been stretched beyond the breaking point when, as here . . . the acts necessary to make the injury happen are *at least partly* within the plaintiff's own control") (emphasis added); *Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("To be sure, a plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury."). No court has ever recognized an exception for cases involving multiple plaintiffs, and for good reason. By that logic, a group of plaintiffs could file a lawsuit to generate Article III standing simply by pointing to one another to pretend such a lawsuit was inevitable. It is well established that plaintiffs cannot "manufacture standing" by filing a lawsuit "in anticipation of non-imminent harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013). It is these six Pennsylvania citizens—and these citizens alone—who call the finality of the 2022 Congressional Map into question with this lawsuit, after months of state

court litigation in which voters, candidates, and legislators of both political parties expressed no "uncertainty" about the state courts' authority to adopt a congressional map. This is a quintessential self-inflicted injury that cannot support standing.

Plaintiffs next contend that Defendants' actions will "hinder their fundraising efforts," claiming that such alleged injuries are a "predictable effect of Government action on the decisions of third parties." Opp. at 9 (citing *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019)). There are at least two fundamental (and fatal) flaws in Plaintiffs' fundraising theory for standing. First, it, too, rests on an allegation that there are "uncertainties" about which map Pennsylvania will use, and points to those uncertainties as hurting their fundraising prospects. *See* SAC Ex. 12, ECF No. 49-12 (alleging there is "lingering uncertainty over the legality and constitutionality of the court-drawn map . . . [which] mak[es] it difficult to raise money from donors to finance [Bashir's] campaign"). But, again, the only uncertainties are those raised by *Plaintiffs* in *this* lawsuit. Pennsylvania has already implemented the map and candidates are gathering signatures in reliance on it. In other words, this purported injury, too, is a self-manufactured harm and thus, for the reasons discussed, it cannot support standing.

But, in addition, Plaintiffs ask the Court to assume—without any credible supporting factual allegations—that candidates Bashir and Bognet are negatively impacted in their ability to raise campaign funds simply because they make that

claim. It is well established that "[a] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 n.55 (3d Cir. 2016) ("*Iqbal* and *Twombly* teach that standing cannot rest on mere 'legal conclusions' or 'naked assertions.'"). Bashir does not even allege that he has experienced these harms to date, despite the alleged "uncertainties" now existing for nearly a month. *See Bognet*, 980 F.3d at 352 (finding that Bognet did not have standing where his alleged injuries were "prediction[s]" and "inherently speculative" at the time the complaint was filed). And Plaintiffs' reliance on *Department of Commerce* is misplaced. *Department of Commerce* in no way contradicts the general rule that courts should be "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 422; *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (holding injuries that "stem[] from an indefinite risk of future harms inflicted by unknown third parties" are insufficient to confer standing) (citing *Lujan*, 504 U.S. at 564). Thus, even if this injury were not self-manufactured and dependent on the "uncertainty" created by Plaintiffs' own lawsuit, it would still be insufficient to support standing.

Finally, Bashir continues to insist that he has a legally cognizable right to the electorate of his choice. Opp. at 10. But courts have consistently held otherwise:

11

elected officials and candidates have "no legally cognizable interest in the composition of the district" they hope to represent, *Corman v. Torres*, 287 F. Supp. 3d 558, 569 (M.D. Pa. 2018), and a legislator (or in this case, a candidate), "suffers no cognizable injury, in a due process sense or otherwise, when the boundaries of his district are adjusted by reapportionment," *City of Phila. v. Klutznick*, 503 F. Supp. 663, 672 (E.D. Pa. 1980); *see Wittman v. Personhuballah*, 578 U.S. 539, 545 (2016) (finding officeholders lacked standing to challenge district lines based on allegations that their districts would be "flooded with Democratic voters," reducing their chances of reelection). Because Bashir has no legally cognizable *interest* in a particular electorate, he cannot demonstrate a legally cognizable *injury* that would confer standing in federal court.

