# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM C. TOTH, JR., et al,
*Plaintiffs,*

v.

LEIGH M. CHAPMAN, in her official
capacity as Acting Secretary of the
Commonwealth; JESSICA MATHIS, in
her official capacity as Director for the
Pennsylvania Bureau of Election Services
and Notaries; and TOM WOLF, in his
official capacity as Governor of
Pennsylvania,

*Defendants.*

No. 1:22 Civ. 208 (JPW)

# DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE ELECTIONS CLAUSE CLAIMS IN THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     RESPONSE TO PLAINTIFFS' BACKGROUND SECTION ......................1

III.    PLAINTIFFS LACK STANDING ...............................................................4

    A.      Plaintiffs Lack Standing as Voters .....................................................5

    B.      Plaintiffs Bashir and Bognet Lack Standing .......................................8

    C.      Plaintiff Alan Hall Lacks Standing ...................................................11

    D.      Redressability ....................................................................................12

IV.     PLAINTIFFS HAVE NOT IDENTIFIED A CAUSE OF ACTION ..........13

    A.      Plaintiffs Have No Cause of Action Under the Elections Clause ......13

    B.      Plaintiffs Have No Cause of Action Under 2 U.S.C. § 2a(c)(5) ........15

V.      PLAINTIFFS' CLAIMS FOR RELIEF ARE BARRED BY LACHES
        AND *PURCELL* ...................................................................................16

VI.     CONCLUSION ...........................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arizona State Legis. v. Arizona Indep. Redistricting Commn.*,
  576 U.S. 787 (2015).........................................................................10, 15

*Board of Education v. Allen*,
  392 U.S. 236 (1968)...............................................................................11

*Bowsher v. Synar*,
  478 U.S. 714 (1986)...............................................................................14

*Carter v. Chapman*,
  No. 7 MM 2022, 2022 WL 549106 (Pa. Feb. 23, 2022) .....................8

*City of Philadelphia v. Klutznick*,
  503 F. Supp. 663 (E.D. Pa. 1980).......................................................10

*City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*,
  625 F.2d 231 (9th Cir. 1980) ...............................................................11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)............................................................................8, 9

*Clinton v. City of New York*,
  524 U.S. 417 (1998)...............................................................................14

*Corman v. Torres*,
  287 F. Supp. 3d 558 (M.D. Pa. 2018)..........................................*passim*

*Crane v. Johnson*,
  783 F.3d 244 (5th Cir. 2015) .........................................................11, 12

*Drake v. Obama*,
  664 F.3d 774 (9th Cir. 2011) ...............................................................11

*Georgia Voter All. v. Fulton Cty.*,
  499 F. Supp. 3d 1250 (N.D. Ga. 2020)................................................14

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018)............................................................................7

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)................................................................................15

*Gonzales v. Raich*,
    545 U.S. 1 (2005)..................................................................................14

*Growe v. Emison*,
    507 U.S. 25 (1993)..................................................................................2

*King v. Whitmer*,
    505 F. Supp. 3d 720 (E.D. Mich. 2020), *appeal dismissed*, 20-
    2205, 2021 WL 688804 (6th Cir. Jan. 26, 2021)................................13

*Latin American Citizens v. Perry*,
    548 U.S. 399 (2006)..............................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014)..........................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................8, 9

*Maher Terminals, LLC v. Port Auth.*,
    805 F.3d 98 (3d Cir. 2015) ...................................................................14

*Mellow v. Mitchell*,
    530 Pa. 44 (1992)...............................................................................2, 17

*Mellow v. Mitchell*,
    607 A.2d 204 (Pa. 1992) .......................................................................17

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022)........................................................................19, 20

*Perry v. Del Rio*,
    66 S.W.3d 239 (Tex. 2001).....................................................................2

*Perry v. Perez*,
    565 U.S. 388 (2012).................................................................................2

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006)...........................................................................*passim*

*Raines v. Byrd*,
   521 U.S. 811 (1997)..................................................................................5

*Reynolds v. Sims*,
   377 U.S. 533 (1964)..................................................................................7

*Rucho v. Common Cause*,
   139 S. Ct. 2484 (2019)............................................................................10

*Singleton v. Merrill*,
   --- F. Supp. 3d ----, 2022 WL 265001 (N.D. Ala. Jan. 24, 2022)......................20

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998)..................................................................................14

