# Exhibit C

Received 12/29/2021 3:50:09 PM Commonwealth Court of Pennsylvania

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

## No. 464 M.D. 2021

Carol Ann Carter; Monica Parrilla; Rebecca Poyourow; William Tung; Roseanne Milazzo; Burt Siegel; Susan Cassanelli; Lee Cassanelli; Lynn Wachman; Michael Guttman; Maya Fonkeu; Brady Hill; Mary Ellen Bachunis; Tom DeWall; Stephanie McNulty; and Janet Temin,

Petitioners,

vs.

Veronica Degraffenreid, in Her Capacity as Acting Secretary of the Commonwealth of Pennsylvania; and Jessica Mathis, in Her Capacity as Director of the Bureau of Election Services and Notaries,

Respondents.

## No. 465 M.D. 2021

Philip T. Gressman; Ron Y. Donagi; Kristopher R. Tapp; Pamela A. Gorkin; David P. Marsh; James L. Rosenberger; Amy Myers; Eugene Boman; Gary Gordon; Liz McMahon; Timothy G. Feeman; and Garth Isaak

Petitioners,

vs.

Veronica Degraffenreid, in Her Capacity as Acting Secretary of the Commonwealth of Pennsylvania; and Jessica Mathis, in Her Capacity as Director of the Bureau of Election Services and Notaries,

Respondents.

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR
LEAVE TO INTERVENE BY BRYAN CUTLER, SPEAKER OF THE
PENNSYLVANIA HOUSE OF REPRESENTATIVES; KERRY
BENNINGHOFF, MAJORITY LEADER OF THE PENNSYLVANIA
HOUSE OF REPRESENTATIVES; JAKE CORMAN, PRESIDENT PRO
TEMPORE OF THE PENNSYLVANIA SENATE; AND KIM WARD,
MAJORITY LEADER OF THE PENNSYLVANIA SENATE**

**K&L GATES LLP**
Anthony R. Holtzman (PA No. 200053)
17 North Second St., 18th Floor
Harrisburg, PA 17101-1507
(717) 231-4570 / Fax (717) 231-4501
Anthony.Holtzman@klgates.com

*Counsel for Proposed-Intervenors Jake
Corman, President Pro Tempore of the
Pennsylvania Senate, and Kim Ward,
Majority Leader of the Pennsylvania
Senate*

**BAKER & HOSTETLER, LLP**
Jeffry Duffy (PA No. 081670)
BNY Mellon Center
1735 Market Street, Suite 3300
Philadelphia, PA 19103
(215) 568-3100 / Fax (215) 568-3439
jduffy@bakerlaw.com

Patrick T. Lewis (OH No. 0078314)*
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200 / Fax (216) 696-0740
plewis@bakerlaw.com

Robert J. Tucker (OH No. 0082205)*
200 Civic Center Drive, Suite 1200
Columbus, OH  43215
(614) 462-2680 / Fax (614) 462-2616
rtucker@bakerlaw.com

*\* Pro Hac Vice application forthcoming*

*Counsel for Proposed-Intervenors Bryan
Cutler, Speaker of the Pennsylvania
House of Representatives, and Kerry
Benninghoff, Majority Leader of the
Pennsylvania House of Representatives*

Bryan Cutler, Speaker of the Pennsylvania House of Representatives ("Speaker Cutler"); Kerry Benninghoff, Majority Leader of the Pennsylvania House of Representatives ("Leader Benninghoff" and, together with Speaker Cutler, the "House Leaders"); Jake Corman, President *Pro Tempore* of the Pennsylvania Senate ("President Corman"); Kim Ward, Majority Leader of the Pennsylvania Senate ("Leader Ward" and, together with President Corman, the "Senate Leaders," and, together with the House Leaders, the "Proposed Intervenors") hereby file this Memorandum of Law supporting their Application for Leave to Intervene in the above-captioned matters ("Application"), matters that were filed by Carol Ann Carter, *et al*. ("Carter Petitioners") and Philip T. Gressman, *et al*. ("Gressman Petitioners") (collectively, "Petitioners").

The Proposed Intervenors satisfy the requirements for intervention under Pa.R.Civ.P. 2327 and, as members of the Pennsylvania General Assembly (the "General Assembly") and leaders of the General Assembly as an institution, seek to protect their exclusive authority under Article I, Section 4 of the United States Constitution to prescribe the "Times, Places, and Manner" of congressional elections, and under the Pennsylvania Constitution to legislate and appropriate for elections in Pennsylvania. Petitioners' requested relief would usurp this exclusive authority. Previously, in a nearly identical lawsuit that the Carter Petitioners filed in April 2021, in which they sought the same relief that they are seeking here,

Proposed Intervenors were granted leave to intervene, after which this Court dismissed the suit. As this Court stated in authorizing the intervention, "it seems clear that Legislators' ability to legislate would be impaired if the Court imposes a deadline on the General Assembly and the Governor to put in place a new congressional district map and takes control of the redistricting process." *Carter v. Degraffenreid*, No. 132 M.D. 2021 (Slip. Op. Sept. 2, 2021) at pg. 12 (copy attached as Appendix 1). The same point holds true now, and Proposed Intervenors should be permitted to intervene in both of these actions.

In support of their Application, the Proposed Intervenors respectfully state as follows:

## I.   BACKGROUND

1.   The United States and Pennsylvania Constitutions vest the General Assembly with the authority to redistrict this Commonwealth's congressional districts. Specifically, Article I, Section 4 of the United States Constitution (the "Elections Clause") provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof...." Pursuant to the Elections Clause, as a matter of federal law, "redistricting is a legislative function, to be performed in accordance with the State's prescriptions for lawmaking." *Arizona State Legislature v. Arizona Indep.*

*Redistricting Comm'n*, 576 U.S. 787, 808 (2015). The Commonwealth's legislative power is vested in the General Assembly. PA. CONST. ART. II, § 1.

2.     Congressional districting plans are legislative enactments of the General Assembly, passed like any other legislation. The Pennsylvania Supreme Court has confirmed that the "primary responsibility and authority for drawing federal congressional legislative districts rests squarely with the state legislature." *League of Women Voters of Pa. v. Commonwealth*, 178 A.3d 737, 821–22 (Pa. 2018), citing *Butcher v. Bloom*, 216 A.2d 457, 458 (Pa. 1966) (identifying the General Assembly as "the organ of government with the primary responsibility for the task of apportionment") and *Growe v. Emison*, 507 U.S. 25, 34 (1993) ("the Constitution leaves with the States primary responsibility for apportionment of their federal congressional and state legislative districts").

3.     By statute, the Secretary of Commerce, on behalf of the United States Census Bureau, must deliver to the President of the United States the apportionment figures from the decennial census by December 31 of the year in which the Census is taken, and must deliver redistricting data (known as P.L. 94-171 data)[1] to the states by April 1 of the year after the year in which the Census is taken. 13 U.S.C. § 141.

---

[1] The redistricting data consists of population counts for every census block in each state as of the decennial census date (here, April 1, 2020). Apportionment numbers are simply statewide population counts and, unlike the granular redistricting data, offer no insight about how the population is distributed within the state.

3

Apportionment data is used to allocate U.S. House of Representatives seats to the states, and redistricting data is used by state legislatures or other state redistricting authorities to draw representational districts.

4.     This year's Census results, however, were significantly delayed. The apportionment results were delivered on April 26, 2021, but the Census Bureau did not deliver the P.L. 94-171 data until August 12, 2021.[2]

5.     Unlike with some other states, there is no express deadline set forth in Pennsylvania's Constitution or statutes by which the Commonwealth must enact a new congressional district plan following the publication of a new census. *Carter*, 132 M.D. 2021, at pg. 12.

