996

| | | |
|---|---|---|
| 06:06:59 | 1 | authoritative, but it can be useful. |
| 06:07:01 | 2 | Q.      And are you aware that the |
| 06:07:02 | 3 | Princeton Gerrymandering Project |
| 06:07:02 | 4 | scored the partisan fairness of the |
| 06:07:03 | 5 | Oregon Congressional Plan as an F, the |
| 06:07:09 | 6 | worst score? |
| 06:07:10 | 7 | A.      I was aware, but I actually |
| 06:07:12 | 8 | looked very closely into the |
| 06:07:15 | 9 | methodology they used and it was very |
| 06:07:18 | 10 | --- it was quite suspect, because it |
| 06:07:19 | 11 | relied on a very selected index of |
| 06:07:20 | 12 | statewide races, if I recall, and I |
| 06:07:23 | 13 | didn't view it as reliable.  But then |
| 06:07:25 | 14 | the second thing is it didn't have any |
| 06:07:26 | 15 | indications --- it doesn't --- the |
| 06:07:30 | 16 | Princeton Gerrymandering Project |
| 06:07:30 | 17 | doesn't use any measures of |
| 06:07:32 | 18 | uncertainty, right.  And as we've --- |
| 06:07:33 | 19 | or any measures of how much elections |
| 06:07:36 | 20 | are like to vary across time. |
| 06:07:38 | 21 |         And so I didn't view it as |
| 06:07:43 | 22 | nearly as useful as Plan Score's |
| 06:07:45 | 23 | approach for that reason.  So I didn't |
| 06:07:48 | 24 | view it as well on that instance. |
| 06:07:50 | 25 | Q.      But you aware of the grade that |

997

| | | |
|---|---|---|
| 06:07:53 | 1 | they gave to the Oregon Congressional |
| 06:07:58 | 2 | Plan. |
| 06:07:59 | 3 | A.      That sounds right to me. |
| 06:08:01 | 4 | Q.      Are you aware of the grade that |
| 06:08:02 | 5 | they gave to HB-2146 in Pennsylvania? |
| 06:08:06 | 6 | A.      No. |
| 06:08:07 | 7 | Q.      You indicated in your testimony |
| 06:08:09 | 8 | earlier that Dr. Barber didn't present |
| 06:08:12 | 9 | the predicted vote share for the |
| 06:08:14 | 10 | Democrats --- or I'm sorry, let me |
| 06:08:14 | 11 | restate that. |
| 06:08:16 | 12 | That he didn't report the |
| 06:08:20 | 13 | predicted Democratic vote share for |
| 06:08:20 | 14 | the districts in HB-2146. |
| 06:08:20 | 15 | Correct? |
| 06:08:20 | 16 | A.      What He didn't project was that |
| 06:08:26 | 17 | --- the statewide.  I didn't see it, |
| 06:08:28 | 18 | that's why I said that. |
| 06:08:28 | 19 | Q.      And I think you testified that |
| 06:08:30 | 20 | you believed that the average |
| 06:08:33 | 21 | Democratic vote share statewide for |
| 06:08:36 | 22 | averaging 2012 to 2020 elections was |
| 06:08:40 | 23 | 54 percent? |
| 06:08:42 | 24 | A.      That was based on my kind of |
| 06:08:43 | 25 | --- you know, often trying to back out |

998

| | | |
|---|---|---|
| 06:08:46 | 1 | what it was likely to be given where |
| 06:08:49 | 2 | he put different districts relative to |
| 06:08:53 | 3 | what I had predicted for those |
| 06:09:00 | 4 | districts. |
| 06:09:00 | 5 | Q.      Doctor, I put on the screen |
| 06:09:02 | 6 | here an excerpt from Dr. Rodden's |
| 06:09:02 | 7 | report, another one of the experts |
| 06:09:04 | 8 | who's testified in the case, and he |
| 06:09:05 | 9 | likewise calculated the Democratic |
| 06:09:08 | 10 | vote share for all elections statewide |
| 06:09:11 | 11 | from 2012 to 2020, and he calculated |
| 06:09:15 | 12 | it at 52.5 percent. |
| 06:09:15 | 13 |      Do you see that? |
| 06:09:18 | 14 | A.      Yeah, I do.  That's about what |
| 06:09:19 | 15 | I expected Barber's to be. |
| 06:09:21 | 16 | Q.      So not the 54 percent you were |
| 06:09:23 | 17 | stating earlier? |
| 06:09:25 | 18 | A.      Yeah, I was basing that off of |
| 06:09:28 | 19 | --- because he didn't provide that |
| 06:09:29 | 20 | information, I had to kind of read it |
| 06:09:31 | 21 | off of the graph.  He didn't --- he |
| 06:09:31 | 22 | also didn't provide, you know, |
| 06:09:31 | 23 | numerical estimates for each of the |
| 06:09:31 | 24 | date.  He didn't do a table of the |
| 06:09:31 | 25 | district shares, so I was doing it |

999

| | | |
|---|---|---|
| 06:09:43 | 1 | reading it off the graph. |
| 06:09:43 | 2 | Q.      You have all of this election |
| 06:09:46 | 3 | data. |
| 06:09:47 | 4 |         Right? |
| 06:09:47 | 5 | A.      I do somewhere. |
| 06:09:48 | 6 | Q.      So you could calculate these |
| 06:09:50 | 7 | numbers just as easily as Dr. Barber |
| 06:09:54 | 8 | and Rodden have. |
| 06:09:55 | 9 |         Correct? |
| 06:09:56 | 10 | A.      Given sufficient time, yes. |
| 06:09:59 | 11 | Q.      I'm sure everybody wished they |
| 06:10:04 | 12 | had more time preparing their reports |
| 06:10:05 | 13 | in this case. |
| 06:10:06 | 14 | A.      Yeah, I'm sure they do. |
| 06:10:08 | 15 | Q.      Dr. Caughey, going back to your |
| 06:10:14 | 16 | metrics of --- the partisan fairness |
| 06:10:15 | 17 | metrics of mean-median and efficiency |
| 06:10:19 | 18 | gap and partisan bias, none of those |
| 06:10:21 | 19 | directly take into account the |
| 06:10:22 | 20 | political geography of the state. |
| 06:10:25 | 21 |         Correct? |
| 06:10:26 | 22 | A.      Right.  So well, what I would |
| 06:10:26 | 23 | say --- the way I would put it is they |
| 06:10:28 | 24 | are measures of the effect of the |
| 06:10:30 | 25 | outcome of the map, right.  They don't |

1000

| | | |
|---|---|---|
| 06:10:35 | 1 | say anything about why a map is |
| 06:10:37 | 2 | biased. |
| 06:10:37 | 3 | Q.     And so you can have a metric, |
| 06:10:42 | 4 | like an efficiency gap be high or show |
| 06:10:43 | 5 | high bias and that could result, for |
| 06:10:46 | 6 | example, from the concentration of |
| 06:10:48 | 7 | Democratic voters in highly dense |
| 06:10:50 | 8 | areas. |
| 06:10:51 | 9 | Is that fair? |
| 06:10:53 | 10 | A.     I would say that the |
| 06:10:57 | 11 | characteristics of a map are a joint |
| 06:11:02 | 12 | consequence of the distribution of |
| 06:11:02 | 13 | voters and the choices of map makers. |
| 06:11:04 | 14 | And so yes, that could definitely |
| 06:11:06 | 15 | contribute to it. |
| 06:11:11 | 16 | Q.     And do you recognize, like many |
| 06:11:13 | 17 | other experts have in this case, that |
| 06:11:14 | 18 | in Pennsylvania there is a tilt in |
| 06:11:16 | 19 | favor of Republicans based upon the |
| 06:11:18 | 20 | concentration of Democratic voters in |
| 06:11:21 | 21 | certain areas of the state? |
| 06:11:23 | 22 | A.     Yeah, so what I --- the way I |
| 06:11:24 | 23 | would put that is that if you draw |
| 06:11:29 | 24 | maps randomly, according to a certain |
| 06:11:34 | 25 | set of criteria involving compactness |

1001

| | | |
|---|---|---|
| 06:11:35 | 1 | and so forth, you will tend to get |
| 06:11:37 | 2 | Republican-leaning maps.  But I think |
| 06:11:40 | 3 | what other analysis that we've heard |
| 06:11:42 | 4 | of have shown is that it's not |
| 06:11:44 | 5 | impossible.  And in fact, it's quite |
| 06:11:47 | 6 | possible to get --- to satisfy both |
| 06:11:50 | 7 | traditional geographic criteria for |
| 06:11:51 | 8 | districting and achieve partisan |
| 06:11:56 | 9 | fairness, for example. |
| 06:11:56 | 10 | Q.      I understand, Doctor.  And  I |
| 06:11:56 | 11 | think you've answered my question, and |
| 06:11:56 | 12 | I'm about out of time so I want to get |
| 06:11:57 | 13 | my last question out, which is did you |
| 06:11:58 | 14 | do any calculations or analysis to |
| 06:12:01 | 15 | determine how much of the bias that |
| 06:12:04 | 16 | you are calculating in HB-2146 is due |
| 06:12:07 | 17 | to the political geography of the |
| 06:12:09 | 18 | state? |
| 06:12:09 | 19 | A.      I did not. |
| 06:12:11 | 20 |                 ATTORNEY TUCKER: |
| 06:12:11 | 21 |                 Thank you.   No further |
| 06:12:12 | 22 |         questions. |
| 06:12:12 | 23 |                 JUDGE McCULLOUGH: |
| 06:12:13 | 24 |                 Thank you, Counsel. |
| 06:12:14 | 25 |         Now, we will move to the |

1002

|  |  |  |
|---|---|---|
| 06:12:21 | 1 | Congressional Intervenors |
|  | 2 | Counsel. |
|  | 3 | - - - |
|  | 4 | CROSS EXAMINATION |
|  | 5 | - - - |
|  | 6 | BY ATTORNEY VANCE: |
| 06:12:45 | 7 | Q.        Thank you, Doctor.  Thank |
| 06:12:45 | 8 | you for being here under the |
| 06:12:45 | 9 | circumstances.  Shohin vance, and I |
| 06:12:45 | 10 | represent Congressman Reschenthaler as |
| 06:12:47 | 11 | well as a group of other Intervenors. |
| 06:12:48 | 12 | So let me ask you first, you |
| 06:12:54 | 13 | haven't reviewed every map that has |
| 06:12:56 | 14 | been submitted in this case. |
| 06:12:57 | 15 | Right? |
| 06:12:59 | 16 | A.      As I said, I am actually not |
| 06:13:02 | 17 | even sure what is the complete list of |
| 06:13:03 | 18 | the maps that have been submitted are. |
| 06:13:05 | 19 | But a lot of maps, yes.  All the maps |
| 06:13:07 | 20 | that I was able to review --- I |
| 06:13:09 | 21 | received in time to actually review |
| 06:13:09 | 22 | are in my report, and that includes |
| 06:13:09 | 23 | - - - . |
| 06:13:09 | 24 | Q.      And your review ---? |
| 06:13:18 | 25 | A.      Go ahead. |

1003

| | | |
|---|---|---|
| 06:13:18 | 1 | Q.      And your reviews is based --- |
| 06:13:18 | 2 | and your assessment centers entirely |
| 06:13:24 | 3 | on the partisan fairness. |
| 06:13:25 | 4 | Is that correct? |
| 06:13:26 | 5 | A.      That's right.  I was asked to |
| 06:13:28 | 6 | assess the partisan fairness of the |
| 06:13:31 | 7 | maps and that's what I did. |
| 06:13:31 | 8 | Q.      Okay. |
| 06:13:31 | 9 | So based on that metrics, what |
| 06:13:33 | 10 | do you think the best map is? |
| 06:13:37 | 11 | A.      Of the ones that I reviewed? |
| 06:13:39 | 12 | Q.      Yeah. |
| 06:13:39 | 13 | A.      I would actually say that there |
| 06:13:46 | 14 | are sort of three tiers of maps.  I |
| 06:13:49 | 15 | would say in terms of partisan, the |
| 06:13:51 | 16 | ones with the least bias are the two |
| 06:13:56 | 17 | Democrats maps.  The current --- I'm |
| 06:13:57 | 18 | sorry, the Governor's map is sort of |
| 06:13:59 | 19 | in the middle, and the Republican --- |
| 06:14:07 | 20 | the House Republican map and the |
| 06:14:07 | 21 | Reschenthaler map are --- have the -- |
| 06:14:11 | 22 | are the --- have the highest partisan |
| 06:14:15 | 23 | bias.  In all the maps, the partisan |
| 06:14:16 | 24 | bias favors Republican, but it's the |
| 06:14:18 | 25 | most extreme.   And then I ---. |

1004

| | | |
|---|---|---|
| 06:14:18 | 1 | Q.        And to clarify --- I'm sorry. |
| 06:14:20 | 2 | But to clarify, when you say the |
| 06:14:20 | 3 | Reschenthaler map, you just mean |
| 06:14:22 | 4 | Reschenthaler 2. |
| 06:14:23 | 5 |         Correct? |
| 06:14:25 | 6 | A.        As I understand it, it's |
| 06:14:26 | 7 | Reschenthaler 2. |
| 06:14:27 | 8 | Q.        Okay. |
| 06:14:28 | 9 |         And to clarify, you did not |
| 06:14:29 | 10 | review Reschenthaler 1? |
| 06:14:34 | 11 | A.        I don't believe so.  I received |
| 06:14:36 | 12 | a file called Reschenthaler 2, and |
| 06:14:37 | 13 | that is what I reviewed. |
| 06:14:46 | 14 | Q.        Okay. |
| 06:14:46 | 15 |         So in using a Plan Score, you |
| 06:14:48 | 16 | sort of describe it as being in line |
| 06:14:53 | 17 | with standard political science |
| 06:14:59 | 18 | practices. And you say the account was |
| 06:15:01 | 19 | based on the 2020 Presidential vote |
| 06:15:03 | 20 | and accounts for incumbency status and |
| 06:15:06 | 21 | state and election-specific factors, |
| 06:15:11 | 22 | How does it account for those? |
| 06:15:14 | 23 | A.        So you're talking about how |
| 06:15:15 | 24 | does it account for specifically the |
| 06:15:19 | 25 | election and state-specific factors? |

1005

| 06:15:19 | 1 | Q.      Right. |
| 06:15:20 | 2 | A.      So it has what is called --- |
| 06:15:23 | 3 | it's  what is called a multilevel |
| 06:15:28 | 4 | model where if you have a --- like, in |
| 06:15:31 | 5 | a typical progression model you have a |
| 06:15:33 | 6 | a coefficient associated with every |
| 06:15:33 | 7 | variable, right, so the coefficient |
| 06:15:43 | 8 | associated with a presidential vote |
| 06:15:43 | 9 | describes the relationship between |
| 06:15:43 | 10 | presidential vote and congressional |
| 06:15:44 | 11 | vote. |
| 06:15:44 | 12 | In a simple progression model |
| 06:15:47 | 13 | model, you would just have one |
| 06:15:48 | 14 | coefficient to describe that |
| 06:15:48 | 15 | relationship across all states and all |
| 06:15:54 | 16 | time.  But in a multilevel model you |
| 06:15:56 | 17 | allow that relationship to vary across |
| 06:15:59 | 18 | states and across time. |
| 06:16:00 | 19 | Q.      I'm sorry, I just want to |
| 06:16:03 | 20 | understand, specifically for |
| 06:16:03 | 21 | Pennsylvania for the maps you |
| 06:16:08 | 22 | assessed, how does it account f or it? |
| 06:16:09 | 23 | I mean you're saying over time.  And I |
| 06:16:10 | 24 | understand the theoretical --- how |
| 06:16:10 | 25 | does it do it here? |

1006

06:16:14    1    A.      So it basically --- it
06:16:14    2    estimates it as sort of a
06:16:16    3    Pennsylvania-specific relationship
06:16:19    4    that also --- that is informed by the
06:16:21    5    global relationship, but it takes into
06:16:24    6    account what that specific factor ---
06:16:26    7    you know, what's unique about
06:16:29    8    Pennsylvania, the relationship in
06:16:30    9    Pennsylvania.  It also ---.
06:16:30   10    Q.      Takes into account how?
06:16:38   11    A.      It just uses essentially --- it
06:16:40   12    uses data --- is uses what the
06:16:42   13    relationship is in Pennsylvania
06:16:44   14    empirically, between a Presidential
06:16:48   15    vote and congressional vote.
06:16:49   16    Q.      So it's the Plan Score that
06:16:50   17    came up with this, not you?  You don't
06:16:52   18    --- you didn't use the data and the
06:16:53   19    relationship?  You don't know what
06:16:54   20    the relationship is, it's a formula
06:16:57   21    that Plan Score generated or based on
06:17:00   22    a formula that Plan Score ---?
06:17:01   23    A.      Yeah.
06:17:01   24    Q.      Okay.
06:17:03   25    A.      It's a result of a model.  I

1007

| 06:17:06 | 1 | mean, Plan Score did not come up with |
| 06:17:07 | 2 | a number, it estimated a model, which, |
| 06:17:09 | 3 | you know, according to a certain |
| 06:17:13 | 4 | functional form which it --- which it |
| 06:17:16 | 5 | reports and which I have, that such |
| 06:17:17 | 6 | that the --- yeah, so --- yeah, I sort |
| 06:17:23 | 7 | of lost track of the question. |
| 06:17:25 | 8 | Q.      That's okay. |
| 06:17:25 | 9 | I will sort of try to narrow |
| 06:17:29 | 10 | that a little bit. |
| 06:17:29 | 11 | A.      What's that? |
| 06:17:29 | 12 | Q.      I'll try to narrow it. |
| 06:17:29 | 13 | JUDGE McCULLOUGH: |
| 06:17:30 | 14 | You are both talking. |
| 06:17:30 | 15 | BY ATTORNEY VANCE: |
| 06:17:33 | 16 | Q.      Sorry.  I'll try to narrow that |
| 06:17:33 | 17 | a little bit to help you out. |
| 06:17:35 | 18 | So state specific, does it |
| 06:17:37 | 19 | account, for example, for changes in |
| 06:17:41 | 20 | voting procedure such as straight |
| 06:17:43 | 21 | party ticket voting or not? |
| 06:17:44 | 22 | A.      So it does --- by changes you |
| 06:17:44 | 23 | mean with a given state?  Like the |
| 06:17:44 | 24 | party ---? |
| 06:17:44 | 25 | Q.      I mean when a states changes |

1008

06:17:52  1      its laws?

06:17:53  2      A.      I see.  So it is --- it is not

06:17:57  3      taking anything explicitly into

06:18:00  4      account, like it's not taking that

06:18:03  5      explicitly into account, but if that

06:18:06  6      affects what the relationship between

06:18:07  7      Presidential vote and Congressional

06:18:10  8      vote is in that state, the model will

06:18:10  9      pick up on that, like if that makes it

06:18:11  10     more distinctive.

06:18:11  11     Q.      Right, eventually.  Right?  But

06:18:14  12     not immediately --

06:18:15  13     A.      Yeah.  You know, it's not going

06:18:18  14     to --- mean, it's not a perfect

06:18:26  15     oracle.  It doesn't know things for

06:18:27  16     sure.

06:18:28  17     Q.      You also rely on Plan Score's

06:18:29  18     historic library.  But You haven't

06:18:29  19     actually looked at Plan Score's entire

06:18:32  20     library, have you?  You don't know

06:18:32  21     what it is?

06:18:33  22     A.      Have I scrolled through every

06:18:35  23     plan, no.

06:18:35  24     Q.      Okay.

06:18:36  25              And you don't know how

1009

| 06:18:37 | 1 | accurately it reflects what, you know, |
| 06:18:39 | 2 | the typical plan would look like, |
| 06:18:41 | 3 | whether it's skewed one way or the |
| 06:18:44 | 4 | other? |
| 06:18:45 | 5 | A.      Well, the library is --- as I |
| 06:18:46 | 6 | understand it the library is |
| 06:18:51 | 7 | comprehensive since the 1970s. |
| 06:18:53 | 8 | Q.      Okay. |
| 06:18:55 | 9 | A.      For every --- go ahead. |
| 06:18:55 | 10 | Q.      And one of the reasons why you |
| 06:18:57 | 11 | rely on Plan Score and have such |
| 06:19:00 | 12 | confidence in it, as I understand it |
| 06:19:03 | 13 | from the report, is that it is, as you |
| 06:19:04 | 14 | said it, non-partisan. |
| 06:19:05 | 15 | Is that correct?  I would say |
| 06:19:08 | 16 | the reason I have confidence in it is |
| 06:19:10 | 17 | not because it has --- it is |
| 06:19:12 | 18 | non-partisan.  I mean, I guess that is |
| 06:19:14 | 19 | helpful.  But the main reason I have |
| 06:19:15 | 20 | confidence in it is it's very |
| 06:19:16 | 21 | transparent about the the data methods |
| 06:19:16 | 22 | it uses and I believe them to be |
| 06:19:21 | 23 | rigorous. |
| 06:19:21 | 24 | Q.      Okay. |
| 06:19:21 | 25 | And by non-partisan you don't |

1010

06:19:23   1    mean that they don't necessarily

06:19:29   2    advocate for certain policies, right?

06:19:31   3    You just mean they're not associated

06:19:33   4    with a particular party?

06:19:35   5    A.      That's right.  Yeah.

06:19:36   6    Q.      You say that declination is a

06:19:39   7    relatively recent development.

06:19:42   8            Is that correct?

06:19:43   9    A.      Yeah.  That's right.

06:19:45   10   Q.      So it doesn't have an

06:19:47   11   established history of being used, nor

06:19:51   12   is there much data to reflect how

06:19:54   13   accurately it predicts future

06:20:01   14   outcomes, is there?