Finally, Justice Stevens's concurrence in *League of United Latin American Citizens v. Perry* ("*LULAC*"), Opp. at 10, does not establish plaintiffs' standing here. Plaintiffs' standing in *LULAC* arose from injuries of vote dilution under Section 2 of the Voting Rights Act, *LULAC*, 548 U.S. 399, 409 (2006), similar to *Reynolds* and *Baker*, as discussed above. Here, Bashir asserts entirely different claims premised on alleged violations of the Elections Clause, and any alleged resulting injury as a candidate is too generalized to confer standing because it is shared with all other candidates in the Commonwealth. *Bognet*, 980 F.3d at 351.

**C.     The county election official Plaintiff lacks standing.**

Plaintiffs' argument that Alan Hall has standing based on his desire to follow the law as he personally understands it relies on outdated case law. *See City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 236 (9th Cir. 1980), *cert denied*, 449 U.S. 1039 (1980) ("[*Board of Education of Central School District No. 1 v.*] *Allen* was followed by . . . [Supreme Court] cases which significantly tightened standing requirements." (citing *O'Shea v. Littleton*, 414 U.S. 488, (1974) and *Sierra Club v. Morton*, 405 U.S. 727 (1972))). Simply alleging that a government official believes he is being forced to administer elections against his personal understanding of the Constitution is no longer sufficient to establish standing under prevailing Supreme Court standing doctrine. *See, e.g.*, *id.* at 237; *Crane v. Johnson*, 783 F.3d 244, 253 (5th Cir. 2015) ("[T]he violation of one's oath alone is an insufficient injury to support standing."); *Lake Tahoe*, 625 F.2d at 236. To hold otherwise would confer on any official the right to challenge virtually any statute the official is charged with implementing or enforcing, on almost any ground.

Hall also claims that he is injured because under the slightly revised election calendar, he has less time to prepare and send overseas military ballots. Opp. at 11. He cites no authority supporting standing based on a government official working on a compressed timeline to fulfill their duties. And he ignores the fact that, if this lawsuit were successful, that would only cause *further delay* in preparing for the

13

primary. *See Lujan*, 504 U.S. at 561 (plaintiff's injury must be "redressed by a favorable decision" to satisfy standing requirements).

### D. Plaintiffs cannot assert the Pennsylvania General Assembly's rights under the Elections Clause.

Plaintiffs do not have standing to bring claims premised on the rights of the General Assembly, and they identify no authority holding otherwise. *See Corman*, 287 F. Supp. 3d at 573 (indicating that Elections Clause claims belong "if they belong to anyone, only to the Pennsylvania General Assembly"). Plaintiffs cannot maintain a federal lawsuit premised on those rights because they have not identified any "'hindrance' to the [General Assembly's] ability to protect [its] own interests." *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). The Court should find, as the *Corman* court did, that claims brought under the Elections Clause "rest solely on the purported usurpation of the Pennsylvania General Assembly's exclusive rights under the [provision]" and such "grievance alone does not carry [plaintiffs] over the standing bar." 287 F. Supp. 3d at 567.

Ignoring the limitations of prudential standing, Plaintiffs assert that they have a personal right, separate from the rights of the Pennsylvania General Assembly, not to be harmed by Defendants' violations of the Elections Clause and § 2a(c)(5). But Plaintiffs again fail to cite to *a single court* that has recognized that a private plaintiff

can maintain a claim under those provisions. *See generally* Opp. at 14-17. Plaintiffs attempt to sidestep this issue by misstating the law, broadly asserting that any "violations of federal statutes" "*may* [be] assert[ed] . . . under 42 U.S.C. § 1983." Opp. at 15. This is incorrect. The U.S. Supreme Court has clearly stated: "Section 1983 speaks in terms of 'rights, privileges, or immunities,' not violations of federal law." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509 (1990). As a result, Plaintiffs must show that § 2a(c)(5) "indisputably confers 'rights' enforceable through 42 U.S.C. § 1983." Opp. at 15. They have not done so. Plaintiffs' citations to various Supreme Court cases, Opp. at 16-17, in no way demonstrates that the Elections Clause or § 2a(c)(5) are cognizable "rights" or "privileges" protected under § 1983. Such an interpretation of § 1983 would expand the scope of that provision to conflict with both the express language of the provision and binding Supreme Court precedent. *See Wilder*, 496 U.S. at 509 (holding Section 1983 does not cover all violations of federal law).

For all of these reasons, Plaintiffs have failed to demonstrate that they have standing, and their Elections Clause claims must be dismissed.