*Tex. Voters All. v. Dallas County*,
   495 F. Supp. 3d 441 (E.D. Tex. 2020)..........................................................5, 13

*Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of*
   *Pittsburgh*,
   382 F.3d 412 (3d Cir. 2004) .....................................................................15

*Va. House of Delegates v. Bethune-Hill*,
   139 S. Ct. 1945 (2019).............................................................................5, 12

*Vita Nuova, Inc. v. Azar*,
   458 F. Supp. 3d 546 (N.D. Tex. 2020) ..........................................................9

*Wilson v. Eu*,
   54 Cal. 3d 471 (1991) .............................................................................2

**Statutes**

2 U.S.C. § 2a(c)(5)...............................................................................1, 6, 15, 16

2 U.S.C. § 2c.......................................................................................1, 2, 3, 13

42 U.S.C. § 1983..................................................................................15

## I.    INTRODUCTION

In a last-ditch effort to avoid the manifest jurisdictional problems they face, Plaintiffs unsuccessfully attempt to rework the entire theory of their case.  Seven days ago, they asserted that the Supreme Court of Pennsylvania is not authorized "to involve themselves in the redistricting process *in any way*."  Second Am. Compl. ("SAC") ¶ 60 (emphasis added).  Now, facing lawsuit-ending jurisdictional issues, they say the opposite, conceding that "the state courts were doing nothing wrong by … deciding that they would impose a new map if the state legislature failed to redistrict in time for the primary elections."  Opp. 17.  Plaintiffs' new theory is apparently that their Elections Clause claims arose for the first time when the Pennsylvania Supreme made modest changes to the primary election calendar, Opp. 14—even though the state courts never changed the primary election date and for months had given fair warning that calendar modifications were in the cards.

Plaintiffs' about-face does not save their claims under the Elections Clause or 2 U.S.C. § 2a(c)(5).  Just as when Defendants moved to dismiss four days ago, Plaintiffs' claims are not justiciable, they lack a cause of action, and settled principles of equity preclude the injunctive relief sought by Plaintiffs.

## II.    RESPONSE TO PLAINTIFFS' BACKGROUND SECTION

United States Supreme Court precedent directly contradicts both Plaintiffs' old theory and their new one.  *Branch v. Smith* definitively construed 2 U.S.C. § 2c

1

to "require[] States entitled to more than one Representative to elect their Representatives from single-member districts."  538 U.S. 254, 267-68 (2003). Where the legislative process comes up short—as it has here—§ 2c contemplates that the "courts" will "draw single-member districts whenever possible."  *Id.* at 270.

The U.S. Supreme Court has *repeatedly* and *explicitly* sanctioned state courts drawing congressional districts when the legislative process fails to produce one.  As early as 1965, *Scott v. Germano* affirmed "[t]he power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan."  381 U.S. 408, 409 (1965) (citations omitted) (collecting cases).  This unbroken line of precedent continues through *Growe v. Emison*, 507 U.S. 25, 30-31 (1993), *Branch,* 538 U.S. at 272 (2003), and *Perry v. Perez*, 565 U.S. 388, 392 (2012).  State and lower federal courts have repeatedly reached the same conclusion—including in cases where the legislature either failed to produce a map or (as here) proposed one that the governor then vetoed.  *See, e.g.*, *League of Women Voters*, 645 Pa. at 129-34; *Perry v. Del Rio*, 66 S.W.3d 239, 242-43 (Tex. 2001); *Mellow v. Mitchell*, 530 Pa. 44 (1992); *Wilson v. Eu*, 54 Cal. 3d 471, 472 (1991).

Against this backdrop, Plaintiffs' claims, as originally conceived, plainly fail. So, despite having sought emergency relief from this Court and the U.S. Supreme Court on the basis of those claims, Plaintiffs now attempt a wholesale rewriting of their complaint and advance arguments directly contradicting what they previously

2

told this Court. Plaintiffs once claimed that the involvement of the Pennsylvania Supreme Court "in any way" meant that its redistricting plan violated the Elections Clause. Now they say that only the Pennsylvania Supreme Court's decision to modestly adjust several preliminary deadlines relating to candidate paperwork—while not altering the actual election date—has triggered the Elections Clause, reshaped reality, and activated a "last resort" federal remedy which in turn is the font of any injuries Plaintiffs might have to warrant standing. Likewise, they previously failed to mention, much less address, 2 U.S.C. § 2c; now, they concede that that provision provides a sound basis for the judiciary's participation in the redistricting process. Opp. 2.