6.     There is indeed still time for the General Assembly and Governor to reach an agreement on a congressional redistricting plan.   Candidates for congressional seats cannot begin collecting the signatures that they need in order to be placed on the ballot until February 15, 2022 – over 45 days from now.  And, in the past, those nominating petition deadlines have been moved for Congressional elections, and therefore could still be moved in this election cycle. *See, e.g., Mellow v. Mitchell*, 607 A.2d 204, 237 & 244 (Pa. 1992) (adopting the "Revised Election Calendar attached to this Order as Appendix B," which moved the first day to

---

[2]   *See*   https://www.census.gov/data/datasets/2020/dec/2020-census-redistricting-summary-file-dataset.html (last accessed December 22, 2021).

circulate and file nominating petitions from January 28 to March 10). Regardless, Proposed Intervenors certainly have an interest in any litigation that seeks to usurp their authority, especially when there is still time for the legislature to act, and even if, as Petitioners believe, the enactment of a redistricting plan is unlikely.

7.    In *Mellow v. Mitchell*, the last case that involved an impasse like the one that Petitioners claim is certain to materialize here, the action was not filed until the first day when nominating petitions could be circulated. 607 A.2d at 205. Here, Petitioners' actions were filed over a month before the first day when nominating petitions can be circulated.

8.    Speaker Cutler is a duly elected, qualified, and serving Member of the House of Representatives from the 100th House District, and is also the duly elected Speaker of the House of Representatives and in such capacity is the presiding officer of that body.

9.    Leader Benninghoff is a duly elected, qualified, and serving Member of the House of Representatives from the 171st House District, and is also the duly elected Majority Leader of the House of Representatives and, in such capacity, leads the Republican Caucus of the House of Representatives (the "House Republican Caucus"). The House Republican Caucus consists of 113 out of 203 Members of the House.

10.     President Corman is a duly elected, qualified, and serving Member of the Senate from the 34th Senatorial District, and is also the duly elected President *Pro Tempore* of the Senate. In such capacity, he is the highest-ranking officer of the Senate and presides over that body in the absence of the Lieutenant Governor. *See* Pa. Const. art. II, § 9.

11.     Leader Ward is a duly elected, qualified, and serving Member of the Senate from the 39th Senatorial District, and is also the duly elected Majority Leader of the Senate and, in such capacity, leads the Republican Caucus of the Senate (the "Senate Republican Caucus"). The Senate Republican Caucus consists of 29 out of 48 Members of the Senate: 28 Republican Senators and 1 independent Senator who caucuses with the Republicans.

12.     Attached to the Application as **Exhibits A** and **B**, respectively, are the Proposed Intervenors' proposed Answers to the Petitions for Review.

## II.     THE PROPOSED INTERVENORS HAVE A RIGHT TO INTERVENE

13.     Under Pennsylvania law, a person has an absolute right to intervene in an action if he falls within one of the categories enumerated in Pa.R.Civ.P. 2327. *See id.*; Pa.R.Civ.P. 2329; *see also Larock v. Sugarloaf Twp. Zoning Hearing Bd.*, 740 A.2d 308, 313 (Pa. Cmwlth. 1999).

14.     The grant of intervention is mandatory where the intervenor meets any one of the four criteria set forth in Pa.R.Civ.P. 2327. *Larock*, 740 A.2d at 313 ("if

6

the petitioner is a person within one of the classes described in Rule 2327, the allowance of intervention is mandatory, not discretionary . . .") (internal citations omitted).

15.    Here, two independent bases exist to support the Proposed Intervenors' right to intervene. First, Pa.R.Civ.P. 2327(3) provides that a person must be permitted to intervene if he "could have joined as an original party in the action or could have been joined therein." *Id.* Second, Pa.R.Civ.P. 2327(4) provides that a person must be permitted to intervene if "the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." *Id.*

16.    Pennsylvania courts have established "that the inquiry to determine whether a party has standing to initiate litigation is different than the inquiry to determine whether a party can intervene in existing litigation." *Sunoco Pipeline L.P. v. Dinniman*, 217 A.3d 1283, 1288 (Pa. Cmwlth. 2019). Indeed, "[s]tanding to file a formal complaint requires the moving party to have a direct, immediate, and substantial interest in the subject matter of the controversy. . . Conversely, a person seeking to intervene in a proceeding need have only an 'interest of such nature that participation . . . may be in the public interest.'" *Id.* at 1288-1289 (citation omitted).

17.    Moreover, the Proposed Intervenors are the presiding officers of both Houses of the General Assembly and seek to intervene to protect the official,

individual, and/or institutional interests described in this memorandum. As this Court held just last year, "there is a difference between personal standing and legislative standing," and a legislator "may be able to initiate litigation in his legislative capacity, where the legislator can demonstrate an injury to his ability 'to act as a legislator.'" *Allegheny Reprod. Health Ctr. v. Pennsylvania Dep't of Human Servs.*, 225 A.3d 902, 909 (Pa. Cmwlth. 2020). These principles of legislative standing are relevant to whether a legally enforceable interest exists. *Id.* at 902.

18.    This Court again recognized and re-affirmed these principles when it granted Proposed Intervenors' request to intervene in the first lawsuit filed by the Carter Petitioners. *Carter*, 132 M.D. 2021, at pgs. 10-11.

19.    Because the Proposed Intervenors have legally enforceable interests at play and could have been original parties to this case, they must be permitted to intervene as of right under both Pa.R.Civ.P. 2327 (3) and (4).

A.    **Determination of This Action Will Affect the Proposed Intervenors' Enforceable Interest in Vindicating and Protecting Their Exclusive Interest and Right to Legislate Redistricting and Election Laws, which Petitioners Seek to Divest.**

20.    The Proposed Intervenors unquestionably have an enforceable interest in defending the constitutional authority of Pennsylvania's legislative actors to prescribe the "Times, Places, and Manner of holding elections for Senators and Representatives," U.S. CONST. ART. I, § 4, which includes the authority to enact congressional districting plans. *League of Women Voters*, 178 A.3d at 821–22. This

action seeks to dilute, abrogate, impair, or abolish that constitutional prerogative. Petitioners ask the Court to take control over the congressional redistricting process and impose unreasonable, restrictive deadlines on Proposed Intervenors' constitutional prerogative.

21.     This enforceable interest satisfies Pa.R.Civ.P. 2327 and, accordingly, Proposed Intervenors have the right to intervene. Pennsylvania law affirms the exclusive authority of Pennsylvania's legislators to engage in congressional redistricting, and that authority lies at the heart of this case.

22.     The Proposed Intervenors have an enforceable interest warranting intervention, and can "initiate litigation in [their] legislative capacity, where the legislator can demonstrate an injury to his ability 'to act as a legislator.'" *Allegheny Reprod. Health Ctr.*, 225 A.3d at 909 (citing *Sunoco Pipeline L.P.*, 217 A.3d at 1288).

23.     In *Fumo v. City of Philadelphia*, the Pennsylvania Supreme Court determined that a city's issuance of a license for the construction of a casino on a Pennsylvania river invaded the General Assembly's exclusive authority to regulate submerged lands. 972 A.2d 487, 501–03 (Pa. 2009). In relevant part, the *Fumo* court held that six state legislators had legislative standing to "seek redress for an alleged usurpation of their authority as members of the General Assembly," to "vindicate a power that only the General Assembly has," and to "ask that this Court uphold their

9

right as legislators to cast a vote or otherwise make a decision on licensing the use of the Commonwealth's submerged lands." *Id.* at 502.

24.     The Proposed Intervenors' Application presents a stronger case for intervention. Regulating the times, places, and manner of congressional elections in Pennsylvania—a task that includes redistricting legislation—is an exclusively legislative function, not only under Pennsylvania law, but also under the U.S. Constitution. *See, e.g.,* U.S. CONST. ART. I, § 4; PA. CONST. ART. II, § 1; *League of Women Voters*, 178 A.3d at 821–22; *Butcher*, 216 A.2d at 458; *Arizona State Legislature*, 576 U.S. at 808*; Growe*, 507 U.S. at 34.