06:20:01   15   A.      So --- I don't know what you

06:20:01   16   mean by future outcomes because

06:20:01   17   there's no data on future outcomes yet

06:20:05   18   for any of these metrics.  But the ---

06:20:06   19   it has been retrospectively applied to

06:20:09   20   many past elections, in fact, just as

06:20:13   21   many as the other measures.  But you

06:20:13   22   are right that it has been --- it was

06:20:15   23   developed about five --- I think five

06:20:19   24   years ago, and it has come into fairly

06:20:25   25   frequence use since then.  But it has

1011

06:20:26  1    not --- it has not been used as long
06:20:29  2    as most of the other metrics have.
06:20:31  3    Q.      Okay.
06:20:36  4            And your model and the
06:20:41  5    simulation, I guess that you ran or
06:20:42  6    the model is based on no incumbency.
06:20:47  7            Is that correct?
06:20:48  8    A.      Right.  So the model itself is
06:20:49  9    estimated with knowing whether someone
06:20:52  10   is an incumbent or not, you know, when
06:20:55  11   you're estimating the model.  But when
06:20:56  12   you're projecting forward, you know,
06:20:57  13   you're saying, okay, we have to have a
06:20:58  14   particular scenario.  What's the
06:21:01  15   scenario?  It's going to be --- it
06:21:03  16   makes more sense to think about
06:21:05  17   open-seat scenarios.
06:21:06  18   Q.      Based on your experience as a
06:21:07  19   professor of political science, with a
06:21:12  20   state that has anywhere between, let's
06:21:14  21   say, 15 and 18 congressmen, how often
06:21:19  22   is it that there is an election with
06:21:22  23   not a single incumbent?
06:21:26  24   A.      Oh I'm sure that's very rare.
06:21:29  25   So this would be a case where ---.

1012

06:21:31   1    Q.      Has it ever happened in

06:21:35   2    Pennsylvania in the 15 years?

06:21:39   3    A.      I don't know, but it's not

06:21:43   4    meant to estimate what --- if you have

06:21:44   5    a particular scenario you were

06:21:44   6    interested in, saying like stipulating

06:21:49   7    that this person is going to run for

06:21:52   8    the election or not, you can put that

06:21:53   9    in. But it seems like a --- you know,

06:21:53   10    if you want to think about a map as a

06:21:58   11    neutral playing field, you want to

06:21:58   12    evaluate it as a neutral playing field

06:22:00   13    it seems like the fairest way to do

06:22:02   14    that is not to presume that one party

06:22:05   15    has an advantage systematically over

06:22:12   16    the other in terms of incumbents.

06:22:18   17             ATTORNEY VANCE:

06:22:19   18        I have no further

06:22:19   19    questions.

06:22:20   20             JUDGE McCULLOUGH:

06:22:20   21        Thank you, Counsel. And

06:22:22   22    now Counsel for the House Democratic

06:22:27   23    Intervenor.

06:22:27   24             ATTORNEY SENOFF:

06:22:27   25        Your Honor, we have no

1013

| | | |
|---|---|---|
| 06:22:28 | 1 | questions for this witness.  Thank |
| 06:22:30 | 2 | you. |
| 06:22:30 | 3 | <u>JUDGE McCULLOUGH</u>: |
| 06:22:30 | 4 | Oh, you're relinquishing |
| 06:22:33 | 5 | your time again.  Okay.  All right. |
| 06:22:33 | 6 | Thank you. |
| 06:22:34 | 7 | So now we'll. |
| 06:22:35 | 8 | Back to Counsel for |
| 06:22:42 | 9 | Senate Democratic Intervenors for |
| 06:22:42 | 10 | Redirect. |
| 06:22:42 | 11 | - - - |
| 06:22:42 | 12 | REDIRECT EXAMINATION |
| 06:22:58 | 13 | - - - |
| 06:22:58 | 14 | <u>BY ATTORNEY ATTISANO</u>: |
| 06:22:59 | 15 | Q.      Dr. Warshaw --- excuse me, |
| 06:22:59 | 16 | sorry. |
| 06:23:04 | 17 | Doctor Caughey.  I was thinking |
| 06:23:04 | 18 | of Dr. Warshaw. |
| 06:23:06 | 19 | You compared the actual |
| 06:23:08 | 20 | outcomes with the 2018 Congressional |
| 06:23:12 | 21 | Map to the Plan Score analysis of the |
| 06:23:14 | 22 | 2018 map essentially to get a baseline |
| 06:23:18 | 23 | of reliability? |
| 06:23:19 | 24 | Correct? |
| 06:23:20 | 25 | A.      Correct. |

1014

| | | |
|---|---|---|
| 06:23:22 | 1 | Q.      All right. |
| 06:23:25 | 2 | Now, are you aware if any other |
| 06:23:27 | 3 | experts in this case took their |
| 06:23:28 | 4 | methodology and compared it to the |
| 06:23:31 | 5 | 2018 Congressional Map to determine |
| 06:23:34 | 6 | how reliable their methodology was |
| 06:23:38 | 7 | when dealing with real world outcomes |
| 06:23:41 | 8 | related to the 2018 map? |
| 06:23:45 | 9 | A.      I am not aware. |
| 06:23:50 | 10 | Q.      And with respect to the |
| 06:23:54 | 11 | election data that Plan Score uses, |
| 06:23:59 | 12 | can you please just explain if they |
| 06:24:02 | 13 | use a set of data that simply reflects |
| 06:24:08 | 14 | previous election results or if they |
| 06:24:11 | 15 | use variations in combination with |
| 06:24:16 | 16 | that data and if so why that matters? |
| 06:24:24 | 17 | A.      So what --- Plan Score doesn't |
| 06:24:26 | 18 | just give simply average or project |
| 06:24:31 | 19 | formal elections from the past.  What |
| 06:24:33 | 20 | it's trying to do --- what it uses is |
| 06:24:36 | 21 | a model, it uses information from past |
| 06:24:40 | 22 | elections such as from past |
| 06:24:42 | 23 | Presidential elections to predict how |
| 06:24:49 | 24 | a Democratic or Republican district |
| 06:24:55 | 25 | will be in future Presidential |

1015

| 06:24:59 | 1 | elections and it uses past |
| 06:24:59 | 2 | Presidential --- past Congressional |
| 06:25:00 | 3 | election results and the variation in |
| 06:25:00 | 4 | those results across multiple cycles, |
| 06:25:05 | 5 | 2012, 2014, 2016, 2018, 2020 to come |
| 06:25:12 | 6 | up with a reasonable baseline for the |
| 06:25:20 | 7 | uncertainty of projections going |
| 06:25:24 | 8 | forward. |
| 06:25:24 | 9 | So it's a combination of past |
| 06:25:24 | 10 | results, and a model that relates |
| 06:25:24 | 11 | those to what we already know about |
| 06:25:24 | 12 | Congressional elections and how they |
| 06:25:25 | 13 | vary. |
| 06:25:25 | 14 | Q.      And if anybody wanted to |
| 06:25:27 | 15 | challenge the actual reliability of |
| 06:25:29 | 16 | Plan Score's predictions, they could |
| 06:25:31 | 17 | simply plug a map in from a previous |
| 06:25:36 | 18 | election and test it against what is |
| 06:25:38 | 19 | actually happened in the real world. |
| 06:25:40 | 20 | Correct? |
| 06:25:42 | 21 | A.      That's right. |
| 06:25:43 | 22 | Q.      And all the experts in this |
| 06:25:48 | 23 | case, to the best of your knowledge, |
| 06:25:50 | 24 | know how to do that and have the |
| 06:25:50 | 25 | ability if they so cared to do so. |

1016

| | | |
|---|---|---|
| 06:25:54 | 1 | Correct? |
| 06:25:55 | 2 | A.      Yes. |
| 06:25:57 | 3 | ATTORNEY ATTISANO: |
| 06:25:57 | 4 | Thank you. No further |
| 06:25:58 | 5 | questions. |
| 06:25:58 | 6 | JUDGE McCULLOUGH: |
| 06:25:59 | 7 | All right. Thank you. |
| 06:25:59 | 8 | And thank you, Dr. |
| 06:26:01 | 9 | Caughey, for making yourself |
| 06:26:02 | 10 | available. We wish you and your |
| 06:26:04 | 11 | family well. |
| 06:26:05 | 12 | Thank you. |
| 06:26:05 | 13 | THE WITNESS: |
| 06:26:06 | 14 | Thank you very much. |
| 06:26:10 | 15 | JUDGE McCULLOUGH: |
| 06:26:11 | 16 | Okay. |
| 06:26:11 | 17 | Right now we will take a |
| 06:26:12 | 18 | recess and then reconvene for closing |
| 06:26:15 | 19 | arguments and that should be |
| 06:26:18 | 20 | everything that we need to take care |
| 06:26:20 | 21 | of. |
| 06:26:20 | 22 | We have some --- the |
| 06:26:22 | 23 | Court will note some other matters. |
| 06:26:26 | 24 | Did you have a question, |
| 06:26:28 | 25 | Mr. Wiygul? |

1017

| | | |
|---|---|---|
| 06:26:28 | 1 | ATTORNEY WIYGUL: |
| 06:26:28 | 2 | Sorry, Your Honor. Just |
| 06:26:30 | 3 | with regard to one of those other |
| 06:26:31 | 4 | matters, which, at least from my |
| 06:26:33 | 5 | perspective, concerns potential |
| 06:26:34 | 6 | witness testimony, I just wanted to |
| 06:26:36 | 7 | clarify whether we wanted to resolve |
| 06:26:38 | 8 | that prior to the --- officially |
| 06:26:40 | 9 | closing the evidence and moving into |
| 06:26:42 | 10 | closing arguments? |
| 06:26:44 | 11 | JUDGE McCULLOUGH: |
| 06:26:44 | 12 | Are you are talking |
| 06:26:45 | 13 | about the affidavit? |
| 06:26:47 | 14 | ATTORNEY WIYGUL: |
| 06:26:47 | 15 | Correct. Yes. |
| 06:26:47 | 16 | JUDGE McCULLOUGH: |
| 06:26:48 | 17 | Well, I thought we were |
| 06:26:52 | 18 | going to deal with that during the |
| 06:26:53 | 19 | closing arguments. That would be |
| 06:26:55 | 20 | submitted as part of your closing |
| 06:26:57 | 21 | argument as a --- what was requested |
| 06:26:59 | 22 | was a schedule, a proposed --- the |
| 06:27:02 | 23 | current schedule, and you had offered |
| 06:27:05 | 24 | --- I guess, somebody wanted to do |
| 06:27:09 | 25 | this on your behalf to submit a |

1018

| | | |
|---|---|---|
| 06:27:10 | 1 | schedule of what would have to be |
| 06:27:12 | 2 | changed by the secretary, or what |
| 06:27:18 | 3 | should be changed for them to have the |
| 06:27:19 | 4 | election done in light of the current |
| 06:27:21 | 5 | timeframe. |
| 06:27:22 | 6 | ATTORNEY WIYGUL: |
| 06:27:23 | 7 | I understand. From our |
| 06:27:25 | 8 | prospective, we would like to present |
| 06:27:27 | 9 | witness testimony --- we being the |
| 06:27:29 | 10 | Department of State on the topic, |
| 06:27:31 | 11 | which I had understood was one of the |
| 06:27:32 | 12 | topics to be discussed in this hearing |
| 06:27:35 | 13 | on potential changes to the election |
| 06:27:39 | 14 | calendar. |
| 06:27:40 | 15 | And I understand from |
| 06:27:41 | 16 | our colloquy off the record that the |
| 06:27:43 | 17 | Court may have a different view as to |
| 06:27:46 | 18 | the proper scope of that testimony. |
| 06:27:47 | 19 | JUDGE McCULLOUGH: |
| 06:27:48 | 20 | Well, I think Counsel |
| 06:27:48 | 21 | has an objection of --- different |
| 06:27:51 | 22 | Counsel has different objections. |
| 06:27:52 | 23 | ATTORNEY WIYGUL: |
| 06:27:52 | 24 | Yes. |
| 06:27:53 | 25 | JUDGE McCULLOUGH: |

1019

| | | |
|---|---|---|
| 06:27:53 | 1 | So if you want to --- |
| 06:27:54 | 2 | did you provide everyone with a copy |
| 06:27:56 | 3 | all counsel have a copy? |
| 06:27:57 | 4 | ATTORNEY WIYGUL: |
| 06:27:58 | 5 | I did prior to our |
| 06:28:00 | 6 | conference, Your Honor. |
| 06:28:01 | 7 | JUDGE McCULLOUGH: |
| 06:28:01 | 8 | And are you moving that |
| 06:28:02 | 9 | into evidence? |
| 06:28:03 | 10 | ATTORNEY WIYGUL: |
| 06:28:04 | 11 | Yes, Your Honor. |
| 06:28:04 | 12 | JUDGE McCULLOUGH: |
| 06:28:04 | 13 | So any Counsel have |
| 06:28:05 | 14 | objection to moving into evidence the |
| 06:28:10 | 15 | --- could you identify it, Mr. Wiygul? |
| 06:28:14 | 16 | ATTORNEY WIYGUL: |
| 06:28:14 | 17 | Yes, Your Honor.  I |
| 06:28:14 | 18 | haven't marked it and I would like to |
| 06:28:14 | 19 | however is the best way to do that, |
| 06:28:16 | 20 | but I will identify it for the record, |
| 06:28:17 | 21 | this is an affidavit by Jonathan |
| 06:28:21 | 22 | Marks, who is the deputy secretary for |
| 06:28:23 | 23 | elections and commissions for the |
| 06:28:25 | 24 | Commonwealth's Department of State, |
| 06:28:29 | 25 | and I don't know what exhibit number |

1020

| | | |
|---|---|---|
| 06:28:33 | 1 | this should be. |
| 06:28:33 | 2 | JUDGE McCULLOUGH: |
| 06:28:34 | 3 | So if any Counsel has |
| 06:28:35 | 4 | any objection, would you please state |
| 06:28:36 | 5 | it for the record now. |
| 06:28:38 | 6 | ATTORNEY TUCKER: |
| 06:28:39 | 7 | Yes, Your Honor.  Robert |
| 06:28:41 | 8 | Tucker on behalf of the Republican |
| 06:28:44 | 9 | House Intervenors. |
| 06:28:44 | 10 | We don't object to |
| 06:28:45 | 11 | admitting the document but we would |
| 06:28:47 | 12 | object to the inclusion of |
| 06:28:48 | 13 | paragraphs 18 to 26, as though |
| 06:28:51 | 14 | paragraphs relate to deadlines related |
| 06:28:55 | 15 | to the legislative redistricting |
| 06:28:55 | 16 | process, not the congressional |
| 06:28:59 | 17 | redistricting process and they are not |
| 06:29:00 | 18 | relevant to these proceedings, and |
| 06:29:01 | 19 | they frankly don't need to be in |
| 06:29:02 | 20 | there. |
| 06:29:03 | 21 | Thank you. |
| 06:29:15 | 22 | JUDGE McCULLOUGH: |
| 06:29:16 | 23 | Were there other |
| 06:29:18 | 24 | Counsel?  I thought that had an |
| 06:29:20 | 25 | objection. |

1021

| | | |
|---|---|---|
| 06:29:20 | 1 | Okay. |
| 06:29:20 | 2 | You said paragraphs 18 |
| 06:29:22 | 3 | through 26. |
| 06:29:23 | 4 | Correct? |
| 06:29:24 | 5 | ATTORNEY TUCKER: |
| 06:29:24 | 6 | That's correct, Your |
| 06:29:32 | 7 | Honor. |
| 06:29:32 | 8 | JUDGE McCULLOUGH: |
| 06:29:32 | 9 | So I note for the |
| 06:29:33 | 10 | record, as paragraphs 18 through 26 as |
| 06:29:33 | 11 | noted in paragraph 20 of the affidavit |
| 06:29:40 | 12 | reference litigation that is currently |
| 06:29:41 | 13 | pending in this Court and is not |
| 06:29:43 | 14 | before this particular Court at this |
| 06:29:45 | 15 | time, this Judge in this trial, so the |
| 06:29:49 | 16 | Court would not include those |
| 06:29:51 | 17 | paragraphs simply because there's |
| 06:29:53 | 18 | pending litigation and cannot address |
| 06:29:57 | 19 | the issues, which will be addressed in |
| 06:29:59 | 20 | that case which you cite as David, et |
| 06:30:03 | 21 | al. versus Chapman at Number 22 MD |
| 06:30:06 | 22 | 2022. |
| 06:30:07 | 23 | ATTORNEY WIYGUL: |
| 06:30:08 | 24 | Thank you, Your Honor. |
| 06:30:08 | 25 | And I understand the |

1022

| | | |
|---|---|---|
| 06:30:09 | 1 | Court's ruling.  I'd just like to note |
| 06:30:12 | 2 | for the record, I understand the Court |
| 06:30:14 | 3 | is sustaining the grounds other than |
| 06:30:15 | 4 | hearsay.  To the extent there was a |
| 06:30:17 | 5 | hearsay objection, I just want to note |
| 06:30:19 | 6 | that we have Jonathan Marks here and |
| 06:30:23 | 7 | he's prepared to testify. |
| 06:30:23 | 8 | JUDGE McCULLOUGH; |
| 06:30:23 | 9 | I didn't hear him say a |
| 06:30:24 | 10 | hearsay objection on the record. |
| 06:30:25 | 11 | ATTORNEY TUCKER: |
| 06:30:26 | 12 | We're not objecting on |
| 06:30:27 | 13 | hearsay.  It's on relevance grounds. |
| 06:30:29 | 14 | JUDGE McCULLOUGH: |
| 06:30:30 | 15 | It's on relevance and |
| 06:30:33 | 16 | the fact that there is pending |
| 06:30:34 | 17 | litigation. |
| 06:30:35 | 18 | ATTORNEY TUCKER: |
| 06:30:35 | 19 | Correct, Your Honor. |
| 06:30:37 | 20 | ATTORNEY WIYGUL: |
| 06:30:37 | 21 | And I understand that |
| 06:30:38 | 22 | the Court is sustaining. |
| 06:30:39 | 23 | JUDGE McCULLOUGH: |
| 06:30:40 | 24 | I'm sustaining on the |
| 06:30:41 | 25 | relevance and the fact that |

1023

| | |
|---|---|
| 06:30:43 | 1 |
| 06:30:45 | 2 |
| 06:30:50 | 3 |
| 06:30:52 | 4 |
| 06:30:54 | 5 |
| 06:30:56 | 6 |
| 06:30:58 | 7 |
| 06:31:00 | 8 |

1  paragraph 20 of your affidavit clearly

2  states pending litigation,

3  paragraph 18 through 26 not in front

4  of this Court at this time.  So it

5  would be inappropriate for this Court,

6  one, to hear anything on that, and

7  two, on the relevance that matter is

8  not in particular before us.

9                  ATTORNEY WIYGUL:

10                 And I understand the

11  Court's ruling.  Thank you.

12                 And I understand that

13  the affidavit has been marked for the

14  record.

15                 JUDGE McCULLOUGH:

16                 And it's so admitted

17  with those exceptions.

18                 ATTORNEY WIYGUL:

19                 Thank you, Your Honor.

20                 JUDGE McCULLOUGH:

21                 Thank you very much for

22  providing it, Counsel.

23              Okay.

24                 Anything else?  I don't

25  want to assume that we don't have

1024

| | | |
|---|---|---|
| 06:31:22 | 1 | anything else for right now.  So we |
| 06:31:24 | 2 | will reconvene at 4:15.  And that |
| 06:31:30 | 3 | gives you all a little bit of a |
| 06:31:32 | 4 | comfort break, and then we will do |
| 06:31:39 | 5 | closing arguments. |
| 06:31:47 | 6 | COURT CRIER HOLLAND: |
| 06:31:47 | 7 | The Court is now in |
| 06:32:25 | 8 | recess. |
| 06:32:25 | 9 | --- |
| 06:32:25 | 10 | (WHEREUPON, A SHORT BREAK WAS TAKEN.) |
| 07:02:21 | 11 | --- |
| 07:02:21 | 12 | COURT CRIER HOLLAND: |
| 07:05:10 | 13 | All rise.  Commonwealth |
| 07:05:12 | 14 | Court is back in session. |
| 07:05:12 | 15 | JUDGE McCULLOUGH: |
| 07:05:13 | 16 | The much awaited moment, |
| 07:05:14 | 17 | right, closing arguments and wrapping |
| 07:05:21 | 18 | up this very expedited process.  So we |
| 07:05:25 | 19 | will begin but this time in reverse |
| 07:05:30 | 20 | order as we discussed at the pretrial |
| 07:05:36 | 21 | conference.  Are you ready?  No? |
| 07:05:53 | 22 | Okay. |
| 07:05:53 | 23 | JUDGE McCULLOUGH: |
| 07:05:53 | 24 | Are you, Mr. Attisano? |
| 07:05:59 | 25 | ATTORNEY ATTISANO: |

1025

| 07:05:59 | 1 | Yes, Your Honor. |
| 07:06:00 | 2 | JUDGE McCULLOUGH: |
| 07:06:00 | 3 | Okay.  Proceed. |
| 07:06:07 | 4 | ATTORNEY ATTISANO: |

07:06:21  5    Other counsel and may it

07:06:22  6  please the Court, Your Honor, first

07:06:26  7  I'd like to address the election

07:06:29  8  calendar issue.  And I would like the

07:06:32  9  Court to know that it's the position

07:06:33  10  of the Senate Democratic Caucus that

07:06:37  11  the 2022 primary election schedule

07:06:40  12  required by Pennsylvania law,

07:06:41  13  including the primary election itself

07:06:43  14  scheduled for May 17th, 2022, is

07:06:47  15  essentially unworkable at this point

07:06:49  16  in time.

07:06:50  17    It will disenfranchise

07:06:52  18  millions of Pennsylvania voters and

07:06:55  19  severely prejudice candidates running

07:06:56  20  for public office if it's not modified

07:06:59  21  by the Pennsylvania Supreme Court.