## II. Plaintiffs' request for relief is moot, and Plaintiffs fail to state a claim upon which relief may be granted.

Confronted by the Supreme Court's binding precedent in *Branch* and *Growe*, Plaintiffs now morph their theory of the case in a futile attempt to avoid the

15

controlling authority that forecloses their claims. Plaintiffs now "readily acknowledge that the state judiciary can draw maps." Opp. at 19; *compare id.* at 17 ("[T]he state judiciary is allowed to impose a court-drawn map to enforce the single-member districting requirement of 2 U.S.C. § 2c.") *with* SAC ¶ 60 ("the General Assembly has not delegated *any* of its map-drawing powers to the state judiciary or authorized the state courts to involve themselves in the re-districting process *in any way*") (emphasis added). Plaintiffs instead claim that the Pennsylvania Supreme Court's only misstep was to modify a few administrative elections deadlines in advance of the May primary election. Opp. at 18. Under Plaintiffs' new theory, it became too late for the state court to act the moment it changed *any* election-related deadline, regardless of how minor the change or how far in advance of the elections the change was made. Plaintiffs' revised theory finds no support in *Branch* or any other case law and ignores what the Supreme Court has recognized time and time again: "The power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged." *Growe*, 507 U.S. at 33 (quotations omitted).

Plaintiffs' novel argument hinges on an isolated phrase from the *Branch* plurality about "disrupting the election process." *See* Opp. at 5, 13, 14, 18, 20. In selectively relying on this phrase, Plaintiffs ignore the very limited circumstance in

which a plurality of justices found § 2a(c)(5) would come in to play.[2] Indeed, in the same paragraph Plaintiffs cite, the plurality unequivocally stated that § 2a(c)(5) is "inapplicable *unless* the state legislature, *and* state . . . courts, have all failed to redistrict pursuant to § 2c," *Branch v. Smith*, 538 U.S. 254, 275 (2003) (emphasis in original), and is only "a last-resort remedy" in the narrow circumstance when "on the eve of a congressional election, no constitutional redistricting plan exists and there is no time for either the State's legislature *or the courts* to develop one," *id.* (emphases added). Those narrow circumstances are not present here. Here, there was "time" for the Pennsylvania courts to develop a new congressional map, and they did so while leaving the date of the primary election intact. As a result, this Court need not determine precisely when the "eve of a congressional election" has arrived or the precise contours of "disrupting the election process." A constitutional congressional map is already in place, and elections are proceeding accordingly. Therefore, "§2a(c) cannot be properly applied" because the state "court[] . . . effect[ed] the redistricting mandated by §2c." *Id.* Because the Court cannot "grant the requested relief . . . the case must be dismissed as moot.'" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010).

---

[2] Three other justices found that § 2a(c)(5) had been impliedly repealed and was inapplicable in any scenario. *Branch v. Smith*, 538 U.S. 254, 285 (2003) (Stevens, J., concurring).

Plaintiffs are mistaken that the Pennsylvania Supreme Court could not modify election-related deadlines, especially when, as here, doing so does not "disrupt[] the election process." *Branch*, 538 U.S. at 275. It is long settled that the Elections Clause's reference to the "Legislature" "neither requires nor excludes . . . participation" in the lawmaking process by other organs of state government. *Smiley v. Holm*, 285 U.S. 355, 368 (1932). The Pennsylvania Supreme Court issued minor modifications to certain election deadlines leading up to the May 17 primary, the date set by statute, "[t]o provide for an orderly election process." SAC Ex. 11 at 3, ECF No. 49-11. This order was not only slight and non-disruptive, but essential to crafting a remedy for the underlying violations of state and federal law caused by the political branches' impasse in redistricting—a remedy the U.S. Supreme Court has repeatedly encouraged state courts to formulate. *See, e.g.*, *Growe*, 507 U.S. at 37; *Scott v. Germano*, 381 U.S. 407, 409 (1965). There is no reasonable way to read the Supreme Court's precedent to "specifically encourage[]" state courts to adopt congressional maps when the political branches fail to do so, *Growe*, 507 U.S. at 34, while simultaneously prohibiting state courts from altering any election deadlines to effectuate that remedy. State and federal courts alike modify election deadlines when needed to enforce lawful redistricting plans, and the Supreme Court has specifically authorized judicial alteration of the election schedule in these circumstances. *See, e.g.*, *Upham v. Seamon*, 456 U.S. 37, 44 (1982) ("[W]e leave it to [the District Court]