This reconceptualization, designed to create a non-existent cause of action and avoid the *Purcell* and laches problems Plaintiffs face, gets them no further than their original claims. It is firmly contrary to law and historical practice. With nomination petitions already in circulation, Plaintiffs ask the Court to scrap the entire congressional map created by the Pennsylvania Supreme Court in a case where every entity legitimately involved in the process, including leaders of the General Assembly, recognized its authority to do so. Plaintiffs ask this Court to order the Commonwealth to hold statewide at-large congressional elections for the first time since the 18th century.

Fortunately, this Court need not accept Plaintiffs' distorted reality.  Claims 1 and 2 of the Second Amended Complaint should be dismissed.

## III.   PLAINTIFFS LACK STANDING

Plaintiffs' efforts to coopt and direct the constitutional interests of the General Assembly are inconsistent with the Elections Clause § 2c, and § 2a(c)(5)—and are foreclosed by independent aspects of the Supreme Court's Article III jurisprudence.

Plaintiffs' expansive standing theory is fundamentally inconsistent with the purpose and function of the Elections Clause, as set forth in precedent from this Court and the Third Circuit Court of Appeals (among others).  Because the Clause involves the role and prerogatives of the state legislative process in conducting federal elections, the proper party to assert an injury-in-fact from alleged violations of the Elections Clauses is the state legislature. *See Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018) ("[T]he Elections Clause claims asserted . . . belong, if they belong to anyone, only to the Pennsylvania General Assembly."). In *Bognet v. Secretary Commonwealth of Pennsylvania*, since vacated on procedural grounds, then-Chief Judge Smith offered an especially thorough and persuasive analysis, concluding that "[b]ecause Plaintiffs are not the General Assembly, nor do they bear any conceivable relationship to state lawmaking processes, they lack standing to sue over the alleged usurpation of the General Assembly's rights under the Elections and

Electors Clauses." *See generally* 980 F.3d 336, 350 (3d Cir. 2020), *cert. granted, judgment vacated*, 141 S. Ct. 2508 (2021).

Plaintiffs' reliance on § 2a(c) fails for similar reasons. Under the most generous reading of *Branch*, this provision is at most an emergency tool "provisionally" available to courts and political branches "as a last-resort remedy" to be used on "the eve of a congressional election" if *all* other redistricting efforts have failed. *Branch* at 274-75 (Scalia, J., plurality opinion). Here, however, those efforts succeeded.

Courts exercise caution in allowing members of the public to assert purported legislative injuries and interests. *See*, *e.g.*, *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019); *Raines v. Byrd*, 521 U.S. 811 (1997). The concerns that drive this caution are heightened here, where leaders of the General Assembly expressly recognized the Pennsylvania Supreme Court's power to adopt a map and modify the election schedule. *See* Opening Br. 5.

### A.    <u>Plaintiffs Lack Standing as Voters</u>

Plaintiffs cannot explain away controlling Supreme Court precedent. *Lance v. Coffman* bars the voter claims as "precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Court has] refused to countenance[.]" 549 U.S. 437, 442 (2007).

Despite strenuously asserting that they "assuredly" have a "concrete and particularized" injury-in-fact, Plaintiffs have not articulated any facts supporting a distinct and personal or individual injury-in-fact. As *Bognet* explained, standing requires that "you *personally* … must be injured … in a way that *concretely* impacts *your own* protected legal interests" and if there is "no specific harm to you," there is no standing. 980 F.3d at 348 (emphasis added).

Plaintiffs attempt to cast their injuries as concrete by asserting that they are entitled to vote in at-large elections under § 2a(c)(5). But their effort is fruitless.

*First*, Plaintiffs have no "right to vote in all 17 of the state's congressional races," Opp. 6, and consequently no cognizable injury from its deprivation. Contrary to their contention, and as discussed below, § 2a(c)(5) does not vest any rights to Plaintiffs

*Second,* Plaintiffs have suffered no "specific harm." Purported injuries flowing from single-member district elections are neither individually nor personally borne by Plaintiffs, but are generalized injuries shared by every other Pennsylvania voter. Plaintiffs' citation to a footnote in *Spokeo, Inc. v. Robins* is unavailing. *See* Opp. 7. That a large group of individuals suffer the same injury does not *deprive* them of Article III standing. But it cannot *confer* standing either. "[E]ach individual" must still demonstrate "a particularized harm." 578 U.S. 330, 350 n.7, *as revised* (May 24, 2016).