25.     The power to redistrict is part of the General Assembly's overall power to regulate elections. More than a century ago, the Pennsylvania Supreme Court acknowledged that "[t]he power to regulate elections is a legislative one, and has been exercised by the general assembly since the foundation of the government." *Winston v. Moore*, 91 A. 520, 522 (Pa. 1914) (citing *Patterson v. Barlow*, 60 Pa. 54, 75 (1869)). The primacy of the General Assembly in the area of elections is manifest. *See In re Guzzardi*, 99 A.3d 381, 386 (Pa. 2014) ("[s]ubject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania"). For that reason, "the judiciary should act with restraint, in the election arena, subordinate to express statutory directives." *Id.*

26.    Here, as in their last lawsuit, the Carter Petitioners seek, in pertinent part, a declaratory judgment that the Commonwealth's current congressional district plan is unconstitutional, an injunction prohibiting Respondents from "implementing, enforcing, or giving any effect to" that plan, and this Court's "[a]dopt[ion] [of] a new congressional district plan that complies with Article I, Section 5 of the Pennsylvanian Constitution; Article I, Section 2 of the U.S. Constitution; and 2 U.S.C. § 2." Carter Pet. at 18-19 (Prayer for Relief).

27.    Similarly, the Gressman Petitioners seek a declaration that Pennsylvania's current congressional districts are unconstitutional and an order enjoining Respondents from "implementing, enforcing, or giving any effect to Pennsylvania's current congressional district plan in any future election." Gressman Pet. at 14 (Prayer for Relief). The Gressman Petitioners also seek "implementation of a new congressional district map with the correct number of congressional districts that adheres to the one-person, one-vote standard and all other applicable constitutional and legal requirements." Gressman Pet. ¶ 1. Both sets of Petitioners, in addition, have already asked the Pennsylvania Supreme Court to take extraordinary jurisdiction of these matters and set an expedited schedule, culminating in the court's adoption of a new congressional district map.

28.    These requests directly seek to divest the Proposed Intervenors' exclusive authority to determine the times, places, and manner of holding

congressional elections under U.S. Const. Art. I, § 4, and to transfer that authority to the Judiciary.

29.     As this Court expressly recognized in the Carter Petitioners' prior suit, "it seems clear that Legislators' ability to legislate would be impaired if the Court imposed a deadline on the General Assembly and the Governor to put in place a new congressional district map and takes control of the redistricting process." *Carter*, 132 M.D. 2021, at pg. 12.  But here, once again, Petitioners are asking the Court to take precisely those actions.

30.     In addition, in the Carter Petitioners' prior suit, this Court recognized that "Legislators would have a legally enforceable interest in the submission of a proposed plan for the Court's consideration if called upon to draw a new congressional map, as in the *Mellow* case." *Carter*, 132 M.D. 2021, at pg. 12. Nothing about that interest has changed in the last three months.

31.     Thus, as previously recognized by this Court, determination of this action necessarily and directly affects the Proposed Intervenors' legally enforceable interests, giving them a right to intervene. *Fumo*, 972 A.2d at 502 ("the claim reflects the state legislators' interest in maintaining the effectiveness of their legislative authority and their vote, and for this reason, falls within the realm of the type of claim that legislators, qua legislators, have standing to pursue.").

**B.**   **The Proposed Intervenors Could Have Joined as an Original Party in the Action or Could Have Been Joined Herein.**

32.   Pennsylvania courts recognize that parties with special interests implicated by an action could have been joined as original parties. *See, e.g., Appeal of Denny Bldg. Corp.*, 127 A.2d 724, 729 (1956) (finding intervention appropriate when parties "have an obvious special interest apart from that of the general public which would certainly have justified their joining as original parties in the action"); *Harrington v. Philadelphia City Emps. Fed. Credit Union*, 364 A.2d 435, 441 (Pa. Super. 1976) (recognizing that candidates "could have been an original party or could have been joined in the action . . . [because they] had interests which would be drastically affected by the outcome of the equity action").

33.   Further, 42 Pa.C.S. § 7540(a) provides that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

34.   The Proposed Intervenors, as the parties to whom the constitutional authority to redistrict has been assigned, have a special interest in these actions. The actions seek to divest—or, at a minimum, significantly impair—the Proposed Intervenors' authority to conduct congressional redistricting for the Commonwealth for the 2022 elections and beyond.

13

35.     Moreover, the Proposed Intervenors could have joined as original parties in these actions. In fact, it is not uncommon for the presiding officers of the House and Senate—like Speaker Cutler and President Corman—to be named as original parties in cases challenging the constitutionality of, and seeking to alter, redistricting plans enacted by the General Assembly. For example, in both *League of Women Voters* and *Erfer,* the then-presiding officers of the General Assembly were named as original parties, including former Speaker Mike Turzai and former President *Pro Tempore* Joseph Scarnati III in *League of Women Voters*, and former Speaker Matthew Ryan and then-Lieutenant Governor and President of the Senate Robert Jubelirer in *Erfer*. Further, in *Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992), an action brought to seek judicial intervention to draft a congressional districting plan when the General Assembly and Governor reached an impasse and failed to pass such a plan, the petitioners were eight Members of the Senate, who were therefore original parties. *Id.* at 205; *see also Carter*, 132 M.D. 2021, at pg. 12 (finding that "in *Mellow* were eight senators who sought nearly the same relief as sought here, and several members of the state House of Representatives and Senate were permitted to intervene").[3]

---

[3] Notably, *Mellow* was not filed until January 28, 1992, which was the first day on which nominating petitions for the U.S. House could begin circulating that year. 607 A.2d at 205.

36.     The Proposed Intervenors could have joined as original parties in these

actions, and, as these cases show, the General Assembly's presiding officers are

typically joined in these types of cases. The instant actions seek declaratory

judgments and injunctive relief that would impose improper restraints upon, and

usurp, the exclusive domain of the General Assembly. If granted, the requested relief

would directly impact the Proposed Intervenors' authority and interest as legislators

and the official, institutional, and other interests that they are further authorized to

represent. Therefore, the Proposed Intervenors are entitled to intervene here as a

matter of right.

### C.     There Is No Other Reason for the Court to Deny the Application.

37.     The Proposed Intervenors have shown an entitlement to intervene in

these cases. Given this showing, Pa.R.Civ.P. 2329 provides only three reasons that

could justify a refusal of intervention. None of them applies.

38.     First, Pa.R.Civ.P. 2329(1) permits refusal of intervention if "the claim

or defense of the petitioner is in subordination to and in recognition of the propriety

of the action," which has been interpreted to mean that an "intervenor cannot

question supported findings of fact made prior to the intervention" and that "an

intervenor must take the suit as he finds it." *Com. ex rel. Chidsey v. Keystone Mut.*

*Cas. Co.*, 76 A.2d 867, 870 (Pa. 1950). There are no subordination concerns here,

given the early stage of this litigation.

39.     Second, Pa.R.Civ.P. 2329(2) permits a court to refuse an application for intervention if "the interest of the petitioner is already adequately represented." Here, Proposed Intervenors seek to vindicate rights and interests held by themselves and their members in their capacity as legislators. Their interests are not already adequately represented by the originally named Respondents in these cases, as those Respondents are simply responsible for election administration and do not possess the interest in drafting and passing congressional districting plans that Petitioners seek to impair or abrogate. *See Shapp*, 391 A.2d at 608 (holding that "[s]urely, the defense of legislation adopted by the General Assembly must be within the authority of its elected leaders"). After all, "an executive branch agency is simply not in a position to represent Proposed Intervenors' interest in the exercise of legislative power under Article III of the Pennsylvania Constitution." *Allegheny Reprod. Health Ctr.*, 225 A.3d at 913. Petitioners practically concede this point in alleging repeatedly that the divided Commonwealth government—where the legislative chambers are controlled by Republicans and the Governor is a Democrat—is categorically incapable of compromise. Petitioners cannot, after making this allegation, claim that the Democratic Secretary of State or the Director of Elections represents Proposed Intervenors' interests.