07:07:02  22  And as the Legislative Reapportionment

07:07:05  23  Commission has not yet approved the

07:07:06  24  final plan, the period for review of

07:07:08  25  the plan by the Pennsylvania Supreme

1026

| | | |
|---|---|---|
| 07:07:11 | 1 | Court has not yet commenced.  And |
| 07:07:13 | 2 | these facts together with this ongoing |
| 07:07:15 | 3 | litigation involving the congressional |
| 07:07:18 | 4 | map and today's decision IN <u>McLinko</u> |
| 07:07:21 | 5 | <u>versus Commonwealth of Pennsylvania</u> |
| 07:07:23 | 6 | involving mail-in voting compelled the |
| 07:07:24 | 7 | conclusion that the primary election |
| 07:07:27 | 8 | must be postponed and pre-primary |
| 07:07:30 | 9 | deadlines should be adjusted by the |
| 07:07:33 | 10 | Pennsylvania Supreme Court.  And |
| 07:07:33 | 11 | that's the position from the Senate |
| 07:07:37 | 12 | Democratic Caucus with regard to the |
| 07:07:39 | 13 | election calendar. |
| 07:07:39 | 14 | JUDGE McCULLOUGH: |
| 07:07:40 | 15 | Thank you. |
| 07:07:40 | 16 | ATTORNEY ATTISANO: |
| 07:07:41 | 17 | And moving on, Your |
| 07:07:42 | 18 | Honor, to addressing which map this |
| 07:07:45 | 19 | Court should choose in this |
| 07:07:47 | 20 | litigation, I'd first like to start by |
| 07:07:49 | 21 | just reiterating something I talked |
| 07:07:51 | 22 | about briefly in my opening, Your |
| 07:07:55 | 23 | Honor, and that was that with respect |
| 07:07:58 | 24 | to choosing HB-2146, the House put |
| 07:08:02 | 25 | forward by the rep --- excuse me, the |

1027

| | | |
|---|---|---|
| 07:08:08 | 1 | plan put forward by the Republican |
| 07:08:10 | 2 | legislative leaders, if this Court |
| 07:08:11 | 3 | were to pick that map, this Court |
| 07:08:14 | 4 | would be doing much more than simply |
| 07:08:16 | 5 | picking the map. |
| 07:08:17 | 6 | It would be shifting the |
| 07:08:20 | 7 | balance of powers between the |
| 07:08:22 | 8 | legislative branch and the executive |
| 07:08:24 | 9 | branch with respect to redistricting. |
| 07:08:27 | 10 | It would create incentive in the |
| 07:08:28 | 11 | future for whichever party is in the |
| 07:08:30 | 12 | majority in the legislative branch |
| 07:08:32 | 13 | whenever there is a member of the |
| 07:08:33 | 14 | opposing party in the Governor's |
| 07:08:36 | 15 | office to not move forward in a way |
| 07:08:40 | 16 | that passes legislation that the |
| 07:08:49 | 17 | Governor could sign into law because |
| 07:08:49 | 18 | they would know --- whichever party |
| 07:08:49 | 19 | was in that majority would know that |
| 07:08:50 | 20 | they could go to the judicial branch |
| 07:08:52 | 21 | and receive special deference or |
| 07:08:54 | 22 | special consideration as the |
| 07:08:57 | 23 | Republican legislators have requested |
| 07:09:04 | 24 | in this case with the plan. |
| 07:09:04 | 25 | And so by doing that and selecting |

1028

| | | |
|---|---|---|
| 07:09:05 | 1 | that map, this Court would be shifting |
| 07:09:07 | 2 | the balance of powers among the |
| 07:09:09 | 3 | legislative branch and executive |
| 07:09:09 | 4 | branch with respect to redistricting |
| 07:09:12 | 5 | and creating a disincentive for more |
| 07:09:16 | 6 | redistricting cases to end up in an |
| 07:09:19 | 7 | impasse and have to be resolved with |
| 07:09:23 | 8 | judicial litigation rather than being |
| 07:09:25 | 9 | resolved by the political branches. |
| 07:09:28 | 10 | And I will just say as |
| 07:09:29 | 11 | well that I would like to remind the |
| 07:09:32 | 12 | Court of something the Court is |
| 07:09:34 | 13 | already aware of, is that the only |
| 07:09:36 | 14 | elected official in this litigation, |
| 07:09:38 | 15 | in this process, that has received a |
| 07:09:41 | 16 | majority of votes from Pennsylvania is |
| 07:09:45 | 17 | Governor Wolf.  And so when the |
| 07:09:51 | 18 | Republican legislative leaders argue |
| 07:09:51 | 19 | that their plan has the support of the |
| 07:09:57 | 20 | people in some sense, I'd like to |
| 07:09:57 | 21 | remind the Court of the fact about |
| 07:09:58 | 22 | that Governor Wolf is the only elected |
| 07:10:02 | 23 | official involved in this that that |
| 07:10:04 | 24 | has received a majority of votes of |
| 07:10:06 | 25 | Pennsylvanians. |

1029

07:10:07    1          And additionally, Your Honor,
07:10:09    2    the HB-2146 has failed the Democratic
07:10:11    3    process.  And so that brings me to
07:10:14    4    which map this Court should select in
07:10:17    5    litigation.  And some of the experts
07:10:20    6    talked about tiers of maps and
07:10:23    7    clustered maps together and we heard a
07:10:27    8    lot about the six traditional
07:10:27    9    redistricting factors.  And in the
07:10:31   10    League of Women Voters case our
07:10:31   11    Supreme Court said something that I
07:10:33   12    think was very, very wise and forward
07:10:36   13    looking.
07:10:36   14          They acknowledge the
07:10:37   15    fact that due to the mathematical
07:10:43   16    capability we have, it's very possible
07:10:45   17    and even likely that somebody could
07:10:48   18    draw a map that on its face meets the
07:10:52   19    six traditional redistricting
07:10:54   20    principles that have been discussed at
07:10:56   21    length here these last two days.  And
07:10:58   22    so in that instance, the Court should
07:11:01   23    be considering the partisan fairness
07:11:02   24    of the map and it should go beyond
07:11:06   25    that facial criteria and look

1030

| | |
|---|---|
| 07:11:08 | 1 | underneath to see if that map in the |
| 07:11:11 | 2 | partisan fairness is violating the |
| 07:11:16 | 3 | Elections Clause of the Pennsylvania |
| 07:11:19 | 4 | Constitution. |
| 07:11:19 | 5 | And you heard at length from multiple |
| 07:11:21 | 6 | experts.  And the expert that Senate |
| 07:11:25 | 7 | Democratic Caucus put on focused |
| 07:11:28 | 8 | specifically on that question of |
| 07:11:29 | 9 | partisan fairness.  And he was able to |
| 07:11:31 | 10 | explain to this Court about symmetry |
| 07:11:34 | 11 | and the win bonus.  And I hope it all |
| 07:11:39 | 12 | came through with him being on video. |
| 07:11:41 | 13 | And I know it's been a lot of |
| 07:11:43 | 14 | information coming at everyone the |
| 07:11:45 | 15 | last couple days, but the biggest |
| 07:11:47 | 16 | takeaway from our expert witness, Your |
| 07:11:52 | 17 | Honor, I submit is that he talks about |
| 07:11:53 | 18 | symmetry, meaning that if the win |
| 07:11:57 | 19 | bonus occurs at a certain percentage |
| 07:11:59 | 20 | for party A, then it should also occur |
| 07:12:03 | 21 | for a certain percentage for party B. |
| 07:12:06 | 22 | And that indicates partisan fairness. |
| 07:12:08 | 23 | And that's what I was trying to flesh |
| 07:12:10 | 24 | out with him with respect to the |
| 07:12:12 | 25 | graph, is the visual representation of |

1031

```
07:12:14   1   that.  And so we just ask the Court to
07:12:16   2   really focus on that metric and their
07:12:20   3   analysis.
07:12:20   4             And as the Court
07:12:21   5   recalls, it was the HB-2146 and the
07:12:26   6   plan from Map Number 2 from
07:12:29   7   Reschenthaler which scored the worst
07:12:31   8   on the partisan fairness index as
07:12:34   9   reported by our expert.
07:12:36   10            And it was Senate
07:12:38   11  Democratic Caucus Plan 1 and Plan 2
07:12:42   12  that scored the highest on that.  And
07:12:45   13  so I'm really asking the Court today
07:12:47   14  to look at those initial six
07:12:51   15  redistricting principles and go on and
07:12:54   16  see what's underneath them.  Because
07:12:56   17  the vast majority of the maps on their
07:12:59   18  face do appear to meet those
07:13:00   19  principles.  But when it comes to
07:13:03   20  what's happening underneath with
07:13:04   21  respect to partisan fairness, there is
07:13:06   22  a wide range that's happening.  And
07:13:10   23  Your Honor, that is the factor that we
07:13:14   24  would ask the Court to look to in
07:13:17   25  making a final decision.
```

1032

07:13:19    1              And I thank you for your
07:13:20    2    time today.  Thank you for proceeding.
07:13:22    3    We know it couldn't --- we know it's
07:13:25    4    an unenviable task that's happening
07:13:29    5    here today, and thank you again for
07:13:31    6    permitting our expert to testify by
07:13:32    7    video.
07:13:32    8              JUDGE McCULLOUGH:
07:13:32    9              Thank you, Counsel, Mr.
07:13:35   10    Attisano.  Now, Mr. Senoff for House
07:13:44   11    Democratic Intervenors.
07:13:46   12              ATTORNEY SENOFF:
07:13:52   13              Good afternoon.  Your
07:13:53   14    Honor, may it please the Court, David
07:13:55   15    Senoff for Intervenors, the House
07:14:01   16    Democratic Caucus.  Your Honor, this
07:14:02   17    case is something.
07:14:05   18              As you quite correctly
07:14:07   19    pointed out when you took the bench,
07:14:09   20    this is not exactly like League of
07:14:13   21    Women Voters, not exactly like the
07:14:14   22    Mellow case.  Nobody is asking that
07:14:19   23    any currently enforced map be ruled
07:14:22   24    unconstitutional because we know that
07:14:26   25    the map that we currently have is

1033

| | | |
|---|---|---|
| 07:14:28 | 1 | obsolete given the results of the |
| 07:14:30 | 2 | census. |
| 07:14:31 | 3 | So instead, what we've been |
| 07:14:32 | 4 | doing over the last two days is we |
| 07:14:34 | 5 | focused on the technical details of |
| 07:14:36 | 6 | redistricting, the minute differences |
| 07:14:43 | 7 | between these maps, and the --- using |
| 07:14:46 | 8 | in some cases the minute technical |
| 07:14:50 | 9 | differences to obscure the larger |
| 07:14:52 | 10 | point in this case. And what you're |
| 07:14:54 | 11 | --- what we saw over two days and what |
| 07:14:57 | 12 | you're being asked to decide is not |
| 07:15:00 | 13 | really a beauty contest between maps. |
| 07:15:03 | 14 | We've used that term shorthandly, but |
| 07:15:08 | 15 | when --- but the question, in all |
| 07:15:11 | 16 | seriousness, is whether Pennsylvania's |
| 07:15:17 | 17 | elections will be fair and allow every |
| 07:15:18 | 18 | voter to have an equal opportunity to |
| 07:15:18 | 19 | elect their chosen candidate, win or |
| 07:15:18 | 20 | lose. |
| 07:15:24 | 21 | The Republican Intervenors |
| 07:15:26 | 22 | have noted that the United States and |
| 07:15:28 | 23 | Pennsylvania Constitutions --- I'm |
| 07:15:32 | 24 | sorry, the United States and |
| 07:15:34 | 25 | Pennsylvania Constitutions permit |

1034

07:15:37  1   Congressional redistricting to be a,

07:15:42  2   quote, fundamentally legislative task

07:15:44  3   and their proposals should, therefore,

07:15:46  4   somehow be given some deference.  Of

07:15:47  5   course, as I said in my opening

07:15:49  6   statement, that does not mean that the

07:15:50  7   legislature have the sole voice.

07:15:53  8            The Supreme Court of the

07:15:55  9   United States held in the Arizona

07:15:56  10  State Legislature case that

07:15:57  11  redistricting can take different forms

07:16:01  12  in different states.  And in Arizona

07:16:04  13  they had a Redistricting Commission.

07:16:05  14  In Pennsylvania, Congressional maps

07:16:07  15  are developed through the normal

07:16:09  16  legislative process.

07:16:12  17            They are proposed in a

07:16:13  18  bill.  They have to pass both Houses.

07:16:15  19  The Governor then has to sign or veto

07:16:22  20  it.  As we know, the Governor vetoed

07:16:29  21  the one bill.

07:16:30  22            And so there's clearly a role

07:16:30  23  for all branches of government,

07:16:31  24  including the courts.  And the role

07:16:33  25  for the courts is you have to decide

1035

07:16:36   1    which criteria, the neutral criteria

07:16:39   2    set forth in Mellow and then later in

07:16:44   3    League of Women Voters, has that been

07:16:47   4    met.  And I think it is Attorney Voss

07:16:48   5    that used the phrase entry free ---

07:16:52   6    entry fee.  And I wrote that down

07:16:54   7    because I liked it because it's worth

07:16:56   8    noting that --- that entry fee is sort

07:17:00   9    of the minimum standard that your map

07:17:04   10   needs to meet in order to get into the

07:17:07   11   contest.  But that's not the end of

07:17:09   12   the question.  Right.

07:17:10   13          And I note that the

07:17:12   14          Republican Intervenors

07:17:14   15          supported the Congressional map

07:17:17   16          in 2018 that was ultimately

07:17:19   17          found unconstitutional.  But my

07:17:21   18          broader point is, is that

07:17:23   19          there's a longstanding,

07:17:25   20          established and most

07:17:26   21          importantly constitutional

07:17:28   22          process for creating

07:17:30   23          Congressional districts in

07:17:32   24          Pennsylvania that does not make

07:17:34   25          the legislature paramount to

1036

| | | |
|---|---|---|
| 07:17:39 | 1 | other co-equal branches of |
| 07:17:42 | 2 | government.  And that is what |
| 07:17:43 | 3 | makes the Republican |
| 07:17:48 | 4 | Intervenors calling for this |
| 07:17:49 | 5 | Court to give the now vetoed |
| 07:17:49 | 6 | map some kind of deference or |
| 07:17:54 | 7 | preference kind of |
| 07:17:55 | 8 | extraordinary in my mind. |
| 07:17:57 | 9 | Doing what the |
| 07:17:59 | 10 | Republican Intervenors have ask |
| 07:17:59 | 11 | the Court to do, select their |
| 07:18:02 | 12 | preferred map despite it being |
| 07:18:04 | 13 | vetoed by the Governor, would |
| 07:18:06 | 14 | have the Court do what the |
| 07:18:07 | 15 | intervenors could not do as |
| 07:18:09 | 16 | leaders of the legislature |
| 07:18:12 | 17 | chambers, garner enough votes |
| 07:18:14 | 18 | to override the Governor's |
| 07:18:14 | 19 | veto. |
| 07:18:19 | 20 | I'm not aware of another |
| 07:18:21 | 21 | situation in juris prudentially |
| 07:18:22 | 22 | which a court forced the |
| 07:18:23 | 23 | adoption of a bill onto the |
| 07:18:25 | 24 | citizens of the Commonwealth |
| 07:18:27 | 25 | that had been vetoed by the |

1037

| | | |
|---|---|---|
| 07:18:30 | 1 | Governor.  That's not how the |
| 07:18:31 | 2 | system was designed to work and |
| 07:18:34 | 3 | that's essentially what they're |
| 07:18:36 | 4 | asking this Court to do by |
| 07:18:38 | 5 | asking the Court to simply give |
| 07:18:40 | 6 | their map deference by virtue |
| 07:18:44 | 7 | of the fact that it passed two |
| 07:18:47 | 8 | houses. |
| 07:18:48 | 9 | And it's not exactly |
| 07:18:49 | 10 | correct that the map was --- |
| 07:18:52 | 11 | that particular map was the |
| 07:18:57 | 12 | only one proposed that was |
| 07:18:59 | 13 | drawn in public but through an |
| 07:19:01 | 14 | accountable process.  And that |
| 07:19:04 | 15 | it represents the will of the |
| 07:19:06 | 16 | legislature, but you know, the |
| 07:19:07 | 17 | map was drawn in a partisan |
| 07:19:14 | 18 | process and it was approved in |
| 07:19:15 | 19 | a partisan manner.  Not a |
| 07:19:16 | 20 | single Democratic in the |
| 07:19:19 | 21 | General Assembly voted for that |
| 07:19:19 | 22 | map.  And House Bill 2146 was |
| 07:19:24 | 23 | rejected in a bipartisan manner |
| 07:19:26 | 24 | because some House Republican |
| 07:19:29 | 25 | members actually did not vote |

1038

| | | |
|---|---|---|
| 07:19:30 | 1 | for it.  So if you need |
| 07:19:31 | 2 | additional evidence that House |
| 07:19:34 | 3 | Bill 2146 is not the |
| 07:19:36 | 4 | legislature's maps, all you |
| 07:19:37 | 5 | need to do is consider that all |
| 07:19:40 | 6 | four caucuses of the General |
| 07:19:42 | 7 | Assembly separately are |
| 07:19:43 | 8 | intervenors in this case.  The |
| 07:19:44 | 9 | map approved by the legislature |
| 07:19:46 | 10 | is merely a reflection of the |
| 07:19:50 | 11 | position of the leaders of the |
| 07:19:52 | 12 | Republican party and |
| 07:19:52 | 13 | legislature, two of the four |
| 07:19:55 | 14 | caucuses. |
| 07:19:55 | 15 | It doesn't automatically |
| 07:19:58 | 16 | cloak those maps in some type |
| 07:19:59 | 17 | of presumption of fairness, |
| 07:20:05 | 18 | legality or even inequality. |
| 07:20:05 | 19 | The Republican map --- the |
| 07:20:11 | 20 | Republican map, House Bill |
| 07:20:13 | 21 | 2146, therefore is due no |
| 07:20:13 | 22 | deference. |
| 07:20:14 | 23 | Of course, partnership |
| 07:20:16 | 24 | should not be and is not the |
| 07:20:19 | 25 | sole criterion for rejecting a |

1039

| | | |
|---|---|---|
| 07:20:20 | 1 | map.  Redistricting of course |
| 07:20:22 | 2 | is an inherently political |
| 07:20:25 | 3 | process.  But when partisanship |
| 07:20:28 | 4 | manifests itself as --- under |
| 07:20:28 | 5 | constitutional criteria, those |
| 07:20:29 | 6 | maps cannot go forward.  And |
| 07:20:31 | 7 | while the Republican |
| 07:20:32 | 8 | Intervenors may dismiss those |
| 07:20:33 | 9 | concerns as policy choices, |
| 07:20:36 | 10 | that's just not true because |
| 07:20:38 | 11 | that's not Pennsylvania law. |
| 07:20:40 | 12 | And so what I would like |
| 07:20:42 | 13 | to say briefly in closing is |
| 07:20:46 | 14 | just take a look at some of the |
| 07:20:50 | 15 | things that these maps have |
| 07:20:53 | 16 | done, the Republican maps have |
| 07:20:55 | 17 | done, particularly both the |
| 07:20:57 | 18 | House and Senate proposal and |
| 07:20:58 | 19 | the Congressional Republican |
| 07:21:00 | 20 | proposal.  We're going to go |
| 07:21:02 | 21 | from an even split to nine |
| 07:21:05 | 22 | Republican safe seats when |
| 07:21:07 | 23 | there are 500,000 more |
| 07:21:10 | 24 | registered Democrats in |
| 07:21:12 | 25 | Pennsylvania. |

1040

| | | |
|---|---|---|
| 07:21:13 | 1 | There will be the split |
| 07:21:14 | 2 | of Harrisburg.  There will be |
| 07:21:16 | 3 | the movement of Philadelphia |
| 07:21:17 | 4 | suburbs into more rural |
| 07:21:18 | 5 | districts, not to mention |
| 07:21:20 | 6 | whatever would happen with the |
| 07:21:22 | 7 | City of Pittsburgh. |
| 07:21:24 | 8 | So all lumped together, |
| 07:21:26 | 9 | these indelible defects make |
| 07:21:29 | 10 | the maps proposed by the |
| 07:21:30 | 11 | leaders of the House and Senate |
| 07:21:32 | 12 | Republicans and Republican |
| 07:21:35 | 13 | Congressional Intervenors |
| 07:21:38 | 14 | unacceptable under the |
| 07:21:38 | 15 | constitutional criteria. |
| 07:21:39 | 16 | And I see my time is |
| 07:21:40 | 17 | short and I would just like to |
| 07:21:42 | 18 | close by saying, you know, I |
| 07:21:48 | 19 | don't envy your job right now |
| 07:21:50 | 20 | particularly because to me the |
| 07:21:53 | 21 | issue is not which map is |
| 07:21:56 | 22 | better under these criteria. |
| 07:21:57 | 23 | All these maps are the same |
| 07:21:59 | 24 | within a range of |
| 07:22:00 | 25 | reasonableness.  Likely anybody |

1041

| | | |
|---|---|---|
| 07:22:02 | 1 | could find that one of these |
| 07:22:05 | 2 | maps satisfies the |
| 07:22:07 | 3 | constitutional criteria.  But |
| 07:22:08 | 4 | the question is what do you do |
| 07:22:10 | 5 | to break the tie. |
| 07:22:11 | 6 | And I think to break the |
| 07:22:13 | 7 | tie, one, you would look at |
| 07:22:15 | 8 | Mellow and at the League of |
| 07:22:20 | 9 | Women Voters case where the |
| 07:22:21 | 10 | Supreme Court predicted that |
| 07:22:25 | 11 | map mapping would advance to |
| 07:22:26 | 12 | the point where you could make |
| 07:22:27 | 13 | up a map that met the six |
| 07:22:32 | 14 | constitutional criteria but |
| 07:22:33 | 15 | still not satisfy |
| 07:22:35 | 16 | Pennsylvania's Free and Equal |
| 07:22:38 | 17 | Election Clause.  And so, as a |
| 07:22:41 | 18 | result, we would suggest that |
| 07:22:42 | 19 | this Court take a  look at some |
| 07:22:43 | 20 | of the subjective factors that |
| 07:22:44 | 21 | all of these witnesses |
| 07:22:45 | 22 | testified about and consider |
| 07:22:47 | 23 | the partisan makeup of these |
| 07:22:50 | 24 | various districts in order to |
| 07:22:53 | 25 | protect the power of one person |