in the first instance to determine whether to modify its judgment [as to the state's congressional apportionment plan] and reschedule the [congressional] primary elections . . . to allow the election to go forward in accordance with the present schedule."); *Sixty-Seventh Minn. State Senate v. Beens*, 406 U.S. 187, 201 n.11 (1972) ("If time presses too seriously [to implement a remedial reapportionment plan], the District Court has the power appropriately to extend the [election deadline] time limitations imposed by state law."); *see also Larios v. Cox*, 305 F. Supp. 2d 1335, 1343 (N.D. Ga. 2004) (noting court's power to extend election deadlines and ordering new statewide maps be drawn in time for upcoming primary election); *see* Carter Mot. Dismiss at 19. Plaintiffs offer no authority to the contrary.

Plaintiffs make two other meritless arguments. First, Plaintiffs assert for the first time that the 2022 Congressional Map does not adhere to substantive state law requirements for redistricting. Opp. at 20. But the Pennsylvania Supreme Court is the final arbiter of state law to which this federal court must defer. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("State courts are the ultimate expositors of state law."); *Florida v. Powell*, 559 U.S. 50, 56 (2010) ("It is fundamental . . . that state courts be left free and unfettered by us in interpreting their state constitutions." (quotations omitted)). Any argument that Pennsylvania's 2022 Congressional Map violates substantive state law is not only brought in the wrong court, it is foreclosed

by the fact that the Pennsylvania Supreme Court, the ultimate authority on Pennsylvania law, reviewed and adopted the map itself.

Second, Plaintiffs' new throwaway argument that the state must conduct at-large elections because there is a two-person deviation between some congressional districts again ignores Supreme Court precedent. Opp. at 20. Should the Court determine there is a population deviation issue that requires correction, which there is not, the proper remedy would be to make minor adjustments to equalize population, not to throw out the map and force at-large elections. *Abrams v. Johnson*, 521 U.S. 74, 100 (1997) (concluding that, if a map's population deviation were later deemed "unacceptable," the proper remedy would be to "require some very minor changes in the court's plan—a few shiftings of precincts—to even out districts with the greatest deviations").

In sum, none of Plaintiffs' new and scattershot arguments save their Elections Clause claims, which are now moot and, in any event, foreclosed as a matter of law.

## CONCLUSION

For the reasons stated above and in their motion to dismiss, Carter Petitioners respectfully request that the Court grant their Motion to Dismiss Claim 1 and Claim 2 of the Plaintiffs' Second Amended Complaint.

Dated: March 5, 2022

Respectfully submitted,

_/s/ Elizabeth V. Wingfield_
Timothy D. Katsiff (PA 75490)
Elizabeth V. Wingfield (PA 32477)
Edward D. Rogers (PA 69337)*
Marcel S. Pratt (PA 307483)*
Robert J. Clark (PA 308105)*
Michael R. McDonald (PA 326873)**
Paul K. Ort (PA 326044)*
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
KatsiffT@ballardspahr.com
WingfieldE@ballardspahr.com
RogersE@ballardspahr.com
PrattM@ballardspahr.com
ClarkR@ballardspahr.com
McDonaldM@ballardspahr.com
OrtP@ballardspahr.com
T: (215) 665-8500
F: (215) 864-8999

Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
akhanna@elias.law
T: (206) 656-0177

Lalitha D. Madduri**
Jyoti Jasrasaria**
Tina Meng**
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, D.C. 20002
lmadduri@elias.law
jjasrasaria@elias.law
tmeng@elias.law
T: (202) 968-4490

Matthew Gordon**
Perkins Coie LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101
MGordon@perkinscoie.com
T: (206) 359-3552

_Counsel for Carter Petitioners_

_*Motions for Pro Hac Vice Forthcoming_
_**Admitted Pro Hac Vice_

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing contains 4,967 words, based on the word count of the word processing system used to prepare this brief, and thereby complies with the Local Civil Rule 7.8.


DATED: March 5, 2022

*/s/ Elizabeth V. Wingfield*
Elizabeth V. Wingfield