Plaintiffs argue, seemingly, that any injury pertaining to a person's vote is concrete and particularized because the Supreme Court has "recognized that a person's right to vote is 'individual and personal in nature.'" Pls. Resp., at 6 (citing *Gill v. Whitford,* 138 S. Ct. 1916, 1929 (2018)). But the holdings of the cases they cite demonstrate the weakness of their assertions.[1] In *Gill*, the Supreme Court determined that the voter plaintiffs lacked standing to assert their claim of partisan gerrymandering because they failed to show they had a "personal stake" in the case's outcome. 138 S.Ct. at 1923. While noting that voting is "'individual and personal in nature,'" the *Gill* Court engaged in a probing analysis of each putative Plaintiff's particular injury and found them wanting. *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)).

Their reliance on *Reynolds v. Sims* is similarly misplaced. In *Sims*, voters in Alabama challenged the state's legislative apportionment on Equal Protection grounds. 377 U.S. at 561. In evaluating standing, the Court noted that the right to vote of individuals living in "disfavored" parts of the state was "simply not the same right to vote as that of those living in a favored part of the State." *Id.* The injury in *Reynolds* thus involved actual dilution of specific plaintiffs' votes and demonstrable

---

[1] Plaintiffs also point to *Iowa Voter Alliance v. Black Hawk County*, for the proposition that the right to vote is "sacrosanct" and that burdens on the right to vote are typically cognizable. 515 F. Supp. 3d 980, 990 (N.D. Iowa 2021). But they still need to allege a "concrete" and "particularized" injury. *Id.*

7

discrimination against certain voters. Here, there are no comparable allegations. *See Lance*, 549 U.S. at 442 (the Elections Clause injury alleged was "quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing").

### B. **Plaintiffs Bashir and Bognet Lack Standing**

Plaintiffs Bashir and Bognet have similarly failed to demonstrate standing as congressional candidates.

*First*, Plaintiffs Bashir and Bognet, and this lawsuit, are the cause of the "cloud of legal uncertainty," SAC ¶ 56, surrounding their campaigning. As such, this purported injury is not cognizable. The candidates know what their districts are thanks to the Pennsylvania Supreme Court's Order adopting a congressional districting Plan. *See Carter v. Chapman*, No. 7 MM 2022, 2022 WL 549106, at *1 (Pa. Feb. 23, 2022). Any existing uncertainty has been "manufacture[d] … by … themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). All parties to the state court litigation conceded the Pennsylvania Supreme Court's authority to redraw the maps. Plaintiffs are the only ones challenging that court's actions. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 n.2 (1992) (noting that "imminence" requirement "has been stretched beyond the breaking point when, as

here … the acts necessary to make the injury happen are at least partly within the plaintiff's own control").

Plaintiffs Bashir's and Bognet try to launder their own role in manufacturing their supposed injury by arguing that the other "plaintiffs in this case would have challenged the defendants' actions regardless of whether Bashir and Bognet had sued." Opp. 10. But this theory of standing has no limit. It is counterfactual and speculative—no other plaintiffs *have* sued—and if the Court embraced that argument, such a broad "litigation risk" injury would eviscerate the Supreme Court's requirement that injuries be actual or imminent. *See Lujan,* 504 U.S. at 560, 564.

*Second,* Plaintiffs' guesses that the candidate Plaintiffs will face problems raising money do not give rise to standing. *Clapper* controls here too, and the candidate Plaintiffs have put forth no allegations—nor can there be any—to demonstrate it is "predictable" that donors' contributions will be affected by any alleged legal uncertainty. *Clapper,* 568 U.S. at 413; *see also Vita Nuova, Inc. v. Azar,* 458 F. Supp. 3d 546, 556-57 (N.D. Tex. 2020) ( "inhibition of fundraising efforts" due to uncertainty about the legality of a regulation did not create injury-in-fact, since a plaintiff "may not manufacture standing through the affidavits of potential donors withholding funds when it cannot show a certainly impending future injury").