40.     Finally, Pa.R.Civ.P. 2329(3) permits a refusal of intervention where "the petitioner has unduly delayed in making application for intervention or the

intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties." No such concern exists here. The Proposed Intervenors filed their Application just ten days after the filing of the Petition and well before this Court's scheduled deadline of December 31 to intervene. The Proposed Intervenors' participation in this case will simplify this action and is necessary, as they will bring before the Court arguments and law that otherwise would not be present.

41.    In summary, there is no basis for refusing the Proposed Intervenors' request to intervene in these matters.

**WHEREFORE**, for the foregoing reasons, the Proposed Intervenors respectfully request that the Court grant their Application for Leave to Intervene and enter the proposed order attached to it as **Exhibit "C,"** thereby granting the Application.

Dated: December 27, 2021

/s/ Anthony R. Holtzman
**K&L GATES LLP**
Anthony R. Holtzman (PA No. 200053)
17 North Second St., 18th Floor
Harrisburg, PA 17101-1507
(717) 231-4570 / Fax (717) 231-4501
Anthony.Holtzman@klgates.com

*Counsel for Proposed-Intervenors Jake Corman, President Pro Tempore of the Pennsylvania Senate, and Kim Ward, Majority Leader of the Pennsylvania Senate*

Respectfully submitted,

/s/ Jeffry Duffy
**BAKER & HOSTETLER, LLP**
Jeffry Duffy (PA No. 081670)
BNY Mellon Center
1735 Market Street, Suite 3300
Philadelphia, PA 19103
(215) 568-3100 / Fax (215) 568-3439
jduffy@bakerlaw.com

Patrick T. Lewis (OH No. 0078314)*
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200 / Fax (216) 696-0740
plewis@bakerlaw.com

Robert J. Tucker (OH No. 0082205)*
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
(614) 462-2680 / Fax (614) 462-2616
rtucker@bakerlaw.com

* *Pro Hac Vice application forthcoming*

*Counsel for Proposed-Intervenors Bryan Cutler, Speaker of the Pennsylvania House of Representatives, and Kerry Benninghoff, Majority Leader of the Pennsylvania House of Representatives*

## CERTIFICATION OF COMPLIANCE

I hereby certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

/s/ Anthony R. Holtzman
Anthony R. Holtzman

# Appendix 1

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Ann Carter; Monica Parrilla;   :
Rebecca Poyourow; William Tung;   :
Roseanne Milazzo; Burt Siegel;   :
Susan Cassanelli; Lee Cassanelli;   :
Lynn Wachman; Michael Guttman;   :
Maya Fonkeu; Brady Hill; Mary Ellen   :
Balchunis; Tom DeWall; Stephanie   :
McNulty; and Janet Temin,   :
   :
      Petitioners   :
   :
   :
     v.   :   No. 132 M.D. 2021
   :   Held: August 24, 2021
Veronica Degraffenreid, in her official   :
capacity as the Acting Secretary of   :
the Commonwealth of Pennsylvania;   :
Jessica Mathis, in her official   :
capacity as Director for the   :
Pennsylvania Bureau of Election   :
Services and Notaries,   :
   :
      Respondents   :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK          Filed: September 2, 2021

      Petitioners[1] filed a petition for review (Petition) addressed to this Court's original jurisdiction. The Petition seeks, among other things, a declaration

---

[1] Petitioners are Carol Ann Carter, Monica Parrilla, Rebecca Poyourow, William Tung, Roseanne Milazzo, Burt Siegel, Susan Cassanelli, Lee Cassanelli, Lynn Wachman, Michael

that the Commonwealth of Pennsylvania's 2018 congressional district map is unconstitutional and may not be used for the 2022 election year. Currently, the Court considers three applications for leave to intervene. Speaker of the Pennsylvania House of Representatives Bryan Cutler; Majority Leader of the Pennsylvania House of Representatives Kerry Benninghoff; President Pro Tempore of the Pennsylvania Senate Jake Corman; and Majority Leader of the Pennsylvania Senate Kim Ward (collectively, Legislators) filed the first application for leave to intervene. The Republican Party of Pennsylvania and Individual Republican Voters[2] (collectively, Republican Party) filed the second application for leave to intervene, and Voters of the Commonwealth of Pennsylvania (Voters of Commonwealth)[3] filed the third

---

Guttman, Maya Fonkeu; Brady Hill; Mary Ellen Balchunis, Tom DeWall, Stephanie McNulty, and Janet Temin. Each named petitioner is a United States citizen and registered voter in Pennsylvania and intends to advocate and vote for Democratic candidates. *Id.*

[2] The application for leave to intervene identifies the following individuals as proposed intervenors: Patricia K. Poprik, David Torres, Billy Lanzilotti, Nancy Becker, Michael D. Straw, James Depp, Joseph P. Vichot, Justin Behrens, Thomas Whitehead, Lee Becker, Louis Capozzi, Kirk Radanovic, Paul Nyman, James McGuire, Jr., Kristine L. Eng, Donna Cosmello, James Foreman, David Ball, James Vasilko, Lynne Ryan, Cynthia Kirk, Daryl Metcalfe, Luke Negron, Sue Ann Means, Reverend Todd Johnson, Michael Harvey, and Louisa Gaughen. *See* Appl. for Leave to Intervene by Proposed Intervenors the Republican Party of Pennsylvania and Individual Republican Voters, ¶¶ 2-28. The application provides each proposed intervenor's congressional district number; any position within the Republican Party that he or she may hold or has held in the past; where applicable, an indication of whether the individual is considering running for public office; and the individual's participation in the election process whether it be volunteering/advocating for a Republican candidate or intent to vote for Republican candidates.

[3] "Voters of the Commonwealth of Pennsylvania" is not an organization but rather is used to generally refer to the named proposed intervenors in the application. The application is brought on behalf of Haroon Bashir, Vallerie Biancaniello, Debra A. Biro, Tegwyn Hughes, James D. Bee, Richard L. Lawson, David Dillon, Rico Timothy Elmore, Barbara Steinour, James Curtis Jarrett, Jeffrey Wenk, and Donald Beishl, Jr. *See* Appl. for Leave to Intervene by Voters of the Commonwealth of Pennsylvania, ¶¶ 10-21. The application identifies the voter by name, general area of residency and congressional district number, as well as the individual's intention in voting in the 2022 elections. *Id.* Each allegation also indicates that the proposed intervenor voted for his/her General Assembly representatives with the expectation that the representatives would have the authority to enact a new congressional district map based on the 2020 Census data.

application. All proposed intervenors seek to be aligned with Respondents Veronica Degraffenreid, Acting Secretary of the Commonwealth of Pennsylvania, and Jessica Mathis, Director for the Pennsylvania Bureau of Election Services and Notaries (collectively, Secretary). Petitioners oppose all three applications, while the Secretary opposes only the applications of the Republican Party and Voters of Commonwealth. After hearing held August 24, 2021 and argument on the issue, we grant Legislators' application but deny the applications of the Republican Party and Voters of Commonwealth based on our conclusion that they lack a legally enforceable interest in the Petition and that they could not be named as original parties to the action.