1042

| | | |
|---|---|---|
| 07:22:56 | 1 | and one vote and not to dilute |
| 07:22:58 | 2 | any votes of any Pennsylvanian. |
| 07:23:03 | 3 | Thank you, Your Honor. |
| 07:23:04 | 4 | And as for the election |
| 07:23:06 | 5 | calendar, if I may just briefly |
| 07:23:07 | 6 | ---? |
| 07:23:07 | 7 | JUDGE McCULLOUGH: |
| 07:23:08 | 8 | Yes. |
| 07:23:09 | 9 | ATTORNEY SENOFF: |
| 07:23:09 | 10 | We agree with the Senate |
| 07:23:09 | 11 | Republicans. But as I said in |
| 07:23:10 | 12 | conference earlier, I did have |
| 07:23:13 | 13 | a chance to take a look at |
| 07:23:14 | 14 | President Judge Craig's Opinion |
| 07:23:17 | 15 | in Mellow, which is appended to |
| 07:23:21 | 16 | the Supreme Court's Opinion, |
| 07:23:24 | 17 | and he does talk about in there |
| 07:23:28 | 18 | that the idea of maintaining a |
| 07:23:30 | 19 | single primary day should be |
| 07:23:33 | 20 | something that would be given |
| 07:23:36 | 21 | paramount consideration in |
| 07:23:39 | 22 | order just to avoid the |
| 07:23:40 | 23 | confusion of potentially having |
| 07:23:42 | 24 | a primary for congressional and |
| 07:23:44 | 25 | a primary for everybody else on |

1043

07:23:47   1        different timelines with
07:23:49   2        different petitioning periods,
07:23:49   3        it would just be
07:23:55   4        administratively unworkable.
07:23:56   5        So I suggest his solution seems
07:23:58   6        like a reasonable one in this
07:24:00   7        instance.  Thank you, Your
07:24:01   8        Honor.
07:24:01   9               JUDGE McCULLOUGH:
07:24:01   10              Thank you very much,
07:24:02   11       counsel.  Next we'll move to
07:24:02   12       Congressional Intervenors.
07:24:17   13       Attorney Haverstick?
07:24:17   14              ATTORNEY HAVERSTICK:
07:24:18   15              May it please the Court,
07:24:18   16       good afternoon, Your Honor.
07:24:20   17       Matt Haverstick for the
07:24:21   18       Congressional Intervenors.
07:24:23   19              Let's start where we
07:24:24   20       always must, the Constitution.
07:24:27   21       Article 2, Section 16, has been
07:24:30   22       applied by League of Women
07:24:32   23       Voters to this context is a
07:24:34   24       directed to the Court and to
07:24:36   25       the General Assembly, but here

1044

| | | |
|---|---|---|
| 07:24:38 | 1 | we're talking about the Court, |
| 07:24:39 | 2 | about what the floor |
| 07:24:40 | 3 | considerations are for a map. |
| 07:24:42 | 4 | These are must haves. These |
| 07:24:46 | 5 | can't be negotiated away. They |
| 07:24:48 | 6 | can't be watered down. They |
| 07:24:48 | 7 | can't be bargained away. They |
| 07:24:48 | 8 | can't be traded up. |
| 07:24:53 | 9 | With these metrics the |
| 07:24:55 | 10 | Reschenthaler maps are |
| 07:24:57 | 11 | superior, they are at the top, |
| 07:24:58 | 12 | the top two I believe in terms |
| 07:25:00 | 13 | of compactness. Of course, I |
| 07:25:06 | 14 | think we all recognize --- and |
| | 15 | parenthetically, it's |
| | 16 | recognized by Dr. Burnell's |
| | 17 | report that numerically our |
| | 18 | districts are equivalent as |
| | 19 | they need to be. Dr. Brunell's |
| | 20 | report has not been rebutted by |
| | 21 | any expert or any other |
| | 22 | testimony in this case. |
| 07:25:23 | 23 | The most important |
| 07:25:25 | 24 | factor I think, though, for |
| 07:25:26 | 25 | this Court to look at when it's |

1045

| | |
|---|---|
| 07:25:27 | 1 |
| 07:25:28 | 2 |
| 07:25:30 | 3 |
| 07:25:36 | 4 |
| 07:25:38 | 5 |
| 07:25:40 | 6 |
| 07:25:41 | 7 |
| 07:25:42 | 8 |
| 07:25:44 | 9 |
| 07:25:45 | 10 |
| 07:25:46 | 11 |
| 07:25:52 | 12 |
| 07:25:53 | 13 |
| 07:25:55 | 14 |
| 07:25:56 | 15 |
| 07:25:57 | 16 |
| 07:25:59 | 17 |
| 07:26:00 | 18 |
| 07:26:04 | 19 |
| 07:26:07 | 20 |
| 07:26:10 | 21 |
| 07:26:10 | 22 |
| 07:26:10 | 23 |
| 07:26:16 | 24 |
| 07:26:16 | 25 |

considering the hard stop
constitutional requirements are
splits.  The language again in
Article 2, Section 16, is
directive.  It doesn't brook
any compromise when it says
split the least amount of
counties, districts, et cetera,
as possible.

There's only one map
that splits counties --- really
there's two maps that split the
counties in the least amount at
13, and those are the
Reschenthaler maps.

Other experts have
acknowledged that they could
have drawn maps with 13 county
splits if possible but they
didn't.  There has been no
evidence presented of any other
map by any of the presenters
that split counties that equal
amount or less than the
Reschenthaler maps.

1046

| | | |
|---|---|---|
| 07:26:17 | 1 | The Reschenthaler maps |
| 07:26:18 | 2 | also tied. I think for first |
| 07:26:18 | 3 | place, if you want to look at |
| 07:26:24 | 4 | it that way for municipal |
| 07:26:26 | 5 | splits. So there are two maps |
| 07:26:27 | 6 | that undisputedly perform |
| 07:26:29 | 7 | better than any other on |
| 07:26:30 | 8 | objective factors in the |
| 07:26:33 | 9 | constitution, and those are the |
| 07:26:34 | 10 | Reschenthaler maps. |
| 07:26:35 | 11 | Now, I recognize that |
| 07:26:35 | 12 | the Court may not see it that |
| 07:26:37 | 13 | way. They may have a different |
| 07:26:38 | 14 | view of what the constitution |
| 07:26:40 | 15 | requires. And I credit Mr. |
| 07:26:42 | 16 | Senoff for acknowledging that |
| 07:26:45 | 17 | there are other things that can |
| 07:26:49 | 18 | be looked at in your decision |
| 07:26:50 | 19 | for what maps --- or what map |
| 07:26:52 | 20 | is the appropriate |
| 07:26:54 | 21 | Congressional map for |
| 07:26:55 | 22 | Pennsylvania. |
| 07:26:56 | 23 | You know, I had thought |
| 07:26:57 | 24 | at one point even this |
| 07:26:59 | 25 | afternoon that I was going to |

1047

| | | |
|---|---|---|
| 07:27:00 | 1 | come to the podium and bash on |
| 07:27:06 | 2 | computers and bash on computers |
| 07:27:07 | 3 | and make some funny statement |
| 07:27:07 | 4 | INEAC or Watson or something |
| 07:27:10 | 5 | like that.  But you know, |
| 07:27:10 | 6 | especially with Dr. Duchin |
| 07:27:13 | 7 | yesterday, I've come to |
| 07:27:14 | 8 | understand and appreciate these |
| 07:27:16 | 9 | computer models.  Because when |
| 07:27:19 | 10 | they are applied neutrally to |
| 07:27:20 | 11 | Pennsylvania's admittedly |
| 07:27:22 | 12 | unique political geography that |
| 07:27:25 | 13 | multiple experts, including Dr. |
| 07:27:27 | 14 | Duchin recognized favor |
| 07:27:28 | 15 | Republicans not by malice, not |
| 07:27:31 | 16 | because of a grand plan, it's |
| 07:27:34 | 17 | just where people live in |
| 07:27:36 | 18 | Pennsylvania, an immutable |
| 07:27:36 | 19 | characteristic at least for ten |
| 07:27:38 | 20 | years.  When computers run |
| 07:27:39 | 21 | those models, applying our |
| 07:27:41 | 22 | neutral constitutional |
| 07:27:43 | 23 | criteria, guess what, the maps |
| 07:27:45 | 24 | are overwhelmingly favorable to |
| 07:27:48 | 25 | Republican congressional seats. |

1048

| | |
|---|---|
| 07:27:51 | 1 |
| 07:27:54 | 2 |
| 07:27:56 | 3 |
| 07:27:58 | 4 |
| 07:27:59 | 5 |
| 07:28:00 | 6 |
| 07:28:02 | 7 |
| 07:28:03 | 8 |
| 07:28:05 | 9 |
| 07:28:07 | 10 |
| 07:28:09 | 11 |
| 07:28:12 | 12 |
| 07:28:14 | 13 |
| 07:28:15 | 14 |
| 07:28:19 | 15 |
| 07:28:21 | 16 |
| 07:28:23 | 17 |
| 07:28:24 | 18 |
| 07:28:26 | 19 |
| 07:28:31 | 20 |
| 07:28:33 | 21 |
| 07:28:35 | 22 |
| 07:28:37 | 23 |
| 07:28:38 | 24 |
| 07:28:39 | 25 |

Overwhelmingly favorable.

So Dr. Duchin and multiple other experts acknowledge in the state and nature of Pennsylvania when you run these maps with the neutral criteria, they favor Republicans.

I like it. I think that is indicative of the map that we drew and the Reschenthaler maps. And I think that's the right result, because it's a neutral application of facts on the ground, numbers on the ground, the census data.

Here's the part of the computing that I don't like. We heard lots of testimony about map equations and formula that purport to resolve a problem that isn't really a problem. This idea that there's got to be partisan fairness. That there's an

1049

| | | |
|---|---|---|
| 07:28:41 | 1 | efficiency gap, that votes are |
| 07:28:44 | 2 | wasted. And by the way, what |
| 07:28:45 | 3 | an offensive thing to say. |
| 07:28:47 | 4 | That if you learn that your |
| 07:28:50 | 5 | vote, if you cast, might not |
| 07:28:51 | 6 | help your candidate win because |
| 07:28:55 | 7 | somebody has too many votes, or |
| 07:28:57 | 8 | you know, your candidate is |
| 07:28:58 | 9 | going to get so many votes that |
| 07:29:00 | 10 | it doesn't matter, that your |
| 07:29:04 | 11 | vote is wasted. Is that what |
| 07:29:04 | 12 | these folks are telling |
| 07:29:05 | 13 | Pennsylvanians to do, don't |
| 07:29:05 | 14 | bothering voting your votes are |
| 07:29:10 | 15 | wasted. I'm sorry, I'm not |
| 07:29:10 | 16 | going to waste my time talking |
| 07:29:13 | 17 | about that. |
| 07:29:14 | 18 | But I do want to talk |
| 07:29:15 | 19 | about these equations that are |
| 07:29:17 | 20 | trying to over correct or make |
| 07:29:18 | 21 | more fair or make more |
| 07:29:24 | 22 | representatives and eliminate |
| 07:29:24 | 23 | what these experts acknowledge |
| 07:29:24 | 24 | is, again, an immutable fact |
| 07:29:24 | 25 | about Pennsylvania's political |

1050

| | | |
|---|---|---|
| 07:29:30 | 1 | geography that Republicans live |
| 07:29:31 | 2 | in the T.  Democrats are |
| 07:29:32 | 3 | concentrated in southeast and |
| 07:29:36 | 4 | in the southwest and to fix |
| 07:29:37 | 5 | that, we have to have all of |
| 07:29:39 | 6 | these other formulas to spread |
| 07:29:41 | 7 | this out. |
| 07:29:42 | 8 | There are two primary |
| 07:29:43 | 9 | problems I have with that, Your |
| 07:29:43 | 10 | Honor.  The first thing we |
| 07:29:44 | 11 | don't have a parliament.  We |
| 07:29:46 | 12 | have a Congress.  We have a |
| 07:29:47 | 13 | winner take all electoral |
| 07:29:49 | 14 | system and there are going to |
| 07:29:51 | 15 | be times where the vote count |
| 07:29:52 | 16 | for statewide races when you do |
| 07:29:54 | 17 | partisan splits or party |
| 07:29:57 | 18 | politic splits are going to |
| 07:29:59 | 19 | suggest well, there were more |
| 07:30:01 | 20 | Republicans voting statewide in |
| 07:30:03 | 21 | a race than in individual |
| 07:30:05 | 22 | districts who elected Democrats |
| 07:30:07 | 23 | or Republicans, and those |
| 07:30:08 | 24 | numbers aren't always going to |
| 07:30:10 | 25 | match up. |

1051

| | | |
|---|---|---|
| 07:30:11 | 1 | But that's what happens |
| 07:30:12 | 2 | sometimes when you don't have a |
| 07:30:18 | 3 | parliamentary system.  And we |
| 07:30:18 | 4 | don't turn parliament with |
| 07:30:19 | 5 | these false or ginned up |
| 07:30:24 | 6 | equations that are really back |
| 07:30:24 | 7 | to gerrymander.  But here's the |
| 07:30:27 | 8 | more pressing problem with |
| 07:30:29 | 9 | these things. |
| 07:30:30 | 10 | And it was candidly --- |
| 07:30:32 | 11 | and I appreciate you saying so, |
| 07:30:32 | 12 | acknowledged by Dr. Duchin, |
| 07:30:36 | 13 | these formulas are attempts to |
| 07:30:37 | 14 | offer correct for a very |
| 07:30:38 | 15 | specific partisan purpose, the |
| 07:30:41 | 16 | natural inclination of |
| 07:30:42 | 17 | Pennsylvanians to elect |
| 07:30:46 | 18 | Republicans based on political |
| 07:30:47 | 19 | geography. |
| 07:30:48 | 20 | Again, not based on |
| 07:30:49 | 21 | malice or intent, just based on |
| 07:30:53 | 22 | where they live.  She testified |
| 07:30:56 | 23 | I like these formulas because |
| 07:30:56 | 24 | they're going to spread out |
| 07:30:57 | 25 | more Democratic votes and |

1052

| | | |
|---|---|---|
| 07:31:00 | 1 | they're going to make it more |
| 07:31:01 | 2 | even.  And I am doing that |
| 07:31:02 | 3 | deliberately.  That's |
| 07:31:03 | 4 | gerrymandering. |
| 07:31:03 | 5 | When you --- that's |
| 07:31:05 | 6 | gerrymandering, and that's what |
| 07:31:05 | 7 | the League of Women Voters had |
| 07:31:08 | 8 | a problem with.  The Supreme |
| 07:31:10 | 9 | Court had a problem with League |
| 07:31:12 | 10 | of Women Voters this notion |
| 07:31:13 | 11 | that you should ignore facially |
| 07:31:15 | 12 | neutral criteria and instead |
| 07:31:18 | 13 | try to purposely district based |
| 07:31:21 | 14 | on party politics.  That's a |
| 07:31:23 | 15 | gerrymander. |
| 07:31:24 | 16 | When the Governor splits |
| 07:31:26 | 17 | Pittsburgh in two, I would |
| 07:31:27 | 18 | submit that is a funny shape, |
| 07:31:29 | 19 | just like the funny shapes that |
| 07:31:30 | 20 | were attacked in League of |
| 07:31:33 | 21 | Women Voters, and especially |
| 07:31:33 | 22 | when it's done for the |
| 07:31:34 | 23 | invalidly --- for the |
| 07:31:40 | 24 | admittedly invalid purpose of a |
| 07:31:43 | 25 | partisan basis or for partisan |

1053

| 07:31:45 | 1 | politics, which is spread out |
| 07:31:47 | 2 | Democrats so they have more |
| 07:31:50 | 3 | influence.  That is |
| 07:31:50 | 4 | gerrymandering.  We can't do |
| 07:31:52 | 5 | that.  This Court can't do |
| 07:31:53 | 6 | that. |
| 07:31:54 | 7 | I'm out of time, Your |
| 07:31:55 | 8 | Honor.  I'd like to close by |
| 07:31:56 | 9 | acknowledging that Dr. Naughton |
| 07:32:00 | 10 | while not a mathematician, not |
| 07:32:02 | 11 | a computer scientist, I think, |
| 07:32:03 | 12 | had something very valuable to |
| 07:32:06 | 13 | talk to this Court about.  And |
| 07:32:07 | 14 | it wasn't about which map is |
| 07:32:12 | 15 | --- is sort of the best. |
| 07:32:13 | 16 | Right?  Although I would |
| 07:32:14 | 17 | say --- and I wasn't the one |
| 07:32:15 | 18 | that asked him the question. |
| 07:32:16 | 19 | The only testimony from Dr. |
| 07:32:18 | 20 | Naughton about a good map in |
| 07:32:19 | 21 | terms of the political |
| 07:32:20 | 22 | geography was the Reschenthaler |
| 07:32:23 | 23 | maps. |
| 07:32:23 | 24 | But what Dr. Naughton |
| 07:32:26 | 25 | reminded us and reminded this |

1054

| | | |
|---|---|---|
| 07:32:28 | 1 | Court is that we are |
| 07:32:29 | 2 | redistricting for people.  We |
| 07:32:31 | 3 | are not redistricting for |
| 07:32:33 | 4 | political parties, we're not |
| 07:32:35 | 5 | redistricting for particular |
| 07:32:38 | 6 | Congressmen and women, we're |
| 07:32:40 | 7 | redistricting for |
| 07:32:41 | 8 | Pennsylvanians.  And these |
| 07:32:43 | 9 | Pennsylvanians deserve to get |
| 07:32:44 | 10 | districts that reflect, as Dr. |
| 07:32:47 | 11 | Naughton said, not that they |
| 07:32:49 | 12 | are red or blue widgets but |
| 07:32:51 | 13 | they are people who, frankly, |
| 07:32:52 | 14 | don't think about politics, he |
| 07:32:54 | 15 | testified all that much at all. |
| 07:32:55 | 16 | They have a lot more important |
| 07:32:57 | 17 | things going on.  And |
| 07:33:00 | 18 | understanding what those |
| 07:33:02 | 19 | important things are and |
| 07:33:03 | 20 | understanding why they care |
| 07:33:04 | 21 | about their communities, why |
| 07:33:06 | 22 | they want to be associated in |
| 07:33:07 | 23 | one community and not another. |
| 07:33:09 | 24 | Where there natural affinities |
| 07:33:11 | 25 | are.  What they are pressing |

1055

| | | |
|---|---|---|
| 07:33:13 | 1 | social and economic issues are, |
| 07:33:14 | 2 | those are the things that you |
| 07:33:16 | 3 | have to bear in mind. |
| 07:33:17 | 4 | JUDGE McCULLOUGH: |
| 07:33:17 | 5 | And Counsel, could you |
| 07:33:18 | 6 | also just address the election |
| 07:33:20 | 7 | schedule quickly. |
| 07:33:24 | 8 | ATTORNEY HAVERSTICK: |
| 07:33:24 | 9 | Quickly, Your Honor, |
| 07:33:25 | 10 | there is absolutely no reason |
| 07:33:26 | 11 | to move the calendar.  I don't |
| 07:33:28 | 12 | yet take a position onto move |
| 07:33:30 | 13 | the primary.  I think that's |
| 07:33:31 | 14 | premature. |
| 07:33:32 | 15 | But in 2018 the |
| 07:33:34 | 16 | Secretary moved the calendar, |
| 07:33:38 | 17 | and I think the --- you know, |
| 07:33:39 | 18 | if you correct for this year's |
| 07:33:40 | 19 | calendar, it would be I think |
| 07:33:41 | 20 | February 22nd we could have a |
| 07:33:43 | 21 | map.  It's not the first time |
| 07:33:44 | 22 | the Secretary had said we can't |
| 07:33:45 | 23 | do it, we can't do it and does |
| 07:33:47 | 24 | it.  They did it in League of |
| 07:33:51 | 25 | Women Voters, they frankly did |

1056

| | | |
|---|---|---|
| 07:33:52 | 1 | it in the ballot question |
| 07:33:54 | 2 | issue, if you recall a few |
| 07:33:56 | 3 | years ago and it got changed at |
| 07:33:59 | 4 | the last minute for retirement |
| 07:34:01 | 5 | age for Justices.  And they |
| 07:34:04 | 6 | said they couldn't move the |
| 07:34:04 | 7 | deadlines and then they moved |
| 07:34:05 | 8 | the deadlines and it all worked |
| 07:34:05 | 9 | out fine.  It can be done. |
| 07:34:06 | 10 | JUDGE MCCULLOUGH: |
| 07:34:06 | 11 | Okay. |
| 07:34:07 | 12 | Just to be clear, did |
| 07:34:07 | 13 | you say no reason not to move |
| 07:34:09 | 14 | the calendar. |
| 07:34:10 | 15 | ATTORNEY HAVERSTICK: |
| 07:34:10 | 16 | I think the calendar |
| 07:34:11 | 17 | should be moved. |
| 07:34:12 | 18 | JUDGE McCULLOUGH: |
| 07:34:15 | 19 | You are talking about |
| 07:34:16 | 20 | circulation of petitions? |
| 07:34:18 | 21 | ATTORNEY HAVERSTICK: |
| 07:34:19 | 22 | Yes, ma'am.  Thank you, |
| 07:34:21 | 23 | Your Honor. |
| 07:34:21 | 24 | JUDGE MCCULLOUGH: |
| 07:34:21 | 25 | Thank you, Mr. |

1057

| | | |
|---|---|---|
| 07:34:26 | 1 | Haverstick. |
| 07:34:27 | 2 | And now House of |
| 07:34:28 | 3 | Representatives is going first? |
| 07:34:28 | 4 | Okay. |
| 07:34:30 | 5 | Representative |
| 07:34:30 | 6 | Benninghoff and Cutler. |
| 07:34:41 | 7 | Attorney Lewis. |
| 07:34:41 | 8 | ATTORNEY LEWIS: |
| 07:34:42 | 9 | Your Honor, when the --- |
| 07:34:42 | 10 | when this trial began we said |
| 07:34:44 | 11 | that the evidence would show |
| 07:34:45 | 12 | that the General Assembly's |
| 07:34:46 | 13 | plan House Bill 2146, adheres |
| 07:34:48 | 14 | to the traditional districting |
| 07:34:51 | 15 | criteria set forth in |
| 07:34:53 | 16 | Pennsylvania's Constitution. |
| 07:34:54 | 17 | The evidence has borne that |
| 07:34:56 | 18 | out.  It is undisputed in this |
| 07:34:58 | 19 | case, that HB-2146 is equal |
| 07:35:07 | 20 | population is contiguous intact |
| 07:35:07 | 21 | and respect and the integrity |
| 07:35:09 | 22 | of the Pennsylvania counties, |
| 07:35:10 | 23 | political subdivisions and |
| 07:35:12 | 24 | precincts. |
| 07:35:14 | 25 | Governor Wolf's own |