*Third*, a "legislative representative suffers no cognizable injury, in a due process sense or otherwise, when the boundaries of his district are adjusted by reapportionment." *City of Philadelphia v. Klutznick*, 503 F. Supp. 663, 672 (E.D. Pa. 1980). Drawing directly from the "core principle of republican government … that the voters should choose their representatives, not the other way around." *Arizona State Legis. v. Arizona Indep. Redistricting Commn.*, 576 U.S. 787, 824 (2015) (cleaned up). As the Court in *Corman* observed, "[c]ase law strongly suggests that a legislator has no legally cognizable interest in the composition of the district he or she represents." 287 F. Supp. 3d at 569. While Plaintiffs cite speculation from Justice Stevens in a concurrence about what might be necessary for a candidate to establish standing, Opp. 10 (citing *Latin American Citizens v. Perry*, 548 U.S. 399, 475 (2006) (Stevens, J., concurring)), that opinion is not the law. *See Rucho v. Common Cause*, 139 S. Ct. 2484, 2506-07 (2019). As a matter of law, Plaintiff Bashir lacks any reasonable expectation or entitlement to a particular allocation of voters in his district.

Finally, as discussed above and in Defendants' Opening Brief, *Corman* and *Bognet* provide that the proper party to raise an elections clause challenge is the state legislature itself.

## C.    <u>Plaintiff Alan Hall Lacks Standing</u>

Plaintiffs' arguments in support of Plaintiff Alan Hall's standing are unavailing. Plaintiffs would have this Court adopt an expansive version of oath-breaker standing based upon a footnote from a decision from the 1960s where the issue was not before the Court. *See Board of Education v. Allen*, 392 U.S. 236, 241 n.5 (1968). The dicta in the footnote comprises the entirety of the Court's discussion of the issue, and in light of *Spokeo*'s requirement of particularity and Clapper's requirement that injury must be "certainly impending," it cannot bear the weight Plaintiffs place on it.

Plaintiff Alan Hall has not demonstrated an injury-in-fact. Plaintiffs have asserted nothing more than "abstract outrage" arising from Plaintiff Alan Hall's subjective belief that administering elections in compliance with a decision from the Supreme Court of Pennsylvania violates the Constitution. *City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 237 (9th Cir. 1980), *cert denied*, 449 U.S. 1039 (1980); *see also Crane v. Johnson*, 783 F.3d 244, 253 (5th Cir. 2015) (the "subjective belief that complying with the Directive will require [Plaintiff] to violate his oath is not a cognizable injury."); *Drake v. Obama*, 664 F.3d 774, 780 (9th Cir. 2011); *cf. Bognet*, 980 F.3d at 351.

Plaintiffs attempt to salvage Plaintiff Alan Hall's standing by asserting an injury from his having to fulfill his duties on a faster schedule. Plaintiffs falsely

state that Defendants fail to discuss this purported injury.  Opp. 12.  Not so.  *See*
Defs.' Br. 14.  *First*, it is not an injury-in-fact for a government official to have to
do their job quickly while implementing a valid court order.  As *Corman* noted in a
comparable context, "frustration, even frustration emanating from arduous time
constraints … does not accord the Plaintiffs a right to relief." 287 F. Supp. 3d at 562;
*see also Crane*, 783 F.3d at 253 ("We have not found…any case where a plaintiff
has had standing … because it required the employees to change their practices.").
*Second*, inasmuch as the potential burden of the court order would fall upon the
Susquehanna County Board of Elections institutionally, a single member of that
board does not have standing to assert a claim.  *Cf. Va. House of Delegates*, 139 S.
Ct. at 1953.

### D.    Redressability

Plaintiffs claim that "a favorable decision" from this Court will result in
restoration of the General Primary Calendar modified by the Pennsylvania Supreme
Court.  *See* Opp. 13.  But restoration of the General Primary Calendar is impossible
at this point, as some of the dates, including the date to start circulation nomination
petitions, have already passed.

## IV.  PLAINTIFFS HAVE NOT IDENTIFIED A CAUSE OF ACTION

### A.  <u>Plaintiffs Have No Cause of Action Under the Elections Clause</u>

Plaintiffs have abandoned one of their two Elections Clause claims, as they concede that "[i]t does not violate the Elections Clause for the Pennsylvania judiciary to impose a court-drawn map to prevent a violation of 2 U.S.C. § 2c." Opp. 18; *compare* SAC ¶ 60. As to their second Elections Clause claim, Plaintiffs lack a cause of action.