## I. Petition for Review

The Petition provides details regarding the results of the 2020 Census, the dates by which the United States (U.S.) Secretary of Commerce must provide the President of the United States and the states with the apportionment data, and the effect of the Covid-19 pandemic on the delivery of that data. The Petition further explains that, while the Commonwealth's population increased from the last decennial census, the 2020 Census shows that the Commonwealth will lose a representative seat in the U.S. House of Representatives. Starting with the upcoming 2022 elections, the Commonwealth will have 17 representatives in the House of Representatives, one fewer than the current 18 representatives. The Commonwealth's congressional district map must be redrawn to accommodate for the loss of a seat in the House of Representatives.

Petitioners claim that the Commonwealth's current congressional districts are malapportioned due to shifts in population within the Commonwealth.

They believe that the congressional districts in which they live are overpopulated, while other districts are underpopulated, and that, consequently, their votes for members of the U.S. House of Representatives are diluted.

The Petition observes that Pennsylvania law does not set a deadline by which a new congressional district map must be put in place prior to the first congressional election following a census. According to Petitioners, it is in the best interest of voters, candidates, and the Commonwealth's entire electoral apparatus to have a new, final congressional district map in place prior to February 15, 2022, the date on which candidates may begin collecting signatures for placement on the primary election ballot.

The Petition informs that the Commonwealth's current congressional district map was drawn by the Pennsylvania Supreme Court in *League of Women Voters of Pennsylvania v. Commonwealth*, 181 A.3d 1083 (Pa. 2018), after the Republican-controlled General Assembly and Democratic Governor failed to agree upon a new congressional district map following the Supreme Court's invalidation of the Commonwealth's 2011 congressional district map. The current political climate has not changed since 2018, as Republican representatives maintain the majority in both houses of the General Assembly and Governor Tom Wolf is a Democrat. For these reasons, Petitioners contend that it is unlikely that the "political branches" of the government will agree upon a new congressional district map.

Petitioners allege that the current congressional district map violates: (1) article I, section 5 of the Pennsylvania Constitution (free and equal elections

clause);[4] (2) 2 U.S.C. §2c (relating to districting for House of Representatives);[5] (3) article I, section 20 of the Pennsylvania Constitution (relating to right to petition);[6] and (4) Article I, Section 2 of the U.S. Constitution (relating to qualifications for member of the House of Representatives).[7]  Petitioners seek a declaration that the

---

[4] Article I, section 5 of the Pennsylvania Constitution, PA. CONST. art. I, § 5, states: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

[5] 2 U.S.C. §2c provides:

In each State entitled in the Ninety-first Congress or in any subsequent Congress thereafter to more than one Representative under an apportionment made pursuant to the provisions of section 2a(a) of this title, there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established, no district to elect more than one Representative (except that a State which is entitled to more than one Representative and which has in all previous elections elected its Representatives at Large may elect its Representatives at Large to the Ninety-first Congress).

[6] Article I, section 20 of the Pennsylvania Constitution, PA. CONST. art. I, § 20, provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance."

[7] Article I, Section 2 of the U.S. Constitution, U.S. CONST. art. I, § 2, provides:

The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

[Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons.] The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and

Commonwealth's current congressional district map violates the above constitutional provisions; an injunction enjoining the Secretary, her agents, officers, employees, and successors from implementing, enforcing, or giving effect to the 2018 congressional district map; establishment of a schedule that will enable the Court to adopt and implement a new congressional district map by a date certain should the political branches fail to enact such a map by that time; implementation of a new congressional district map that complies with the U.S. and Pennsylvania Constitutions in the event that the political branches do not enact a new map by a date certain; an award of attorneys' fees, costs, and disbursements; and an award of any other relief the Court deems just and proper.

## II.    Applications for Leave to Intervene
### A. Standards for Intervention

Although this matter was filed in the Court's original jurisdiction, the right to intervene is governed by Pennsylvania Rules of Civil Procedure Nos. 2326-

---

within every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to chuse three, Massachusetts eight, Rhode-Island and Providence Plantations one, Connecticut five, New-York six, New Jersey four, Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three.

When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies.

The House of Representatives shall chuse their Speaker and other Officers; and shall have the sole Power of Impeachment.

6

2350.  Rule No. 2327, titled "Who May Intervene," provides in relevant part and as asserted by the proposed intervenors:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> . . . .
>
> (3) such person could have joined as an original party in the action or could have been joined therein; or
>
> (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa. R.C.P. No. 2327.[8]

> Rule No. 2329, titled "Action of Court on Petition," declares:
>
> Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if
>
> (1)    the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or
>
> (2)    the interest of the petitioner is already adequately represented; or

---

[8] Pursuant to Pennsylvania Rule of Civil Procedure No. 2328(a), the proposed intervenors attached to their respective applications for leave to intervene copies of the pleading that they would file if permitted to intervene.  Each group of proposed intervenors would file preliminary objections to the Petition.  Pa. R.C.P. No. 2328(a).

7

> (3)    the petitioner has unduly delayed in making
> application for intervention or the intervention will unduly
> delay, embarrass or prejudice the trial or the adjudication
> of the rights of the parties.

Pa. R.C.P. No. 2329.

The determination of whether a proposed intervenor has a "legally
enforceable interest" calls for "a careful exercise of discretion and consideration of
all the circumstances involved," *Realen Valley Forge Greenes Associates v. Upper
Merion Township Zoning Hearing Board*, 941 A.2d 739, 744 (Pa. Cmwlth. 2008)
(citations omitted), because the exact boundaries of the "legally enforceable interest"
limitation in Rule No. 2327(4) are not clear. *Id.* Nevertheless, an applicant for
intervention must have some right, either legal or equitable, that will be affected by
the proceedings. *See generally Keener v. Zoning Hearing Board of Millcreek
Township*, 714 A.2d 1120, 1122 (Pa. Cmwlth. 1998).

At this point, it is important to note that although we summarize the
applications for leave to intervene, the Court has considered the entirety of the
applications and supporting briefs, the caw law cited therein, the replies to
Petitioners' and the Secretary's opposition to the intervention applications, and the
arguments, testimony and exhibits presented at the August 24, 2021 hearing in our
determination of whether to grant intervention in this case.

## B. Legislators' Application

Legislators' application for leave to intervene asserts that the named
legislators are the highest-ranking members of their respective chambers, that the
Republican Caucuses of their chambers have authorized them to seek intervention,
and that the U.S. Constitution empowers the General Assembly to establish the time,
place, and manner of elections to Congress, which includes the authority to redistrict.

*See* U.S. Const. art. I, § 4 (stating that the time, place and manner of elections are left to the states' legislatures). Legislators seek to intervene pursuant to Pa. R.C.P. No. 2327(3) and (4) to vindicate their authority to redistrict the Commonwealth.

Legislators' memorandum in support of their application expands upon the reasons why they should be permitted to intervene. They first claim that they could have been named as original parties to the action or could have been joined therein because they have a special interest in the action.[9] That special interest is Petitioners' alleged desire to divest Legislators of their constitutional authority to conduct congressional redistricting. Legislators also claim that their participation is required by the Declaratory Judgments Act,[10] which mandates that all persons who have or claim any interest that would be affected by a declaration be made parties to the action, and that absent their participation, no declaration may prejudice their rights. 42 Pa. C.S. § 7540(a). Legislators also claim a legally enforceable interest in defending their constitutional authority to prescribe the time, place, and manner of holding elections, which includes the authority to enact congressional district maps. *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787, 808 (2015) ("redistricting is a legislative function, to be performed in

---

[9] Legislators claim that they could have been joined as original parties because it is not uncommon for the courts to allow legislators to intervene in actions challenging the constitutionality of, or seeking to alter, redistricting plans. We reject such a blanket assertion. The cases upon which Legislators rely involved legislator participation *after* a redistricting plan was implemented and later challenged.