1058

07:35:15  1    expert agreed.  And it meets
07:35:17  2    those criteria, in fact, better
07:35:19  3    than many of the plans.  In
07:35:20  4    particular House Bill 2146
07:35:23  5    performs very well in
07:35:24  6    preserving the integrity of
07:35:25  7    political subdivisions.  A
07:35:27  8    preeminent criteria that has
07:35:30  9    part of Pennsylvania's
07:35:33  10   Constitution since 1790.
07:35:36  11         In contrast, whether by
07:35:37  12   splitting the City of
07:35:37  13   Pittsburgh as the Governor in
07:35:39  14   both senate Democratic plans
07:35:41  15   --- and I believe some of the
07:35:43  16   Amici as well, or by splitting
07:35:45  17   precincts or by playing other
07:35:47  18   games many of the plans
07:35:51  19   subordinate those criteria.
07:35:52  20         Back to 2146.  HB-2146
07:35:54  21   was the product of the most
07:35:56  22   transparent process and what we
07:35:57  23   understand in the
07:35:58  24   Commonwealth's history.  The
07:36:00  25   House held 11 regional

1059

| | | |
|---|---|---|
| 07:36:01 | 1 | hearings, took comments from |
| 07:36:04 | 2 | hundreds of members of the |
| 07:36:05 | 3 | public and many people |
| 07:36:06 | 4 | testified, and ultimately |
| 07:36:09 | 5 | adopted a map not drawn by a |
| 07:36:11 | 6 | super computer. Not drawn in a |
| 07:36:14 | 7 | back smoked filled room. But |
| 07:36:17 | 8 | drawn well-known good |
| 07:36:18 | 9 | government advocate Amanda |
| 07:36:19 | 10 | Holt. Yes, that Holt from the |
| 07:36:21 | 11 | Pennsylvania Supreme Court Holt |
| 07:36:22 | 12 | decisions of the last decade. |
| 07:36:24 | 13 | This plan was subject to |
| 07:36:28 | 14 | public scrutiny for many weeks |
| 07:36:30 | 15 | before it's passage, which of |
| 07:36:30 | 16 | course is way many of the |
| 07:36:30 | 17 | experts in this case were able |
| 07:36:32 | 18 | to analyze 2146 in their |
| 07:36:35 | 19 | opening reports, not just the |
| 07:36:36 | 20 | rebuttal reports. |
| 07:36:37 | 21 | No other plan before |
| 07:36:38 | 22 | this Court has gone through |
| 07:36:40 | 23 | that kind of public scrutiny |
| 07:36:41 | 24 | and deliberative process that |
| 07:36:44 | 25 | the Pennsylvania General |

1060

| 07:36:45 | 1 | Assembly undertook and is in |
| 07:36:48 | 2 | the best position to undertake |
| 07:36:50 | 3 | as the body charged with this |
| 07:36:52 | 4 | role.  In fact, this trial is |
| 07:36:56 | 5 | still unclear who drew most of |
| 07:36:56 | 6 | these plans placed before the |
| 07:36:57 | 7 | Court for consideration. |
| 07:36:58 | 8 | Let's turn to the |
| 07:37:01 | 9 | politics.  From a partisan |
| 07:37:02 | 10 | standpoint HB-2146 is balanced. |
| 07:37:06 | 11 | It draws nine Democratic |
| 07:37:08 | 12 | leaning districts to eight |
| 07:37:10 | 13 | Republican leaning districts |
| 07:37:14 | 14 | which is very much in line with |
| 07:37:16 | 15 | the Nine-to-Nine plan drawn by |
| 07:37:17 | 16 | the Pennsylvania Supreme Court |
| 07:37:19 | 17 | special master in 2018.  That |
| 07:37:20 | 18 | is a commonsense resolved and |
| 07:37:22 | 19 | it is consistent with Mellow, |
| 07:37:23 | 20 | which found favor in that case |
| 07:37:25 | 21 | with a plan that evenly divides |
| 07:37:28 | 22 | the loss between two seats by |
| 07:37:29 | 23 | the parties. |
| 07:37:30 | 24 | It's also consistent |
| 07:37:31 | 25 | with language in the League of |

1061

| | |
|---|---|
| 07:37:36 | 1 |
| 07:37:36 | 2 |
| 07:37:37 | 3 |
| 07:37:37 | 4 |
| 07:37:38 | 5 |
| 07:37:40 | 6 |
| 07:37:43 | 7 |
| 07:37:43 | 8 |
| 07:37:46 | 9 |
| 07:37:46 | 10 |
| 07:37:51 | 11 |
| 07:37:52 | 12 |
| 07:37:53 | 13 |
| 07:37:54 | 14 |
| 07:37:57 | 15 |
| 07:37:59 | 16 |
| 07:38:02 | 17 |
| 07:38:07 | 18 |
| 07:38:07 | 19 |
| 07:38:07 | 20 |
| 07:38:07 | 21 |
| 07:38:08 | 22 |
| 07:38:10 | 23 |
| 07:38:11 | 24 |
| 07:38:14 | 25 |

Women Voters decision that
recognizes as a permissible
redistricting principle, the
maintenance of the political
balance, which existed prior to
the prior reapportionment.
Nine-to-nine --- going from and
nine-to-nine to nine-to-eight
just makes sense.  In fact,
unable to meaningfully
demonstrate that 2146 is not a
valid plan, a lot of the other
parties have asked the Court to
embark on a beauty contest, to
pick the best or the fairest
map, exactly as my colleague
Mr. Tucker predicted yesterday
morning.

        But adherence to
traditional districting
criteria, the essential
standards set forth in League
of Women Voters and the main
focus of Mellow serves as the
north star to guide a fairy

1062

| | | |
|---|---|---|
| 07:38:17 | 1 | districting process in the |
| 07:38:18 | 2 | stormy seas of shifting |
| 07:38:18 | 3 | partisan preferences of the |
| 07:38:18 | 4 | Commonwealth's voters. |
| 07:38:24 | 5 | Regardless, let's go |
| 07:38:26 | 6 | down the fairness rabbit hole |
| 07:38:27 | 7 | for a moment.  It is |
| 07:38:29 | 8 | established in this case, and |
| 07:38:32 | 9 | undisputed that drawing maps |
| 07:38:32 | 10 | without referencing the |
| 07:38:36 | 11 | partisan and racial data will |
| 07:38:36 | 12 | generate a slight tilt towards |
| 07:38:39 | 13 | Republicans.  That is due to |
| 07:38:41 | 14 | public geography where the |
| 07:38:43 | 15 | voters live. |
| 07:38:44 | 16 | Dr. Barber's simulations |
| 07:38:46 | 17 | demonstrated that.  In fact, |
| 07:38:47 | 18 | the only other expert in this |
| 07:38:49 | 19 | case ran a simulation, Dr. |
| 07:38:49 | 20 | Duchin, got a consistent |
| 07:38:51 | 21 | result.  So a fair process |
| 07:38:53 | 22 | might result in a tilt, but |
| 07:38:56 | 23 | that's not because the process |
| 07:38:58 | 24 | is unfair.  It's because this |
| 07:39:01 | 25 | moment in history in |

1063

| 07:39:01 | 1 | Pennsylvania Democratic |
| 07:39:01 | 2 | supporting supporters are |
| 07:39:01 | 3 | concentrated in the city and |
| 07:39:08 | 4 | Republicans are not. |
| 07:39:09 | 5 | Nonetheless HB-2146 |
| 07:39:10 | 6 | produces a very competitive map |
| 07:39:13 | 7 | with a nine Democratic seat |
| 07:39:15 | 8 | line and an eight Republican |
| 07:39:16 | 9 | seat lean. As Dr. Barber |
| 07:39:19 | 10 | confirms, it's five competitive |
| 07:39:20 | 11 | districts more than any other |
| 07:39:22 | 12 | submission and as Carter's |
| 07:39:24 | 13 | Petitioner expert, Dr. Rodden, |
| 07:39:26 | 14 | conceded under the right |
| 07:39:28 | 15 | electoral environment could |
| 07:39:30 | 16 | swing up to ten Democratic |
| 07:39:32 | 17 | seats. It is hard to describe |
| 07:39:35 | 18 | HB-2146 as unfair. Perhaps |
| 07:39:37 | 19 | unsurprisingly, most of the |
| 07:39:38 | 20 | experts have downplayed looking |
| 07:39:40 | 21 | at fairness based on expected |
| 07:39:40 | 22 | seat share, which is sort of |
| 07:39:42 | 23 | how everyone in politics |
| 07:39:42 | 24 | understands this. |
| 07:39:44 | 25 | But instead focused |

1064

| 07:39:46 | 1 | onthese , you know, interesting |
| 07:39:47 | 2 | but complex mathematical |
| 07:39:50 | 3 | partisan fairness measures.  So |
| 07:39:52 | 4 | we have heard at length about |
| 07:39:54 | 5 | how negative .02 median |
| 07:39:55 | 6 | difference is unfair, but a |
| 07:39:56 | 7 | negative .006 difference is |
| 07:39:59 | 8 | somehow fair or a declination |
| 07:40:02 | 9 | score or some other metric. |
| 07:40:04 | 10 | The hyper focus on these |
| 07:40:06 | 11 | metrics masks real fairness |
| 07:40:08 | 12 | concerns with many of the |
| 07:40:10 | 13 | submissions. |
| 07:40:10 | 14 | The Carter, Gressman, |
| 07:40:13 | 15 | Wolf and Senate Democratic |
| 07:40:16 | 16 | maps --- well map 2 anyway, |
| 07:40:16 | 17 | draws a ten Democrat, seven |
| 07:40:19 | 18 | Republican map.  The House |
| 07:40:21 | 19 | Democrats managed to beat the |
| 07:40:22 | 20 | field drawing 11 Democrat to 6 |
| 07:40:25 | 21 | Republican plan.  In what world |
| 07:40:28 | 22 | is it fair to go from a |
| 07:40:30 | 23 | nine-to-nine to a ten-to-seven |
| 07:40:32 | 24 | or to an eleven-to-six map in |
| 07:40:35 | 25 | such a closely divided state |

1065

| | | |
|---|---|---|
| 07:40:35 | 1 | like Pennsylvania. |
| 07:40:35 | 2 | It's especially |
| 07:40:36 | 3 | interesting in Carter's |
| 07:40:36 | 4 | Petitioners, which claimed to |
| 07:40:40 | 5 | have created a least change the |
| 07:40:40 | 6 | map, yet they still go from |
| 07:40:42 | 7 | nine-to-nine to a ten-to-seven. |
| 07:40:49 | 8 | Interesting how that worked |
| 07:40:50 | 9 | out. |
| 07:40:50 | 10 | Another problem |
| 07:40:50 | 11 | expressed for the fairest map, |
| 07:40:50 | 12 | that in order to achieve |
| 07:40:52 | 13 | excellent scores on these |
| 07:40:53 | 14 | different political science |
| 07:40:54 | 15 | measures, the map maker must |
| 07:40:56 | 16 | draw district boundaries to |
| 07:41:01 | 17 | overcome a natural advantage. |
| 07:41:01 | 18 | What that means is they're |
| 07:41:02 | 19 | assigning voters to districts |
| 07:41:04 | 20 | based not on traditional |
| 07:41:06 | 21 | criteria, but based on partisan |
| 07:41:08 | 22 | preferences. |
| 07:41:08 | 23 | Sorting voters in the |
| 07:41:11 | 24 | districts based on their |
| 07:41:11 | 25 | partisanship unfairlly dilutes |

1066

| | | |
|---|---|---|
| 07:41:11 | 1 | the power of a community's |
| 07:41:13 | 2 | votes, the very concern in LWV. |
| 07:41:15 | 3 | Because this is about the |
| 07:41:16 | 4 | voters not the parties. |
| 07:41:19 | 5 | In any event, there's a |
| 07:41:20 | 6 | word for sorting voters based |
| 07:41:22 | 7 | on partisanship. |
| 07:41:24 | 8 | Gerrymandering.  Dr. Barber's |
| 07:41:29 | 9 | rebuttal report shows that |
| 07:41:29 | 10 | Figure 5, Table 4's appendix, |
| 07:41:31 | 11 | it's very clear when you look |
| 07:41:33 | 12 | at those middle swing districts |
| 07:41:35 | 13 | that all the plans more or less |
| 07:41:40 | 14 | have, the Carter, Gressman, |
| 07:41:40 | 15 | Governor, House Dem, Senate Dem |
| 07:41:43 | 16 | plans all draw those Democratic |
| 07:41:47 | 17 | leaning than 96 to 100 percent |
| 07:41:47 | 18 | of the simulations. |
| 07:41:49 | 19 | So great the map scores |
| 07:41:51 | 20 | excellent on a metric, but |
| 07:41:53 | 21 | yields a map that gives |
| 07:41:55 | 22 | Democratics a big advantage.  I |
| 07:41:57 | 23 | can go on, but I won't.  You've |
| 07:42:01 | 24 | heard the testimony of several |
| 07:42:02 | 25 | experts who each argue that his |

1067

| | | |
|---|---|---|
| 07:42:04 | 1 | or her map is the best and |
| 07:42:06 | 2 | arguments over which is fair, |
| 07:42:08 | 3 | which is most compact. But I |
| 07:42:11 | 4 | think Dr. Naughton I think put |
| 07:42:12 | 5 | it best. There is no agreed |
| 07:42:14 | 6 | upon objective of fairness. |
| 07:42:15 | 7 | That's because it's a political |
| 07:42:17 | 8 | question. That's what Johnson |
| 07:42:19 | 9 | versus Wisconsin Election |
| 07:42:22 | 10 | Commission held in Wisconsin |
| 07:42:22 | 11 | Supreme Court last year. And |
| 07:42:25 | 12 | that's why once the General |
| 07:42:27 | 13 | Assembly's proposed plan is |
| 07:42:28 | 14 | shown to satisfy the |
| 07:42:28 | 15 | Constitutional criteria as ours |
| 07:42:31 | 16 | has, we would urge the Court to |
| 07:42:32 | 17 | defer to those legislative |
| 07:42:34 | 18 | policy choices. General |
| 07:42:34 | 19 | Assembly consists of 253 |
| 07:42:36 | 20 | elected representatives. They |
| 07:42:37 | 21 | have the Constitutional role to |
| 07:42:39 | 22 | redistricting. And their |
| 07:42:40 | 23 | ability to do so in this case |
| 07:42:42 | 24 | was thwarted on only the |
| 07:42:44 | 25 | Governor's insistence on asking |

1068

| | | |
|---|---|---|
| 07:42:46 | 1 | the Court to give him a |
| 07:42:46 | 2 | ten-to-seven plan. |
| 07:42:48 | 3 | With that, Your Honor, I |
| 07:42:48 | 4 | see my time is up.  And we'll |
| 07:42:49 | 5 | thank you for your time and |
| 07:42:50 | 6 | consideration. |
| 07:42:50 | 7 | JUDGE MCCULLOUGH: |
| 07:42:51 | 8 | I would like you to |
| 07:42:51 | 9 | comment on the election |
| 07:42:52 | 10 | schedule. |
| 07:42:54 | 11 | ATTORNEY LEWIS: |
| 07:42:55 | 12 | Your Honor, I think my |
| 07:42:56 | 13 | --- our clients would prefer to |
| 07:43:00 | 14 | a least possible change to any |
| 07:43:01 | 15 | election calendar.  And we do |
| 07:43:02 | 16 | not believe changing the |
| 07:43:03 | 17 | primary date would be |
| 07:43:04 | 18 | appropriate. |
| 07:43:07 | 19 | JUDGE MCCULLOUGH: |
| 07:43:08 | 20 | Okay.  Thank you, |
| 07:42:54 | 21 | Counsel. |
| 07:42:54 | 22 | ATTORNEY LEWIS: |
| 07:42:54 | 23 | Thank you, Your Honor. |
| 07:43:10 | 24 | Your Honor, I believe my |
| 07:43:12 | 25 | colleague and I have a flight |

1069

| Time | Line | Text |
|------|------|------|
| 07:43:12 | 1 | in about less than an hour. |
| 07:43:13 | 2 | May we have --- my colleague, |
| 07:43:14 | 3 | Mr. Mann, take over for us for |
| 07:43:16 | 4 | any further proceedings? |
| 07:43:17 | 5 | JUDGE MCCULLOUGH: |
| 07:43:17 | 6 | Yes.  And I ---. |
| 07:43:24 | 7 | ATTORNEY LEWIS: |
| 07:43:26 | 8 | Thank you, Your Honor. |
| 07:43:26 | 9 | JUDGE MCCULLOUGH: |
| 07:43:28 | 10 | But the Senate? |
| 07:43:28 | 11 | ATTORNEY LEWIS: |
| 07:43:28 | 12 | Yes, they will. |
| 07:43:26 | 13 | JUDGE MCCULLOUGH: |
| 07:43:26 | 14 | Republicans are going to |
| 07:42:54 | 15 | make a closing statement? |
| 07:42:54 | 16 | ATTORNEY LEWIS: |
| 07:42:54 | 17 | Yes, they will, Your |
| 07:43:26 | 18 | Honor. |
| 07:43:26 | 19 | JUDGE MCCULLOUGH: |
| 07:43:26 | 20 | Yes.  Thank you, |
| 07:42:54 | 21 | Counsel. |
| 07:42:54 | 22 | ATTORNEY LEWIS: |
| 07:43:29 | 23 | Thank you, Your Honor. |
| 07:43:29 | 24 | ATTORNEY HOLTZMAN: |
| 07:43:55 | 25 | Good afternoon, Your |

1070

1    Honor.  May it please the
2    Court.  Thank you for your time
3    and your careful attention to
4    this matter over the last
5    couple of days.  Again, my name
6    is.  Again, my name is Anthony
7    Holtzman and I represent
8    Senator Jake Coreman, the
9    President Pro Tempore of the
10   Pennsylvania Senate, along with
11   Senator Kim Ward, the Majority
12   Leader of the Pennsylvania
13   Senate.
14          Your Honor, during this
15   hearing, we've heard a lot of
16   testimony about how it's not
17   possible to predict the further
18   in many ways.  That proposition
19   I think is generally true, but
20   yesterday there was an
21   exception to this rule.
22          Yesterday during my
23   opening statement I said that
24   during this hearing you would
25   here a lot of technical and

1071

| | |
|---|---|
| 07:44:11 | 1 |
| 07:44:13 | 2 |
| 07:44:16 | 3 |
| 07:44:18 | 4 |
| 07:44:20 | 5 |
| 07:44:22 | 6 |
| 07:44:23 | 7 |
| 07:44:24 | 8 |
| 07:44:25 | 9 |
| 07:44:26 | 10 |
| 07:44:27 | 11 |
| 07:44:29 | 12 |
| 07:44:30 | 13 |
| 07:44:31 | 14 |
| 07:44:33 | 15 |
| 07:44:37 | 16 |
| 07:44:38 | 17 |
| 07:44:40 | 18 |
| 07:44:44 | 19 |
| 07:44:44 | 20 |
| 07:44:46 | 21 |
| 07:44:46 | 22 |
| 07:44:48 | 23 |
| 07:44:49 | 24 |
| 07:44:50 | 25 |

complex testimony from
political scientists and
mathematicians.  That turned
out to be true.  I said you
would hear testimony about
algorithms and various formulas
and analytics that can be used
to evaluate redistricting plans
in differing ways and that
turned out to be true as well.
        But most importantly,
Your Honor, I said the evidence
at this hearing would show that
the Congressional redistricting
plan that's embodied in HB-2146
meets all the applicable
redistricting requirements
including the requirements
regarding the compactness and
contiguous territory,
population equality and respect
for boundaries of the political
subdivisions.
        Importantly that
predictions turned out to be

1072

| | | |
|---|---|---|
| 07:44:52 | 1 | true as well.  The fact that |
| 07:44:53 | 2 | HB-2146 meets those |
| 07:44:55 | 3 | requirements was confirmed, not |
| 07:44:56 | 4 | only by Dr. Barber the expert |
| 07:45:00 | 5 | witness who testified on behalf |
| 07:45:01 | 6 | of the House Republican |
| 07:45:02 | 7 | Intervenors but also by the |
| 07:45:03 | 8 | expert witnesses who testified |
| 07:45:04 | 9 | on behalf of the Governor and |
| 07:45:06 | 10 | the witnesses for essentially |
| 07:45:08 | 11 | all other parties as well. |
| 07:45:10 | 12 | The evidence also did |
| 07:45:11 | 13 | not show that the HB-2146 plan |
| 07:45:13 | 14 | is otherwise unlawful or unfair |
| 07:45:16 | 15 | in some other way.  Your Honor, |
| 07:45:18 | 16 | not that there is any sort of |
| 07:45:19 | 17 | judicially manageable standard |
| 07:45:21 | 18 | for determining whether a given |
| 07:45:23 | 19 | plan is not sufficiently fair |
| 07:45:25 | 20 | for the Court to adopt it. |
| 07:45:27 | 21 | As the expert testimony |
| 07:45:28 | 22 | in this hearing plainly |
| 07:45:30 | 23 | illustrated, whether something |
| 07:45:31 | 24 | is fair depends on how you |
| 07:45:32 | 25 | define fair, and there are many |

1073

| | | |
|---|---|---|
| 07:45:34 | 1 | ways to define it, most of |
| 07:45:35 | 2 | which involve making subjective |
| 07:45:38 | 3 | judgments and all of which are |
| 07:45:39 | 4 | imprecise to some degree. |
| 07:45:40 | 5 | From a partisan |
| 07:45:41 | 6 | prospective every map that was |
| 07:45:44 | 7 | submitted for this Court's |
| 07:45:46 | 8 | consideration was deemed to be |
| 07:45:47 | 9 | fair in one venture or another. |
| 07:45:51 | 10 | And that an idea of a computer |
| 07:45:52 | 11 | or an individual expert witness |
| 07:45:54 | 12 | can somehow create a map that |
| 07:45:56 | 13 | has no partisan consequences |
| 07:45:56 | 14 | or affects whatsoever |
| 07:45:58 | 15 | completely false if not |
| 07:46:00 | 16 | outright laughable. |
| 07:46:02 | 17 | The Supreme Court of the |
| 07:46:03 | 18 | United States in this regard |
| 07:46:03 | 19 | has wisely observed that, |
| 07:46:04 | 20 | quote, politics and political |
| 07:46:08 | 21 | considerations are inseparable |
| 07:46:08 | 22 | for redistricting and |
| 07:46:10 | 23 | apportioning, closed quote. |
| 07:46:10 | 24 | That's from the Gaffney versus |
| 07:46:13 | 25 | Cummings decision handed down |