Defendants are not unique in their view that there is no cause of action under the Elections Clause because such claims "may be asserted only by the state legislative body and not by other individuals." Opp. 14. Defendants are merely reciting the conclusion of a three-judge panel of this Court. *See Corman*, 287 F. Supp. 3d at 573. Case after case has reached the same conclusion, confirming that "no cause of action based solely on the text of the Elections Clause exists for Plaintiffs to plead." *Tex. Voters All. v. Dallas County*, 495 F. Supp. 3d 441, 462 (E.D. Tex. 2020); *accord Bognet*, 980 F.3d at 349–50 (citation omitted, quoting *Corman*, 287 F. Supp. 3d at 573); *King v. Whitmer*, 505 F. Supp. 3d 720, 736 (E.D. Mich. 2020), *appeal dismissed*, 20-2205, 2021 WL 688804 (6th Cir. Jan. 26, 2021) ("The Elections Clause … grants rights to state legislatures and to other entities to which a State may delegate lawmaking authority. Plaintiffs' Elections Clause claims

thus belong, if to anyone, Michigan's state legislature." (citation omitted)); *Georgia Voter All. v. Fulton Cty.*, 499 F. Supp. 3d 1250, 1255 (N.D. Ga. 2020).

Plaintiffs' argument that they have a cause of action under the Elections Clause does not cite, distinguish, or otherwise address this line of cases. Instead, Plaintiffs assert they are bringing a "cause of action in equity" for Defendants' purported violation of the Elections Clause. Opp. 15. But Plaintiffs' reliance on an implied cause of action begs the question of the right underlying that cause of action: "whether a particular plaintiff has [an implied constitutional] cause of action under a given law" turns on a "zone-of-interests requirement." *Maher Terminals, LLC v. Port Auth.*, 805 F.3d 98, 105 (3d Cir. 2015) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014)).[2] The zone-of-interests test asks whether a particular plaintiff "falls within the class of plaintiffs" authorized to sue under a particular law. *Lexmark*, 134 S. Ct. at 1387; *accord Maher*, 805 F.3d at 105 (3d Cir. 2015) (citing *Lexmark*, 134 S. Ct. at 1387, for same proposition). As

---

[2] Plaintiffs' reliance on the Supreme Court's *standing* analysis in *Clinton v. City of New York*, 524 U.S. 417, 434-36 (1998), *Gonzales v. Raich*, 545 U.S. 1 (2005), and *Bowsher v. Synar*, 478 U.S. 714, 721 (1986), is obviously misplaced. Opp. 16-17. First, as described above, Plaintiffs lacks standing under the Elections Clause. But even more fundamentally, as Plaintiffs themselves agree, whether a party has standing to sue and whether it has a cause of action are distinct legal questions. *See* Opp. n.1 (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case.")).

shown above, Plaintiffs have no rights under the Elections Clause and therefore they are not within its zone of interest.  *See*, *e.g.*, *Corman*, 287 F. Supp. 3d at 573.

### B.  Plaintiffs Have No Cause of Action Under 2 U.S.C. § 2a(c)(5)

Plaintiffs make much the same mistake in arguing they have a cause of action under § 2a(c)(5), which, like the Elections Clause, confers no private rights on Plaintiffs.  Plaintiffs point to two possible implied causes of action using § 2a(c)(5): (1) 42 U.S.C. § 1983, and (2) an implied standalone equitable cause of action.  *See* Opp. 15-17.  The viability of both theories depends on "whether the federal statute creates a personal right."  *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 421-22 (3d Cir. 2004); *accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).  Here, it does not.  Section 2a(c)(5) creates no cause of action under either theory because the statute merely provides a remedy without creating *personal* rights.[3]  *See Branch*, 538 U.S. at 275; *accord id.* at 300 (O'Connor, J., concurring in part and dissenting in part); *cf. Arizona State Legis*, 576 U.S. at 811 n.22 ("it was the very purpose of" § 2a(c) "to recognize the legislative authority each

---

[3] Plaintiffs concede that, if § 2a(c)(5) does not vest them with a personal right, they lack a cause of action.  *See* Opp. 15.  Plaintiffs circularly assert that "[a] statute that creates an entitlement to vote for every member of a state's congressional delegation indisputably confers 'rights' enforceable [by plaintiffs]."  *Id.*  But as shown, § 2a(c)(5) confers no such entitlement.  Indeed, it would make no sense for a judicial "last-resort remedy" that is to be avoided whenever possible, *see Branch*, 538 U.S. at 275 (plurality opinion), somehow was intended to confer individual rights.