We also reject any reliance on *Sunoco Pipeline L.P. v. Dinniman*, 217 A.3d 1283, 1288 (Pa. Cmwlth. 2019), as supporting the right to intervene based on a special interest. *Sunoco* addressed standing to *initiate* formal complaints before the Pennsylvania Public Utility Commission and did not directly involve the issue of intervention in formal complaint proceedings. Regardless, the Commission's regulations provide the standards upon which intervention may be granted. There is no statutory or regulatory law addressing intervention in cases such as the one currently before the Court.

[10] 42 Pa. C.S. §§ 7531-7541.

9

accordance with the State's prescriptions for lawmaking . . ."). They claim that Petitioners asked the Court to take over this process even before the General Assembly has the necessary tools to redistrict and to impose unreasonable deadlines.

The law is well settled as to legislator standing when seeking to intervene. In *Markham v. Wolf*, 136 A.3d 134 (Pa. 2016), legislators sought to intervene in an action challenging an executive order that authorized direct care workers to organize. This Court denied the legislators' application for leave to intervene, which the Supreme Court affirmed. In doing so, the Supreme Court identified the requirements for legislator standing.

> Standing exists only when the legislator's direct and substantial interest in his or her ability to participate in the voting process is negatively impacted, *see* [*Wilt v. Beal*, 363 A.2d 876 (Pa. Cmwlth. 1976)], or when he or she has suffered a concrete impairment or deprivation of an official power or authority to act as a legislator, *see* [*Fumo v. City of Philadelphia*, 972 A.2d 487 [Pa. 2009),] (finding standing due to alleged usurpation of legislators' authority to vote on licensing).

Conversely, a legislator lacks standing

> where he or she has an indirect and less substantial interest in conduct outside the legislative forum which is unrelated to the voting or approval process, and akin to a general grievance about the correctness of governmental conduct, resulting in the standing requirements being unsatisfied.

10

*Allegheny Reproductive Health Center v. Pennsylvania Department of Human Services*, 225 A.3d 902 (Pa. Cmwlth. 2020)[11] (quoting *Markham*, 136 A.3d at 145). The Supreme Court has held that

> members of the General Assembly have sufficient interest to participate in legal action in their official capacity and based upon their special status "where there [i]s a discernable and palpable infringement on their authority as legislators." A legislator's legal interest has been recognized "to protect [the] legislator's right to vote on legislation" and "in actions alleging a diminution or deprivation of the legislator's . . . power or authority." But, a legislator has no legal interest "in actions seeking redress for a general grievance about the correctness of government conduct."

*Robinson Township v. Commonwealth*, 84 A.3d 1054, 1054 (Pa. 2014) (alterations in original; citations omitted) (affirming Commonwealth Court order denying legislators intervention in action challenging constitutionality of amendments to the Oil and Gas Act[12]). The principles of legislator standing are therefore relevant to the issue of whether the putative intervenor has demonstrated the legally enforceable interest required of Pa. R.C.P. No. 2327(4).

We disagree with Petitioners' claims that Legislators lack a legally enforceable interest in this matter because the Petition does not seek to deprive Legislators of their authority to redistrict the congressional district map and that

---

[11] The opinion appearing at 225 A.3d 902 (Pa. Cmwlth. 2020), addresses legislator standing. Thereafter, on March 26, 2021, the Court issued an order sustaining the respondents' preliminary objections and dismissing the petition for review. The petitioners filed an appeal to the Supreme Court, which remains pending. *See Allegheny Reproductive Health Center v. Pennsylvania Department of Human Services* (Pa. Cmwlth., No. 26 M.D. 2019, filed March 26, 2021), *appeal pending*, (Pa., No. 26 MAP 2021).

[12] 58 Pa. C.S. §§ 3201-3274.

11

Legislators are mischaracterizing the Petition as such. Among other things, the Petition seeks an order establishing a date certain by which the Court will take control of the redistricting process should the General Assembly and Governor fail to act. Pennsylvania law, however, does not establish a date by which a new congressional district map must be put in place. While Petitioners correctly cite *Mellow v. Mitchell*, 607 A.2d 204 (Pa. 1992), for the proposition that there is nothing in the law prohibiting the court from establishing a deadline for enactment of a new congressional map, it is noteworthy that the petitioners in *Mellow* were eight senators who sought nearly the same relief as that sought here, and several members of the state House of Representatives and Senate were permitted to intervene. When the Supreme Court exercised plenary jurisdiction in *Mellow* and appointed a judge of this Court as master to conduct hearings and report to the Supreme Court, Judge Craig directed that the parties, including intervenors, submit their proposed congressional district plans by a date certain.

At this juncture, it is not known how the redistricting process will proceed. But it seems clear that Legislators' ability to legislate would be impaired if the Court imposes a deadline on the General Assembly and the Governor to put in place a new congressional district map and takes control of the redistricting process. Likewise, Legislators would have a legally enforceable interest in the submission of a proposed plan for the Court's consideration if called upon to draw a new congressional district map, as in the *Mellow* case.

We therefore grant Legislators' application for leave to intervene. They have a legally enforceable interest because Pennsylvania law does not prescribe the date by which a new congressional district map must be put in place and because they, as members of the General Assembly, have the constitutional authority to

establish the time, place, and manner of elections, which includes the authority to redistrict. *Arizona State Legislature.* Any potential infringement of that right may diminish or deprive Legislators of their ability to act as legislators.

## C.   Republican Party's Application and Voters of Commonwealth's Application

We next consider the applications for leave to intervene filed by the Republican Party and Voters of Commonwealth. Both applications claim that the Republican Party, including the individual Party Voters, and Voters of Commonwealth could have been named as original parties. We disagree. Clearly, the Republican Party, the individual Republican Voters, and Voters of Commonwealth could not be joined as petitioners because they oppose Petitioners' requested relief. Similarly, they could not be joined as respondents because Petitioners' claims do not affect their liabilities. *See* Pa. R.C.P. No. 2229(b) ("A [petitioner] may join as [respondents] persons against whom the [petitioner] asserts any right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact *affecting the liabilities of all such persons* will arise in the action.") (emphasis added).[13] This factor militates against granting the Republican Party's and Voters of Commonwealth's applications for leave to intervene.

---

[13] The Republican Party notes that the Court has permitted intervention in other cases, specifically *League of Women Voters v. Commonwealth*, 178 A.3d 737, 741 n.5 (Pa. 2018). There, the Supreme Court noted that a judge of this Court, acting as master, permitted certain Republican voters, who included announced or potential candidates for Congress and other active members of the Republican Party, to intervene. The Court did not state the basis upon which intervention was granted, and our review of this Court's docket in *League of Women Voters* (Pa. Cmwlth., No. 261 M.D. 2017), indicates that the Court's order did not set forth its reasons for granting intervention.

We now address whether the Voters of Commonwealth or the Republican Party has shown a legally enforceable interest. For its part, the Voters of Commonwealth claim that they seek to intervene to preserve the existing framework that the General Assembly and Governor have until the first day to circulate nomination petitions to implement a new congressional district map. They claim that they are "mirror images" of Petitioners because they intend to advocate on behalf of Republican candidates in 2022. Voters of Commonwealth suggest that if the Court grants Petitioners the relief requested, such relief would curtail the ability of the Republican-controlled General Assembly to represent their interests. This would diminish or nullify their votes and would take away local officials' constitutional duty to redistrict the Commonwealth. Local officials are more familiar with their constituents than Supreme Court jurists.