1074

07:46:14    1          in 1973.
07:46:16    2                 So against this backdrop
07:46:18    3          we return to the point where we
07:46:19    4          started.  Under the United
07:46:20    5          States and Pennsylvania
07:46:22    6          Constitutions, the task of
07:46:22    7          redistricting the
07:46:24    8          Commonwealth's Congressional
07:46:25    9          districts is expressly
07:46:27   10          committed to the Pennsylvania
07:46:28   11          General Assembly.  It's a
07:46:30   12          fundamentally legislative task
07:46:32   13          and HB-2146 reflects this
07:46:34   14          principle.  It embodies a
07:46:38   15          congressional redistricting
07:46:39   16          plan that both the Pennsylvania
07:46:41   17          Senate and the House have
07:46:42   18          thoughtfully considered and
07:46:43   19          passed.  It reflects a
07:46:47   20          deliberative open legislative
07:46:47   21          process which involve
07:46:49   22          testimony, negotiations
07:46:51   23          compromise and policy judgments
07:46:52   24          in which the peoples elected
07:46:54   25          representatives undertook in

1075

| | | |
|---|---|---|
| 07:46:55 | 1 | order to memorialize and |
| 07:46:56 | 2 | implement state policy that |
| 07:46:58 | 3 | reflects the will of their |
| 07:46:59 | 4 | continuants. |
| 07:47:01 | 5 | No other party or no |
| 07:47:03 | 6 | other Amici has presented to |
| 07:47:05 | 7 | court with the proposed |
| 07:47:06 | 8 | redistricting plan that has |
| 07:47:08 | 9 | made its way through any part |
| 07:47:09 | 10 | of the legislative process, let |
| 07:47:11 | 11 | alone the senate and House have |
| 07:47:13 | 12 | passed, let alone the plan |
| 07:47:15 | 13 | that's undergone any sort of |
| 07:47:15 | 14 | public vetting process or |
| 07:47:17 | 15 | public hearing process or |
| 07:47:18 | 16 | public process at all.  Only |
| 07:47:19 | 17 | HB-2146 has done so. |
| 07:47:22 | 18 | Against this backdrop |
| 07:47:23 | 19 | HB-2146, as a legislatively |
| 07:47:27 | 20 | approved plan that meets all of |
| 07:47:29 | 21 | the redistricting criteria, |
| 07:47:31 | 22 | which is essentially undisputed |
| 07:47:35 | 23 | in this case and as a plan that |
| 07:47:35 | 24 | nobody should be, quote, |
| 07:47:35 | 25 | unquote, unfair is entitled to |

1076

| | |
|---|---|
| 07:47:37 | 1 |
| 07:47:38 | 2 |
| 07:47:38 | 3 |
| 07:47:43 | 4 |
| 07:47:43 | 5 |

07:47:37  1    deference from the Court in

07:47:38  2    order to honor the General

07:47:38  3    Assembly's constitution

07:47:43  4    prerogative to engage in

07:47:43  5    redistricting.

07:47:45  6            And Your Honor there is

07:47:46  7    precedent for this approach,

07:47:46  8    which is the Donnelly versus

07:47:47  9    Meskill decision from

07:47:48  10    Connecticut, which we cite in

07:47:50  11    our briefs.  There, the Court

07:47:52  12    was positioned just like this

07:47:53  13    one, the legislature had passed

07:47:55  14    a map and the Governor vetoed

07:47:57  15    it, and picking the map

07:48:02  16    referring to the legislature

07:48:03  17    system, quote, the plan has had

07:48:04  18    added advantage that it's

07:48:07  19    basically the plan adopted by

07:48:09  20    the legislature, closed quote.

07:48:10  21    The Court later went on to say,

07:48:10  22    quote, the legislative adoption

07:48:13  23    of Public Act 807 tips the

07:48:15  24    scales in favor of the plan in

07:48:17  25    Exhibit B-1, which provides

1077

| | | |
|---|---|---|
| 07:48:18 | 1 | districts essentially, as |
| 07:48:20 | 2 | outlined by the legislature, |
| 07:48:20 | 3 | with adjustments only as |
| 07:48:22 | 4 | necessary to bring about |
| 07:48:24 | 5 | virtually complete population |
| 07:48:25 | 6 | equality, closed quote. |
| 07:48:26 | 7 | The Court should reach |
| 07:48:28 | 8 | the same result in this case, |
| 07:48:28 | 9 | Your Honor, for the reasons |
| 07:48:30 | 10 | that I just mentioned and I |
| 07:48:31 | 11 | mentioned in my opening |
| 07:48:32 | 12 | statement. |
| 07:48:32 | 13 | Thank you for your |
| 07:48:33 | 14 | consideration. |
| 07:48:33 | 15 | JUDGE MCCULLOUGH: |
| 07:48:34 | 16 | And can you also comment |
| 07:48:34 | 17 | on the election schedule, |
| 07:48:38 | 18 | please? |
| 07:48:38 | 19 | ATTORNEY HOLTZMAN: |
| 07:48:39 | 20 | Certainly, Your Honor. |
| 07:48:39 | 21 | We take the position that of |
| 07:48:39 | 22 | course this is a matter that |
| 07:48:39 | 23 | can be addressed by the General |
| 07:48:41 | 24 | Assembly, if necessary, but we |
| 07:48:42 | 25 | recognize that the Court has |

1078

| | | |
|---|---|---|
| 07:48:43 | 1 | changed these dates in the past |
| 07:48:47 | 2 | and they feel that conditions |
| 07:48:50 | 3 | are such that they must change |
| 07:48:50 | 4 | now because of the legal |
| 07:48:51 | 5 | posture of this matter.  We |
| 07:48:52 | 6 | think changes should be limited |
| 07:48:54 | 7 | to only what's absolutely |
| 07:48:57 | 8 | necessary and don't support a |
| 07:48:57 | 9 | shortening of the petition |
| 07:48:58 | 10 | circulation and signature |
| 07:48:58 | 11 | gathering window, but we |
| 07:48:58 | 12 | otherwise don't have any |
| 07:48:58 | 13 | specific position on how it |
| 07:49:05 | 14 | affects the three primary dates |
| 07:49:06 | 15 | that exist on the calendar. |
| 07:49:12 | 16 | JUDGE MCCULLOUGH: |
| 07:49:12 | 17 | Thank you. |
| 07:49:14 | 18 | ATTORNEY HOLTZMAN: |
| 07:49:14 | 19 | Thank you very much. |
| 07:49:22 | 20 | JUDGE MCCULLOUGH: |
| 07:49:22 | 21 | And now we move to |
| 07:49:25 | 22 | Attorney Wiygul.  And you're |
| 07:49:25 | 23 | presenting on behalf of both |
| 07:49:25 | 24 | Governor Wolf and Secretary |
| 07:49:29 | 25 | Chapman or just ---? |

1079

| | | |
|---|---|---|
| 07:49:29 | 1 | ATTORNEY WIYGUL: |
| 07:49:29 | 2 | Why don't we start with |
| 07:49:34 | 3 | Governor Wolf, if that's okay, |
| 07:49:34 | 4 | Your Honor, since we're going |
| 07:49:35 | 5 | in reverse order? |
| 07:49:35 | 6 | JUDGE MCCULLOUGH: |
| 07:49:35 | 7 | Do you want ---? |
| 07:49:41 | 8 | ATTORNEY WIYGUL: |
| 07:49:41 | 9 | I won't --- I'm sorry, I |
| 07:49:41 | 10 | won't take --- but I promise I |
| 07:49:43 | 11 | won't be greedy about the time. |
| 07:49:47 | 12 | And before I start, I'd like |
| 07:49:48 | 13 | the Court staff, if it's |
| 07:49:48 | 14 | possible, I might like to use |
| 07:49:49 | 15 | the projector.  Thank you. |
| 07:49:54 | 16 | JUDGE MCCULLOUGH: |
| 07:49:54 | 17 | You may.  Is there |
| 07:49:55 | 18 | someone here that can still |
| 07:49:59 | 19 | operate --- there you go. |
| 07:50:01 | 20 | ATTORNEY WIYGUL: |
| 07:50:02 | 21 | Thank you.  I realize |
| 07:50:03 | 22 | this is an unwelcomed task that |
| 07:50:03 | 23 | has been called before the |
| 07:50:06 | 24 | Court, but the Court and its |
| 07:50:06 | 25 | staff have been very welcoming |

1080

| | | |
|---|---|---|
| 07:50:10 | 1 | to us and very accommodating, |
| 07:50:10 | 2 | and I'd like to thank the Court |
| 07:50:10 | 3 | and staff for that. |
| 07:50:11 | 4 | The question before the |
| 07:50:12 | 5 | Court as set forth in Mellow |
| 07:50:14 | 6 | versus Mitchell, which was the |
| 07:50:16 | 7 | last Congressional impasse |
| 07:50:18 | 8 | redistricting case in |
| 07:50:22 | 9 | Pennsylvania, and it says which |
| 07:50:22 | 10 | of the plans timely offered to |
| 07:50:23 | 11 | this Court comes closest to the |
| 07:50:24 | 12 | constitutional standards in all |
| 07:50:26 | 13 | pertinent respects. But as to |
| 07:50:27 | 14 | the question of what those |
| 07:50:28 | 15 | constitutional standards are, |
| 07:50:30 | 16 | the League of Women Voters case |
| 07:50:32 | 17 | is the leading and on-point |
| 07:50:35 | 18 | precedent. And it says that |
| 07:50:39 | 19 | the Free Equal Election Clause |
| 07:50:39 | 20 | governs all aspects of the |
| 07:50:40 | 21 | electoral process, including |
| 07:50:40 | 22 | the apportionment, and provides |
| 07:50:42 | 23 | the people of this Commonwealth |
| 07:50:44 | 24 | with equally effective power to |
| 07:50:45 | 25 | select the representative of |

1081

| | | |
|---|---|---|
| 07:50:46 | 1 | his or her choice and bars the |
| 07:50:48 | 2 | dilution of the people's power |
| 07:50:50 | 3 | to do so. |
| 07:50:51 | 4 | And the Court also went |
| 07:50:53 | 5 | on to tell us how a map should |
| 07:50:56 | 6 | be evaluated under this |
| 07:50:58 | 7 | constitutional standard.  But |
| 07:51:01 | 8 | first we have to determine |
| 07:51:02 | 9 | whether the plan comports with |
| 07:51:03 | 10 | certain neutral floor criteria, |
| 07:51:05 | 11 | which the Court has heard an |
| 07:51:07 | 12 | awful lot about in the last two |
| 07:51:09 | 13 | days.  But the second, it |
| 07:51:10 | 14 | should go on to ensure that |
| 07:51:11 | 15 | even if a plan meets these |
| 07:51:14 | 16 | criteria, it does not, |
| 07:51:14 | 17 | nevertheless, operate to |
| 07:51:14 | 18 | unfairly dilute the power of a |
| 07:51:18 | 19 | particular group's vote for a |
| 07:51:19 | 20 | Congressional Representative, |
| 07:51:20 | 21 | such as by entrenching the |
| 07:51:23 | 22 | structural partisan advantage. |
| 07:51:25 | 23 | And even though the |
| 07:51:26 | 24 | Court has heard a lot of |
| 07:51:28 | 25 | evidence from a lot of |

1082

| | | |
|---|---|---|
| 07:51:29 | 1 | different experts, I think the |
| 07:51:30 | 2 | picture is actually pretty |
| 07:51:32 | 3 | clear when you take a step |
| 07:51:33 | 4 | back.  And I would refer to |
| 07:51:36 | 5 | some of the analyses that Dr. |
| 07:51:40 | 6 | Duchin did in this case that I |
| 07:51:41 | 7 | think helps to identify a lot |
| 07:51:41 | 8 | of what we seek to talk about. |
| 07:51:44 | 9 | And I don't know if I |
| 07:51:45 | 10 | need to put it up here, but |
| 07:51:47 | 11 | I'll just remind the Court that |
| 07:51:47 | 12 | Dr. Duchin gave a chart of the |
| 07:51:49 | 13 | performance of the various |
| 07:51:51 | 14 | plans of the traditional |
| 07:51:52 | 15 | criteria.  That was page two, |
| 07:51:54 | 16 | Table 1, of her response |
| 07:51:55 | 17 | report.  And we know that all |
| 07:51:56 | 18 | the plans are --- essentially |
| 07:51:58 | 19 | have equal population |
| 07:51:59 | 20 | distribution.  All the plans |
| 07:52:00 | 21 | are contiguous.  So the real |
| 07:52:02 | 22 | action here is on compactness |
| 07:52:03 | 23 | and on subdivision splits.  And |
| 07:52:07 | 24 | the Court has heard --- I don't |
| 07:52:10 | 25 | think there is any serious |

1083

| | |
|---|---|
| 07:52:11 | 1 |
| 07:52:12 | 2 |
| 07:52:13 | 3 |
| 07:52:14 | 4 |
| 07:52:15 | 5 |
| 07:52:16 | 6 |
| 07:52:18 | 7 |
| 07:52:20 | 8 |
| 07:52:21 | 9 |
| 07:52:22 | 10 |
| 07:52:23 | 11 |
| 07:52:24 | 12 |
| 07:52:26 | 13 |
| 07:52:27 | 14 |
| 07:52:29 | 15 |
| 07:52:31 | 16 |
| 07:52:32 | 17 |
| 07:52:37 | 18 |
| 07:52:38 | 19 |
| 07:52:44 | 20 |
| 07:52:46 | 21 |
| 07:52:48 | 22 |
| 07:52:51 | 23 |
| 07:52:51 | 24 |
| 07:52:51 | 25 |

disagreement that there are
trade-offs between those two
metrics.  It's not a matter of
trying to minimize one or the
other.  I think there's broad
agreement on that front.

          And what Dr. Duchin said
and I think the statistics bare
this out is that, in general, a
lot of the plans before this
Court do well on the
traditional criteria.  They're
acceptable under the
traditional criteria, but there
are a few that do particularly
well, that achieve a standard
of excellence.  And as Dr.
Duchin described, the
Governor's plan is among those.

          So then where do we go?
Well, we have to go on to the
next phase of the analysis,
which is to look at partisan
fairness, to look at whether
despite meeting this

1084

07:52:56  1      traditional criteria, there are
07:52:58  2      plans that do a better or worse
07:53:00  3      job of achieving partisan
07:53:01  4      fairness.  And again, I think
07:53:03  5      if you look at the expert
07:53:04  6      testimony in this case you will
07:53:05  7      see broad agreement that
07:53:06  8      partisan fairness can be
07:53:08  9      meaningfully and helpfully
07:53:13  10     assessed and how to do that.
07:53:15  11         Now, to be sure there
07:53:16  12     are variations in the metrics
07:53:17  13     and we saw slightly different
07:53:19  14     scoring among the experts, and
07:53:21  15     the Court saw slightly
07:53:22  16     different scoring metrics
07:53:23  17     applied to partisan fairness.
07:53:28  18     But with rare exceptions, which
07:53:28  19     I suggest but won't get into,
07:53:28  20     were not articulated by the
07:53:33  21     expert, broad agreement that
07:53:33  22     you can measure partisan
07:53:35  23     fairness in several different
07:53:37  24     ways.  And I would suggest the
07:53:40  25     notion that it's somehow so

1085

07:53:40  1    subjective as to be

07:53:40  2    immeasurable.  It's just not

07:53:45  3    credible and it doesn't comport

07:53:46  4    with the reality of our

07:53:47  5    politics, which is that

07:53:47  6    legislatures and politicians

07:53:51  7    have been using exactly those

07:53:52  8    criteria to gerrymander for

07:53:55  9    decades.  They have been

07:53:56  10   looking on the wrong side of

07:53:58  11   those criteria.  They've been

07:53:59  12   looking to use those criteria

07:53:59  13   to assess what map will give

07:54:01  14   their party an unfair,

07:54:05  15   entrenched structural

07:54:06  16   advantage.

07:54:07  17   And I think anyone who's been

07:54:08  18   living in American politics for

07:54:10  19   the last few decades knows

07:54:12  20   that's the case.  So we're

07:54:13  21   saying let's use those metrics

07:54:15  22   for good instead of for

07:54:18  23   gerrymandering.  Let's use them

07:54:23  24   to get to a system where we

07:54:23  25   don't have maps, where on a

1086

| | | |
|---|---|---|
| 07:54:25 | 1 | systematic basis the party |
| 07:54:26 | 2 | winning less than 60 percent of |
| 07:54:28 | 3 | the votes gets more than |
| 07:54:29 | 4 | 60 percent of the seats. |
| 07:54:31 | 5 | That's what it means at the end |
| 07:54:33 | 6 | of the day I think.  And the |
| 07:54:34 | 7 | notion that I'm talking about |
| 07:54:36 | 8 | something that only applies to |
| 07:54:37 | 9 | parliamentary systems, that |
| 07:54:39 | 10 | just doesn't hold water, Your |
| 07:54:40 | 11 | Honor.  I believe we can all |
| 07:54:41 | 12 | agree that we're in a small D |
| | 13 | democracy.  And one of the |
| | 14 | fundamental principles in a |
| | 15 | small D democracy is that the |
| | 16 | majority should rule.  We |
| | 17 | shouldn't end up with a map, if |
| | 18 | we can possibly avoid it, where |
| 07:54:53 | 19 | again on a regular basis less |
| 07:54:54 | 20 | than 50 percent of the votes |
| 07:54:55 | 21 | lead to more than 50 percent of |
| 07:54:58 | 22 | the seats.  That is not small D |
| 07:55:02 | 23 | democratic. |
| 07:55:02 | 24 | So then what did we hear |
| 07:55:03 | 25 | from the advocates of such a |

1087

07:55:05    1          system?  Well, they say it is
07:55:07    2          unavoidable we live in a state
07:55:09    3          with political geography and
07:55:11    4          that political geography is
07:55:15    5          predisposed towards structural
07:55:16    6          advantage for one of the
07:55:17    7          parties.  But the evidence
07:55:18    8          shows that simply isn't true.
07:55:21    9          Yes, it may be true that if you
07:55:22   10          you generated random maps under
07:55:25   11          certain parameters that were
07:55:26   12          completely blind as to
07:55:27   13          fairness, more of those maps
07:55:29   14          would end up in a structural
07:55:31   15          advantage for one of the
07:55:32   16          parties, but the notion that
07:55:35   17          they want to give the Court,
07:55:36   18          which is that there is a choice
07:55:38   19          between meeting the traditional
07:55:40   20          criteria and partisan fairness,
07:55:41   21          is a false choice.  And I think
07:55:43   22          the evidence unmistakably shows
07:55:46   23          that to be true.  You can
07:55:47   24          absolutely satisfy, not only
07:55:51   25          satisfy the traditional

1088

| | |
|---|---|
| 07:55:53 | 1 |
| 07:55:57 | 2 |
| 07:55:57 | 3 |
| 07:55:58 | 4 |
| 07:56:00 | 5 |
| 07:56:06 | 6 |
| 07:56:06 | 7 |
| 07:56:06 | 8 |
| 07:56:12 | 9 |
| 07:56:13 | 10 |
| 07:56:14 | 11 |
| 07:56:15 | 12 |
| 07:56:16 | 13 |
| 07:56:19 | 14 |
| 07:56:21 | 15 |
| 07:56:23 | 16 |
| 07:56:25 | 17 |
| 07:56:27 | 18 |
| 07:56:27 | 19 |
| 07:56:27 | 20 |
| 07:56:27 | 21 |
| 07:56:38 | 22 |
| 07:56:38 | 23 |
| 07:56:40 | 24 |
| 07:56:42 | 25 |

criteria, achieve excellence
under the traditional criteria
and also have partisan fairness
and also have a system where
you are honoring majority rule,
honoring close votes, close
seats, and therefore, having a
government that is properly
responsive and accountable to
the people of the Commonwealth.
         And so what does that
mean at the end of the day?
Well, it means clearly you can
in Pennsylvania, unlike say in
Massachusetts, the example that
Dr. Duchin demonstrated, you
can have a map that meets the
traditional partisan criteria
and also achieves fairness.
And I would respectfully submit
to the Court that if you can
have such a map, then we must
have such a map, because I
think that is what the Free and
Equal Elections Clause, as

1089

| | |
|---|---|
| 07:56:43 | 1 |
| 07:56:44 | 2 |
| 07:56:44 | 3 |
| 07:56:46 | 4 |
| 07:56:47 | 5 |
| 07:56:49 | 6 |
| 07:56:51 | 7 |
| 07:56:52 | 8 |
| 07:56:56 | 9 |
| 07:56:58 | 10 |
| 07:57:04 | 11 |
| 07:57:05 | 12 |
| 07:57:08 | 13 |
| 07:57:08 | 14 |
| 07:57:09 | 15 |
| 07:57:09 | 16 |
| 07:57:13 | 17 |
| 07:57:14 | 18 |
| 07:57:16 | 19 |
| 07:57:16 | 20 |
| 07:57:18 | 21 |
| 07:57:20 | 22 |
| 07:57:21 | 23 |
| 07:57:23 | 24 |
| 07:57:25 | 25 |

described by our Supreme Court,
means.

          The Supreme Court says
that clause means that we have
to provide voters the
opportunity to the greatest
degree possible to participate
equally in all aspects of the
electoral process.  And
redistricting is such an aspect
of the electoral process.  And
so if we can't have a map that
meets the the traditional
criteria and excels under the
traditional criteria, and also
achieves partisan fairness,
then respectfully I suggest
that's the map the Court should
choose.