State has to determine its own redistricting regime"). Accordingly, there is no implied cause of action—whether under § 1983 or in equity—allowing Plaintiffs to sue under § 2a(c)(5).

## V. PLAINTIFFS' CLAIMS FOR RELIEF ARE BARRED BY LACHES AND *PURCELL*

Settled principles of equity preclude injunctive relief where Plaintiffs' delay in seeking it would cause prejudice. These principles apply with special force where Plaintiffs seek to fundamentally alter the conduct of an election in a way certain to sow confusion and disarray. These principles bar all the relief Plaintiffs seek, and thus independently warrant dismissal.

Just as Plaintiffs have long been on notice that the state courts were prepared to adopt a congressional district plan, Plaintiffs have also long been on notice that the courts were considering altering preliminary election deadlines. In its Order dated December 20, 2021, the Commonwealth Court expressly announced *both* that, "[i]f the General Assembly and the Governor fail to enact a congressional reapportionment plan by January 30, 2022, the [Commonwealth] Court will select a plan," *and* that the "*Court will ... consider revisions to the 2022 election schedule/calendar.*" Order ¶¶ 3-4, No. 464 M.D. 2021 (Pa. Commw. Ct. Dec. 20,

16

2021) (emphasis added).[4]  In an Order dated January 14, 2022, the court reiterated that it "will … consider revisions to the 2022 election schedule/calendar as part of the hearing" scheduled for January 27-28, 2022.  Order ¶ 11, https://www.pacourts.us/Storage/media/pdfs/20220120/151928-jan.14,2022-order.pdf.  The General Assembly's legislative leaders expressly agreed, in their public filings, that the state courts had the power to modify the election schedule.  *See* Defs. Br. 4-5.

When the Pennsylvania Supreme Court issued its Order exercising Extraordinary Jurisdiction on February 2, 2022, the Court expressly directed Judge McCullough to submit "a proposed revision to the 2022 election schedule/calendar" as part of her Report and Recommendation.  Order ¶ 4, No. 7 MM 2022 (Pa. Feb. 2, 2022),https://www.pacourts.us/Storage/media/pdfs/20220202/201258-7mm2022-order_granting_petitioner_s_emergency_application_for_extraordinary_relief.pdf. And in that Report and Recommendation, issued on February 5, 2022, Judge McCullough proposed adjusting the dates for the circulation and filing of circulation

---

[4] The court stated that it intended to proceed "consistent with the process established in *Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992)."  Order, No. 464 M.D. 2021 (Pa. Commw. Ct. Dec. 20, 2021), https://www.pacourts.us/Storage/media/pdfs/20211221/163130-dec.20,2021-orderfiled.pdf.  In *Mellow*, the Pennsylvania Supreme Court adopted a congressional district plan after the political branches failed to enact one.  607 A.2d 204.  The Court also ordered a "Revised Election Calendar" that made changes to preliminary deadlines, such as the dates for circulating and filing nomination petitions, so the primary election could proceed as scheduled.  *See id.* at 206, 244-45.

17

petitions in a way similar to what the Pennsylvania Supreme Court ultimately ordered.  *Compare* Report and Recommendation at 221-22, No. 464 M.D. 2021 (Pa. Commw. Ct. Feb. 7, 2022), https://www.pacourts.us/Storage/media/pdfs/20220207/173141-feb.7,2022-specialmaster'sreportfiled.pdf, *with* Order, 7 MM 2022 (Pa. Feb. 23, 2022) ¶ 4, https://www.pacourts.us/Storage/media/pdfs/20220223/162516-7mm2022-orderadopting2022congressionalplan(withmap).pdf.

Despite long-established Pennsylvania precedent—and clear and repeated notices, beginning no later than December 20, 2021, that the courts intended to follow that precedent—Plaintiffs neither intervened in the state-court proceedings nor filed suit.  Instead, they waited until February 11, 2022, to bring this action and until February 20, 2022, to seek injunctive relief.  Had Plaintiffs genuinely been concerned about the propriety of any state-court alteration of preliminary election deadlines, they could and should have intervened or filed a federal-court declaratory judgment action *weeks* earlier.  Indeed, as previously noted, Plaintiffs' delay in asserting their claims appears calculated: Their attempt to invoke § 2a(c)(5)'s "last-resort remedy" would necessarily have failed if they filed suit earlier.  *See Branch*, 538 U.S. at 267-72.  Thus, Plaintiffs' stated goals hinged on a legal ambush of the Pennsylvania election.  Laches does not abide such tactics.