Voters of Commonwealth suggest that they have a special interest that allows them to intervene, that being that this matter may be of public interest. They allege an inalienable right to express and present their concerns regarding drawing of the congressional district map, and if this Court imposes a date certain by which the political branches must act or takes over the redistricting process, the General Assembly will be divested of its authority to draw the new map.[14] A court drawing

---

[14] The Court admitted Voters of Commonwealth Exhibit 1, which contains the Affidavits of Tegwyn Hughes, Debra A. Biro, James Curtis Jarrett, James D. Bee, and Jeffrey Wenk, subject to Petitioners' and the Secretary's objections to the legal conclusions stated within the affidavits. The Affidavits largely echo the averments in the application for leave to intervene and are uniform for the most part. The affiants attest to their residency, registration as qualified electors in the Commonwealth, regularity in voting, voting with the expectation that their representatives would engage in the redistricting process based on the 2020 Census and ability to contact their representatives, and their intention in contacting their representatives relating to the new congressional district map. Each affiant states that he/she has an interest in the contours of his/her congressional districts and an inalienable right to express to his/her representatives concerns regarding redistricting under the First Amendment, U.S. CONST. amend. I. Further, affiants state that the Secretary does not have authority regarding redistricting and therefore does not represent the affiants' interest.

the congressional district map will turn a legislative process into a judicial one, according to Voters of Commonwealth. Finally, newly enacted redistricting maps have been subject to voter challenges.

As for a legally enforceable interest, the Republican Party argues that it has an interest in expanding its power within the Commonwealth government and that redistricting is fundamentally about political power. It maintains that it has a legally enforceable interest in (1) the allocation of its resources, (2) advocating for its interest and that of its members in areas that are bipartisan, (3) who draws the new congressional district map, that being the Republican-controlled General

They conclude that they have a substantial and particularized interest in preserving the existing framework that the General Assembly and the Governor have until the first day to circulate nomination petitions to implement a new district plan. Petitioners' requested relief would deprive them of their ability to contact their legislators regarding redistricting, thus nullifying their vote for a representative. Further, Petitioners' request that the Court invalidate the current congressional map would deprive affiants of their right to representation should a special election be needed in their district.

The Court also permitted Voters of Commonwealth to provide an additional exhibit after the proceedings, which Voters filed on August 26, 2021. Voters filed a supplemental affidavit in support of the Voters' application for leave to intervene by Vallerrie Biancaniello. The affidavit is the same as those presented in Voters of Commonwealth Exhibit 1. The Secretary promptly responded, indicating that she does not object to the affidavit on hearsay grounds or the Court's consideration of the affidavit in lieu of live testimony, but she does object to the legal conclusions stated therein. Petitioners object on the same basis as the Secretary.

Upon review, we sustain the objections to the legal conclusions stated within each affidavit, including that: (1) the affiant has a substantial and particularized interest in preserving the existing framework; (2) the requested relief would have the effect of preventing the affiant from being able to interact with the elected representatives regarding redistricting and nullifies the affiants' votes in the 2020 election; (3) if the Court grants the requested relief, the General Assembly will be deprived of its authority to draw new congressional districts and deprive the affiant of his/her ability to provide input to his/her representative thus infringing on the affiant's free speech rights; (4) the affiants' votes would be nullified and their interests of having their representatives exercise their full scope of constitutional duties with respect to redistricting would be infringed; and (5) the affiants could be deprived of their right to representation if the current map is declared unconstitutional and a special election must take place before a new map is enacted. In sustaining the objections to the Exhibits, we did not consider the stated conclusions in our disposition of this matter.

Assembly or the Justices of the Supreme Court, who are mostly Democrats, (4) a change in the environment in how rival parties defend their concrete interests, (5) recruiting of candidates, (6) risk of confusion to voters, and (7) associational interests.[15] *See* PA. CONST. art. I, § 20 ("The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested

---

[15] The Republican Party presented the testimony of Angela Alleman, Executive Director of the Pennsylvania GOP. Mrs. Alleman oversees all operations of the Party. She explained her concerns if the Supreme Court draws the congressional district map, including the removal of power to do so by the General Assembly, the Party's ability to work with its legislators to influence the map but inability to advocate before the Supreme Court, and the Party's diversion of funds to have experts prepare and analyze any map drawn by the Supreme Court. She believes that it is unfair to create a deadline for the General Assembly to act, especially when it is not clear when the 2020 Census data will be available. Mrs. Alleman stated that the uncertainty of the congressional district map affects candidate recruitment and makes it impossible for incumbents to know whether their districts will be realigned and the possibility that if realigned, whether the incumbent will be running against another incumbent. She acknowledged that regardless of who draws the new congressional district map, the Republican Party will have to spend money to educate voters, and for "get out and vote" campaigns. Mrs. Alleman agreed that Republican Party members may speak to their legislators regardless of who draws the map, and that the Republican Party has no power to make the General Assembly do what the Party wants. For Mrs. Alleman, the issue with the Petition is the request for a deadline by which the General Assembly and Governor must act and the allocation of the Party's resources depending on who draws the congressional district map. She believes that if the General Assembly draws the map, the Republican legislators will negotiate the best possible map for the Party. Expenses the Republican Party would incur if the Supreme Court draws the map include legal fees, including fees for intervening in this action, expert fees for analyzing and preparing maps, and the diversion of the Party's resources. The Court finds Mrs. Alleman's testimony credible but not persuasive on the issue of whether the Republican Party has a legally enforceable interest.

The Court admitted 12 affidavits of the individual Republican Party members: Nancy Becker, James Depp, Thomas Whitehead, Louis Capozzi, Kirk Radanovic, Kristine L. Eng, David Ball, James Vailko, Daryl Metcalfe, Sue Ann Means, and Michael Harvey, and Justin Behrens. The affidavits are substantially the same and attest that the affiant is a U.S. citizen and registered voter in Pennsylvania; the district in which the affiant resides; the affiant's participation in the election-related/Republican Party activities; the affiant is a long-time supporter of the Republican party; and that Petitioners' and the Secretary are affiliated with the affiant's political opponents, and that, therefore, they will not advocate for a congressional district map that represents the affiant's interest as a supporter and/or official of the Republican Party. The affidavits also attest to the affiant's resources invested in advocating on behalf of the Republican Party, including activities that may be affected by the Supreme Court's drawing of the congressional district map.

with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance.").

First, the Court rejects the Voters of Commonwealth and the Republican Party's argument that because they have a special interest in the matter, they are permitted to intervene. Both proposed intervenors rely on *Sunoco Pipeline L.P. v. Dinniman*, 217 A.3d 1283 (Pa. Cmwlth. 2019), but in that case, the primary issue was whether a senator had standing, either as a legislator or as a private citizen, to initiate a formal complaint with the Pennsylvania Public Utility Commission; the question of intervention was not at issue in *Sunoco*. The brief discussion of intervention was limited to distinguishing between standing to initiate a formal complaint and standing to intervene, which the Commission's regulations expressly address. Years ago, in *Application of Biester*, 409 A.2d 848 (Pa. 1979), our Supreme Court established the standards for intervention. In *Biester*, a taxpayer sought to intervene in an action seeking to impanel a statewide investigative grand jury. The Court, after initially allowing the taxpayer to intervene, later vacated its order granting intervention. The Court determined that to intervene, the taxpayer must meet the "substantial, direct, and immediate" test set forth in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975). That standard remains the law in this Commonwealth. *Markham,* 136 A.3d at 139 ("in order to intervene, individuals must have standing, Pa. R.C.P. [No.] 2327(3), (4), and to establish standing, one must have an interest that is substantial, direct[,] and immediate"). To have a substantial interest, the proposed intervenor's concern in the outcome of the action must surpass "the common interest of all citizens in procuring obedience to the law." *Markham*, 136 A.3d at 140. An interest is direct if the matter will cause

17

harm to the party's interest, and the concern is immediate "if that causal connection is not remote or speculative." *Id.*