          Now, is there only one
map that achieves that
standard?  Not necessarily.
And I think Dr. Duchin said
very candidly that there is
more than one map in this case

1090

07:57:26    1    that is reasonable.  But she
07:57:28    2    also explained that when you
07:57:29    3    take the plans that excel on
07:57:32    4    the traditional criteria and
07:57:35    5    you also take the universe of
07:57:39    6    plans that achieve real
07:57:41    7    partisan fairness, there's one
07:57:42    8    plan that falls into both
07:57:44    9    circles.  And that is the
07:57:46   10    Governor's plan.  And that's
07:57:47   11    why we think this Court should
07:57:50   12    elect, should adopt that plan
07:57:52   13    in this case.  Elect is not the
07:57:55   14    right word.  Thank you.
07:57:57   15            I would just like to say
07:57:58   16    one more word.  I won't belabor
07:58:00   17    this.  We heard from the
07:58:02   18    legislative --- the House
07:58:05   19    Legislative and Senate
07:58:05   20    Legislative Intervenors that
07:58:08   21    really the Court to ignore all
07:58:10   22    of this analysis.  All the
07:58:10   23    Court needs to look at is the
07:58:11   24    fact that the map at issue is
07:58:14   25    passed by the General Assembly.

1091

| | | |
|---|---|---|
| 07:58:15 | 1 | We've explained the |
| 07:58:15 | 2 | non-responsive --- we've heard |
| 07:58:15 | 3 | I think very articulate |
| 07:58:17 | 4 | explanation from some of the |
| 07:58:18 | 5 | earlier counsel.  That's simply |
| 07:58:20 | 6 | not the law.  I would refer the |
| 07:58:22 | 7 | Court to the Decision of the |
| 07:58:25 | 8 | U.S. Supreme Court in Smiley v. |
| 07:58:25 | 9 | Holm, 285 US 355.  That's a |
| 07:58:30 | 10 | 1932 case. |
| 07:58:30 | 11 | JUDGE MCCULLOUGH: |
| 07:58:30 | 12 | Is it in your brief? |
| 07:58:32 | 13 | ATTORNEY WIYGUL: |
| 07:58:32 | 14 | It is in our brief, Your |
| 07:58:34 | 15 | Honor. |
| 07:58:34 | 16 | JUDGE MCCULLOUGH: |
| 07:58:34 | 17 | Okay. |
| 07:58:35 | 18 | ATTORNEY WIYGUL: |
| 07:58:35 | 19 | And it was recently |
| 07:58:35 | 20 | reaffirmed in the Arizona |
| 07:58:36 | 21 | redistricting case that earlier |
| 07:58:39 | 22 | counsel cited.  And they sent |
| 07:58:41 | 23 | --- case from the district, the |
| 07:58:43 | 24 | House and Senate Republican |
| 07:58:44 | 25 | Intervenors.  And if you want |

1092

| Time | Line | Text |
|---|---|---|
| 07:58:45 | 1 | to use the term outlier, Your |
| 07:58:48 | 2 | Honor, that case is an outlier. |
| 07:58:48 | 3 | We've cited case after case |
| 07:58:50 | 4 | after case in federal and in |
| 07:58:51 | 5 | probatively in State Supreme |
| 07:58:53 | 6 | Court that rejects the |
| 07:58:55 | 7 | principal that just because a |
| 07:58:56 | 8 | House map is passed by the |
| 07:58:59 | 9 | General Assembly it's entitled |
| 07:59:01 | 10 | to any sort of deference.  It |
| 07:59:02 | 11 | has to be evaluated under the |
| 07:59:05 | 12 | same playing field under the |
| 07:59:06 | 13 | same standard as all the other |
| 07:59:10 | 14 | maps before the Court.  Thank |
| 07:59:10 | 15 | you. |
| 07:59:10 | 16 | JUDGE MCCULLOUGH: |
| 07:59:11 | 17 | Are you going to speak |
| 07:59:12 | 18 | now for Secretary Chapman? |
| 07:59:15 | 19 | ATTORNEY WIYGUL: |
| 07:59:15 | 20 | Yes, I will, Your Honor. |
| 07:59:16 | 21 | As to the map, I mean, I think |
| 07:59:18 | 22 | we can largely rely on the |
| 07:59:20 | 23 | Affidavit that is at least |
| 07:59:21 | 24 | partially in evidence and |
| 07:59:23 | 25 | otherwise in the record.  As we |

1093

| | | |
|---|---|---|
| 07:59:25 | 1 | explain in the affidavit, the |
| 07:59:28 | 2 | calendar situation at the |
| 07:59:30 | 3 | moment is --- rather |
| 07:59:30 | 4 | complicated may be an |
| 07:59:32 | 5 | understatement because we have |
| 07:59:34 | 6 | another process, the |
| 07:59:35 | 7 | legislative redistricting |
| 07:59:38 | 8 | process, which is at a |
| 07:59:40 | 9 | different phase and a slower |
| 07:59:42 | 10 | pace and more delayed.  And we |
| 07:59:45 | 11 | feel very strongly that it is |
| 07:59:47 | 12 | not in the interest certainly |
| 07:59:48 | 13 | of election administration, on |
| 07:59:53 | 14 | the interest of the people of |
| 07:59:53 | 15 | Pennsylvania to have two |
| 07:59:55 | 16 | separate primary elections. |
| 07:59:57 | 17 | Now, having said that, I |
| 07:59:58 | 18 | understand that that |
| 07:59:58 | 19 | legislative redistricting |
| 07:59:59 | 20 | process is not before Your |
| 08:00:05 | 21 | Honor. |
| 08:00:05 | 22 | JUDGE MCCULLOUGH: |
| 08:00:05 | 23 | It is litigation in this |
| 08:00:05 | 24 | Court. |
| 08:00:05 | 25 | ATTORNEY WIYGUL: |

1094

| | | |
|---|---|---|
| 08:00:05 | 1 | Correct.  Correct.  I |
| 08:00:06 | 2 | appreciate that.  And I think |
| 08:00:07 | 3 | ultimately --- my sense is this |
| 08:00:09 | 4 | ultimately will have to be |
| 08:00:11 | 5 | resolved by the Supreme Court. |
| 08:00:12 | 6 | JUDGE MCCULLOUGH: |
| 08:00:12 | 7 | My question is if there |
| 08:00:15 | 8 | were to be a change in the |
| 08:00:17 | 9 | front-end of the schedule, what |
| 08:00:19 | 10 | would the Secretary propose? |
| 08:00:22 | 11 | ATTORNEY WIYGUL: |
| 08:00:22 | 12 | Well, I think, Your |
| 08:00:22 | 13 | Honor, the Secretary I think |
| 08:00:24 | 14 | will not propose a change, but |
| 08:00:25 | 15 | in terms of what would be |
| 08:00:30 | 16 | realistic ---. |
| 08:00:30 | 17 | JUDGE MCCULLOUGH: |
| 08:00:31 | 18 | Three. |
| 08:00:33 | 19 | ATTORNEY WIYGUL: |
| 08:00:33 | 20 | I think what was in the |
| 08:00:33 | 21 | Affidavit, Your Honor.  Again, |
| 08:00:33 | 22 | we're not talking about |
| 08:00:33 | 23 | advocating for something but |
| 08:00:35 | 24 | what is feasible, that it would |
| 08:00:40 | 25 | be preferable to have three |

weeks between the the time of the final map, and really by final map we mean including the resolution and the appeal is adopted and the first date in the primary calendar. But the Affidavit goes on to explain that, you know, if we had to we think we could probably do that in two weeks if we could transfer resources. And there are other ways in which we could condense the existing calendar as well. And I won't --- I won't try to reproduce what was in the Affidavit for fear of getting it wrong, but those details are in there.

JUDGE MCCULLOUGH:

Yes, it's --- it's in the record.

ATTORNEY WIYGUL:

Thank you, Your Honor.

JUDGE MCCULLOUGH:

Is that it, Mr. Wiygul?

1096

| | | |
|---|---|---|
| 08:01:16 | 1 | ATTORNEY WIYGUL: |
| 08:01:16 | 2 | Yes.  But I would just |
| 08:01:18 | 3 | say but at the end of the day |
| 08:01:19 | 4 | we do feel and the Governor |
| 08:01:20 | 5 | also feels very strongly we |
| 08:01:21 | 6 | should not divide the primary |
| 08:01:23 | 7 | and we should end up with a |
| 08:01:26 | 8 | primary date ultimately that |
| 08:01:30 | 9 | will accommodate both |
| 08:01:31 | 10 | redistricting processes that |
| 08:01:32 | 11 | are currently still proceeding. |
| 08:01:34 | 12 | JUDGE MCCULLOUGH: |
| 08:01:34 | 13 | Thank you, Mr. Wiygul. |
| 08:01:36 | 14 | ATTORNEY WIYGUL: |
| 08:01:37 | 15 | Thank you. |
| 08:01:37 | 16 | JUDGE MCCULLOUGH: |
| 08:01:39 | 17 | And now we will hear |
| 08:01:39 | 18 | from counsel for Petitioner |
| 08:01:41 | 19 | Gressman. I'm not sure who's |
| 08:01:44 | 20 | arguing. |
| 08:01:44 | 21 | ATTORNEY RING-AMUNSON: |
| 08:01:52 | 22 | Thank you, Your Honor. |
| 08:01:52 | 23 | Jessie Amunson for the Math and |
| 08:01:56 | 24 | Science Petitioners.  I want to |
| 08:01:58 | 25 | begin by just thanking the |

1097

| | | |
|---|---|---|
| 08:02:00 | 1 | Court for its incredible |
| 08:02:02 | 2 | patience and diligence over the |
| 08:02:04 | 3 | past couple of days and also |
| 08:02:06 | 4 | thank the Court's staff for |
| 08:02:07 | 5 | making sure that all of this |
| 08:02:09 | 6 | ran so smoothly. |
| 08:02:10 | 7 | The Court has certainly |
| 08:02:12 | 8 | worked the parties hard this |
| 08:02:14 | 9 | week, but we know that now hard |
| 08:02:15 | 10 | work is now in front of the |
| 08:02:16 | 11 | Court.  Because of the |
| 08:02:17 | 12 | breakdown of the political |
| 08:02:18 | 13 | process, the Court now has the |
| 08:02:20 | 14 | unwelcomed obligation, as the |
| 08:02:23 | 15 | Supreme Court has called it, of |
| 08:02:25 | 16 | choosing among the parties' |
| 08:02:26 | 17 | plans. |
| 08:02:27 | 18 | There has been a lot of |
| 08:02:30 | 19 | testimony about a lot of |
| 08:02:32 | 20 | numbers over the past couple of |
| 08:02:33 | 21 | days.  And there's one number |
| 08:02:36 | 22 | that really matters and that's |
| 08:02:39 | 23 | one.  One person, one vote. |
| 08:02:43 | 24 | That's the guarantee of the |
| 08:02:44 | 25 | United States Constitution and |

1098

| | | |
|---|---|---|
| 08:02:48 | 1 | the Pennsylvania Constitution. |
| 08:02:49 | 2 | Indeed, the Pennsylvania |
| 08:02:51 | 3 | Constitution provides |
| 08:02:51 | 4 | protections for that right over |
| 08:02:53 | 5 | and above those provided in the |
| 08:02:55 | 6 | federal Constitution.  The Free |
| 08:02:57 | 7 | and Equal Elections Clause, as |
| 08:03:00 | 8 | interpreted by the Supreme |
| 08:03:02 | 9 | Court in the League of Women |
| 08:03:05 | 10 | Voters case says all voters |
| 08:03:06 | 11 | have an equal opportunity to |
| 08:03:07 | 12 | translate their votes into |
| 08:03:09 | 13 | representation. |
| 08:03:11 | 14 | And I think it's worth |
| 08:03:13 | 15 | remembering what happened after |
| 08:03:16 | 16 | the Supreme Court found a |
| 08:03:18 | 17 | violation of that right in the |
| 08:03:21 | 18 | League of Women Voters case. |
| 08:03:23 | 19 | The Court gave the General |
| 08:03:25 | 20 | Assembly an opportunity to come |
| 08:03:26 | 21 | up with a new map that the |
| 08:03:29 | 22 | Governor could sign.  That |
| 08:03:31 | 23 | didn't happen.  The General |
| 08:03:34 | 24 | Assembly proposed a map, the |
| 08:03:37 | 25 | Governor rejected the map. |

1099

| | | |
|---|---|---|
| 08:03:39 | 1 | Then as now both the General |
| 08:03:41 | 2 | Assembly and the Governor then |
| 08:03:43 | 3 | went to court and proposed |
| 08:03:45 | 4 | their remedial plans to the |
| 08:03:48 | 5 | Court. |
| 08:03:48 | 6 | The Court didn't choose |
| 08:03:49 | 7 | the legislature's plan and |
| 08:03:53 | 8 | thereby effectively override |
| 08:03:55 | 9 | the Governor's power to veto |
| 08:03:55 | 10 | the plan.  The Court didn't |
| 08:03:55 | 11 | choose the Governor's plan and |
| 08:03:55 | 12 | thereby effectively override |
| 08:03:55 | 13 | the legislature's traditional |
| 08:04:07 | 14 | primacy in redistricting.  The |
| 08:04:08 | 15 | Court looked to a scientist to |
| 08:04:11 | 16 | help it.  The Court brought on |
| 08:04:12 | 17 | a scientist to help the Court |
| 08:04:14 | 18 | draw up a plan that would |
| 08:04:16 | 19 | scrupulously adhere to the |
| 08:04:18 | 20 | neutral criteria and give all |
| 08:04:19 | 21 | voters an equal opportunity to |
| 08:04:21 | 22 | translate their votes into |
| 08:04:25 | 23 | representation. |
| 08:04:26 | 24 | We, the Gressman Math |
| 08:04:27 | 25 | and Science Petitioners, are |

1100

| | | |
|---|---|---|
| 08:04:29 | 1 | likewise here to provide the |
| 08:04:30 | 2 | Court with a map that |
| 08:04:32 | 3 | scrupulously adheres to the |
| 08:04:34 | 4 | neutral criteria and is fair to |
| 08:04:36 | 5 | all voters. |
| 08:04:38 | 6 | The Court's heard a lot |
| 08:04:39 | 7 | of testimony over the past |
| 08:04:40 | 8 | couple of days about |
| 08:04:42 | 9 | trade-offs. You've heard, for |
| 08:04:45 | 10 | example, about how if you keep |
| 08:04:47 | 11 | Pittsburgh whole you will have |
| 08:04:48 | 12 | to take a hit on your |
| 08:04:49 | 13 | compactness scores. And |
| 08:04:51 | 14 | certainly there are a lot of |
| 08:04:53 | 15 | trade-offs in the redistricting |
| 08:04:54 | 16 | process. But I want to be |
| 08:04:56 | 17 | clear that there is one |
| 08:04:57 | 18 | trade-off that does not have to |
| 08:04:59 | 19 | be made. You do not have to |
| 08:05:01 | 20 | trade off compliance with the |
| 08:05:03 | 21 | traditional districting |
| 08:05:04 | 22 | criteria and partisan fairness. |
| 08:05:07 | 23 | You can achieve both. And the |
| 08:05:10 | 24 | best evidence of that is the |
| 08:05:12 | 25 | math that the Gressman Math and |

1101

| | | |
|---|---|---|
| 08:05:19 | 1 | Science Petitioners have |
| 08:05:20 | 2 | submitted to the Court. |
| 08:05:21 | 3 | Just to go through the |
| 08:05:24 | 4 | <u>League of Women Voters</u> criteria |
| 08:05:24 | 5 | that the Supreme Court |
| 08:05:25 | 6 | instructed, the map has perfect |
| 08:05:29 | 7 | population equality.  You can't |
| 08:05:31 | 8 | do better.  Every district is |
| 08:05:33 | 9 | contiguous.  As to political |
| 08:05:36 | 10 | subdivisions, there are six |
| 08:05:37 | 11 | different categories of them |
| 08:05:38 | 12 | that are in the Constitution |
| 08:05:40 | 13 | and the Constitution says not |
| 08:05:44 | 14 | to divide unless absolutely |
| 08:05:46 | 15 | necessary for population |
| 08:05:47 | 16 | reasons.  Counties, we're tied |
| 08:05:51 | 17 | with the Republican Legislative |
| 08:05:54 | 18 | map, HB-2146.  Cities, we do |
| 08:05:58 | 19 | the best and it's |
| 08:06:00 | 20 | mathematically impossible to do |
| 08:06:01 | 21 | better.  We split only one city |
| 08:06:03 | 22 | in the entire Commonwealth, the |
| 08:06:06 | 23 | City of Philadelphia.  And we |
| 08:06:07 | 24 | split it three ways because it |
| 08:06:08 | 25 | has to be split three ways due |

1102

| | | |
|---|---|---|
| 08:06:14 | 1 | to its population.  We keep |
| 08:06:16 | 2 | Pittsburgh intact. |
| 08:06:17 | 3 | The next category is |
| 08:06:18 | 4 | incorporated towns.  There is |
| 08:06:20 | 5 | only one of these in the entire |
| 08:06:21 | 6 | Commonwealth and we keep it |
| 08:06:23 | 7 | whole, as do all the other |
| 08:06:24 | 8 | parties.  Townships, there are |
| 08:06:26 | 9 | 1,546 of these in the |
| 08:06:31 | 10 | Commonwealth.  We split 15. |
| 08:06:33 | 11 | Boroughs, again, we are the |
| 08:06:35 | 12 | best.  We break three and only |
| 08:06:37 | 13 | where there are already |
| 08:06:39 | 14 | following county lines.  Wards, |
| 08:06:43 | 15 | most of the other parties have |
| 08:06:44 | 16 | just completely ignored wards, |
| 08:06:47 | 17 | line edited it out of the |
| 08:06:49 | 18 | Constitution.  But wards matter |
| 08:06:51 | 19 | to the people of Philadelphia |
| 08:06:53 | 20 | in particular.  We split 15 of |
| 08:06:56 | 21 | them compared to 21 to 25 in |
| 08:07:01 | 22 | most of the other plans.  And |
| 08:07:03 | 23 | when you add up these six |
| 08:07:04 | 24 | enumerated political |
| 08:07:07 | 25 | subdivisions in the |

1103

| | | |
|---|---|---|
| 08:07:11 | 1 | Constitution, we're the very |
| 08:07:11 | 2 | best.  We split the very fewest |
| 08:07:20 | 3 | among all of the parties. |
| 08:07:22 | 4 | The category |
| 08:07:22 | 5 | compactness, we're the top five |
| 08:07:22 | 6 | in every single measure across |
| 08:07:23 | 7 | the board.  And that brings me |
| 08:07:24 | 8 | to partisan fairness.  Here |
| 08:07:28 | 9 | it's undisputed that we are at |
| 08:07:30 | 10 | the top or tied for the top in |
| 08:07:36 | 11 | virtually every measure that |
| 08:07:39 | 12 | all the experts have testified |
| 08:07:40 | 13 | about today.  The best |
| 08:07:42 | 14 | mean-median score in the most |
| 08:07:46 | 15 | recent elections, the best |
| 08:07:46 | 16 | anti-majoritarian outcome |
| 08:07:50 | 17 | score.  In the top three in the |
| 08:07:52 | 18 | efficiency gap score.  And you |
| 08:07:53 | 19 | don't have to just trust all of |
| 08:07:56 | 20 | the experts that were here. |
| 08:07:58 | 21 | Whatever Court --- whatever |
| 08:07:59 | 22 | plan the Court adopts, as you |
| 08:08:03 | 23 | heard today in the testimony of |
| 08:08:04 | 24 | Dr. Caughey, the public can run |
| 08:08:04 | 25 | it through Plan Score.  And |

1104

08:08:04    1        when they do that, if they run
08:08:04    2        all of these plans that were
08:08:04    3        submitted to the Court through
08:08:16    4        that, guess what plan is going
08:08:17    5        to perform the best?  Ours, the
08:08:19    6        Gressman Math an Science plan.
08:08:21    7        It will perform the best on all
08:08:23    8        of the metrics of partisan
08:08:24    9        fairness, metrics that the
08:08:26   10        Supreme Court considered in the
08:08:28   11        League of Women Voters case.
08:08:32   12        And we do all of this while
08:08:34   13        being the only map that does
08:08:37   14        not pair any of the City
08:08:43   15        members of Congress against one
08:08:44   16        another for re-election.  No
08:08:47   17        incumbent parings on our map.
08:08:49   18        We also do all this while being
08:08:50   19        the only plan that creates
08:08:52   20        three majority/minority
08:08:54   21        districts, reflecting
08:08:55   22        Pennsylvania's growingly
08:08:59   23        diverse population.
08:09:01   24             And I want to be clear
08:09:02   25        here.  We have been completely

1105

| | | |
|---|---|---|
| 08:09:03 | 1 | transparent with the Court.  We |
| 08:09:05 | 2 | didn't cherry pick.  We didn't |
| 08:09:07 | 3 | present you with just county |
| 08:09:09 | 4 | statistics or just municipality |
| 08:09:13 | 5 | statistics.  You heard from Dr. |
| 08:09:13 | 6 | DeFord yesterday and you have |
| 08:09:14 | 7 | his report.  It goes through |
| 08:09:15 | 8 | every single one of the |
| 08:09:16 | 9 | criteria that were considered |
| 08:09:17 | 10 | in the League of Women Voters |
| 08:09:20 | 11 | case.  It applies those |
| 08:09:21 | 12 | criteria to every single plan |
| 08:09:23 | 13 | in the exact same way. |
| 08:09:25 | 14 | But to end where I |
| 08:09:26 | 15 | started, the number that really |
| 08:09:28 | 16 | matters here is one.  One |
| 08:09:30 | 17 | person, one vote.  The Court |
| 08:09:33 | 18 | now has the responsibility of |
| 08:09:34 | 19 | choosing the plan that best |
| 08:09:35 | 20 | fulfills that guarantee.  We |
| 08:09:38 | 21 | hope that our rigorous, |
| 08:09:40 | 22 | non-partisan and scientific |
| 08:09:42 | 23 | approach has been of service to |
| 08:09:46 | 24 | the Court and we urge the Court |
| 08:09:47 | 25 | to choose the plan that |

1106

08:09:49  1        objectively performs the best

08:09:51  2        across the board, the Gressman

08:09:53  3        Math and Science plan.

08:09:55  4              To briefly address the

08:09:57  5        election calendar issue, Your

08:09:58  6        Honor, we do not believe it is

08:10:00  7        necessary at this point to move

08:10:01  8        the primary.  The Court has

08:10:02  9        promised to rule expeditiously

08:10:05  10       and we trust that the Court

08:10:07  11       will do so.