For similar reasons, Plaintiffs' claims are also foreclosed by the *Purcell v. Gonzalez*, 549 U.S. 1 (2006), line of cases.  Unlike laches, *Purcell* does not require a showing of undue delay, but rather prevents federal-court alteration of election rules close to an election, where such changes would likely "lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters."  *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring in grant of applications for stays).  It is difficult to imagine a more sweeping or disruptive election change than forcing Pennsylvania to conduct elect its entire congressional delegation on a statewide at-large basis for the first time since the 18th century—and to do so after the Commonwealth's election administrators and candidates have taken significant steps to proceed in accordance with the Pennsylvania Supreme Court's revised calendar and 17-district map.  Put simply, the relief Plaintiffs seek would invite chaos and confusion.

In response, Plaintiffs argue that *Purcell* "is not an argument for dismissal, but a reason to withhold injunctive *relief* on the even [sic] of an election."  They also contend that Defendants cite no authority applying *Purcell* two months before election day.  Opp. 19.  Plaintiffs are wrong on both counts.

*First*, the *entire* purpose of Plaintiffs' Elections Clause claims is to seek injunctive relief enjoining continued implementation of the Pennsylvania Supreme Court's February 23 Order and forcing Pennsylvania to conduct an at-large election

in May 2022. Because *Purcell* forecloses that relief (and for many other reasons), the Elections Clause claims should be dismissed.

*Second*, the Supreme Court's recent decision in *Merrill* directly supports the application of *Purcell* here. Unlike Plaintiffs here, the *Merrill* plaintiffs, who contended that Alabama's congressional plan violated the Voting Rights Act (VRA), did not delay in filing suit; they "commenced their lawsuits within hours or days of the [plan's] enactment." *Merrill*, 142 S. Ct. at 888 (Kagan, J., dissenting). The District Court preliminarily enjoined use of the plan on January 24, 2022—four months before Alabama's primary election scheduled for May 24, 2022. *See Singleton v. Merrill*, --- F. Supp. 3d ----, 2022 WL 265001, at *1 (N.D. Ala. Jan. 24, 2022). Yet the Supreme Court nonetheless stayed the District Court's Order with respect to the 2022 elections. Justice Kavanaugh explained that, even if the enacted plan did, in fact, violate the VRA, a stay was dictated by *Purcell*. *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring). Plaintiffs here seek an injunctive order many weeks closer in time to the primary election at issue, which is scheduled for May 17, 2022. *Purcell* applies *a fortiori* here.

## VI.  CONCLUSION

For the foregoing reasons, the Elections Clause claims alleged in the Second Amended Complaint should be dismissed.

Dated: March 5, 2022        Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By:   */s/ Robert A Wiygul*      
     Robert A. Wiygul (I.D. No. 310760)
     Cary L. Rice (I.D. No. 325227)
     (admitted pro hac vice)
     John B. Hill (I.D. No. 328340)
     (admitted pro hac vice)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
Fax: (215) 568-0300


KAPLAN HECKER & FINK LLP
Joshua A. Matz
(admitted pro hac vice)
1050 K Street NW, Suite 1040
Washington, DC 20001
Tel: (929) 294-2537

STATES UNITED DEMOCRACY CENTER
Marina Eisner
(admitted pro hac vice)
Christine P. Sun
(admitted pro hac vice)
1101 17th Street, NW
Washington, DC 20036
Tel: (240) 600-1316

PENNSYLVANIA OFFICE OF ATTORNEY
GENERAL
Michael J. Fischer
(Pa. I.D. No. 322311)
(application for admission forthcoming)
Aimee D. Thomson
(Pa. I.D. No. 326328)
(application for admission forthcoming)
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Tel: (215) 560-2171

*Counsel for Defendants*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.8, I certify that this brief contains 4,630 words, and thus complies with the 5,000 word limitation.

/s/ *Robert A. Wiygul*
Robert A. Wiygul

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of March, 2022, a true and correct copy

of the foregoing Reply Brief in Further Support of their Motion to Dismiss the

Elections Clause Claims in the Second Amended Complaint Pursuant to Federal

Rule of Civil Procedure 12(b)(1) was served upon all counsel of record via the

Court's CM/ECF electronic filing system.

/s/ *Robert A. Wiygul*
Robert A. Wiygul