We conclude that the Voters of Commonwealth and individual Republican Voters fail to meet the "substantial, direct, and immediate" test. Neither the individual Republican Voters, regardless of political interest, or Voters of Commonwealth have an interest that surpasses the interest of all qualified and registered voters in the Commonwealth. Based on the preliminary 2020 Census data, the Commonwealth will lose a seat in the U.S. House of Representatives and thus our current congressional district map must be redrawn. As counsel for Voters of Commonwealth stated, the current congressional district map is malapportioned across the state. *Every elector*, therefore, has an interest in redrawing a congressional district map that meets constitutional standards. Thus, the individual Republican Voters and Voters of Commonwealth do not have a substantial interest that surpasses the common interest of all citizens. [16]

The Republican Party, identified as non-profit organization, has no legally enforceable interest either. Based on our review, it appears that the Republican Party is complaining about what role it may play in the redistricting process, a role that is not protected by law. Redistricting, however, is fundamentally about protecting the one-person one-vote principle, that is, all votes have equal power as near as possible. *See Gray v. Sanders*, 372 U.S. 368, 381 (1963); *Holt v. 2011 Legislative Reapportionment Commission*, 38 A.3d 711, 739 (Pa. 2012). The

---

[16] We further disagree that Voters of Commonwealth are the "mirror image" of Petitioners because they will advocate for Republican candidates in 2022, whereas, Petitioners allege, they will advocate for Democratic candidates. Petitioners allege that the congressional districts in which they live are overpopulated as evidenced by the 2020 Census and, thus, their voting power is diluted. *See* Voters of Commonwealth, Appl. for Leave to Intervene, ¶¶ 10-21. Voters of Commonwealth do not speculate how their congressional districts may be affected by redistricting.

activities of the Republican Party, and how the Party allocates its resources, do not constitute a legally enforceable interest in how the congressional district map is determined and by whom. The case law cited by the Republican Party does not stand for the proposition that the asserted interests constitute legally enforceable interests sufficient to confer standing to intervene. The case law cited by the Secretary, rather, suggests otherwise and is more persuasive. *Cf. Gill v. Whitford*, 138 S. Ct. 1916, 1932 (2018) (recognizing that under the U.S. Supreme Court's precedent, achieving a party majority in the legislature is a collective political interest, not an individual legal interest recognized by law); *see also Pennsylvania Voters Alliance v. Centre County*, 496 F. Supp. 3d 861, 868 (M.D. Pa. 2020) (recognizing that "'statewide harm' to a voter's interest in 'collective representation in the legislature'" or "in 'influencing the legislature's overall composition and policymaking'" is insufficient to support standing under Article III of the U.S. Constitution, U.S. CONST. art. III; "[t]o the extent that the latter interest is recognized, it is 'embodied in [an individual's] right to vote for [his or her] representative'") (quoting *Gill*, 138 S. Ct. at 1931); *Erfer v. Commonwealth*, 794 A.2d 325, 330 (Pa. 2002) (recognizing that Democratic committee lacked standing to challenge reapportionment plan because it was not an entity authorized to exercise the right to vote), *abrogated on other grounds by League of Women Voters*, 178 A.3d 737.

Moreover, we conclude that the Republican Party's, individual Republican Voters,' and Voters of Commonwealth's claimed interests are speculative and not immediate. The U.S. Census Bureau has released the redistricting data to the states, with the final redistricting data toolkit to be delivered by September 30, 2021. *See* https:www.census.gov/programs-surveys/decennial-census/decade/2020/2020-census results.html (last visited August 30, 2021).

Therefore, our General Assembly can begin the process of moving forward with a new congressional district plan based on the Census data received. There is nothing preventing the Voters of Commonwealth, the individual Republican Voters, and the Republican Party from exercising their First Amendment and associational rights to make their positions known to their respective legislators.

Because we conclude that the Republican Party, the individual Republican Voters, and Voters of Commonwealth have failed to show that they have legally enforceable interests in these proceedings, we deny their applications for leave to intervene.

## III.   Conclusion

The General Assembly and the Governor are vested with authority to draw a new congressional district map. Pennsylvania law, however, does not provide a date by which they must act. The relief that Petitioners seek, the setting of a deadline by which the political branches must act, or taking control of the redistricting process, potentially infringes upon that authority. Accordingly, Legislators have shown a legally enforceable interest entitling them to intervene in this matter. *Markham; Allegheny Reproductive Health Center*; Pa. R.C.P. No. 2327(4).

Conversely, the Republican Party and Voters of Commonwealth have failed to demonstrate that they could be joined as original parties to the action or that they have a legally enforceable interest that would entitle them to intervene in this matter. Pa. R.C.P. No. 2327(3), (4).

20

Accordingly, the application for leave to intervene filed by Legislators is granted, and the applications for leave to intervene filed by the Republican Party and Voters of Commonwealth are denied.

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Ann Carter; Monica Parrilla;    :
Rebecca Poyourow; William Tung;    :
Roseanne Milazzo; Burt Siegel;    :
Susan Cassanelli; Lee Cassanelli;    :
Lynn Wachman; Michael Guttman;    :
Maya Fonkeu; Brady Hill; Mary Ellen    :
Balchunis; Tom DeWall; Stephanie    :
McNulty; and Janet Temin,    :
    :
        Petitioners    :
    :
   v.    :    No. 132 M.D. 2021
    :
Veronica Degraffenreid, in her official   :
capacity as the Acting Secretary of    :
the Commonwealth of Pennsylvania;   :
Jessica Mathis, in her official    :
capacity as Director for the    :
Pennsylvania Bureau of Election    :
Services and Notaries,    :
    :
        Respondents    :

## **ORDER**

NOW 2nd day of September, 2021, upon consideration of the Applications for Leave to Intervene filed on behalf of (1) Speaker of the Pennsylvania House of Representatives Bryan Cutler, Majority Leader of the Pennsylvania House of Representatives Kerry Benninghoff, President Pro Tempore of the Pennsylvania Senate Jake Corman, and Majority Leader of the Pennsylvania Senate Kim Ward (collectively, Legislators); (2) the Republican Party of Pennsylvania and Individual Republican Voters (collectively, Republican Party); and (3) Voters of the

Commonwealth of Pennsylvania (Voters of Commonwealth), and after hearing and argument on the issue, it is hereby ordered as follows.

Legislators' Application for Leave to Intervene is **GRANTED**.  The Prothonotary shall accept for filing Legislators' Preliminary Objections to the Petition for Review, attached to Legislators' June 1, 2021 Application for Leave to Intervene.

Respondents[1] shall file and serve their brief in support of their preliminary objections (4 copies) within 14 days of the exit date of this order.

Legislators shall file and serve their brief in support of their preliminary objections (4 copies) within 14 days of the exit date of this order.  Petitioners shall file and serve their brief in opposition to Legislators' preliminary objections within 14 days of service of Legislators' brief.  Upon completion of the briefing schedule, the Prothonotary shall list the preliminary objections on the appropriate argument list.

The Applications for Leave to Intervene filed by the Republican Party and the Voters of the Commonwealth are **DENIED**.  The Republican Party's Application for Extraordinary Relief, attached to its Application for Leave to Intervene, is **DISMISSED AS MOOT**.

---

[1] Although Respondents filed preliminary objections, it appears that they have not filed their brief in support thereof.  Petitioners, however, filed their brief in opposition to Respondents' preliminary objections on August 2, 2021.

Voters of the Commonwealth Exhibits 1 and 2 are admitted to the record.  Petitioners' and Respondents' objections to the legal conclusions in the Voters of the Commonwealth's Exhibit 1 and Exhibit 2 are SUSTAINED.

_____
MICHAEL H. WOJCIK, Judge

Order Exit
09/02/2021

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document upon the persons and in the manner indicated below, which service satisfies the requirements of Pa.R.A.P. 121:

**Service by PACFile eService as follows:**

All counsel of record

Date:  December 27, 2021          /s/ Anthony R. Holtzman
                                  Anthony R. Holtzman