08:10:07  12             As to the compression of

08:10:09  13       the preprimary dates, we would

08:10:12  14       defer to the election

08:10:13  15       administrators who are the

08:10:15  16       professionals in that space,

08:10:17  17       but we do recognize that there

08:10:19  18       can be some compression of the

08:10:21  19       preprimary schedule.  Thank

08:10:21  20       you, Your Honor.

08:10:21  21             JUDGE MCCULLOUGH:

08:10:23  22             Thank you very much,

08:10:32  23       Counsel.

08:10:32  24             Okay.

08:10:33  25             Mr. Gordon for

1107

| | | |
|---|---|---|
| 08:10:36 | 1 | Petitioners. |
| 08:10:50 | 2 | ATTORNEY GORDON: |
| 08:10:50 | 3 | Thank you, Your Honor. |
| 08:10:53 | 4 | And thanks you for the Court |
| 08:10:55 | 5 | staff for putting this on short |
| 08:10:56 | 6 | notice and doing a great job |
| 08:10:59 | 7 | with setting up the courtroom |
| 08:11:00 | 8 | keeping us all safe.  On behalf |
| 08:11:03 | 9 | of my clients, expressed |
| 08:11:07 | 10 | sincere gratitude for that. |
| 08:11:09 | 11 | You just heard from |
| 08:11:09 | 12 | seven or eight different |
| 08:11:10 | 13 | parties advocating that they |
| 08:11:11 | 14 | have the best map.  The single |
| 08:11:14 | 15 | congressional redistricting map |
| 08:11:16 | 16 | that should be implemented for |
| 08:11:16 | 17 | the next decade.  And the |
| 08:11:17 | 18 | justifications are varied and |
| 08:11:19 | 19 | they are creative, and they |
| 08:11:20 | 20 | relied variously on subjective |
| 08:11:22 | 21 | determinations about |
| 08:11:23 | 22 | excellence, arguments that |
| 08:11:24 | 23 | they're entitled to deference, |
| 08:11:28 | 24 | various variables that have |
| 08:11:29 | 25 | multiple metrics, disputes |

1108

08:11:33    1    about the relative value of the
08:11:34    2    metrics and splitting hairs
08:11:35    3    about the importance of subtle
08:11:37    4    differences among the plans of
08:11:40    5    these metrics.  Against this
08:11:43    6    muddled backdrop, the Carter
08:11:46    7    plan stands out as the superior
08:11:48    8    because it is undisputedly
08:11:50    9    superior on an objective
08:11:52   10    criterion of least change.
08:11:54   11         You don't have to take
08:11:55   12    my word for that or even Dr.
08:12:00   13    Rodden's word for that.
08:12:03   14    Multiple experts agree that the
08:12:05   15    Carter plan hues closest to the
08:12:07   16    2018 plan that was adopted by
08:12:10   17    the Pennsylvania Supreme Court,
08:12:11   18    and as such thus embodies the
08:12:11   19    ideals backed into that plan's
08:12:14   20    district by least disrupting
08:12:15   21    those districts.
08:12:19   22         You know, about the
08:12:20   23    traditional redistricting
08:12:21   24    criteria.  Many of them are not
08:12:24   25    helpful in differentiating

1109

| | | |
|---|---|---|
| 08:12:26 | 1 | among the plans here. |
| 08:12:29 | 2 | Contiguity and population |
| 08:12:31 | 3 | equity don't help to |
| 08:12:31 | 4 | distinguish among the plans. |
| 08:12:31 | 5 | Compactness and |
| 08:12:33 | 6 | political subdivision splits, |
| 08:12:34 | 7 | the Carter plan does very well |
| 08:12:36 | 8 | on those, but here's where you |
| 08:12:38 | 9 | get into the different measures |
| 08:12:39 | 10 | and the different rights per |
| 08:12:41 | 11 | measures and the subtle |
| 08:12:42 | 12 | differences.  And as Dr. |
| 08:12:45 | 13 | Duchin, an opposing expert |
| 08:12:46 | 14 | testified, there's no bright |
| 08:12:47 | 15 | line threshold for compliance |
| 08:12:49 | 16 | with compactness or political |
| 08:12:51 | 17 | splits, political subdivision |
| 08:12:53 | 18 | splits.  In fact, it appears |
| 08:12:55 | 19 | that the experts agree that the |
| 08:12:58 | 20 | plans are reasonably compact. |
| 08:13:02 | 21 | The Carter plan does |
| 08:13:03 | 22 | better on some measures and |
| 08:13:04 | 23 | relatively not as well on |
| 08:13:06 | 24 | others, in part that is why the |
| 08:13:10 | 25 | result of decision to keep |

1110

| | | |
|---|---|---|
| 08:13:12 | 1 | Pittsburgh whole, as you've |
| 08:13:14 | 2 | heard, if you do that, you |
| 08:13:15 | 3 | lower a plan's Polsby-Popper |
| 08:13:18 | 4 | compactness score, which |
| 08:13:19 | 5 | illustrates the trade-offs and |
| 08:13:21 | 6 | the difficulty in choosing |
| 08:13:24 | 7 | among the plans based on the |
| 08:13:25 | 8 | choices they made on those |
| 08:13:25 | 9 | trade-offs. |
| 08:13:26 | 10 | The Carter plan also |
| 08:13:28 | 11 | performs very well on political |
| 08:13:29 | 12 | subdivision splits, and here I |
| 08:13:31 | 13 | would note that the plans are |
| 08:13:33 | 14 | close and most, if not all |
| 08:13:34 | 15 | plans, did better than the 2018 |
| 08:13:36 | 16 | plan.  And the differences, |
| 08:13:39 | 17 | especially when you get into |
| 08:13:42 | 18 | the numbers like the municipal |
| 08:13:43 | 19 | splits are quite small relative |
| 08:13:44 | 20 | to the number of municipalities |
| 08:13:45 | 21 | in Pennsylvania. |
| 08:13:45 | 22 | The Carter plan is tied |
| 08:13:48 | 23 | for the lowest number of county |
| 08:13:50 | 24 | splits, depending on you count |
| 08:13:51 | 25 | this six-person segment of |

1111

| 08:13:53 | 1 | Chester County.  And Dr. |
| 08:13:55 | 2 | DeFord, another opposing expert |
| 08:13:56 | 3 | testified that counties were |
| 08:13:58 | 4 | the most important subdivision |
| 08:13:59 | 5 | to avoid splitting. |
| 08:14:01 | 6 | The Carter plan also |
| 08:14:02 | 7 | analyzed an additional metric, |
| 08:14:05 | 8 | the number of VTD splits.  And |
| 08:14:09 | 9 | Doctor Rodden testified why |
| 08:14:14 | 10 | this was so important and why |
| 08:14:17 | 11 | it was important that the |
| 08:14:17 | 12 | Carter plan had the fewest |
| 08:14:20 | 13 | number of VTD splits.  But |
| 08:14:21 | 14 | again, you don't have to take |
| 08:14:22 | 15 | his word for it.  The Mellow |
| 08:14:23 | 16 | report said that a serious |
| 08:14:24 | 17 | election administration problem |
| 08:14:24 | 18 | arises from requiring voters in |
| 08:14:26 | 19 | a single precinct to look to |
| 08:14:28 | 20 | two different sets of |
| 08:14:29 | 21 | Congressional candidates, |
| 08:14:31 | 22 | emphasizing this not a minor |
| 08:14:33 | 23 | problem. |
| 08:14:36 | 24 | So we have to turn, I |
| 08:14:39 | 25 | think to other considerations |

1112

| | | |
|---|---|---|
| 08:14:40 | 1 | to really differentiate among |
| 08:14:41 | 2 | the plans.  And the parties |
| 08:14:46 | 3 | provide some various reasons, |
| 08:14:47 | 4 | but I submit that none of them |
| 08:14:48 | 5 | are particularly helpful to |
| 08:14:49 | 6 | this Court.  Because for |
| 08:14:51 | 7 | example, the Republican |
| 08:14:51 | 8 | legislatures ---- legislative |
| 08:14:53 | 9 | intervenors that they should |
| 08:14:54 | 10 | adopt their plan, because it |
| 08:14:55 | 11 | deserves deference.  But the |
| 08:14:56 | 12 | map was vetoed. |
| 08:14:57 | 13 | And giving a deference |
| 08:14:59 | 14 | would give the General Assembly |
| 08:15:03 | 15 | perverse incentives to |
| 08:15:04 | 16 | circumvent a legislative |
| 08:15:05 | 17 | process in the future and |
| 08:15:06 | 18 | circumvent the possibility of |
| 08:15:07 | 19 | compromising to win executive |
| 08:15:10 | 20 | branch approval.  And it would |
| 08:15:13 | 21 | elevate one branch of |
| 08:15:15 | 22 | government over the other.  And |
| 08:15:16 | 23 | it would also contradict the |
| 08:15:18 | 24 | guidance from the Mellow Court |
| 08:15:19 | 25 | that says all maps should be |

1113

| | | |
|---|---|---|
| 08:15:21 | 1 | considered on the same footing. |
| 08:15:25 | 2 | The Gressman Petitioners |
| 08:15:27 | 3 | would like you to adopt their |
| 08:15:29 | 4 | plan in part who they are and |
| 08:15:31 | 5 | how their map was drawn.  But |
| 08:15:32 | 6 | I'd like to point out to the |
| 08:15:36 | 7 | Court that the Carter plan is |
| 08:15:37 | 8 | the only one who had an expert |
| 08:15:39 | 9 | here to testify about how the |
| 08:15:41 | 10 | plan was drawn and the fact |
| 08:15:47 | 11 | that partisan data was not |
| 08:15:47 | 12 | considered while drawing that |
| 08:15:49 | 13 | plan.  And that is reflected in |
| 08:15:49 | 14 | the Carter plan's consistently |
| 08:15:50 | 15 | top performance in the various |
| 08:15:52 | 16 | evaluations of partisan |
| 08:15:53 | 17 | fairness. |
| 08:15:56 | 18 | On the county split |
| 08:15:57 | 19 | issues, I would just like to |
| 08:15:59 | 20 | point out to the Court that no |
| 08:16:01 | 21 | party proposed a map with the |
| 08:16:02 | 22 | minimum of three county splits. |
| 08:16:05 | 23 | All exceeded the minimum |
| 08:16:07 | 24 | possible.  And the Supreme |
| 08:16:09 | 25 | Court adopted a plan in 2018 |

1114

| | | |
|---|---|---|
| 08:16:11 | 1 | above the minimum possible |
| 08:16:12 | 2 | number of splits.  The Governor |
| 08:16:14 | 3 | would like you to adopt this |
| 08:16:16 | 4 | plan, in part, because Dr. |
| 08:16:20 | 5 | Duchin says it's an excellent |
| 08:16:22 | 6 | plan, but she conceded that's |
| 08:16:24 | 7 | an objective determination. |
| 08:16:24 | 8 | And that, again, illustrates |
| 08:16:27 | 9 | the problems and subjective |
| 08:16:27 | 10 | judgments based on different |
| 08:16:30 | 11 | measures of subdivision splits |
| 08:16:30 | 12 | in compactness, et cetera. |
| 08:16:32 | 13 | We looked to the other |
| 08:16:34 | 14 | criteria then, the historical |
| 08:16:36 | 15 | criteria, the communities of |
| 08:16:39 | 16 | interest, that's a hard one to |
| 08:16:41 | 17 | gauge because different |
| 08:16:42 | 18 | experts, different parties talk |
| 08:16:43 | 19 | about different factors.  But |
| 08:16:44 | 20 | the Carter plan does as well or |
| 08:16:46 | 21 | better than others.  It keeps |
| 08:16:48 | 22 | Pittsburgh whole, it keeps |
| 08:16:51 | 23 | Harrisburg whole.  It keeps |
| 08:16:53 | 24 | Bucks County together in one |
| 08:16:53 | 25 | district, which Dr. Naughton |

1115

| | | |
|---|---|---|
| 08:16:55 | 1 | testified was important. |
| 08:16:59 | 2 | It's the other two |
| 08:17:01 | 3 | factors where we start to see |
| 08:17:03 | 4 | some differentiation among the |
| 08:17:04 | 5 | Plan.  Partisan fairness, |
| 08:17:05 | 6 | you've heard a lot about that, |
| 08:17:06 | 7 | and that is critical because |
| 08:17:07 | 8 | underlying the League of Women |
| 08:17:10 | 9 | Voters criteria and factors is |
| 08:17:12 | 10 | the underlying principal as the |
| 08:17:15 | 11 | Court said it's axiomatic that |
| 08:17:18 | 12 | a diluted vote is not an equal |
| 08:17:20 | 13 | vote, and that's what this case |
| 08:17:22 | 14 | is really about.  And it's also |
| 08:17:24 | 15 | reflected in Mellow. |
| 08:17:25 | 16 | As I mentioned the |
| 08:17:26 | 17 | Carter plan performs |
| 08:17:31 | 18 | exceptionally well in this |
| 08:17:32 | 19 | measure, but not all did.  As |
| 08:17:32 | 20 | multiple experts, including the |
| 08:17:33 | 21 | House Republican's own expert, |
| 08:17:35 | 22 | Dr. Barber, admitted on Cross |
| 08:17:37 | 23 | Examination under his analysis |
| 08:17:39 | 24 | of mean-median, HB-2146 and the |
| 08:17:43 | 25 | two Reschenthaler plans are the |

1116

| | | |
|---|---|---|
| 08:17:44 | 1 | most bias plans there are among |
| 08:17:46 | 2 | the group. |
| 08:17:47 | 3 | And we've heard some |
| 08:17:48 | 4 | justifications about relying on |
| 08:17:50 | 5 | political geography, but I |
| 08:17:51 | 6 | agree with Dr. Duchin.  There's |
| 08:17:54 | 7 | no reason to let the chips fall |
| 08:17:56 | 8 | where they may when we can do |
| 08:17:58 | 9 | better.  And preventing vote |
| 08:18:01 | 10 | dilution compels that we aim |
| 08:18:04 | 11 | higher. |
| 08:18:04 | 12 | Multiple experts agreed |
| 08:18:06 | 13 | that the Carter plan does very |
| 08:18:07 | 14 | well on the partisan fairness |
| 08:18:09 | 15 | metrics. |
| 08:18:09 | 16 | And that leaves the |
| 08:18:10 | 17 | final objective criteria where |
| 08:18:13 | 18 | it's undisputed that the Carter |
| 08:18:16 | 19 | plan does the best. |
| 08:18:17 | 20 | Preservation of the core of |
| 08:18:18 | 21 | districts, preservation of the |
| 08:18:20 | 22 | 2018 plan.  And that clenches |
| 08:18:23 | 23 | the analysis for the Carter |
| 08:18:24 | 24 | plan. |
| 08:18:25 | 25 | Least change is an |

1117

| | | |
|---|---|---|
| 08:18:26 | 1 | objective criteria that can be |
| 08:18:28 | 2 | measured.  And it has been |
| 08:18:29 | 3 | measured here by Dr. Rodden and |
| 08:18:34 | 4 | Dr. Duchin who each got the |
| 08:18:35 | 5 | same numbers.  And on that |
| 08:18:38 | 6 | criteria, as Dr. Duchin said |
| 08:18:42 | 7 | the Carter plan was superlative |
| 08:18:43 | 8 | and it lapped the field. |
| 08:18:46 | 9 | The Court has heard, |
| 08:18:47 | 10 | again, a lot of arguments and |
| 08:18:49 | 11 | testimony about this. |
| 08:18:50 | 12 | Ultimately as the Court stated |
| 08:18:51 | 13 | in Mellow, this Court must |
| 08:18:53 | 14 | consider each plan on the same |
| 08:18:54 | 15 | footing.  And we submit that |
| 08:18:56 | 16 | when this Court does that in |
| 08:18:58 | 17 | applying the single objective |
| 08:19:00 | 18 | criterion on which there's no |
| 08:19:02 | 19 | dispute about which plan is |
| 08:19:03 | 20 | superior, the Carter plan |
| 08:19:05 | 21 | should be adopted. |
| 08:19:06 | 22 | Thank you, Your Honor. |
| 08:19:10 | 23 | JUDGE MCCULLOUGH: |
| 08:19:11 | 24 | Do you have a comment on |
| 08:19:12 | 25 | the election schedule? |

1118

| | | |
|---|---|---|
| 08:19:15 | 1 | ATTORNEY GORDON: |
| 08:19:15 | 2 | Your Honor, we certainly |
| 08:19:16 | 3 | don't dispute that if necessary |
| 08:19:18 | 4 | the Court has the authority to |
| 08:19:20 | 5 | change the deadlines, including |
| 08:19:22 | 6 | the primary deadline.  We don't |
| 08:19:23 | 7 | think it will be necessary, |
| 08:19:25 | 8 | given the time here.  And we |
| 08:19:27 | 9 | hope that it's not. |
| 08:19:30 | 10 | JUDGE MCCULLOUGH: |
| 08:19:30 | 11 | Thank you. |
| 08:19:30 | 12 | ATTORNEY GORDON: |
| 08:19:30 | 13 | Thank you. |
| 08:19:30 | 14 | JUDGE MCCULLOUGH: |
| 08:19:31 | 15 | All right. |
| 08:19:31 | 16 | The Court now would just |
| 08:19:33 | 17 | note a few things for the |
| 08:19:35 | 18 | record.  That all maps, expert |
| 08:19:37 | 19 | reports, including files |
| 08:19:38 | 20 | uploaded to the Court in accord |
| 08:19:42 | 21 | with the Court's Order in a |
| 08:19:44 | 22 | timely fashion are already part |
| 08:19:46 | 23 | of the record and are so |
| 08:19:48 | 24 | admitted. |
| 08:19:50 | 25 | Doctor Burnell and |

1119

| | | |
|---|---|---|
| 08:19:55 | 1 | Doctor Meme's expert reports |
| 08:19:55 | 2 | will not be excluded on the |
| 08:19:58 | 3 | basis of hearsay, as we have |
| 08:20:00 | 4 | expert reports also that have |
| 08:20:03 | 5 | been submitted by the Amici in |
| 08:20:09 | 6 | the same fashion. |
| 08:20:10 | 7 | Regarding also, |
| 08:20:11 | 8 | specifically, the Lamb report |
| 08:20:12 | 9 | and other attachments of the |
| 08:20:14 | 10 | parties filings that were |
| 08:20:15 | 11 | timely filed with the Court, |
| 08:20:18 | 12 | they are already part of the |
| 08:20:20 | 13 | record and so admitted. |
| 08:20:23 | 14 | Counsel, we've already |
| 08:20:24 | 15 | discussed that you may submit |
| 08:20:26 | 16 | post-trial submissions, whether |
| 08:20:28 | 17 | that's a brief, a memorandum of |
| 08:20:31 | 18 | law, I'm leaving it up to you |
| 08:20:33 | 19 | how you want to craft it for |
| 08:20:37 | 20 | your client, and those are due |
| 08:20:39 | 21 | tomorrow, Saturday by |
| 08:20:39 | 22 | two o'clock. |
| 08:20:44 | 23 | And I want to thank the |
| 08:20:45 | 24 | parties and Amici for their |
| 08:20:45 | 25 | sincere interest in the |

1120

| 08:20:53 | 1 | constitutionality of |
| 08:20:53 | 2 | Pennsylvania's congressional |
| 08:20:55 | 3 | districting process.  I have |
| 08:20:57 | 4 | many thanks to the attorneys, |
| 08:20:59 | 5 | all of you that have been |
| 08:21:00 | 6 | involved, even those not in the |
| 08:21:02 | 7 | room, for your cooperation and |
| 08:21:04 | 8 | your professional decorum in |
| 08:21:06 | 9 | the courtroom.  You have all |
| 08:21:08 | 10 | represented your clients' |
| 08:21:09 | 11 | interests very commendably. |
| 08:21:12 | 12 | And I thank the IT |
| 08:21:14 | 13 | staff, our Court Criers, our |
| 08:21:17 | 14 | ticket administrator, |
| 08:21:19 | 15 | Prothonotary's office and the |
| 08:21:20 | 16 | office of legal counsel and my |
| 08:21:21 | 17 | own staff for ensuring that we |
| 08:21:24 | 18 | could conduct this trial in |
| 08:21:27 | 19 | such an expedited schedule. |
| 08:21:27 | 20 | And there is, as many of you |
| 08:21:27 | 21 | have noted there is a lot of |
| 08:21:27 | 22 | technical and legal information |
| 08:21:27 | 23 | which the Court now needs to |
| 08:21:41 | 24 | review and assess and the court |
| 08:21:41 | 25 | will do so as stated before in |

1121

| | | |
|---|---|---|
| 08:21:44 | 1 | as expedited manner as |
| 08:21:46 | 2 | possible. |
| 08:21:47 | 3 | The Court --- I |
| 08:21:48 | 4 | appreciate that this is a critical |
| 08:21:50 | 5 | matter affecting the constitutional |
| 08:21:55 | 6 | rights of the people of Pennsylvania. |
| 08:21:57 | 7 | So I thank you all.  I think we are |
| 08:21:59 | 8 | finished.  So thank you very much. |
| 08:22:20 | 9 | COURT CRIER HOLLAND: |
| 08:22:20 | 10 | The Commonwealth Court |
| 08:22:22 | 11 | is now adjourned. |
| 08:22:22 | 12 | * * * * * * * * |
| 08:22:22 | 13 | HEARING CONCLUDED |
| 08:10:23 | 14 | * * * * * * * * |
| 08:10:23 | 15 | ___ |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1122

1

2                           C E R T I F I C A T E

3

4       I  hereby  certify  that  the  foregoing

5       proceedings,  hearing  held  before  Judge

6       McCullough,  was  reported  by  me  on

7       1/28/2022  and  that  I,  Nicole

8       Montagano,  read  this  transcript,  and

9       that  I  attest  that  this  transcript  is

10      a  true  and  accurate  record  of  the

11      proceeding.

12      Dated  the  28th  day  of  January,  2022

13

14

15                          Nicole S. Montagano,

16                            Court Reporter

17

18

19

20

21

22

23

24

25

SARGENT'S COURT REPORTING SERVICE, INC.
(814) 536-8908

A1420